UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

TODD BAZZINI, GREGORY LEONARCZYK, NOAH     Case No. 08-Civ.-4530
ALLEN and JOHN MARKIEWICZ,
Individually and on Behalf of All Other Persons
Similarly Situated,
                                 **MEMORANDUM OF LAW IN**
                                 **SUPPORT OF PLAINTIFFS'**
                        Plaintiffs,      **MOTION FOR CONDITIONAL**
                                 **CERTIFICATION AS A**
      -against-                         **COLLECTIVE ACTION AND**
                                 **DISSEMINATION OF NOTICE**
CLUB FIT MANAGEMENT, INC., JEFFERSON      **TO SIMILARLY SITUATED**
VALLEY RACQUET CLUB, INC., DAVID SWOPE,    **EMPLOYEES**
BETH BECK and BILL BECK.

                       Defendants.
------------------------------------------------------------------- X

Dated: July 7, 2008              Respectfully submitted,
         New York, New York

                          **FARUQI & FARUQI, LLP**
                          Adam Gonnelli (AG-4782)
                          Beth A. Keller (BK-9421)
                          Christopher Marlborough (CM-6107)
                          369 Lexington Avenue, 10th Floor
                          New York, New York 10017
                          Telephone: (212) 983-9330
                          Facsimile: (212) 983-9331

                          ***Attorneys for Plaintiffs***

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.    INTRODUCTION .................................................................................................... 1

II.   FACTS ..................................................................................................................... 2

A.  Club Fit's Employees Do Not Receive Pay For All Hours Worked, Appropriate
    Overtime Nor Other Compensation To Which They Are Legally Entitled .................. 3

    1.  Working "Off-The-Clock" .................................................................... 4

    2.  Paying Regular Rate For Overtime Hours ........................................... 6

    3.  Time Shaving ....................................................................................... 7

    4.  No Spread of Hours Pay ...................................................................... 7

B.  Defendants' Conduct Was Pervasive Throughout The Club ........................................ 7

C.  The Same Management Policies Apply to Both Club Fit Locations ............................. 9

III.  ARGUMENT ........................................................................................................... 10

A.  The Standard For Conditional Certification Of A Collective Action Requires
    A Very Limited Showing That The Plaintiffs And The Potential Opt-In
    Plaintiffs Are Similarly Situated. ............................................................................... 10

    1.  The FLSA Must be Liberally Construed ............................................ 11

    2.  Plaintiffs Need Only Make A Minimal Showing That They Are Similarly
        Situated To Absent Class Members .................................................... 12

B.  Plaintiffs Have Met Their Modest Burden By Demonstrating That They
    Are Similarly Situated To Each Other And To The Other Employees Of Club Fit ..... 13

C.  The Court Should Authorize Prompt Notice To Past And Present Club Fit
    Employees .................................................................................................................. 16

    1.  The Form And Content Of The Notice Are Appropriate ..................... 17

    2.  Prompt Identification Of And Notice To Potential Opt-In Plaintiffs Is
        Necessary In This FLSA Action ......................................................... 18

IV.   CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                                            Page(s)

*Abrams v. Gen. Elec. Co.,*
   No. 95 Civ. 1734, 1996 U.S. Dist. LEXIS 16869 (N.D.N.Y Nov. 4, 1996)............................ 12

*Braunstein v. Eastern Photographic Labs., Inc.,*
   600 F.2d 335 (2d Cir. 1978)............................................................................................ 11, 17

*Diaz v. Scores Holding Co.,*
   No. 07 Civ 8718, 2008 U.S. Dist. LEXIS 38248 (S.D.N.Y. May 9, 2008)........................ 11, 16

*Dumitrescu v. Chou Enters., Ltd.,*
   No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008)........................... 19

*Fasanelli v. Heartland Brewery, Inc.,*
   516 F.Supp.2d 317 (S.D.N.Y. 2007).................................................................................... 16

*Foster v. The Food Emporium,*
   No. 99 Civ. 3860, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000) ............................ 12

*Gjurovich v. Emanual's Marketplace, Inc.,*
   282 F. Supp. 2d 91 (S.D.N.Y. 2003).................................................................................... 13

*Guzman v. VLM, Inc.,*
   No. 07 Civ. 1126, 2007 U.S. Dist. LEXIS 75817 (E.D.N.Y. Oct. 11, 2007) ......................... 18

*Harrington v. Educ. Mgmt. Corp.,*
   No. 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823 (S.D.N.Y. May 17, 2002) ............................ 18

*Hoffman-La Roche, Inc. v. Sperling,*
   493 U.S. 165 (1989)............................................................................................ 12, 13, 17, 18

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
   239 F.R.D. 363 (S.D.N.Y. 2007) ........................................................................................ 18

*Iriarte v. Redwood Deli & Catering, Inc.,*
   No. 07 Civ. 5062, 2008 U.S. Dist. LEXIS 50072 (E.D.N.Y. June 30, 2008)......................... 19

*Lee v. ABC Carpet & Home,*
   236 F.R.D. 193 (S.D.N.Y. 2006) ........................................................................................ 12

*LeGrand v. Educ. Mgmt. Corp.,*
   No. 03 Civ. 9798, 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 2, 2004) ............... 12, 15, 17

*Lynch v. United Servs. Auto. Ass'n,*
   491 F. Supp. 2d 357 (S.D.N.Y. 2007)................................................................................... 13

*Masson v. Ecolab, Inc.,*
   No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 18, 2005) ......................... 11

*Mazur v. Olek Lejbzon & Co.,*
   No. 05 Civ. 2194, 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 29, 2005) ................... 12, 16

*Table of Authorities - Continued*

Page(s)

*Mitchell v. Lublin*,
    358 U.S. 207 (1959)........................................................................................... 11

*Morales v. Plantworks, Inc.*,
    No. 05 Civ. 2349, 2006 U.S. Dist LEXIS 4267 (S.D.N.Y. Feb. 2, 2006) ................................ 11

*Patton v. Thomson Corp.*,
    364 F. Supp. 2d 263 (E.D.N.Y. 2005) ................................................................. 19

*Realite v. Ark Rests. Corp.*,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998).................................................................... 18

*Young v. Cooper Cameron Corp.*,
    229 F.R.D. 50 (S.D.N.Y. 2005) ........................................................................ 12

## **Statutes, Rules & Regulations**

29 U.S.C. § 216(b) ..................................................................................... passim

Fair Labor Standards Act ............................................................................. passim

Fed. R. Civ. P., Rule 23 ...................................................................................... 2

New York Labor Law ........................................................................... 1, 2, 3, 18

# I. INTRODUCTION

Named plaintiffs Todd Bazzini, Gregory Leonarczyk, Noah Allen and John Markiewicz, and opt-in plaintiffs Leaf O'Neal and Adrian Cosma ("Plaintiffs"), are former employees of corporate defendants Club Fit Management, Inc. ("CFM") and Jefferson Valley Racquet Club, Inc. ("JVRC") (together, "Club Fit") and individual defendants David Swope, Bill Beck and Beth Beck.[1]  Club Fit owns and operates two health club facilities in Westchester County, New York.  Club Fit pays most of its employees on an hourly basis and also employs some non-exempt salaried employees.  Plaintiffs allege that Club Fit violates the labor laws in the treatment of its employees because Club Fit: (1) does not pay appropriate overtime; (2) requires its employees to work "off-the-clock" hours without pay; and (3) fails to pay its employees "spread of hours" premium pay when working more than ten hours in a single workday.  Plaintiffs further allege that Club Fit threatens retaliation and has, in fact, retaliated against employees who challenged these practices.

On May 15, 2008, the named Plaintiffs filed a complaint (the "Complaint" or "Comp.")[2] in this Court seeking compensation for unpaid overtime, appropriate pay for unpaid hours and "spread of hours" premium pay under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  Since that time, two other former Club Fit employees, Adrian Cosma and Leaf O'Neal, have filed Consent to Sue forms and have joined the action as plaintiffs.

By this motion, Plaintiffs seek to protect the rights of dozens of current and former Club Fit employees by moving for conditional certification of a collective action under the FLSA and asking the Court's leave to disseminate court-authorized notice of this action to all potential opt-

---

[1] Club Fit and the individual defendants are collectively referred to as the "Defendants."

[2] Plaintiffs' Complaint, annexed to the Declaration of Christopher Marlborough ("Marlborough Decl.") as Exhibit A.

in plaintiffs. In addition to the allegations in the Complaint, Plaintiffs have submitted six declarations and documentary evidence in support of this motion, and have amply satisfied their minimal burden to show that Plaintiffs and the potential collective action members are similarly situated. Plaintiffs' Declarations show that they and the other employees at Club Fit were not paid time-and- a-half for overtime hours, were forced to work hours "off-the-clock" with no pay, and that no one received appropriate "spread of hours" pay. In addition, the Declarations and the documentary evidence submitted demonstrate that these practices were willfully and consistently followed throughout Club Fit.

Thus, Plaintiffs respectfully request that the Court: (a) conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b); (b) order Defendants to produce identifying information for each of the potential opt-in plaintiffs; and (c) authorize prompt notice to all former and current Club Fit employees to give them the opportunity to opt in to this litigation.[3]

## II. FACTS

Plaintiffs are former employees of Club Fit who worked for Defendants within three years of the filing of the Complaint. Each has filed a Consent to Sue form in this action and each has submitted a declaration in support of this motion.[4] Messrs. Bazzini, Leonarczyk, Cosma, O'Neal and Allen were tennis instructors at Club Fit.[5] Mr. Markiewicz was employed by Club Fit as a fitness professional and personal trainer.[6]

---

[3] Plaintiffs are not, at this time, seeking class certification of their NYLL claims under Fed. R. Civ. P. 23, but reserve all rights in this respect.

[4] Declaration of Gregory Leonarczyk ("Leonarczyk Decl."); Declaration of John Markiewicz ("Markiewicz Decl."); Declaration of Noah Allen ("Allen Decl."); Declaration of Todd Bazzini ("Bazzini Decl."); Declaration of Leaf O'Neal ("O'Neal Decl."); and Declaration of Adrian Cosma ("Cosma Decl.") attached to the Marlborough Decl. as Exhibits B–G.

[5] Allen Decl. ¶ 2; Cosma Decl. ¶ 2; Leonarczyk Decl. ¶ 2; Bazzini Decl. ¶ 2; O'Neal Decl. ¶ 5.

[6] Markiewicz Decl. ¶ 2.

2

Plaintiffs regularly worked more than forty hours per week for which they were paid on an hourly basis.[7]  Defendants, however, did not pay any of them time-and-one-half for all hours worked in excess of forty hours per week and with one small exception,[8] the Plaintiffs received no overtime pay at all.[9]  Plaintiffs were also required to work numerous hours "off-the-clock" for which they received no compensation.[10]  Furthermore, although Plaintiffs were often required to work more than ten hours in a single workday, none of the Plaintiffs received "spread of hours" premium pay as required by the NYLL.[11]  Each of the Plaintiffs knew of other Club Fit employees who worked more than forty hours per week without receiving overtime pay and who were required to work "off-the-clock" without pay, and each of the Plaintiffs understood from management that the overtime policies were company-wide.[12]

A.    **Club Fit's Employees Do Not Receive Pay For All Hours Worked, Appropriate Overtime Nor Other Compensation To Which They Are Legally Entitled**

According to defendant Bill Beck, Vice President of Club Operations for both of Club Fit's facilities, "***No one at Club Fit gets overtime***."[13]    Consistent with Mr. Beck's pronouncement, each of the Plaintiffs reported that they observed many other employees who did

---

[7] Allen Decl. ¶ 6; Cosma Decl. ¶¶ 7,10; Leonarczyk Decl. ¶ 5; Markiewicz Decl. ¶¶ 5, 12; Bazzini Decl. ¶¶ 5, 6, 11; O'Neal Decl. ¶ 8.

[8] Mr. Leonarczyk received a small amount of overtime for a few weeks in 2006.  Leonarczyk Decl. ¶ 18.

[9] Allen Decl. ¶ 19 ; Cosma Decl. ¶ 11; Leonarczyk Decl. ¶ 18; Markiewicz Decl. ¶ 12;  Bazzini Decl. ¶ 12; O'Neal Decl. ¶ 10.

[10] Allen Decl. ¶¶ 7,8; Cosma Decl. ¶ 8; Leonarczyk Decl. ¶¶ 9-15; Markiewicz Decl. ¶ 11;  Bazzini Decl. ¶ 10; O'Neal  Decl. ¶¶ 13, 17.

[11] Allen Decl. ¶ 28; Cosma Decl. ¶ 24; Leonarczyk Decl. ¶ 39; Markiewicz Decl. ¶ 14; Bazzini Decl. ¶ 13; O'Neal Decl. ¶ 32.

[12] Allen Decl. ¶ 21; Cosma Decl. ¶¶ 5, 23; Leonarczyk Decl. ¶ 32; Markiewicz Decl. ¶¶ 16, 17; Bazzini Decl. ¶ 21; O'Neal Decl.  ¶¶ 23-25.

[13] O'Neal Decl. ¶ 28.

not receive overtime.[14]  This includes employees in the tennis, aquatics, and fitness departments, café workers and workers in the energy center.[15]

In accordance with this policy, Club Fit employed various tactics to avoid paying overtime, including requiring employees to work "off-the-clock",[16] simply failing to pay overtime by paying the employee for hours worked over forty hours at that employee's regular rate,[17] shaving time from employees records,[18] and failing to pay appropriate "spread of hours" pay.[19]  Indeed, Club Fit required employees to work as many as one hundred hours per week without overtime including between ten and twenty-five hours per week "off-the-clock" with no compensation at all.[20]

### 1.    Working "Off-The-Clock"

At Club Fit, workers were required to work many hours without pay which they were not permitted to record.[21]  Most of this "off-the-clock" work was clerical in nature and included making calls to club members, preparing marketing materials and creating training regimens for

---

[14] Leonarczyk Decl. ¶ 32; Markiewicz Decl. ¶¶ 16-17 ;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20-24.

[15] Leonarczyk Decl. ¶ 32; Markiewicz Decl. ¶¶ 16-17;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20-24.

[16] Leonarczyk Decl. ¶¶9-15; Markiewicz Decl. ¶ 11; Allen Decl. ¶ 15; Bazzini Decl. ¶ 6 - 10; O'Neal  Decl. ¶¶ 13-19; Cosma Decl. ¶¶ 13-21.

[17] Leonarczyk Decl. ¶ 18; Allen Decl. ¶ 6; Bazzini Decl. ¶ 12; O'Neal Decl. ¶ 10; Cosma Decl. ¶ 11; Marlborough Decl., Exhibit H (January 2006 Earnings Statement of Gregory Leonarczyk indicating 234 hours worked in that month at a fixed rate of $28.00 per hour); Marlborough Decl., Exhibit I (October 2005 Earnings Statement of Leaf O'Neal indicating 204.5 hours worked in that month at a fixed rate of $28.00 per hour).

[18] O'Neal Decl. ¶ 22; Leonarczyk Decl. ¶ 31.

[19] Leonarczyk Decl. ¶ 39; Markiewicz Decl. ¶¶ 14-15; Allen Decl. ¶¶ 28-29; Bazzini Decl. ¶¶ 13-14; O'Neal Decl. ¶¶ 32-33; Cosma Decl.  ¶¶ 24-25.

[20] Comp. at ¶ 32; Leonarczyk Decl. ¶¶ 5, 10; Markiewicz Decl. ¶ 11; Allen Decl. ¶¶ 7-12; Bazzini Decl. ¶¶ 6-12; O'Neal Decl. ¶¶ 16-19; Cosma Decl. ¶¶ 8, 17.

[21] Some of the time worked by Plaintiffs was recorded on Club Fit's "Bookings Plus" club management software and on a punch clock system.  However, many of the clerical hours worked by Plaintiffs and potential opt-in plaintiffs were not recorded at all.  Bazzini Decl. ¶ 10; Allen Decl. ¶¶ 13-15.

Defendants' club members.[22]  In Mr. Leonarczyk's 2007 performance evaluation, his supervisor expressly detailed many of these off-court responsibilities, which included lesson preparation,[23] marketing and recruitment[24] and maintaining contact with club members and their parents.[25] Employees were also required to attend unpaid staff meetings.[26]  Tennis instructors also reported that they were required to staff after-hours tennis tournaments for Defendants' club members and to clean up the tennis courts after the tournaments without compensation for all hours worked.[27] In addition, these tennis instructors were required to work at off-site tennis tournaments for days at a time without compensation for all hours worked.[28]

Plaintiffs also reported that they observed other employees who were required to work "off-the-clock",[29] including employees in the tennis, aquatics, and fitness departments, café workers and workers in the energy center.[30]

Club Fit employees were often coerced into working these "off-the-clock" hours.  For instance, employees in the tennis department were told that they had to call club members to confirm the tennis instruction appointments because if a member did not attend their lesson, the tennis instructor would not be paid for that hour.[31]  With respect to the fitness department,

---

[22] Leonarczyk Decl. ¶¶ 14-15; Markiewicz Decl. ¶ 11; Allen Decl. ¶ 12; Bazzini Decl. ¶ 7; O'Neal Decl. ¶ 17.

[23] Marlborough Declaration Exhibit J, Club Fit Performance Review of Gregory Leonarczyk. Leonarczyk Decl. ¶ 17

[24] *Id.* (discussing duties of tennis department which include "distributing flyers, talking to parents and children and making phone calls.")

[25] *Id.* ("Greg takes longer than is satisfactory to respond to voice and email messages . . ..  Members have expressed frustration over the fact that they cannot reach him.")

[26] O'Neal Decl. ¶ 19.

[27] Comp. at ¶ 46.  Cosma Decl. ¶ 22; Allen Decl. ¶ 18.

[28] Comp. at ¶¶ 42-45.  Cosma Decl. ¶ 20-21; Allen Decl. ¶¶ 16-17; Leonarczyk Decl. ¶¶ 19-22.

[29] Markiewicz Decl. ¶¶ 16-17 ;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20-24.

[30] Markiewicz Decl. ¶¶ 16-17 ;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20-24.

[31] Comp. at ¶ 36; O'Neal Decl. ¶ 18.

Mr. Markiewicz stated that he was unable to perform his work in a responsible manner in the time that he was permitted to record.[32]  He was admonished by his supervisor when his work as a fitness professional exceeded forty hours per week because management did not want to pay overtime.[33]  Hence, to carry out his duties, Mr. Markiewicz had to work additional hours without compensation.[34]

### 2.    Paying Regular Rate For Overtime Hours

It cannot be disputed that Club Fit employees, at various times, worked more than forty recorded hours per week.[35]  However, Club Fit paid its employees their regular hourly rate instead of the mandated time and a half rate.  For example, Mr. Leonarczyk submitted earnings statements from Club Fit indicating that he was paid for 234 hours at his regular rate of pay in January 2006.[36]  Mr. O'Neal submitted earnings statements indicating that he was paid for 204.5 hours at his regular rate for his work in October 2005.[37]  Each of the plaintiffs also reported that they knew of other employees who did not receive overtime,[38] including those in the tennis, aquatics, and fitness departments, café workers and workers in the energy center.[39]

---

[32] Markiewicz Decl. ¶ 11.

[33] *Id.* at ¶ 8.

[34] *Id.* at ¶ 11.

[35] Marlborough Decl., Exhibit H, Leonarczyk Earnings Statement; Marlborough Decl., Exhibit I, O'Neal Earnings Statement.

[36] Marlborough Decl., Exhibit H, Leonarczyk Earnings Statement.

[37] Marlborough Decl., Exhibit I, O'Neal Earnings Statement.

[38] Leonarczyk Decl. ¶ 32; Markiewicz Decl. ¶¶ 16-17;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20-24.

[39] Leonarczyk Decl. ¶ 32; Markiewicz Decl. ¶¶ 16-17;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20–24.

### 3.    Time Shaving

Some of the Plaintiffs also witnessed Club Fit's management actually sitting at the computer in the tennis department and changing time records for employees to make it look as though they worked fewer hours.[40]  Mr. O'Neal learned that this time shaving activity also occurred in the aquatics department at Club Fit.[41]

### 4.    No Spread of Hours Pay

Finally, Plaintiffs regularly worked more than ten hours in a single workday.[42] Nevertheless, Plaintiffs did not receive "spread of hours" premium pay for that work as required by New York's labor regulations.[43]  To Plaintiffs' knowledge, "spread of hours" pay was never discussed by Club Fit employees.[44]  The implication is that none of the employees knew they were entitled to it because their employer failed to inform them of their rights.

## B.    Defendants' Conduct Was Pervasive Throughout The Club

Defendants' unlawful policies were company-wide, which supports a finding that Plaintiffs are similarly situated to the class of potential opt-ins.[45]

The Plaintiffs have all stated that based on their observations and conversations with other employees, the failure to pay overtime, spread of hours pay, and to require unpaid off the

---

[40] Leonarczyk Decl. ¶ 31; O'Neal Decl. ¶ 22.

[41] O'Neal Decl. ¶ 25.

[42] Comp. at ¶¶ 51, 53; Leonarczyk Decl. ¶ 39; Markiewicz Decl. ¶¶ 16-17;  Allen Decl. ¶ 28; Bazzini Decl. ¶ 13; O'Neal Decl. ¶ 32; Cosma Decl. ¶ 24.

[43] 12 NYCRR § 142-2.4.  The "spread of hours" provision  provides that "an employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required . . . in any day in which: (a) the "spread of hours" exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."

[44] Leonarczyk Decl.  ¶ 40; Markiewicz Decl. ¶ 15;  Allen Decl. ¶ 29; Bazzini Decl. ¶ 14; O'Neal Decl. ¶ 33; Cosma Decl. ¶ 25

[45] Markiewicz Decl. ¶¶ 16-18; Allen Decl. ¶¶  20-22; O'Neal Decl. ¶¶  20-26; Cosma Decl. ¶ 23; Bazzini Decl. ¶¶ 19–22.

clock work were all company-wide practices.[46]  Indeed, Plaintiffs' dealings with management made it clear that Club Fit's overtime policies were company-wide.  For instance, Mr. Allen attended a meeting with David Swope, one of the owners of Club Fit, and Bill Beck, the Vice President of Club Operations, and other Club Fit management as well as hourly employees representing each of Club Fit's departments.[47]  The employees, including Mr. Allen, told Club Fit's management that they were entitled to overtime and should be paid for "off-the-clock" hours.[48]  David Swope replied that he would look into it, but nothing changed.[49]

In 2005, Mr. Allen was demoted for raising wage and hour issues with management on behalf of his fellow employees and was subjected to a hostile work environment which forced him to resign a few months later.[50]  Prior to his demotion, Mr. Allen was instructed by Defendants to ensure that employees who complained about workplace conditions "got the message that if they continued to complain they would not last at the club."[51]

Nevertheless, after Mr. Allen left Club Fit, members of the tennis department continued to complain about management's failure to pay overtime and to pay for all hours worked. Bill Beck informed them that he saw no reason to treat them any differently than other Club Fit employees who, Mr. Beck said, did not receive overtime.[52]  Bill Beck even conceded that the members of the tennis staff were nonexempt employees entitled to overtime, but, with limited

---

[46] Allen Decl. ¶ 21; Cosma Decl. ¶ 5, 23; Leonarczyk Decl. ¶ 32; Markiewicz Decl. ¶¶ 16, 17; Bazzini Decl. ¶ 21; O'Neal Decl.  ¶¶ 23-25.

[47] Allen Decl. ¶ 23.

[48] Comp. at ¶ 62; Allen Decl. ¶ 23.

[49] Comp. at ¶¶ 63 - 64; Allen Decl. ¶ 23

[50] Allen Decl. ¶ 25.

[51] *Id.* at ¶ 24.

[52] Comp. at ¶ 82.  *See also* O'Neal Decl. ¶ 28.

exceptions, continued to fail to pay overtime.[53]  Bill Beck also warned the tennis staff not to discuss the meeting with other personnel at Club Fit – threatening retaliation.[54]  Indeed, Bill Beck told Leaf O'Neal that if he discussed wage and hour claims with anyone, he would be terminated.[55]

Mr. O'Neal also reported that he was told by employees in the aquatics department that management also refused to pay them overtime, shaved their time records, required them to work off the clock without pay, and threatened to terminate one of them for discussing wage and hour issues with co-workers.[56]  Similarly, in the fitness department, Mr. Markiewicz testified that while being admonished for recording overtime hours as a fitness professional, he was told by his supervisor that upper management simply did not want to pay overtime.[57]

## C.    The Same Management Policies Apply to Both Club Fit Locations

The corporate defendants, JVRC and CFM, operate as a single enterprise under the name Club Fit.[58]  One centralized management team of eleven top-level personnel ran the operations of both Club Fit locations.[59]  The management team, which includes the individual defendants, has established a set of consistent employment policies and practices at both locations to which all of

---

[53] Comp. at 82.  Mr. Leonarczyk reported that he did receive some overtime for a short period in 2006 without explanation.  Leonarczyk Decl. ¶ 18.  The others reported that they received no overtime. Allen Decl. ¶ 6; O'Neal Decl. ¶ 10; Bazzini Decl. ¶ 12.

[54] O'Neal Decl. ¶ 30; Leonarczyk Decl. ¶ 38.

[55] O'Neal Decl. ¶ 30.

[56] O'Neal Decl. ¶¶ 25, 31.

[57] Markiewicz Decl. ¶ 8.

[58] The Club Fit name and logo are trademarked intellectual properties, the rights to which are held by JVRC. U.S. Patent and Trademark Office database entries, Marlborough Decl., Exhibit L.

[59] Compare Briarcliff Manor location personnel roster http://www.clubfit.com/club/scripts/clubpers/view_clubpers_list.asp?GRP=4086&NS=BCAB&APP=61&MFCODE=BC, with Jefferson Valley location personnel roster; http://www.clubfit.com/club/scripts/clubpers/view_clubpers_list.asp?GRP=4088&NS=JVC&APP=61&MFCODE=JV (where the first eleven entries represent Club Fit's identical management structure for both locations).  Marlborough Decl., Exhibit M, pp. 2-7 (Club Fit website excerpts).

the potential collective action members are subject. Club Fit's management issues the same employee handbook to employees at both facilities and publishes the same employee newsletter to employees at both facilities.[60]

In addition, Club Fit promotes itself to the public as a single enterprise. Both locations are presented as a single entity on Club Fit's website, located at www.clubfit.com. The website notes: "Founded in 1973, Club Fit presently operates clubs in Briarcliff and Jefferson Valley serving more than 10,000 members and their guests."[61] Similarly, Club Fit presents its employees as a single group and does not differentiate its employees by the facility in which they work.[62] Indeed, several of the Plaintiffs were required to work in both locations.[63] Accordingly, JVRC and CFM are a single entity with common management.

## III. ARGUMENT

**A.    The Standard For Conditional Certification Of A Collective Action Requires A Very Limited Showing That The Plaintiffs And The Potential Opt-In Plaintiffs Are Similarly Situated.**

The collective action provision, 29 U.S.C. § 216(b), allows an action "against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." Certification of a group of similarly situated collective action members is a two-step process. First, the court makes a preliminary determination as to whether the proposed collective action members are "similarly situated" to the plaintiffs. *See Braunstein v. Eastern Photographic*

---

[60] Marlborough Decl., Exhibits J (Club Fit employee handbook) and K (Club Fit's February 2003 employee newsletter).

[61] http://www.clubfit.com/club/scripts/section/section.asp?NS=JVAB; http://www.clubfit.com/club/scripts/ section/section.asp? NS=BCAB.  Marlborough Decl., Exhibit M, pp. 9-10.

[62] Marlborough Decl., Exhibit M, p. 1.

[63] O'Neal Decl. ¶ 3; Cosma Decl. ¶ 2.

*Labs., Inc.,* 600 F.2d 335, 336 (2d Cir. 1978); *Diaz v. Scores Holding Co.*, No. 07 Civ 8718, 2008 U.S. Dist. LEXIS 38248, at *3 (S.D.N.Y. May 9, 2008).  Upon determination that the potential opt-in members are similarly situated, the Court conditionally certifies the collective action and may authorize opt-in notice.  *See Braunstein,* 600 F.2d at 336 (district court has authority to issue opt-in notice under the FLSA); *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022, at *38 (S.D.N.Y. Aug. 18, 2005) (granting conditional certification and permitting notice to potential plaintiffs).  Those individuals who opt in response to the notice become part of the conditionally certified collective action.

The second step in the two-step process requires the court to make a final determination as to whether the case may continue as a collective action.  *Id.,* at *39.  This motion asks the Court to take the first step.

### 1.    The FLSA Must be Liberally Construed

In the case of proposed collective actions arising from violations of the FLSA, the standard for conditional certification is relatively low.  This is because, consistent with the remedial purposes of the FLSA, the statute must be liberally construed in favor of employees. *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349, 2006 U.S. Dist LEXIS 4267, at *5 (S.D.N.Y. Feb. 2, 2006) (noting that "leniency" of conditional certification standard is consistent with the remedial purpose of the FLSA).  *See also Mitchell v. Lublin*, 358 U.S. 207, 211 (1959) ("The Act has been construed liberally to apply to the furthest reaches consistent with congressional direction."); *Braunstein*, 600 F.2d at 336 (affirming the district court's grant of conditional certification)

2.    **Plaintiffs Need Only Make A Minimal Showing That They Are Similarly Situated To Absent Class Members**

Accordingly, courts in the Second Circuit have adopted a low threshold for conditional certification as a collective action under 29 US.C. § 216(b).  Plaintiffs need only make a "minimal" showing, based on pleadings and affidavits, that they are similarly situated to the absent members of the proposed collective action.  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (finding "minimal" burden met and conditionally certifying class of carpet installers and authorizing notice); *LeGrand v. Educ. Mgmt. Corp.*, No. 03 Civ. 9798, 2004 U.S. Dist. LEXIS 17696, at *3 (S.D.N.Y. Sept. 2, 2004) ("Where, as here, an application to send opt-in notices is made in the early stages of an action, the plaintiff's burden is relatively light.").

Plaintiffs may meet their burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Hoffman*, 982 F. Supp. at 261.  This burden is satisfied by showing a "factual nexus between his or her situation and the situation of other current and former employees."  *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 U.S. Dist. LEXIS 30321, at *12 (S.D.N.Y. Nov. 29, 2005) (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)).  However, "similarly situated" does not mean "identically situated."  *Mazur*, 2005 U.S. Dist. LEXIS 30321, at *16-17 ("Contrary to Defendants' implication, Plaintiffs need not show that they are 'identically situated to potential class members' for approval of a collective action"); *Foster v. The Food Emporium*, No. 99 Civ. 3860, 2000 U.S. Dist. LEXIS 6053, at *5 n. 2. (S.D.N.Y. Apr. 26, 2000) ("Identity of claims . . . is not required."); *Abrams v. Gen. Elec. Co.,* No. 95 Civ. 1734, 1996 U.S. Dist. LEXIS 16869, at *6 (N.D.N.Y Nov. 4, 1996) ("[A] finding of "similarly situated" does not require the plaintiffs to perform the same job in the same location as long as there is a discriminatory policy common to all.").

Further, when evaluating whether potential plaintiffs are similarly situated, courts do not engage in an analysis of the merits of the case. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368-69 (S.D.N.Y. 2007) (noting that at the conditional certification stage, the court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations").

**B.    Plaintiffs Have Met Their Modest Burden By Demonstrating That They Are Similarly Situated To Each Other And To The Other Employees Of Club Fit.**

In order to be "similarly situated," other employees must merely be victims of the same conduct that is the subject of plaintiffs' complaint. *Gjurovich v. Emanual's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95 (S.D.N.Y. 2003) (issuing notice where the plaintiff alleged that defendants deprived other employees of overtime.)

Here, Plaintiffs have easily met the modest showing necessary for conditional certification as a collective action because they and the other employees at Club Fit were the victims of similar practices.

- *Plaintiffs and other employees were not paid appropriately for overtime hours.*[64]

Mr. Leonarczyk and Mr. O'Neal submitted earnings statements from Club Fit indicating that they were paid at their regular rate for all hours including those exceeding 40 hours in a given week.[65]  Each of the plaintiffs also reported that they knew of other employees who did not receive overtime,[66] including those in the tennis, aquatics, and fitness departments, café workers

---

[64] Allen Decl. ¶ 19; Cosma Decl. ¶ 11; Leonarczyk Decl. ¶ 18; Markiewicz Decl. ¶ 12;  Bazzini Decl. ¶ 12; O'Neal Decl. ¶ 10.

[65] Marlborough Decl., Exhibit H, Leonarczyk Earnings Statement; Marlborough Decl., Exhibit I, O'Neal Earnings Statement.

[66] Leonarczyk Decl. ¶ 32; Markiewicz Decl. ¶¶ 16 - 17;  Allen Decl. ¶¶ 20 – 22; Bazzini Decl. ¶¶ 19 - 22; O'Neal Decl. ¶¶ 20 – 24.

and workers in the energy center.[67]  In addition, one of the defendants told Mr. O'Neal that no one at Club Fit gets paid for overtime.[68]  Another defendant attended a meeting with Noah Allen and members of each of Club Fit's departments, where defendants' failure to pay overtime to its employees was discussed.[69]

- *Plaintiffs and other employees worked "off the clock" without pay.*

Plaintiffs were each required to perform numerous clerical and other tasks including attending unpaid staff meetings, creating lesson plans, making phone calls to club members and promoting the club.[70]  Plaintiffs also reported that they observed other employees who were required to work off the clock,[71] including employees in the tennis, aquatics, and fitness departments, café workers and workers in the energy center.[72]

- *Plaintiffs and other employees did not receive "spread of hours" pay.*

Each of the plaintiffs reported that they worked in excess of ten hours in a single workday, but did not receive "spread of hours" premium pay.[73]  Indeed, none of the plaintiffs had ever heard of any Club Fit employees receiving spread of hours pay.[74]

Accordingly, Plaintiffs have submitted substantial evidence of a common practice at Club Fit not to pay overtime, not to pay spread of hours premium pay and to require or permit workers

---

[67] Leonarczyk Decl. ¶ 32; Markiewicz Decl. ¶¶ 16-17;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20-24.

[68] O'Neal Decl. ¶ 28.

[69] Allen Decl. ¶ 23.

[70] Leonarczyk Decl. ¶ 17; Markiewicz Decl. ¶ 11; Allen Decl. ¶ 12; Bazzini Decl. ¶ 7; O'Neal Decl. ¶ 17-19; Marlborough Decl., Exhibit J, Club Fit Performance Review of Gregory Leonarczyk.

[71] Markiewicz Decl. ¶¶ 16-17 ;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20-24.

[72] Markiewicz Decl. ¶¶ 16-17 ;  Allen Decl. ¶¶ 20-22; Bazzini Decl. ¶¶ 19-22; O'Neal Decl. ¶¶ 20-24.

[73] Leonarczyk Decl.  ¶¶ 39-40; Markiewicz Decl.  ¶¶ 14-15; Allen Decl.  ¶¶ 28-29; Bazzini Decl.  ¶¶ 13-14; O'Neal Decl.  ¶¶ 32 -33; Cosma Decl.  ¶¶ 24-25.

[74] *Id.*

to work off the clock with no pay at all.  Plaintiffs have also shown that these practices were conducted pursuant to management's policy.[75]  Plaintiffs based this on conversations with and observations of other employees, and from statements from management.[76]

The systemic nature of Defendants' unlawful practices is evident in that at all relevant times, Club Fit knew its employees were working more than forty hours per week without overtime and were working hours without pay.[77]  Indeed, over the years numerous employees brought the overtime and "off-the-clock" hours issues to the attention of management, but management's response has been to retaliate against its employees, stifle dissent, and refuse to implement permanent changes to Club Fit's wage and hour policies.  Mr. Allen was demoted and subject to a hostile work environment.[78]  Mr. O'Neal was told that he was being treated the same as other employees and that he should not discuss the issues with other departments or else he would be fired.[79]  Mr. Markiewicz was told that upper management simply did not want to pay overtime.[80]  Similar facts have been sufficient to find the necessary factual nexus to support conditional certification.  *LeGrand*, 2004 U.S. Dist. LEXIS 17696, at *4-5 (three named plaintiffs averred that management told them that company employees all across the country had to work over forty hours per week and did not receive overtime).

---

[75] Leonarczyk Decl. ¶¶ 12, 14, 36; Markiewicz Decl. ¶ 17; Allen Decl. ¶¶ 20-23; Bazzini Decl. ¶¶ 20–22; O'Neal Decl. ¶¶ 21–25.

[76] *See e.g.* O'Neal Decl. ¶¶ 25 (relating conversations with members of the aquatics department who were not paid overtime and had their time shaved by management), 30 (Bill Beck's threat to terminate Mr. O'Neal for consulting with others); Leonarczyk Decl. ¶¶ 32 knew from conversations with management and co-workers that other employees were similarly deprived of overtime; Bazzini Decl. ¶ 22 (observing that employees in the aquatics and fitness departments worked more than 70 hours per week.)

[77] Allen Decl. ¶ 23.  Defendants had notice more than six years ago of their violations.  *Id.*

[78] *Id.*; O'Neal Decl. ¶ 27.

[79] O'Neal Decl. ¶ 30.

[80] Markiewicz Decl. ¶ 8.

In addition, the fact that the specifics of some employees' treatment varied is of no moment.[81] Such minor differences do not defeat collective certification, especially at this stage. *See Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317 (S.D.N.Y. 2007) (of eight declarants, four allege that they were not fully compensated for overtime; five not paid for training; two forced to work off the clock).   In addition, having different jobs, of course, is no impediment to collective certification so long as the employees are subject to the same types of wrongful conduct.   *See, e.g., Mazur,* 2005 U.S. Dist. LEXIS 30321 (rejecting defendants' argument and certifying collective action and authorizing notice in case involving seven different job descriptions against four corporate entities in different locations); *Fasanelli*, 516 F. Supp. 2d at 322 (certifying a class of servers, bartenders, runners, and bussers); *Diaz*, 2008 U.S. Dist. LEXIS 38248, at *11-12 (certifying a class of dancers, bartenders, cocktail servers and waitresses.).

Accordingly, Plaintiffs have met their light burden and shown that Plaintiffs and the potential opt-ins are similarly situated.

## C.    The Court Should Authorize Prompt Notice To Past And Present Club Fit Employees

Article 16(b) of the FLSA states that "An action  . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action **unless he gives his consent in writing** to become such a party and such consent is filed in the court in which such action is brought."   29 U.S.C. § 216(b) (emphasis added).   It is well established that the Court has the authority to order opt-in notice to potential plaintiffs. *Braunstein*, 600 F.2d at 336 ("[W]e hold that it makes . . . more sense, in light of the "opt-in"

---

[81] Allen Decl. ¶ 19; Cosma Decl. ¶ 11; Markiewicz Decl. ¶ 12;  Bazzini Decl. ¶ 12; O'Neal ¶ 10.

provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case."); *Hoffman*, 982 F. Supp. at 261 (noting that it is "well settled" that district courts have the right to send out opt-in notice to potential plaintiffs); *LeGrand*, 2004 U.S. Dist. LEXIS 17696, at *3 ("There can no longer be any doubt that that a court has the power to order that opt-in notice be sent to potential class members.").

### 1.    The Form And Content Of The Notice Are Appropriate

The Supreme Court has said that a collective action notice must be "timely, accurate and informative." *Hoffman-La Roche*, 493 U.S. at 171-72.  If issued promptly, the proposed notice will meet those criteria.[82]  The proposed Notice here is based on the Federal Judicial Center's model employment discrimination notice.[83]

Plaintiffs believe that the Notice should be issued to **all** employees of Club Fit within the last six years who do not have an ownership interest in the corporate defendants.  Club Fit has a pattern of characterizing what plaintiffs believe to be non-exempt employees deserving of overtime by other names, be it salaried exempt employees or as independent contractors, in order to avoid the payment of overtime.  Indeed, after the Complaint was filed in this action, defendants began paying some of its nonexempt employees on a salaried basis rather than an hourly basis in apparent attempt to circumvent the overtime rules.  Accordingly, notice should issue to all employees of Club Fit, regardless of how they are paid.

Notice dating back six years is appropriate because Plaintiffs have alleged violations of the NYLL which carries a six-year statute of limitations.  Federal courts in New York which have taken supplemental jurisdiction over New York Labor Law claims permit notice to cover

---

[82] Marlborough Decl., Exhibit P, [Proposed] Court Authorized Notice Concerning Club Fit (the "Notice").

[83] Marlborough Decl. Exhibit Q, Federal Judicial Center's Model Employment Discrimination Class Action Certification Notice.

the larger statute of limitations period under the NYLL.  *See, e.g., Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998) ("Plaintiffs in this action are also seeking relief under New York' labor laws, which provide a six year statute of limitations.  Accordingly, the Court authorizes notice to restaurant employees who worked for the 14 Ark restaurants located in New York to go back six years.") (internal citations omitted).  *See also Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007) ("[B]y virtue of the plaintiffs' New York Labor Law claims, notice will be sent to employees who have worked for the defendants over the last six years whether or not the FLSA action is subject to a shorter statute of limitations."); *Guzman v. VLM, Inc*., No. 07 Civ. 1126, 2007 U.S. Dist. LEXIS 75817, at *18-19 (E.D.N.Y. Oct. 11, 2007) ("Given that I can properly exercise supplemental jurisdiction over the NYLL claims arising out of the policies complained of here, notice to all similarly situated employees who worked for VLM during the six years prior to the filing of this complaint is proper."); *Harrington v. Educ. Mgmt. Corp.*, No. 02 Civ. 0787, 2002 U.S. Dist. LEXIS 8823, at *2 (S.D.N.Y. May 17, 2002) (authorizing FLSA notice to all similarly situated employees who worked for defendant in New York in the past six years due to NYLL claims).

  **2.**  **Prompt Identification Of And Notice To Potential Opt-In Plaintiffs Is Necessary In This FLSA Action**

  In order to participate in a collective action, aggrieved parties must affirmatively opt-in to the case pursuant to 29 U.S.C. 216(b).  Until they do so, the statute of limitations may continue to run on their claims.  *Hoffman*, 982 F. Supp. at 260.  That is why prompt issuance of notice is critical in a collective action case.  *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268

18

(E.D.N.Y. 2005) (early notice protects rights of absent class members whose claims might expire during the discovery phase of the case).[84]

In *Dumitrescu v. Chou Enters., Ltd.*, No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881, at *7, 11 (S.D.N.Y. June 30, 2008) issued only last week, Judge Leisure granted conditional certification and ordered defendants to produce the names, addresses, telephone numbers, dates of employments and job titles of potential opt-in plaintiffs within ten days of the court's order. *Id.*, 2008 U.S. Dist. LEXIS 49881, at *19.  *See also Iriarte v. Redwood Deli & Catering, Inc.*, No. 07 Civ. 5062, 2008 U.S. Dist. LEXIS 50072 (E.D.N.Y. June 30, 2008) (granting conditional certification, permitting notice and requiring defendants to produce identifying information within ten days of the date of the court's order.)  Accordingly, Defendants should be ordered to produce, within ten days of the Court's order conditionally certifying this action as a collective action, a list of the names of all employees who have worked for the corporate defendants during the six years preceding the filing of the Complaint, along with the last known mailing address, telephone number, email address, job title and dates of employment for each employee.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) conditionally certify this action as a collective action pursuant to 29 U.S.C. § 216(b); (2) order Defendants to produce the name, last known mailing address, email address (where applicable), job title, and dates of employment for each potential opt-in plaintiff employed by Club Fit between May 15, 2002 and the mailing of the notice; and (3) authorize the issuance of Plaintiffs' Proposed Notice.

---

[84] This remains true even though the court may later decide that certain employees who attempt to opt-in to the class are not eligible.  *See Masson*, 2005 U.S. Dist. LEXIS 18022, at *44 ("The court need not and does not hold definitively that members of the proposed class to whom notices will be sent are in fact similarly situated to plaintiffs.  Too little discovery has been taken to make such a determination now.").

Dated: July  7, 2008
      New York, New York

Respectfully submitted,

**FARUQI & FARUQI, LLP**


By:  s/Adam Gonnelli
      Adam Gonnelli (AG-4782)

Beth A. Keller (BK-9421)
Christopher Marlborough (CM-6107)
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

***Attorneys for Plaintiffs***