UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

TODD BAZZINI, GREGORY LEONARCZYK, NOAH ALLEN and JOHN MARKIEWICZ,
Individually and on Behalf of All Other Persons Similarly Situated,

Case No. 08-civ-4530

                                      Plaintiffs,

        -against-

CLUB FIT MANAGEMENT, INC., JEFFERSON VALLEY RACQUET CLUB, INC., DAVID SWOPE, BETH BECK and BILL BECK.

                                      Defendants.

**DECLARATION OF CHRISTOPHER MARLBOROUGH IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION AND DISSEMINATION OF NOTICE TO SIMILARLY SITUATED EMPLOYEES**

-------------------------------------------------------------------- X

I, Christopher Marlborough, under penalty of perjury, hereby declare:

1.      I am an associate with the law firm of Faruqi & Faruqi, LLP, counsel for Plaintiffs in the above-captioned matter.  I submit this declaration in support of Plaintiffs' Motion for Conditional Certification as a Collective Action and Dissemination of Notice to Similarly Situates Employees.

2.      Attached hereto as Exhibit A is Plaintiffs' Complaint, filed May 15, 2008.

3.      Attached hereto as Exhibit B is the Declaration of Gregory Leonarczyk in Support of Plaintiffs' Motion for Conditional Collective Action Certification.

4.      Attached hereto as Exhibit C is the Declaration of John Markiewicz in Support of Plaintiffs' Motion for Conditional Collective Action Certification.

5.      Attached hereto as Exhibit D is the Declaration of Noah Allen in Support of Plaintiffs' Motion for Conditional Collective Action Certification.

6.     Attached hereto as Exhibit E is the Declaration of Todd Bazzini in Support of Plaintiffs' Motion for Conditional Collective Action Certification.

7.     Attached hereto as Exhibit F is the Declaration of Leaf O'Neal in Support of Plaintiffs' Motion for Conditional Collective Action Certification.

8.     Attached hereto as Exhibit G is the Declaration of Adrian Cosma in Support of Plaintiffs' Motion for Conditional Collective Action Certification.

9.     Attached hereto as Exhibit H is a true and correct copy of Club Fit's January 2006 Earnings Statement for Gregory Leonarczyk.

10.     Attached hereto as Exhibit I is a true and correct copy of Club Fit's October 2005 Earnings Statement for Leaf O'Neal.

11.     Attached hereto as Exhibit J is a true and correct copy of Club Fit's 2007 Performance Review of Gregory Leonarczyk.

12.     Attached hereto as Exhibit K are true and correct copies of Club Fit's March 2005 Earnings Statements for Noah Allen.

13.     Attached hereto as Exhibit L are true and correct copies of database entries for Club Fit's name and logo from the internet website of the U.S. Patent and Trademark Office, located at http://tess2.uspto.gov/bin/gate.exe?f=tess&state=olms0k.1.1.

14.     Attached hereto as Exhibit M are true and correct copies of excerpts from Club Fit's internet website located at www.clubfit.com.

15.     Attached hereto as Exhibit N is a true and correct copy of Club Fit's Employee Handbook, dated April 2007.

16.     Attached hereto as Exhibit O is a true and correct copy of the Club Fit Staff Newsletter, February 2003 edition.

17.    Attached hereto as Exhibit P is Plaintiffs' [Proposed] Court Authorized Notice Concerning Club Fit.

18.    Attached hereto as Exhibit Q is a true and correct copy of the Federal Judicial Center's Model Employment Discrimination Class Action Certification Notice, available at http://www.fjc.gov/public/home.nsf/autoframe?openform&url_l=/public/home.nsf/inavgeneral?openpage&url_r=/public/home.nsf/pages/376.

DATED:    July 7, 2008
          New York, New York

Christopher Marlborough (CM-6107)

# EXHIBIT A

JUDGE JONES

'08 CIV 4530

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ X
TODD BAZZINI, GREGORY LEONARCZYK, NOAH    Civil Action No.
ALLEN, and JOHN MARKIEWICZ,
Individually and on Behalf of All Other Persons
Similarly Situated,

                          Plaintiffs,                **COMPLAINT AND**
                                                     **JURY DEMAND**

        -against-

CLUB FIT MANAGEMENT, INC., JEFFERSON
VALLEY RACQUET CLUB, INC., DAVID SWOPE,
BETH BECK and BILL BECK,

                          Defendants.
------------------------------------------------------------------ X

RECEIVED
MAY 15 2008
U.S.D.C. S.D.N.Y.
CASHIERS

1.    This is a collective action for unpaid wages under the Fair Labor Standards Act

(the "FLSA").  Plaintiffs also assert individual claims under the New York State Labor Law.

The defendants in this action are Jefferson Valley Racquet Club, Inc. ("JVRC"), Club Fit

Management, Inc. ("Club Fit Management", hereafter with JVRC "Club Fit") and certain

members of Club Fit's ownership and management structure: David Swope, Beth Beck, and

Bill Beck (collectively, "Defendants").  Plaintiffs are employees at Club Fit, which operates

two fitness centers in Westchester County.  Club Fit pays its tennis instructors, fitness

professionals, personal trainers and other employees (such as swim instructors and café

workers) on an hourly basis.  Club Fit does not pay its employees time and one-half for all

overtime hours worked as mandated by law.

2.    Further, Club Fit employees are required to work between ten and twenty-five

hours "off-the-clock" per week with no pay at all, working on clerical tasks, attending

meetings, cleaning up, communicating with club members and even escorting club members to

meets and tournaments.  Moreover, employees are not paid "spread of hours" pay when

working in excess of ten hours in a single workday.

3. Accordingly, plaintiffs Todd Bazzini, Gregory Leonarczyk, Noah Allen and John Markiewicz ("Plaintiffs"), on behalf of themselves and other similarly situated current and former hourly employees of Club Fit Management and JVRC who elect to opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b), seek: (i) unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay as required by law; (ii) injunctive relief; (iii) liquidated damages; and (iv) payment of attorneys' fees and litigation costs.

4. Plaintiffs further complain that pursuant to the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 (the "New York Labor Law"), they are entitled to: (i) unpaid wages from Defendants for "off-the-clock" hours worked; (ii) unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay; (iii) "spread of hours" pay for work in excess of ten hours in a single workday; (iv) injunctive relief; (v) liquidated damages; and (vi) payment of attorneys' fees and litigation costs.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. §§ 201, *et seq.*

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because Defendants transact business in this district, Plaintiffs were employed by Defendants in this district, and most of the actions complained of occurred in this district.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

8.    Plaintiff Todd Bazzini ("Mr. Bazzini") was, at all relevant times, an adult individual residing New York State. Mr. Bazzini is a former employee of Club Fit and was employed by Defendants from 1993 until August 2006 as a tennis instructor.

9.    Plaintiff Gregory Leonarczyk ("Mr. Leonarczyk") was, at all relevant times, an adult individual residing in New York State. Mr. Leonarczyk is a former employee of Club Fit and was employed by Defendants from approximately January 1998 until January 6, 2008 as a tennis instructor.

10.    Plaintiff Noah Allen ("Mr. Allen") was, at all relevant times, an adult individual residing in New York State. Mr. Allen is a former employee of Club Fit and was employed by Defendants from approximately February 1995 until October 2005 as a tennis instructor.

11.    Plaintiff John Markiewicz ("Mr. Markiewicz") was, at all relevant times, an adult individual residing in New York State. Mr. Markiewicz is a former employee of Club Fit and was employed by Defendants from September 2001 to February 2006 as both a fitness professional and a personal trainer.

12.    Defendant Club Fit Management is a New York corporation with its principal place of business at 132 Hawkes Avenue, Ossining, New York, in the County of Westchester. Club Fit Management owns and operates two health club facilities in Westchester County, located in Briarcliff Manor and Jefferson Valley, New York.

13.    Defendant JVRC is a New York Corporation with its principal place of business at Bank Road, Jefferson Valley, New York, in the County of Westchester. JVRC is a closely-held corporation which, along with Club Fit Management, owns and operates the Jefferson Valley facility under the name Club Fit.

14. Defendant David Swope has an ownership interest in Club Fit Management and JVRC. He is personally responsible for implementing and enforcing Club Fit's wage and hour policies.

15. Defendant Beth Beck has an ownership interest in Club Fit Management and JVRC and is President of both companies. She is personally responsible for implementing and enforcing Club Fit's wage and hour policies.

16. Defendant Bill Beck is Vice President of Club Operations for Club Fit Management and JVRC. Upon information and belief, Bill Beck has an ownership interest in Club Fit and/or JVRC. He is personally responsible for implementing and enforcing Club Fit's wage and hour policies.

17. Defendants referred to in paragraphs 14 through 16 are collectively referred to herein as "Individual Defendants."

## COLLECTIVE ACTION ALLEGATIONS

18. Pursuant to 29 U.S.C. § 207, Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all hourly employees, within the meaning of the FLSA, who were not paid appropriate overtime compensation within three years of the date of the filing of this Complaint (the "Collective Action Members").

19. Plaintiffs bring their FLSA claims on behalf of all persons who worked for Club Fit on an hourly basis at any time from three years prior to the filing of this Complaint to entry of judgment.

20. Throughout the time of Plaintiffs' employment with Defendants and, upon information and belief, throughout the last three years (the "Collective Action Period") and continuing until today, Defendants have employed other individuals like Plaintiffs in hourly positions which are not exempt from the overtime rules pursuant to the FLSA (as well as the

4

New York Labor Law). Such positions include, but are not limited to, tennis instructors of various titles, swimming instructors, fitness instructors, personal trainers, and café workers. These workers, like Plaintiffs, were not paid appropriate overtime.

21.    In addition, Defendants have intentionally and repeatedly engaged in a practice of requiring non-exempt employees to work "off-the-clock" hours without compensation.

22.    There are numerous similarly-situated current and former hourly employees of Club Fit who have worked over forty hours a week without appropriate overtime pay and been forced to work numerous "off-the-clock hours" in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join in the lawsuit pursuant to 28 U.S.C. § 216(b). Those similarly-situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records. As such, notice should be sent to past and present hourly employees of Club Fit.

## STATEMENT OF FACTS

23.    At all relevant times, Defendants, under the name Club Fit, operated health club facilities in Briarcliff Manor and Jefferson Valley, New York. Both facilities are located in Westchester County.

24.    JVRC and Club Fit Management constitute a single enterprise.

25.    Each of Defendants is an employer as defined by the FLSA and the New York Labor Law.

26.    Plaintiffs were hourly employees of Defendants.

27.    Plaintiffs each received an IRS Form W-2 from Defendants on an annual basis. Plaintiffs never received a Form 1099-MISC from Defendants.

28.    Plaintiffs were not independent contractors.

5

29.    Plaintiffs' work for Club Fit did not involve work that falls within any exemption from the overtime rules pursuant to New York Labor Law or the FLSA.

30.    In the course of their employment, Mssrs. Bazzini, Allen and Leonarczyk provided tennis instruction to members of Defendants' health clubs and performed other duties, such as clerical work and tournament work, which included travelling to, staffing, and coaching Club Fit members at tournaments.  They were paid on an hourly basis for the hours worked at tennis instruction ("Court Hours") and, with very minor exceptions, not paid at all for clerical work and were only paid for a small portion of tournament work.

31.    Mr. Markiewicz's work as a fitness professional required him to work approximately forty hours per week on the floor of Club Fit's gym, monitoring the operations of the gym, cleaning up and attending to Defendants' club members.  In addition, he worked up to twenty additional hours per week as a personal trainer, providing individualized fitness instruction to Defendants' club members.  Mr. Markiewicz received no overtime for hours worked as a personal trainer.

## Plaintiffs Did Not Receive Pay For All Off-The-Clock Hours Worked

32.    In addition to those hours actually recorded and paid by Defendants, Plaintiffs were required to work an additional ten to twenty-five hours per week performing clerical and other office tasks, attending staff meetings, communicating with club members, creating and maintaining training regimens, escorting Defendants' club members to tennis tournaments and other off-the-clock duties ("Off-The-Clock Hours").

33.    During the relevant period, Mssrs. Bazzini and Markiewicz were not paid for any of the duties that were performed as Off-The-Clock Hours.

34.    Mr. Leonarczyk received payment for a small portion of clerical duties he performed in early 2003.  He was paid for less than ten hours for clerical work in all of 2004.

6

35.    With the exception of Mr. Leonarczyk's ten hours of pay in 2004, Defendants stopped compensating the tennis instructors for any hours worked outside of their scheduled Court Hours in 2003.

## Clerical Work

36.    As part of the unpaid clerical work, Plaintiffs were required to call and confirm appointments of club members.   Plaintiffs were cautioned by defendants that if the club members did not show up for scheduled lessons, Plaintiffs would not be paid.

37.    After 2003, under the title "Tennis Manager," Mr. Allen continued to be paid for a small portion of the clerical work that he performed until 2005 when he was demoted by Defendants to "Head Tennis Professional."  Mr. Allen was thereafter required to continue to perform the same clerical duties he had been performing as "Tennis Manager" without pay.

38.    Mr. Allen was demoted to "Head Tennis Professional" in retaliation for expressing his wage and hour grievances to Defendants and attempting to mobilize his co-workers in connection with those claims.

39.    Upon information and belief, Mr. Allen was the only hourly employee paid for these clerical duties after 2003.

40.    Thereafter, the tennis staff was repeatedly told by Defendants that they were not entitled to any compensation for Off-The-Clock Hours.

## Tournament Work

41.    Mr. Leonarczyk and Mr. Allen were also required to work at both tournaments held at Club Fit and off-site.

42.    With respect to the off-site tournaments, Mr. Leonarczyk and Mr. Allen were required by Defendants to escort club members to tournaments at other clubs in the tri-state area.  They were required by Defendants to drive Defendants' club members to the off-site

7

tournaments, provide coaching before, during and after the tournaments, and chaperone the activities of Defendants' minor club members for as long as four days at a time.

43.    Though they acted for the benefit of their employer, Mr. Leonarczyk and Mr. Allen received no compensation from Defendants for their work.  Moreover, Plaintiffs were unable to log any Court Hours while away at these off-site tournaments.    Only after Defendants' club members were eliminated from an off-site tournament could Plaintiffs return to the club and log additional Court Hours for which they would be paid.

44.    Perversely, the better Defendants' club members performed in the tournaments with the assistance of Plaintiffs, the longer Plaintiffs were required to work without compensation and the longer Plaintiffs were prevented from logging Court Hours.

45.    Despite the economic hardship caused by working the off-site tournaments without pay, Defendants made Plaintiffs and other employees aware that their refusal to work the tournaments would result in the termination of their employment or other retaliatory action.

46.    Mr. Leonarczyk and Mr. Allen were also required to work at tournaments held at Club Fit.  For these tournaments, Plaintiffs were allowed to record three and one-half hours of court time, despite the fact that the tournaments generally lasted more than six hours and frequently ran until one or two o'clock in the morning.  They were also required to clean up the courts after tournaments without pay.

47.    Plaintiffs are entitled to compensation for all unpaid Off-The-Clock Hours worked.

### Plaintiffs Did Not Receive Overtime Or "Spread Of Hours" Pay

48.    Mssrs. Allen, Leonarczyk and Bazzini regularly worked more than forty hours per workweek in Court Hours alone for which they did not receive overtime compensation.

Plaintiffs were paid for the Court Hours that they were permitted to log in excess of forty at their regular hourly rate, not at time and one-half.

49.   Mr. Markiewicz regularly worked approximately forty hours as a fitness professional alone.  He invariably worked more than forty hours per workweek when his Off-the-Clock and personal training hours are included, but he received no overtime compensation for any hours worked as a personal trainer, and no compensation at all for any Off-The-Clock hours.

50.   In addition, Plaintiffs almost invariably worked more than forty hours per workweek including both Off-The-Clock Hours and recorded hours for which they did not receive overtime compensation.   Plaintiffs, with very few exceptions, received no compensation at all for Off-The-Clock Hours, let alone appropriate overtime compensation.

51.   Plaintiffs regularly worked more than ten hours in a single workday, and never received "spread of hours" pay pursuant to the New York Labor Law.

52.   Plaintiffs are entitled to overtime premium pay at a rate of one and one-half times the regular rate, for all hours worked over forty hours per workweek pursuant to New York Labor Law and the FLSA.

53.   Plaintiffs are entitled to "spread of hours" pay for days when they worked more than ten hours in a single workday pursuant to New York Labor Law.

### Defendants Failed To Keep Sufficient Time Records

54.   Defendants have assigned and/or been aware of all the work that Plaintiffs have performed.

55.   Throughout all relevant time periods, Defendants failed to maintain accurate and sufficient time records.

9

56.  For example, Defendants maintained no records of Plaintiffs' Off-The-Clock Hours as required by New York Labor Law and the FLSA.  Indeed, Plaintiffs were specifically instructed by Defendants not to record the Off-The-Clock Hours.

57.  Defendants also failed to maintain accurate records of hours worked in connection with both off-site and on-site tournaments.

## Defendants Willfully Violated The Labor Laws

58.  Defendants willfully failed to pay Plaintiffs overtime compensation of one and one-half times Plaintiffs' regular hourly rate.

59.  Defendants willfully failed to pay Plaintiffs for Off-The-Clock Hours in violation of the labor laws.

60.  Defendants willfully failed to pay Plaintiffs "spread of hours" pay pursuant to the New York Labor Law.

61.  Defendants willfully failed to maintain sufficient time records.

62.  More than six years ago, Mr. Allen attended a meeting with defendants David Swope and Bill Beck, other members of management and representative employees of each of the Briarcliff Manor facility's departments.  The employees, including Mr. Allen, notified Defendants of their entitlement to overtime compensation and compensation for Off-The-Clock Hours.

63.  Defendant Swope said that he believed that the employees present at the meeting, including Mr. Allen, were independent contractors and not true employees. Thus, he claimed, they were not subject to the wage and hour restrictions.  At the meeting he told Mr. Allen and the other employees at the meeting that he would "look into it."

64. Defendants never followed up with Mr. Allen or the other employees and Mr. Allen continued to be deprived of overtime premium pay, "spread of hours" pay and pay for all Off-The-Clock Hours worked.

65. Defendants lacked any reasonable basis for misclassifying their employees, including Mr. Allen, as independent contractors.

66. Defendants' efforts to retaliate against its employees also demonstrate that their labor law violations were willful.

67. For instance, Mr. Allen was repeatedly told by his superiors that various co-workers would not be permitted to express dissatisfaction with working uncompensated hours and not receiving overtime pay or refuse to work extra hours without compensation, and that if they did, they "would not last at the club." Defendants expected Mr. Allen to make sure those employees "got the message."

68. Indeed, Mr. Allen was demoted from Tennis Manager to Head Tennis Professional in 2005 for attempting to mobilize his co-workers in connection with their unpaid wage claims. Though he was once paid for a small portion of his clerical work, Defendants terminated any compensation for clerical or other additional work in connection with his demotion. Defendants continued to require Mr. Allen to perform these duties as Off-The-Clock Hours without pay.

69. Also in 2005, members of the tennis staff, including Mr. Leonarczyk and Mr. Bazzini, attended a series of meetings with defendant Bill Beck concerning their entitlement to overtime pay and compensation for Off-The-Clock Hours.

70. At one of these meetings, defendant Bill Beck acknowledged to Mr. Leonarczyk, Mr. Bazzini and other tennis instructors that he did not believe that they were exempt from the overtime rules and, in particular, that they were not subject to the exemption for professional

employees. Defendant Bill Beck also informed Mr. Leonarczyk, Mr. Bazzini and those present that they were no longer required to work in excess of forty Court Hours per week.

71.    However, defendant Bill Beck instructed the members of the tennis staff present at the meeting that if they discussed their wage and hour grievances or the substance of the meeting with employees in other departments at Club Fit, they would be terminated.

72.    This meeting immediately preceded a holiday week, when staffing requirements were light. But within two weeks of defendant Bill Beck's acknowledgement of the fact that the tennis instructors were entitled to overtime, Plaintiffs and the other employees were again scheduled to work in excess of forty Court Hours per week and required to work Off-The-Clock Hours.

73.    Thereafter, Defendants continued to fail to pay overtime, "spread of hours" pay and pay for all hours worked.  Indeed, despite defendant Bill Beck's admission, it was as if nothing had changed at all.

74.    Upon information and belief, Defendants continue to this day to deprive their employees of payment for all hours worked, require mandatory overtime without premium pay, and fail to pay "spread of hours" pay.

### Plaintiffs Are Similarly Situated To The Collective Action Members

75.    Indeed, Defendants' failure to pay its non-exempt employees for overtime hours worked, Off-The-Clock Hours worked, and "spread of hours" pay, was consistent with Defendants' treatment of all of its non-exempt employees.

76.    The Collective Action Members routinely worked in excess of forty hours in a workweek, but Defendants willfully failed to pay them appropriate overtime compensation, required them to work Off-The-Clock Hours without compensation, and failed to pay them "spread of hours" pay when they worked in excess of ten hours in a single workday.

77.   Defendants also failed to maintain accurate and sufficient time records of the work of the Collective Action Members.  While Court Time and personal training hours were recorded and kept in a database, no records were kept of Off-The-Clock Hours.

78.   At all times, Defendants were aware that their failure to pay overtime and require Off-The-Clock Hours was unlawful, but continued to engage in these practices.

79.   Plaintiffs frequently heard complaints from members of the tennis, aquatic, fitness, and wellness departments about the lack of overtime and being forced to work Off-The-Clock Hours.

80.   These unlawful practices were regularly brought to the attention of management at staff meetings.

81.   Mr. Allen attended a meeting more than six years ago where a cross section of Club Fit employees complained of wage and hour violations to defendants David Swope and Bill Beck.

82.   During a series of meetings in 2005, Mr. Leonarczyk and other members of the tennis staff were asked by defendant Bill Beck why the tennis instructors should get overtime when none of the other departments did.  These meetings culminated in defendant Bill Beck's acknowledgement that the tennis instructors were, in fact, employees, not exempt from the overtime rules and that they would not have to work more than forty hours per week in the future.  Defendant Bill Beck threatened that the tennis instructors would be fired if they brought these issues to the attention of the other departments.  Defendant Bill Beck's assurance that overtime would no longer be required, of course, lasted about two weeks.

83.   The exact number of putative Collective Action Members is presently unknown, but is within the sole knowledge of Defendants and can be ascertained through appropriate discovery.

## FIRST CLAIM FOR RELIEF
## FAIR LABOR STANDARDS ACT

84.    Plaintiffs, on behalf of themselves and all Collective Action Members, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

85.    At all relevant times, Club Fit and JVRC have each had gross revenues in excess of $500,000.

86.    At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

87.    At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

88.    Plaintiffs will consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b).

89.    At all relevant times, Defendants had a willful policy and practice of refusing to pay overtime compensation to its hourly employees for all hours worked in excess of forty hours per workweek.

90.    At all relevant times, Defendants had a willful policy and practice of requiring its hourly employees to work Off-The-Clock Hours performing clerical and tournament duties without any pay, let alone premium overtime pay.

91.    As a result of Defendants' willful failure to compensate its employees, including Plaintiffs and the Collective Action Members, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

92.   As a result of Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.,* including 29 U.S.C. §§ 211(c) and 215(a).

93.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

94.   Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the Collective Action Members, are entitled to recover from Defendants, compensation for: (i) unpaid overtime compensation; (ii) an additional equal amount as liquidated damages; (iii) additional liquidated damages for unreasonably delayed payment of wages; and (iv) reasonable attorneys' fees, costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
## NEW YORK LABOR LAW

95.   Plaintiffs reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

96.   At all relevant times, Plaintiffs were employed by Defendants within the meaning of the New York Labor Law.

97.   Defendants willfully violated the New York Labor Law by: (i) failing to pay its hourly workers compensation for all hours worked; (ii) failing to pay overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek; and (iii) failing to pay workers "spread of hours" pay on days where they worked more than ten hours.

98.    Defendants' New York Labor Law violations have caused Plaintiffs irreparable harm for which there is no adequate remedy at law.

99.    Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants damages for: (i) Off-The-Clock Hours worked; (ii) overtime premium pay; (iii) "spread of hours" pay; (iv) liquidated damages; (v) reasonable attorneys' fees and costs; and (vi) disbursements of the action, pursuant to the New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and/or on behalf of themselves and all other similarly situated Collective Action Members, respectfully request that this Court grant the following relief:

A.    Designation of this action as a collective action on behalf of the Collective Action Members, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

C.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

D.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from taking any retaliatory actions against Plaintiffs or the Collective Action Members;

E.     An award of unpaid overtime compensation to Plaintiffs and the Collective Action Members;

F.     An award of compensation for unpaid hours worked off-the-clock by Plaintiffs and the Collective Action Members;

G.     An award to Plaintiffs and the Collective Action Members of "spread of hours" compensation under regulations promulgated under the New York Labor Law;

H.     An award of liquidated damages to Plaintiffs and the Collective Action Members under the FLSA and to Plaintiffs under the New York Labor Law as a result of Defendants' willful failure to pay for off-the-clock hours worked, overtime premium pay, and "spread of hours" pay;

I.     An award of prejudgment and post-judgment interest to Plaintiffs and the Collective Action Members;

J.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and the Collective Action Members; and

K.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: May 15, 2008
      New York, New York           Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: _____
                 Adam Gonnelli (AG4782)

Beth A. Keller (BAK9421)
Christopher Marlborough (CM6107)
369 Lexington Avenue, 10th Floor
New York, New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

*Attorneys for Plaintiffs*

# EXHIBIT J

# Club fit
## Performance Review

**Employee Name:** Greg Leonarczyk
**Job Title:** Tennis Professional
**Department:** Tennis
**Review Period Start:** 1/1/2006
**Review Period End:** 1/2/2007
**Last Review Date:** 12/15/2002
**Next Review Date:** 1/24/2008
**Reviewer Name:** Steven N. Gervickas
**Reviewer Title:** Director of Tennis

## PERFORMANCE ELEMENTS:

### Quality

Greg performs extremely well on court with very little, if any, supervision or assistance needed. He demonstrates a high level of competency in the skills and knowledge required. Greg attends the U.S. Open in September and learns and applies new skills within the expected time period. He is knowledgeable about current developments in his field.

### Quantity

Greg averages approximately 38 hours per week on court, which also includes the Junior Ladder League on Saturday evenings. He works closely with the Director of the Junior Development Program to insure proper levels in the clinics, an appropriate curriculum and an evaluation for the Junior Program as a whole. He is directly responsible for the Junior Ladder League which is a unique and profitable program providing playing time for the juniors on Saturday evenings. It is a program that has continued to grow and Greg adds to the excitement of it by incorporating weekly themes, such as rap music, videotaping and poems. He also posts the results and standings of the players. This is a "one-of-a- kind program" and is extremely popular with the participants. Greg demonstrates a commitment to juniors in the JDP and his ranked players. It is clear that he has a passion for this niche.

### Communications

Greg takes longer than is satisfactory to respond to voice and e-mail messages and, too often he misses deadlines. Members have expressed frustration over the fact that they cannot reach him, sometime after several messages.

## SUMMARY:

Greg, you are key to the success of the Junior Tennis Program. Your hard work and commitment towards the program have provided the consistency and energy the program requires. While you have supported the changes made this year in the curriculum, groupings and evaluations, the fun and the energy level that you provide on court has not suffered. The Junior Ladder League has grown in numbers over the past few months, directly due to your extra effort, commitment, tracking and through your fun and innovative videos, rap music, poems. The kids love the trophies that you provide. This year I would like to see you spend time promoting the summer camp during the winter months, as you will not be with the club during the summer. David Hugues and I look forward to your continuing support and together we will make this junior

program the best in Westchester County. Department policy is to request time away from the club in writing, a minimum of two weeks in advance, so coverage can be arranged for your teaching and the Junior Ladder League. This way we can ensure that the department has adequate staffing.

Thank you for a great year, all your hard work and effort.

## PLANS FOR IMPROVEMENT:

1.  Maintain a minimum threshold of 40 hours per week during the indoor season.

2.  Meet budgeted numbers for Junior Ladder League (see attached)

3.  Return all messages and voice mail messages with in 24 hours.

4.  Submit all requests for time off in writing a minimum of two weeks prior and arrange subs as necessary.

5.  Become a Certified PTR or USPTA Tennis Professional by May 2007 ~~June 13th~~

6.  Assist David Hugues and the tennis department in getting campers for the summer camp by taking an active role in promoting the camp. This would involve distributing flyers, talking to parents and children and making telephone calls. I would like to see a high percentage of the juniors you touch attend one week of camp.

## EMPLOYEE COMMENTS




### Employee Acknowledgment
I have reviewed this document and discussed the contents with my manager. My signature means that I have been advised of my performance status and does not necessarily imply that I agree with the evaluation.

_____

*Employee Signature*                    *Date*


## REVIEWER COMMENTS



_____

*Reviewer Signature*                    *Date*

# EXHIBIT L



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Jul 1 04:17:41 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout   Please logout when you are done to release system resources allocated for you.

Start   List At: [        ]   OR   Jump   to record: [        ]   **Record 30 out of 30**

TARR Status   ASSIGN Status   TDR   TTAB Status   *( Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **CLUB FIT** |
| **Goods and Services** | IC 041. US 100 107. G & S: HEALTH CLUB, FITNESS CLUB AND GYMNASIUM SERVICES. FIRST USE: 19890523. FIRST USE IN COMMERCE: 19890523 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 26.11.27 - Oblongs not used as carriers for words, letters or designs |
| **Serial Number** | 73827202 |
| **Filing Date** | September 25, 1989 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 10, 1990 |
| **Registration Number** | 1605028 |
| **Registration Date** | July 3, 1990 |
| **Owner** | (REGISTRANT) JEFFERSON VALLEY RACQUET CLUB, INC. DBA CLUB FIT CORPORATION NEW YORK 132 HAWKES AVENUE OSSINING NEW YORK 10562-200 |
| **Attorney of Record** | THOMAS C. HUGHES |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CLUB" APART FROM THE MARK AS SHOWN |

| Description of Mark | THE LINING SHOWN IN THE DRAWING IS A FEATURE OF THE MARK AND IS NOT INTENDED TO INDICATE COLOR. |
|---|---|
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Affidavit Text | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20001115. |
| Renewal | 1ST RENEWAL 20001115 |
| Live/Dead Indicator | LIVE |

TESS HOME   NEW USER   STRUCTURED   FREE FORM   BROWSE DICT   SEARCH OG   TOP   HELP   PREV LIST   CURR LIST   NEXT LIST   FIRST DOC   PREV DOC   NEXT DOC   LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

# Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Jul 1 04:17:41 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [      ]  OR  Jump  to record: [      ]  **Record 29 out of 30**

TARR Status  ASSIGN Status  TDR  TTAB Status  *( Use the "Back" button of the Internet Browser to return to TESS)*

## Typed Drawing

| | |
|---|---|
| **Word Mark** | CLUB FIT |
| **Goods and Services** | IC 041. US 100 107. G & S: HEALTH CLUB, FITNESS CLUB AND GYMNASIUM SERVICES. FIRST USE: 19890523. FIRST USE IN COMMERCE: 19890523 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73827203 |
| **Filing Date** | September 25, 1989 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | April 24, 1990 |
| **Registration Number** | 1606808 |
| **Registration Date** | July 17, 1990 |
| **Owner** | (REGISTRANT) JEFFERSON VALLEY RACQUET CLUB, INC. DBA CLUB FIT CORPORATION NEW YORK 132 HAWKES AVENUE OSSINING NEW YORK 10562 |
| **Attorney of Record** | THOMAS C. HUGHES |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CLUB" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20001113. |
| **Renewal** | 1ST RENEWAL 20001113 |
| **Live/Dead Indicator** | LIVE |

# EXHIBIT M





BRIARCLIFF

HOME    SCHEDULES    BOOK ON-LINE    ABOUT US

CONTACT    MEMBER LOGIN

ABOUT US Hours
General Info
Club Personnel
Directions
The Wave
What's Happening
Job Postings
Club Chatter

# Club Personnel

| Name | Position | Phone | Email |
|---|---|---|---|
| Beth Beck | **President** | (914) 250-2743 | bethbeck@clubfit.com |
| Ellen Koelsch | **Vice President, Marketing/Membership** | (914) 250-2787 | ekoelsch@clubfit.com |
| Bill Beck | **Vice President, Club Operations** | (914) 250-2744 | bbeck@clubfit.com |
| Teresa Kress | **Assistant to the Vice President, Club Operations** | (914) 250-2759 | tkress@clubfit.com |
| Terry Lanza | **Director of Member & Community Events** | (914) 250-2797 | tlanza@clubfit.com |
| Diane McCarthy | **Creative Services Manager** | (914) 250-2795 | dmccarthy@clubfit.com |
| Glenn McCarthy | **Service Training Specialist** | (914) 945-9056 | gmccarthy@clubfit.com |
| Pam Rotando | **Member Services Director** | (914) 250-2779 | protando@clubfit.com |
| James Stropoli | **Executive Director of Sales** | (914) 250- | jstropoli@clubfit.com |

| | | | |
|---|---|---|---|
| | &Technology | 2747 | |
| Mari Taglianetti | **Human Resources Director** | (914) 250-2788 | mtaglianetti@clubfit.com |
| Glenn Van Heemst | **Controller** | (914) 250-2720 | gvanheemst@clubfit.com |
| Diane Pulleyblank | **General Manager** | (914) 250-2796 | dpulleyblank@clubfit.com |
| Erol Mamudoski | **Assistant General Manager** | (914) 250-2789 | emamudoski@clubfit.com |
| Joe Chavez | **Assistant General Manager/Reception Manager** | (914) 762-3444 x2119 | jchavez@clubfit.com |
| Chris Lofaro | **Business Board Advertising Manager** | (914) 762-3444 x2250 | clofaro@clubfit.com |
| Miguel Ortiz | **Club Representative** | (914) 250-2766 | mortiz@clubfit.com |
| Frank Fitts | **Club Representative** | (914) 250-2765 | ffitts@clubfit.com |
| Giovanni DePasquale | **Club Representative** | (914) 250-2767 | gdepasquale@clubfit.com |
| Paul Bushell | **Maintenance Manager** | (914) 250-2763 | pbushell@clubfit.com |
| Shelley Lerea | **Member Services Manager** | (914) 250-2784 | slerea@clubfit.com |
| Scott Karsen | **Aquatics Director** | (914) 250-2769 | skarsen@clubfit.com |
| Patrick Filacchione | **Café Manager** | (914) 250-2782 | pfilacchione@clubfit.com |
| Barbara Cullen | **Fitness Director** | (914) 250-2761 | bcullen@clubfit.com |
| Karen Cornetz | **Group Exercise Manager** | (914) 250-2762 | kcornetz@clubfit.com |
| Denise Harrington | **Massage Manager** | (914) 762-3444 x2246 | dharrington@clubfit.com |
| Melissa Lawrence | **Nursery Manager/Party Coordinator** | (914) 250-2764 | mlawrence@clubfit.com |
| Meryle Richman, PT, MS, CST | **Director, Physical Therapy** | (914) 762-2222 x2157 | meryle@ptrehab.com |
| Gail Bell | **Racquetball** | (914) 250- | gbell@clubfit.com |

| | | 2752 | |
|---|---|---|---|
| Joe DaRonco | **Sports Director** | (914) 250-2783 | jdaronco@clubfit.com |
| Steven Gervickas | **Tennis Director** | (914) 250-2786 | sgervickas@clubfit.com |
| Heath Hoover | **Assistant Tennis Director, Adults** | (914) 762-3444 x2166 | hhoover@clubfit.com |
| David Hugues | **Assistant Tennis Director, Juniors** | (914) 762-3444 x2240 | dhugues@clubfit.com |



JEFFERSON VALLEY

HOME    SCHEDULES    BOOK ON-LINE    ABOUT US

CONTACT    MEMBER LOGIN

ABOUT US <u>Hours</u>
<u>General Info</u>
<u>Club Personnel</u>
<u>Directions</u>
<u>The Wave</u>
<u>What's Happening</u>
<u>Employment</u>
<u>Club Chatter</u>

# Club Personnel

| Name | Position | Phone | Email |
|---|---|---|---|
| Beth Beck | **President** | (914) 250-2743 | <u>bethbeck@clubfit.com</u> |
| Ellen Koelsch | **Vice President, Marketing/Membership** | (914) 250-2787 | <u>ekoelsch@clubfit.com</u> |
| Bill Beck | **Vice President, Club Operations** | (914) 250-2744 | <u>bbeck@clubfit.com</u> |
| Teresa Kress | **Assistant to the Vice President, Club Operations** | (914) 250-2759 | <u>tkress@clubfit.com</u> |
| Terry Lanza | **Director of Member & Community Events** | (914) 250-2797 | <u>tlanza@clubfit.com</u> |
| Diane McCarthy | **Creative Services Manager** | (914) 250-2795 | <u>dmccarthy@clubfit.com</u> |
| Glenn McCarthy | **Service Training Specialist** | (914) 945-9056 | <u>gmccarthy@clubfit.com</u> |
| Pam Rotando | **Member Services Director** | (914) 250-2779 | <u>protando@clubfit.com</u> |
| James Stropoli | **Executive Director of Sales** | (914) 250- | <u>jstropoli@clubfit.com</u> |

|  | &Technology | 2747 |  |
| Mari Taglianetti | **Human Resources Director** | (914) 250-2788 | mtaglianetti@clubfit.com |
| Glenn Van Heemst | **Controller** | (914) 250-2720 | gvanheemst@clubfit.com |
| Mark Cuatt | **General Manager** | (914) 250-2745 | mcuatt@clubfit.com |
| Donna Berta | **Assistant General Manager** | (914) 250-2746 | dberta@clubfit.com |
| Jodi Coitino | **Club Representative** | (914) 250-2721 | jcoitino@clubfit.com |
| Laura Crowe | **Sales Manager** | (914) 250-2722 | lcrowe@clubfit.com |
| Alice Daly | **Reception Manager** | (914) 250-2736 | adaly@clubfit.com |
| Dawn DosSantos | **Club Representative** | (914) 250-2724 | ddossantos@clubfit.com |
| Michael McGivney | **Club Representative** | (914) 250-2723 | mmcgivney@clubfit.com |
| Bonnie Natale | **Business Board Advertising Manager** | (914) 245-4040 x1251 | bnatale@clubfit.com |
| Marianne Shirley | **Member Services Manager** | (914) 250-2734 | mshirley@clubfit.com |
| Joanna Zottoli | **Assistant to the General Manager** | (914) 250-7720 | jzottoli@clubfit.com |
| Revita Page | **Aquatics Director** | (914) 250-2735 | rpage@clubfit.com |
|  | **Cafe Manager** | (914) 250-2729 | - |
| Paul LeStage | **Operations Coordinator** | (914) 245-4040 x1174 | plestage@clubfit.com |
| Lynne Welling | **Fitness Director** | (914) 250-2732 | lwelling@clubfit.com |
| Syd Berman | **Group Exercise Manager** | (914) 250-2733 | sberman@clubfit.com |
| Danette Pasciuti | **Wellness Coordinator** | (914) 245-4040 x1200 | dpasciuti@clubfit.com |
| Kathie Braia | **Nursery Supervisor** | (914) 245-4040 | kbraia@clubfit.com |

| | | x1151 | |
|---|---|---|---|
| Meryle Richman, PT, MS, CST | **Director, Physical Therapy** | (914) 245-8807 x2157 | meryle@ptrehab.com |
| Gail Bell | **Racquetball** | (914) 250-2752 | gbell@clubfit.com |
| Mary Ann Helf | **Sports Director** | (914) 250-2731 | mhelf@clubfit.com |
| Harold (Hal) Toussaint | **Tennis Director** | (914) 250-2737 | htoussaint@clubfit.com |



For more than 30 years, **Club Fit** has offered comprehensive health and fitness facilities and programming to enhance quality of life and physical well being for community members of all ages.

Founded in 1973, **Club Fit** presently operates clubs in Briarcliff and Jefferson Valley serving more than 10,000 members and their guests.



A Look at
**Personal Training**

**Club Fit:** *"Exceptional staff promoting a healthy lifestyle in a unique environment."*

    

*More than just a gym.*

PAGE 8



For more than 30 years, **Club Fit** has offered comprehensive health and fitness facilities and programming to enhance quality of life and physical well being for community members of all ages.

Founded in 1973, **Club Fit** presently operates clubs in Briarcliff and Jefferson Valley serving more than 10,000 members and their guests.

**Club Fit:** *Exceptional staff promoting a healthy lifestyle in a unique environment.* *







*More than just a gym.*

# EXHIBIT N

# Employee
## Handbook



club fit



# Statement of Purpose

"To offer the community comprehensive health and fitness facilities and services to enhance the quality of life and physical well-being of club members."

*Action:* "To offer

*Target:* the community

*Measurable Results*: comprehensive health and fitness facilities and services

*Vision*: enhance the quality of life and physical well-being of club members."

**We welcome you as a staff member of Club Fit. We are glad to have you with us and hope that you will enjoy working with us.**

This handbook is designed as a working guide for our employees. It is intended to provide you with general information on policies, practices and work rules which are of direct interest to all our employees. This handbook does not purport to delineate policy for every circumstance, which might occur. **This handbook nor the policies contained does not provide for an employment contract or contain any limit on Club Fit's right to terminate an employee at any time for any reason or for no reason.** Nor does it authorize any managerial or supervisory personnel to provide any employee with an employment contract or special arrangement concerning terms or conditions of employment unless the contract or arrangement is in writing and signed by the President.

Read this handbook carefully and keep it for future use. If you have questions concerning any of the policies, you should speak with your manager or the Club General Manager.

# Staff Service Expectations

*Before you serve our members remember...*
*you are on — be happy*

- Greet the members by name, say hello, smile and make eye contact.

- Show respect for the Club, its members and staff. Show respect for yourself... dress, look and act professionally. Be ready to work when you walk in the door.

- Make the members feel comfortable, "Be the first to approach."

- Make the members feel important, "It's all about them."

- Take the member's phone number when follow-up is necessary. Club response time is 24 hours.

- Job knowledge — know your stuff.

**Remember: Find a way to make it happen!!**

2

3



## The Wave is a Staff Recognition Initiative

Each person that works for Club Fit is part of the Wave. We are all creative, thoughtful, responsible individuals that enhance the quality of life and physical well being of every member and staff we encounter each day. We serve society in a special way by offering the community the best comprehensive health and fitness facilities and services available in Westchester. The Wave is a staff recognition initiative that is sweeping the Club. The ripple effect promotes an atmosphere of staff appreciation. Positive staff experiences impact the member experience.

**Our unique member service continues to make Club Fit a magnet for members.**

## Hiring

Promotions and Transfers—Our staff is our greatest asset. Each staff member's contribution is important. We endeavor to provide training and a work environment to help each staff member become the best they can. We promote from within whenever possible when filling all vacancies. However, Club Fit reserves its right to promote or fill a vacant position with any candidate it chooses.

## Employment
Categories of Employment

### A. Full-Time
A full time employee works 35 hours or more per week and is normally scheduled to work 40 hours week. A full time employee may be paid on a salaried or hourly basis. A full time employee is eligible to the full benefits package offered by Club Fit. (See Employee Benefits, page 14 and Club Benefits, page 21).

### B. Part-Time
A part time employee is anyone who is regularly scheduled to work less than 35 hours and more than 15 hours per week.

A part time employee is eligible to certain benefits including pro-rated vacation benefits. (See Employee Benefits, page 14 and Club Benefits, page 21).

### C. Seasonal
A seasonal employee is employed for a period of no more than four months. Seasonal employees are not eligible to receive Employee benefits with two exceptions: they are paid double time if they work one of the Club holidays and they receive Club membership during their employment.

### D. Independent Contractors
From time to time the Club engages instructors and other personnel who render services on a per diem basis and are paid as an independent contractor. Independent contractors are not considered employees of the Club. (Club Benefits apply).

### E. Instructional Employees
Instructional employees are paid per session and are not eligible for vacation benefits. (Club Benefits apply).

## Orientation

During the orientation period each employee will go through job orientation and also a group Club orientation.

Employees are required to complete an orientation period of 90 calendar days. During this period, the employee will learn about the Club, his or her job responsibilities, and the employee's relationship with his or her co-workers and the standard of performance expected. These are provided in a formal job orientation and a formal Club orientation.

All employees must attend orientation within the first 90 days (three months) of employment...this is a job requirement! If a new employee does not meet this requirement at the time of their first performance evaluation (three months) the department manager can exercise their right to dismiss the employee. This description of your orientation does not modify the Club's status of an, "at will" employer.

## Payday

The payroll will cover a defined two-week work period. The defined work period for each Club location is as follows: The workweek begins on Wednesday morning at the beginning of the day shift and continues fourteen days until the end of the night shift on a Tuesday night. Paychecks will be distributed by Wednesday noon of the following week. Deductions will be made for Federal Income Tax, New York State Income Tax, Social Security and New York State Disability. Each employee will receive an itemization of these deductions for each check.

## Recording Time

The Federal Wage and Hour Law requires that we maintain a complete and accurate record of each employee's hours worked. We keep this record through the use of an electronic time clock. You will be paid only for the time that is correctly recorded and approved by your manager. Falsifying time is cause for immediate termination of employment. Employees are required to "punch in/out" when arriving and leaving their shift. There will be a $10 service charge for all lost paychecks that need to be replaced.

### Overtime

Employees who are eligible to receive overtime pay may not work more than 40 hours in a workweek without obtaining prior approval from their manager. Working overtime without prior authorization will lead to disciplinary action, up to and including termination of employment. It is the employee's responsibility to maintain accurate records for all hours worked.

## Performance Procedures

All employees will receive a formal performance evaluation from their Department Manager three months and nine months from start date and every 12 months thereafter. Upon completion of the employee's three month orientation period, his or her Manager will evaluate and discuss the employee's performance with the employee. An evaluation form will be completed and signed by both the employee and the Manager.

## Increases in Salary

Employees' salary increases are based on formal performance evaluations.

During the first 12 months of employment, front line employees are eligible for two six-month pay reviews. Department managers are eligible for a pay review in the first three to six months. Thereafter, pay reviews are done within a 12-18 month time period.

## Grievance Procedures

Your most important working relationship is between you and your direct manager. Normally, questions and problems can be solved at this level and every effort should be made to do so.

However, occasional problems may arise which cannot be solved in this manner. In these cases, you have the right to discuss the matter privately at the next higher level of supervision.

## Termination of Employment

Termination is separation from employment. It may be voluntary as in the case of resignation or it may be involuntary as in discharge.

### Resignation

If an employee in a managerial position reaches a decision to resign, he/she should submit a letter of resignation to his/her manager. Professional business practice is to provide notice of at least one month of his or her impending resignation and all other employee's to give two weeks notice of his or her impending resignation.

In its discretion, Club Fit may terminate your employment immediately upon notice of your resignation and pay you in lieu of the notice period of not more than ten working days.

## Termination by Club

Club Fit reserves the right to terminate any employee at any time for any reason. Nothing contained in this section or this handbook requires Club Fit to have "just cause" before terminating any employee. Non-disciplinary reasons for termination include but are not limited to:

- Reduction in work force
- Discontinuance of a position
- Displacement because of technological innovation
- Closing of the Club or an office in which an employee is employed

In addition to non-disciplinary reasons for termination, an employee may be terminated for failure to adequately perform his or her duties. Club Fit will attempt to inform the employee in advance, either verbally or in writing, of his or her deficiencies and may provide the employee with an opportunity to bring his or her performance up to standard. However, the failure to provide advance notice or the opportunity to correct deficiencies in no way limits Club Fit's right to immediately terminate any employee.

In addition to the above-cited reasons for termination, an employee may also be terminated for misconduct. Club Fit cannot create a list that addresses all situations; the standards that follow are basically common sense rules. No conduct, which is immoral, unsafe, unethical or illegal, will be tolerated. Moreover, Club Fit retains the right to deal with each individual situation, as it deems appropriate. All employees, however, are expected to follow these rules. Violations will subject employees to discipline, up to and including termination.

### Standards of Conduct
The following is prohibited:

- Theft or attempted theft of any property belonging to Club Fit, a member or guest of Club Fit, or a fellow employee
- Fighting on Club Fit property
- Failure to fully and truthfully disclose all facts related to Workers' Compensation and insurance claims
- Insubordination
- Immoral or indecent conduct
- Malicious gossip or derogatory comments about a Club Fit employee or member of Club Fit
- Deliberate destruction of, or damage to, Club Fit property
- Use of alcohol or illegal drugs while on Club Fit property or reporting to work under the influence of drugs or alcohol
- Violation of fire or safety rules
- Carrying or possessing a weapon of any kind on Club Fit property
- Gambling or soliciting gambling

- Smoking in Club Fit
- Disorderly conduct
- Unauthorized disclosure, use of or theft of Club Fit's confidential information
- Use of profane, abusive or threatening language
- Excessive lateness or absenteeism
- Violating the solicitation and distribution policy
- Creating hazardous or unsafe conditions
- Repeated failure to complete job assignments
- Repeated failure to perform work up to standards
- Violation of any Club Fit policy

The above is only a partial list of examples of unacceptable behavior. Club Fit at all times reserves the right to modify the rules of conduct and/or to discharge employees at any time for any reason or no reason.

## Pay at Termination

Final pay will be provided on employee's last day of work, providing sufficient notice has been given. Employees who do not give sufficient notice will receive their final pay at the "next convenient payroll" as provided by State Law.

Employees who are terminated by the Club will be given final pay on day of discharge, including vacation pay due.

All keys, I.D. cards, or other Club property must be returned at this time. If not, the final paycheck will be delayed.

Employees will be reimbursed for all unused vacation days and earned holidays. Such reimbursement does NOT include any other benefits such as unused sick time.

## Employment Standards

### Employment of Minors
Club Fit requires an employee to be at least 18 years of age. In special circumstances, an employee may be hired under 18 years of age with permission from the General Manager. Working papers are required.

### Employment of Immigrants
Club Fit requires documentation of legal work status for all employees who are not United States citizens.

## Principles of Professional Conduct

Club Fit employees are expected to adhere to the following principles of professional conduct as they interact with members and fellow staff:

- Provide equal and fair treatment to all
- Maintain the confidentiality of all personal member information
- Staff should only give advice within their scope of knowledge and job description
- Provide a safe environment free from discrimination and harassment. Conduct that is offensive, of a sexual nature or adversely impacts working conditions is prohibited

## Employee Policy Regarding Medical Recommendations

Employees cannot give medical advice or recommendations of any kind for any reason. This relates to not only medical conditions, illness and injuries, but to alternative medicine including vitamins, remedies, and supplements of any kind. Members and guests seeking advice of this nature must be advised to seek assistance from their personal physician.

## Discrimination and Harassment-free Workplace Policy

Club Fit's policy is to provide a work environment that is free from discrimination or harassment. In keeping with this policy, the Club is committed to maintaining a workplace free of discrimination or harassment based upon race, color, creed, religion, sex, age, disability, national origin, marital status, sexual orientation, or any other characteristic protected by federal, state or local law. Such conduct is prohibited in any form at the workplace, at work-related functions, or outside of work if it affects the workplace. This policy applies to all Club employees, clients, customers, guests, vendors and persons doing business with the Club.

### Conduct Prohibited

Sexual harassment, one form of prohibited harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when submission to such conduct is made a term or condition, either explicitly or implicitly, of an individual's employment:

- Submission to or rejection of such conduct by an individual is used as a factor in decisions affecting that individual's employment
- Such conduct has the purpose or effect of substantially interfering with an individual's work performance or creates an intimidating, hostile, or offensive working environment

Examples of other conduct prohibited by this policy include, but are not limited to:

- Derogatory, explicit or degrading comments about an individual's appearance or membership in a protected group
- Unwelcome sexual flirtation, advances or propositions
- The display of sexually suggestive pictures or objects in any workplace location including transmission or display via computer
- Displaying cartoons or telling jokes that have the purpose or effect of stereotyping, demeaning or making fun of any protected group
- Any offensive or abusive physical conduct related to an individual's membership in a protected group

These are only examples; conduct may constitute harassment even if not specifically described in the list above.

### Responsibility

If you believe that you are being harassed, you should:

- Tell the harasser that his or her actions are not welcome and they must stop. Immediately report the incident to your immediate supervisor or any management representative with whom you feel comfortable, and the Human Resource Director, Mari Taglianetti, at Club Fit Briarcliff, 762-3444, ext. 124 or mtaglianetti@clubfit.com
- Employees, who become aware of an incident of harassment, whether by witnessing the incident or being told of it, must report it to Mari Taglianetti, their immediate supervisor or any management representative with whom they feel comfortable
- If additional incidents occur, they should be reported to one of the above resources

### Resolution

Any reported incidents of discrimination or harassment will be investigated. Complaints and actions taken to resolve complaints will be handled as confidentially as possible, given the Club's obligation to investigate and act upon reports of such harassment.

Retaliation of any kind against an employee who reports a suspected incident of discrimination or harassment is prohibited. An employee who violates this policy or retaliates against an employee will be subject to disciplinary action up to and including termination.

## Personal Appearance

All personnel who work at the Club must maintain a suitable appearance. Appearance and perception play a key role in member service. Our goal is that all staff is dressed in professional attire that is appropriate to our business at all times. All employees must practice good grooming and personal hygiene to convey a neat, clean and professional image. Staff uniforms are required and should be worn at all times by employees while on duty in the following departments: Aquatics, Cafe, Fitness, Maintenance, Massage, Nursery, Reception, and Sports. **If an employee's employment ends before the 90-day orientation period, a uniform fee will be deducted from their last paycheck.** Management reserves the right to make "suitable appearance" a condition of employment. Nametags are required to be worn by all staff personnel while on duty.

## Absence

If employees cannot work his/her shift, he/she is expected to find their own replacement for that time. A written note should be left for his/her manager letting them know of the change. Employee's immediate manager should be notified of all absences.

## Use of Facilities

Please use discretion as to when you schedule your workout, and try to schedule your workouts when the Club is not crowded. You may play tennis or racquetball. Fees apply for tennis reservation time. We are always happy to have you bring in a friend for a game of tennis or racquetball. In order to acquaint your family and friends with the Club, your free guest passes are provided in your New Employee Packet. Otherwise standard guest fees apply.

## Personal Status Change

It is important to notify your manager and the office of any changes in address, telephone number, number of dependents, or marital status. The personnel files are an official record. This information, kept up to date, is essential.

## Solicitation Prohibited

Employees and outsiders will not sell, solicit or distribute any product, project, raffle, lottery, or literature in work areas during working time in the Club.

## Cell-Free Zone Policy

Cell Phones are prohibited in the Group Exercise Studios, Wellness Studios and Fitness Center. Cell Phones may be used in the locker rooms, corridors, pool deck, lobby and lounge area.

## Telephone

Please do not use the phone provided for personal telephone calls, and ask your friends and family not to call you at work except in an emergency. The Club phones are for the purpose of conducting business of the Club and for that reason you are urged to refrain from using them for personal use. Pay phones are available for personal use during off hours.

## E-Mail, Computer and Telephone Use Policy

Club Fit uses telephones, computers and other equipment together with an e-mail system, for efficient and accurate communication among employees, clients and other businesses.

Please be aware that use of all such equipment, including computers and the e-mail system, as well as use of the Internet, is for Club Fit business purposes only. The use of computers, the Internet and e-mail system for personal communications or for non-job related functions is strictly prohibited, as is the display or transmission of sexually explicit images or messages, ethnic slurs, racial epithets or anything which could be construed as harassment or disparaging of others. Employees shall not use unauthorized codes or passwords to access others' files. All codes, passwords or other means of electronic access are the property of Club Fit.

EMPLOYEES SHOULD NOT EXPECT THAT ANY COMMUNICATIONS OR OTHER USE OF TELEPHONES, COMPUTERS AND OTHER EQUIPMENT OR THE E-MAIL SYSTEM IS PRIVATE.

In order to determine that all equipment and systems are being used for legitimate Club Fit business purposes, Club Fit reserves the right to enter, search and/or monitor e-mails and use of the internet system, all files and/or transmissions maintained, sent or received by computer, and telephone and other electronic equipment. Please be aware that "erased" e-mail messages and computer entries

may still be accessible and should not be considered private. Although updates for computer virus detection are downloaded daily, the employee should not open "mail" from an unknown source. Employees who violate this policy are subject to discipline, up to and including termination.

## Employee Parking

All employees are required to park in the parking lot designated for employees at all times. This includes when you are coming to the Club for your own leisure activities. Our members do not know when you are working and when you are off duty. Employees should not be taking prime parking spaces. If you have packages to unload, move your car after unloading.

## Visitors

Visitors for employees are welcome during the employee's lunch or dinner break. They must check in at the front desk and wait in the lobby for the employee.

## Employee Benefits

**Vacation Pay**
All club employees working 15 hours or more are eligible for paid vacation benefits except for the following:

- Seasonal employees
- Independent contractors
- Instructional employees

Vacation time accrues from the employee's first day of work and must be taken in the year accrued. No vacation benefits can be taken until an employee has completed his orientation period. For computing part-time employee vacation benefits, vacation pay is computed on the basis of the employee's average weekly hours. Unused vacation time not taken in the year accrued will be forfeited.
Vacation benefits for length of service accrue as follows:

- 10 days per calendar year
- 15 days per calendar year after 5 years
- 20 days per calendar year after 10 years

Length of service vacation benefits begin to accrue from the date an employee is eligible for paid vacation benefits.

## Holiday Pay

Realizing that the Club operates almost every day of the year, 18 hours a day, an effort is made to schedule employees for holiday work on as equitable a basis as possible. Salaried and hourly full time employees receive a day off for the following six holidays:

New Year's Day
Memorial Day
Independence Day
Labor Day
Thanksgiving Day
Christmas Day

All hourly employees will be paid double time for hours worked on a holiday. (This includes Easter in addition to our six posted holidays.) Part-time employees do not receive pay for a holiday unless they work.

A salaried employee who is required to work on a holiday may substitute another day for the holiday.

## Sick Pay

All full time employees will be granted a total of five paid sick days during the calendar year (January-December). This benefit will begin after the employee has completed his orientation period. Sick days may not be taken as vacation days and are not carried over from year to year. Unused sick days are not paid out at the time of termination of employment.

## Medical Insurance

We offer a choice of the following Oxford Plans:

1. Low Plan (In Oxford Network with Dental)
2. High Plan (Out of Oxford Network with Dental)

Our medical plans are available to all employees working 30+ hours per week. An employee must enroll on or by the first day of the month following the date of hire or date of change in qualification status. If enrollment is not completed during ths period the employee must wait until the next open enrollment period. The annual open enrollment period is the month of November. The effective date for November enrollments is November 1st. Enrollment paperwork for this effective

date will be accepted beginning October 1 through the last business day in the month of November. There are two qualifying events that would allow an employee to enroll prior to open enrollment: 1) the loss of coverage from another insurer, or 2) an increase in work hours that would meet the minimum for health plan coverage. The employee's share of premiums is paid on pre-tax dollars before income taxes are deducted. Club Fit will pay $195 toward the individual's monthly charge or $220 toward family coverage per month. Family coverage is available at an additional charge. Premiums are collected via payroll deduction one month in advance. A new enrollee should expect necessary adjustments to catch up on their deductions. In the event of termination, a covered employee may choose to retain coverage up to 18 months by applying to the carrier. The full cost of the premium will be billed directly to the individual.

## 401K Savings Plan

Club Fit offers a 401K Savings Plan. This benefit is offered in order to provide a savings opportunity to build funds towards retirement (or other long term goals) at the same time reducing your taxable income. You may contribute 1 - 20% of your salary up to the maximum allowed by law. Club Fit will match your contribution with 50 cents for each dollar you elect to save each pay period, up to 4% of your salary. You decide how to invest your account — you have ten investment options to choose from. Bisys Plan Services is our plan administrator. Merrill Lynch is our investment broker. Enrollment dates are January and July of each year.

An employee is eligible if he or she:
- Works a minimum of 1,000 hours a year (Approximately 20 hours a week)
- Is 21 years or older
- Has been employed by Club Fit for one year or more

## Flexible Spending Plan Accounts

The Flexible Spending Plan options offer each employee an opportunity to customize their benefit package by sheltering pre-tax dollars to cover: Unreimbursed Medical Expenses, Day Care Costs, and Health Insurance Premiums. When money is set aside before the government deducts taxes from the paychecks, the savings is 28% - 40% (or more depending on specific tax brackets) on expenses that you will incur during the year.

These plans are available to all employees at hire date with the exception that those employees who work less than 30 hours per week are required to have one year of continuous service with our clubs before they are eligible to participate in the Unreimbursed Health component of our plan. Independent contractors (1099 staff) are not eligible for the Flexible Spending Plan benefits. The plan year is from January - December. Open enrollment is in November prior to the plan year.

If you need further information, contact the Employee Benefits Coordinator, at extension 132 in the Administrative office.

## Jury Duty

Club policy is to pay up to $40 a day for shifts missed due to Jury Duty during the first three days. Full time employees will be paid up to two weeks of jury service. You must submit a jury attendance record issued by the Commissioner of Jurors to qualify. Extended jury service should be discussed with your Manager. When the employee is excused from Jury Duty during the course of a working day it is the responsibility of the employee to return to work.

## Life Insurance

A whole life insurance benefit is available to staff that work more than 20 hours a week. The life insurance is a voluntary employee-funded benefit. This will give you an opportunity to purchase life insurance coverage for yourself and your family as well as providing the convenience of payroll deductions. This benefit is a permanent life insurance that will not replace or change any existing coverage you already have and it accumulates a tax-deferred cash value. Farmers and Traders underwrite this program, which offers all eligible employees the opportunity to obtain life insurance protection at reduced rates. In addition to the reduced rates, the voluntary program offers a number of features. The plan is flexible: you may determine your own benefit or premium. Since Club Fit is offering this voluntary program to our employees, the insurance provider will provide coverage to eligible employees, their spouses and children with limited medical screening. Representatives will be available periodically for enrollment. See your department manager for dates and times.

## Discounted Physicians & Hospital Benefits

Discount programs are available to supplement your current medical insurance coverage. The programs provide a discount card to help you receive the health services you need at a reduced rate on products and services up to 60% off standard retail rates. The programs are not a substitute for a health insurance plan. AmeraHealthPro offers discounts for pharmacy, doctor, dentist, optometrist or other health care providers. Enrollment is completed directly by the employee at the website www.healthprocard.com or by calling 1-800-308-0374. Use "CF0407" as the "Enrollment Code." Westchester County residents may participate in the WestchesterRX discount pharmacy card. Enroll on website www.Westchestergov.com.

## Worker's Compensation

Claims should be filed within 24 hours of injury.

# Disability Benefits

If you are unable to work because of a non-job related injury or illness including pregnancy, you may be entitled to disability payments. Form DB-450 should be filed within 30 days from the first day of your injury.

# Family and Medical Leave Policy

Employees are eligible to take up to 12 weeks of unpaid family/medical leave within any 12 month period and be restored to the same or an equivalent position upon return from leave provided they (1) have worked for the Club for at least 12 months, and for at least 1,250 hours in the last 12 months; and (2) are employed at a work site that has 50 or more employees within a 75 mile radius. (The above 12-month period is calculated from an employee's first anniversary date or from an employee's last Family and Medical Leave.)

## Reasons For Leave

An employee may take family/medical leave for any of the following reasons: (1) birth of a child and in order to care for such child; (2) the placement of a child with an employee for adoption or foster care and in order to care for the newly placed child; (3) to care for a spouse, child or parent ("covered relation") with a serious health condition; or (4) because of an employee's serious health condition which renders the employee unable to perform an essential function of his/her position. Leave because of reasons "1" or "2" must be completed within the 12 month period beginning on the date of birth or placement. In addition, spouses employed by the Club who request leave because of reasons "1" or "2" or to care for an ill employee's parent with a serious health condition may only take a combined total of 12 weeks leave during any 12 month period.

## Notice Of Leave

If an employee's need for family/medical leave is foreseeable, the employee must give the Club at least 30 days prior written notice. If this is not possible, the employee must at least give notice as soon as practicable (within one to two business days of learning of the need for leave). Additionally, if you are planning a medical treatment you must consult with the General Manager first regarding the dates of such treatment. Failure to provide such notice may be grounds for delay of leave. Where the need for leave is not foreseeable, you are expected to notify the Club within one or two business days of learning of your need for leave, except in extraordinary circumstances. The Club has Request for Family/Medical Leave forms available from the Administrative office.

## Medical Certification

If an employee is requesting leave because of his/her or a covered relation's serious health condition, the employee and the relevant health care provider must supply appropriate medical certification. Medical Certification Form is available from the Administrative office. When you request leave, the Club will notify you of the requirement for medical certification and when it is due (at least 15 days after you request leave). If you provide at least 30 days notice of medical leave, you should also provide the medical certification before leave begins. Failure to provide requested medical certification in a timely manner might result in denial of leave until it is provided.

The Club, at its expense, may require an examination by a second health care provider designated by the Club, if it reasonably doubts the medical certification you initially provided. If the second health care provider's opinion conflicts with the original medical certification, the Club, at its expense, may require a third, mutually agreeable, health care provider to conduct an examination and provide a final and binding opinion. The Club may require subsequent medical re-certification. Failure to provide requested certification within 15 days, if such is practicable may result in delay of further leave until it is provided.

## Reporting While On Leave

If you take leave because of your own serious health condition or to care for a covered relation, you must contact the Club on the first and third Tuesday of each month regarding the status of your health condition and your intention to return to work. In addition, you must give notice as soon as practicable (within two business days if feasible) if the dates of leave change or are extended or initially were unknown.

## Leave is Unpaid

Family/medical leave is unpaid although an employee may be eligible for short or long-term disability payments and/or workers' compensation benefits under these insurance plans. If an employee requests leave because of a birth, adoption or foster care placement of a child, any accrued paid vacation or personal leave first will be substituted for unpaid family/medical leave. If an employee requests leave because of his/her own serious health condition, or to care for a covered relation with a serious health condition, any accrued paid vacation, personal leave or sick leave first will be substituted for any unpaid family/medical leave. The substitution of paid leave time for unpaid leave time does not extend the 12-week leave period. Further, in no case can the substitution of paid leave time for unpaid leave time result in receipt of more than 100% of salary.

## Medical and Other Benefits

During an approved family/medical leave, the Club will maintain health benefits, as if the employee continues to be actively employed. If paid leave is substituted for unpaid family/medical leave, the Club will deduct the employee's portion of the health plan premium as a regular payroll deduction. Health benefits are paid one

month in advance. If leave is unpaid, the employee must pay his/her portion of the premium. If your payment is more than 30 days late, we will send you a letter to this effect. If we do not receive your co-payment within 15 days of this letter, your health care coverage will be terminated. If an employee elects not to return to work for at least 30 calendar days at the end of the leave period, he or she will be required to reimburse the Club for the cost of the health benefit premiums paid by the Club for maintaining coverage during the unpaid leave, unless the employee cannot return to work because of a serious health condition or other circumstances beyond his/her control. All other benefits with payroll deductions including life insurance, 401K, and FSA must have payment arrangements made prior to the leave.

**Intermittent and Reduced Schedule Leave**
Leave because of a serious health condition may be taken intermittently (in separate blocks of time due to a single health condition) or on a reduced leave schedule (reducing the usual number of hours you work per workweek or workday) if medically necessary. If leave is unpaid, the Club will reduce the employee's salary based on the amount of time actually worked. In addition, while an employee is on an intermittent or reduced schedule leave, the Club may temporarily transfer the employee to an available alternative position that better accommodates recurring leave and which has equivalent pay and benefits.

**Returning From Leave**
If an employee takes leave because of his/her own serious health condition (except if an employee is taking intermittent leave), he/she is required to provide medical certification that the employee is fit to resume work. Return to Work Medical Certification Forms are available from the Administrative office. Employees failing to provide the Return to Work Medical Certification Form will not be permitted to resume work until it is provided.

**No Work While On Leave**
The taking of another job while on Family/Medical Leave or any other authorized leave of absence is grounds for immediate termination.

**State and Local Family and Medical Leave Law and Other Club Policies**
Where State or local family and medical leave laws offer more protections or benefits to employees, the protections or benefits provided by such laws will apply. For further information contact the Controller at Club Fit Jefferson Valley, 245-4040, ext. 135 or gvanheemst@clubfit.com.

# Club Benefits

The following Club benefits are offered to all Club Fit personnel (full time and part-time employees, seasonal employees, independent contractors and instructional employees):

> **Staff Discount** - Staff card *must* be shown
> Club Pro Shop: 20% discount
> Body Works: 20% aerobic wear; 10% on all other merchandise
> Burke Heat: 10%
> Hair Liberation: 10% - retail and services Monday thru Sunday
> The Haven Beauty Spa: 20% - Monday and Tuesday only
> Massage: $10 off Monday thru Friday, 11:00 A.M. - 3:00 P.M.
> (Except holidays)

**Staff Membership Privileges**
Staff are entitled to a premium membership. Staff Spouse and children under 21 years of age may be added to the staff membership at the applicable additional family rate with no enrollment fee. Staff families paying for a membership receive a complimentary premium upgrade. Member rates for programs and lessons apply to staff, their spouse and their children under age 21 regardless of their membership status.

**Anniversary Date**
A $50 Gift Card is issued to each staff member at the beginning of the month of his/her annual anniversary and may be used for any Club purchase. Two guest passes are also included.

**Cafe**
Cafe privileges include free coffee, soda and tea for staff only while on shift.

**CPR**
For information about classes contact the Human Resource Department at Club Fit Briarcliff, 762-3444, ext. 265.

**Free Banking**
Bank of New York provides free checking and other group banking incentives to
Club Fit staff.  Stop by the nearest branch to sign-up:

    JV - 1336 East Main Street, Shrub Oak, NY 914-528-3535
    BR - 1100 Pleasantville Road, Briarcliff Manor, NY 914-762-7130

**House Charges**
Any staff member may establish a house charge by providing credit information
(personal credit card or checking account) to member services before any house
charging takes place.

**Nursery/Energy Center Priviliges**
Staff may take advantage of the Nursery and Energy Center during regularly
scheduled shift hours free of charge.  Maximum stay in the Nursery is two hours
and the Energy Center is three hours. We want to maintain a business-like atmos-
phere.  Please do not bring your children to the Club unless they are enrolled in
a program or are under supervision in our Nursery/Energy Center.

**Referral Program**
All staff members receive a $25 check for new members they refer to the Club.
When referring a new staff person to employment at Club Fit, a $50 rebate will be
payable after the employee has worked at the Club for a three month period.

02/06

# EXHIBIT O

# Y⚬U are the Club

Club Fit Staff Newsletter, February 2003 Edition

### Statement of Purpose

To offer the community comprehensive health and fitness facilities and services to enhance the quality of life and physical well-being of club members.

# CLUB FIT HITS THE BIG 30!

## Where do we go from here?

Trends come and trends go, but in the end what survives are things of quality, value and purpose. Club Fit has thrived the last 30 years because its members have found these attributes in the club's facilities, programs, and most of all, you, our caring and committed staff. As we head into our next 30 years we will continue to evolve by listening to our members. "It is their input and literally their sweat that has made Club Fit what it is today," explains **Bill Beck**. "And it's our members, and our ability to listen and provide for their needs, that will make it even better in the next 30 years."



Briarcliff, 1986 (left)

Jefferson Valley, 1982 (above)

## What Makes Club Fit Great?

"I love working with a core of people who believe in our industry and our mission of customer service. This is not fluff. We believe this, and that's why we're so successful." -- 20-year staffer *Patty Irwin*, BRC Aquatics Director.

"Twenty years ago, everything was just coming together. The expansion has been amazing, and the staff is wonderful. I love dancing, and while it is hard work, it doesn't feel like hard work." 20-year staffer *Amanda Epstein,* JV Dance & Funk Instructor.

## Club Fit Alum - Where Are They Now?

We tracked down former Club Fit staff and asked them what made Club Fit a special place to work, and here's what they had to say:

"Wow! Thirty years, that's awesome! I hope some day I'll be able to do the same. Club Fit was more than a place to work; my co-workers were family and members my friends."
-- *Tom Sheehan*, Club Fit BRC Reception Manager & Membership Representative, 1995 - 1998; currently, owner of Sunrise Health & Racquet, Massapequa, NY.

"Happy Anniversary, Club Fit! This is the place where I learned so much about the fitness industry, and had my career nurtured. Club Fit is so much more than a health club. It's a community that I will be a part of forever."
-- *Stacey Lei Krauss*, Club Fit White Plains Group Exercise Manager, 1993 - 1997; currently, Schwinn Academy Athlete, NYC

"Congratulations, Club Fit for 30 years of perfection! Your dedication to excellence and continuous effort to help people live better, healthier lives is commendable."
-- *Mark Hurrell*, Club Fit Financial Manager, 1994 - 2002; currently, Accounting Supervisor, AAA Southern New England, RI.

## Making the Club Fit Commercial



Club Fit's exciting new television commercial airs through February on CNN, MSG, ESPN, Food Network, Lifetime, HGTV and Channel 12 Westchester. So, whether you are watching basketball, the news, movies or just plain channel surfing, look for Club Fit's eye-catching and motivating commercial.

A special thank you to the following staff from Club Fit's group exercise departments for making the commercial a success: **Karen Cornetz**, *Briarcliff Group Exercise Manager;* **John Markiewicz**, *Briarcliff;* **Jami Bird**, *Briarcliff & Jefferson Valley;* **Anne Marie Galler**, *Briarcliff;* **Amanda Epstein**, *Jefferson Valley;* **Cindy Tina**, *Briarcliff;* **Whitney Chapman**, *Briarcliff;* **Percy Thomas**, *Briarcliff;* **John Macznyski**, *Briarcliff;* and **Liz Mallon**, *Briarcliff & Jefferson Valley.*



## Service Award

**Mary Frances Lyons**
*JV Massage*



Mary Frances is one of Club Fit Jefferson Valley's outstanding massage therapists. She has provided exceptional service and ideas within the massage department. Praises of her excellent massages, pleasant smile and warm personality are often heard throughout the corridors. Mary Frances is the new massage manager at Jefferson Valley, and is truly an asset to our club.

**Jeff Chavez**
*BR Reception*



Jeff has been a member of the Club Fit reception team since March 2001. His infectious smile and calm demeanor have made him a favorite of staff and members alike. Jeff is a junior at Pace University and we look forward to having him grace our desk until he graduates.

## Spotlight on Staff



Thank you to the following staff who participated in our November Staff Roundtable Discussion Groups about issues within their departments:

*Jefferson Valley* -- **Conny Kozminski, Louis DiRosa, Stefanie Fucci, Nella Culver-Gordineer, Ellen Koelsch, Mary Frances Lyons, Dolores Orchanian, Maura Schneider, Bernice Strauber and David Swope.**

*Briarcliff* - **Beth Beck, Bill Beck, Andre Bezzubikoff, Martin Creary, Matt Kaplan, Andrea Klekman, Rosa Martone, Judy Massaro, Janet Mercado, Linda Mitrano, Nancy Scherer and Debi Simpson.**

## Job Postings

Check out our web site to find the latest job opportunities at Club Fit. Just go to www.clubfit.com and click on "job opportunities" to see the latest job postings.

Don't forget about Club Fit's **$50 Staff Referrals!** If you refer a new staff member who is employed by Club Fit for at least three months, you get a $50 bonus!

### Holiday Hours

**Easter**
*Sunday, April 20*
JV/BRC: 7am-1pm

**Memorial Day**
*Monday, May 26*
JV/BRC: 7am-6pm

## Welcome New Staff

*Jefferson Valley Café Team:*
**Christina Seaboldt,** *Manager*
&
**Michael Turco,** *Café Chef*

Christina was promoted from head chef to Café Manager in December and looks forward to utilizing her multiple degrees from the Institute of Culinary Education. Michael comes to Club Fit from Blue Cross/Blue Shield in Yorktown Heights where he was the Chef Manager of the Sodexho Marriott run corporate cafeteria. Michael designed and implemented a 30-day cycle menu that included traditional American cuisine along with ethnic specialties, an extensive omelette station, fresh soups, salads and finger foods.

**Glenn Van Heemst**
*Club Fit Financial Manager*

Glenn comes to Club Fit from the Dutchess County Workforce Investment Board where he worked as a fiscal manager. Glenn is also a devoted runner and sports enthusiast.

**Nelson Fernandez**
*BR Membership Representative*

Club Fit welcomes Nelson back to the Briarcliff Sales department. He left us to work in the big city but has come back and rejoined our team.

**Brad Westrick**
*JV Aquatics Director*

Brad comes to Club Fit from the United States Military Academy at West Point where he was the assistant varsity swim coach. Brad was an Army medic responsible for a platoon of 54 men, and in addition to his aquatic accreditations, Brad is a certified Emergency Medical Technician (EMT).

---

**Briarcliff Spin & Yoga Instructor Claudia Teicher Spotlighted in *New York Times* "Westchester Section"**



Claudia, a former kindergarten teacher at Todd Elementary School in Briarcliff, teaches postures, stretches and breathing exercises at her former school through a grant from the Briarcliff Manor Educational Foundation.

# EXHIBIT P

# [PROPOSED] COURT AUTHORIZED NOTICE

# CONCERNING CLUB FIT

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

## If you were employed by Club Fit between May 15, 2002 and the present, please read this notice.

*This is a court authorized notice. This is not a solicitation from a lawyer.*

● Former workers have sued Club Fit, claiming that Club Fit failed to pay appropriate overtime and other wages required by law.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **ASK TO BE INCLUDED** | If you choose to be included in this collective action, you keep the possibility of getting money or benefits that may result from a trial or a settlement in this lawsuit, but you give up any rights to separately sue Club Fit about the same legal claims in this lawsuit.<br><br>**If you wish to be included, you must complete the form at the end of this Notice and submit it by [60 DAYS FROM DATE OF NOTICE]** |
| **DO NOTHING** | By doing nothing, you will not be included in this action. This means that you give up the possibility of getting money or benefits that may result from a trial or settlement in this lawsuit if those bringing the lawsuit are successful. You keep any rights to sue Club Fit separately about the same legal claims in this lawsuit, but the statute of limitations period on your claim continues to run. You may choose not to sue Club Fit at all. |

● Your options are explained in this notice. To ask to be included in the lawsuit, you must act before _____ (insert 60 days from date notice is sent out) _____ .

**This notice contains information that affects your rights. Please read it carefully.**

**Questions?  Contact Christopher Marlborough at Faruqi & Faruqi, LLP at 212-983-9330 or cmarlborough@faruqilaw.com.   All inquiries are confidential.**

### 1.    Why did I get this notice?

You are getting this notice because Club Fit's records show that you previously worked for Club Fit.  A lawsuit has been brought against Club Fit claiming that its workers, including tennis, fitness, aquatics, wellness and café staff were not paid all wages required by law, including overtime wages.  The Court is trying to determine which employees wish to participate in the case.  The Honorable Barbara S. Jones, United States District Court Judge in the Southern District of New York, is overseeing this collective action.  The lawsuit is known as *Bazzini v. Club Fit Management, Inc., et al*, 08-cv-4530.

### 2.    What is the lawsuit about?

This lawsuit is about whether Club Fit should have paid its workers overtime for each hour worked per workweek in excess of forty hours, and other wage and hour violations.

### 3.    What is a collective action and who is involved?

In a collective action lawsuit, one or more persons who have similar claims can bring a lawsuit that includes others who have similar claims.  All Club Fit employees who decide to participate in the case are part of a "Collective Action."  The former employees who brought this lawsuit – and all of the Collective Action Members – are called the Plaintiffs. The companies that they have sued, Club Fit Management, Inc. and Jefferson Valley Racquet Club, Inc. as well as David Swope, Beth Beck and Bill Beck, are called the Defendants.  One Court resolves the issues for everyone who decides to join the case.

### 4.    What is Club Fit's position?

Club Fit maintains that they did nothing wrong.

### 5.    Has the Court decided who is right?

The Court has not decided whether Club Fit or the Plaintiffs are correct.  By establishing the collective action and issuing the Notice, the Court is not suggesting that the Plaintiffs will win or lose the case.

### 6.    What are the Plaintiffs asking for?

Plaintiffs are seeking to change Club Fit's pay practices and policies and to recover unpaid wages including overtime wages.  Plaintiffs are also seeking recovery of attorneys' fees and costs.

### 7.   Can I join this lawsuit?

To be eligible to join this lawsuit, you must have been employed by Club Fit after [Date to be determined by the Court] and have no ownership interest in Club Fit.

### 8.   I'm not sure if I am included.

If you are still not sure whether you are included, you can get free help by calling or writing the lawyers in this case, at the phone number or address listed below.

### 9.   What happens if I do nothing at all?

If you choose not to join this lawsuit, you will not be affected by any ruling, judgment or settlement rendered in this case, whether favorable or unfavorable.  You will not be entitled to share any amounts recovered by Plaintiffs as part of this lawsuit.  You also will be free to independently retain your own counsel and file your own individual lawsuit, subject to any defenses that might be asserted.  You should be aware that your federal wage and hour claims are limited by a two- or three-year statute of limitations, and your state law claims are limited by a six-year statute of limitations.  Delay in joining this action, or proceeding separately, may result in some or all of your claims expiring as a matter of law.  If you proceed separately, you may also have to pay for your own lawyer.

**Questions?  Contact Christopher Marlborough at Faruqi & Faruqi, LLP at 212-983-9330 or cmarlborough@faruqilaw.com.   All inquiries are confidential.**

### 10.  What happens if I join the lawsuit?

If you choose to join this lawsuit, you will be bound by any ruling, settlement or judgment, whether favorable or unfavorable.  You will also share in any proceeds from a settlement or judgment.   By joining this lawsuit, you designate the named Plaintiff(s) as your representative(s), and to the fullest extent possible, to make decisions on your behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit.  These decisions and agreements made and entered into will be binding if you join the lawsuit.  While this suit is pending, you may be asked to provide documents or information relating to your employment, or otherwise participate in written and/or oral discovery proceedings and/or a trial of this matter.

### 11.  Can Club Fit and/or my current employer retaliate against me if I join the lawsuit?

It is a violation of federal law for Club Fit or any of its related entities to fire, discipline, or in any manner discriminate or retaliate against you for taking part in this case.  If you believe that you have been penalized, discriminated against, or disciplined in any way as a result of your receiving this notification, considering whether to join this lawsuit, or actually joining this lawsuit, you may contact Plaintiffs' lawyers or any other lawyers of your choosing.

### 12.  How do I ask the Court to include me in the case?

Enclosed is a form called "Consent to Sue."  If you choose to join this lawsuit, it is extremely important that you read, sign and promptly return the Consent to Sue form.  An addressed and postage paid envelope is enclosed for your convenience.  Should the enclosed envelope be lost or misplaced, the Consent to Sue form must be sent to:

**Club Fit Lawsuit**
**Faruqi & Faruqi, LLP**
**369 Lexington Avenue, 10th Floor**
**New York, New York 10017**

The signed Consent to Sue form must be postmarked by _____ [60 days from mailing of this Notice]_____.  **If your signed Consent to Sue form is not postmarked by [60 days from mailing of the Notice], you will not participate in this lawsuit, you will not share in a monetary recovery, and you will not be bound by any settlement or judgment.**

### 13.  Who will be my lawyer?

If you choose to join this lawsuit you will be represented by Adam Gonnelli of Faruqi & Faruqi, LLP, 369 Lexington Avenue, 10th Floor, New York, New York 10017, agonnelli@faruqilaw.com.  You can learn about the firm at www.faruqilaw.com

4

**Questions?  Contact Christopher Marlborough at Faruqi & Faruqi, LLP at 212-983-9330 or cmarlborough@faruqilaw.com.   All inquiries are confidential.**

| **14.  Should I get my own lawyer?** |
|---|

You do not need to hire you own lawyer because Plaintiffs' Counsel will be working on your behalf. But if you want your own lawyer, you may have to pay that lawyer and will have to file your own separate lawsuit.

| **15.  How will the lawyers be paid?** |
|---|

The named Plaintiffs have entered into a contingency fee agreement with Plaintiffs' counsel, which means that if you do not win, there will be no attorneys' fees or costs chargeable to you. Under the fee agreement, in the event there is a recovery, Plaintiffs' counsel will receive a percentage of any settlement obtained or money judgment entered in favor of all members of the class.  The Court may also be asked to determine the amount of fees.  The fees may be part of a settlement obtained or money judgment entered in favor of Plaintiffs, or may be ordered by the Court to be separately paid by Club Fit, or may be a combination of the two.

**Questions?  Contact Christopher Marlborough at Faruqi & Faruqi, LLP at 212-983-9330 or cmarlborough@faruqilaw.com.   All inquiries are confidential.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
TODD BAZZINI, GREGORY LEONARCZYK,
NOAH ALLEN, and JOHN MARKIEWICZ,       Civil Action No. 1:08-cv-4530
Individually and on Behalf of All Other
Persons Similarly Situated,

   Plaintiffs,

 -against-

CLUB FIT MANAGEMENT, INC.,  JEFFERSON
VALLEY RACQUET CLUB, INC.,  DAVID
SWOPE, BETH BECK  and BILL BECK,


     Defendants.
--------------------------------------------------------------X

### CONSENT TO SUE FORM

I am a current or former employee of the defendants in *Bazzini et al. v. Club Fit Management, Inc.*, Case No. 1:08-cv-4530, pending in the United States District Court for the Southern District of New York. As such, I hereby consent to join and be a part of the case as a plaintiff.

I hereby authorize the law firm of Faruqi & Faruqi, LLP to represent me in this action.


I understand that if my claim is successful, the fees of my lawyers will be paid by a percentage of any settlement obtained or monetary judgment entered in favor of the plaintiffs, and/or by any attorneys' fees which the defendants may pay pursuant to any settlement or court order.  If my claim is not successful, I understand that I will not owe my lawyers any fees.

_____    Signature

_____    Name (Please print)


_____    Address

_____    City  State Zip

_____    Date

# EXHIBIT Q

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF STATE

# If you are a woman and are or were employed by MNO, a class action lawsuit may affect your rights.

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- Female employees have sued MNO, Inc., alleging discrimination against women.

- The Court has allowed the lawsuit to be a class action on behalf of all women employed by MNO as account executives at any time from June 6, 1996, through July 15, 2003.

- The Court has not decided whether MNO did anything wrong.  There is no money available now, and no guarantee there will be.  However, your legal rights are affected, and you have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| **DO NOTHING** | **Stay in this lawsuit.  Await the outcome.  Give up certain rights.**<br><br>By doing nothing, you keep the possibility of getting money or benefits that may come from a trial or a settlement.  But, you give up any rights to sue MNO separately about the same legal claims in this lawsuit. |
| **ASK TO BE EXCLUDED** | **Get out of this lawsuit.  Get no benefits from it.  Keep rights.**<br><br>If you ask to be excluded and money or benefits are later awarded, you won't share in those.  But, you keep any rights to sue MNO separately about the same legal claims in this lawsuit. |

- Your options are explained in this notice.  To ask to be excluded, you must act before **Month 00, 0000.**

- Lawyers must prove the claims against MNO at a trial set to start Month 00, 0000.  If money or benefits are obtained from MNO, you will be notified about how to ask for a share.

- **Any questions? Read on and visit www.mnoclassaction.com.**

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**................................................ PAGE 3
1. Why did I get this notice?
2. What is this lawsuit about?
3. What is a class action and who is involved?
4. Why is this lawsuit a class action?

**THE CLAIMS IN THE LAWSUIT**.................................... PAGE 4
5. What does the lawsuit complain about?
6. How does MNO answer?
7. Has the Court decided who is right?
8. What are the Plaintiffs asking for?
9. Is there any money available now?

**WHO IS IN THE CLASS**.............................................. PAGE 5
10. Am I part of this Class?
11. Which current and former employees are included?
12. Are any women who worked at MNO not included in the Class?
13. I'm still not sure if I am included.

**YOUR RIGHTS AND OPTIONS**...................................... PAGE 6
14. What happens if I do nothing at all?
15. Why would I ask to be excluded?
16. How do I ask the Court to exclude me from the Class?

**THE LAWYERS REPRESENTING YOU**............................... PAGE 7
17. Do I have a lawyer in this case?
18. Should I get my own lawyer?
19. How will the lawyers be paid?

**THE TRIAL**........................................................... PAGE 7
20. How and when will the Court decide who is right?
21. Do I have to come to the trial?
22. Will I get money after the trial?

**GETTING MORE INFORMATION**.................................... PAGE 8
23. Are more details available?

# BASIC INFORMATION

### 1. Why did I get this notice?

MNO's records show that you currently work, or previously worked, for MNO, Inc. This notice explains that the Court has allowed, or "certified," a class action lawsuit that may affect you. You have legal rights and options that you may exercise before the Court holds a trial. The trial is to decide whether the claims being made against MNO, on your behalf, are correct. Judge Jane Jones of the United States District Court for the District of State is overseeing this class action. The lawsuit is known as *Johnson, et al., v. MNO, Inc.*, Civil Action No. CV-00-1234.

### 2. What is this lawsuit about?

This lawsuit is about whether MNO discriminated against female account executives based on their gender, by making it harder for them to advance in their careers. More information about federal laws prohibiting job discrimination can be found at the website of the U.S. Equal Employment Opportunity Commission, www.eeoc.gov.

### 3. What is a class action and who is involved?

In a class action lawsuit, one or more people called "Class Representatives" (in this case Mary Johnson and Louise Smith) sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." The women who sued—and all the Class Members like them—are called the Plaintiffs. The company they sued (in this case MNO, Inc.) is called the Defendant. One court resolves the issues for everyone in the Class—except for those people who choose to exclude themselves from the Class.

### 4. Why is this lawsuit a class action?

The Court decided that this lawsuit can be a class action and move towards a trial because it meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that:

- There are more than 90,000 women who are or were employed by MNO as account executives;
- There are legal questions and facts that are common to each of them;
- Mary Johnson's and Louise Smith's claims are typical of the claims of the rest of the Class;
- Ms. Johnson, Ms. Smith, and the lawyers representing the Class will fairly and adequately represent the Class' interests;
- The common legal questions and facts are more important than questions that affect only individuals; and
- This class action will be more efficient than having many individual lawsuits.

More information about why the Court is allowing this lawsuit to be a class action is in the Court's Order Certifying the Class, which is available at www.mnoclassaction.com.

# THE CLAIMS IN THE LAWSUIT

### 5. What does the lawsuit complain about?

In the lawsuit, the Plaintiffs say that MNO discriminated against women account executives. They claim that these women received less pay than men in similar jobs. They also say that MNO made promotions to account supervisor positions more difficult for women because they had to demonstrate greater achievements than men. You can read the Plaintiffs' Class Action Complaint at www.mnoclassaction.com.

### 6. How does MNO answer?

MNO denies that it did anything wrong and says that opportunities for hiring and promotion are equally available to women and men. MNO says that its policies are clear and that they neither allow, nor condone, discrimination against women. MNO says that women advanced as often as men, and that greater achievements are not necessary for women to qualify for a promotion. MNO's Answer to the Complaint is also at the website.

### 7. Has the Court decided who is right?

The Court hasn't decided whether MNO or the Plaintiffs are correct. By establishing the Class and issuing this Notice, the Court is not suggesting that the Plaintiffs will win or lose this case. The Plaintiffs must prove their claims at a trial starting Month 00, 0000. (See "The Trial" below on page 7.)

### 8. What are the Plaintiffs asking for?

The Plaintiffs are asking for changes in MNO's policies to ensure that women are treated fairly and equally in the workplace. They want MNO's policies to say that discrimination based on gender is banned. The Plaintiffs also want lost wages and money for emotional distress for Class Members.

### 9. Is there any money available now?

No money or benefits are available now because the Court has not yet decided whether MNO did anything wrong, and the two sides have not settled the case. There is no guarantee that money or benefits ever will be obtained. If they are, you will be notified about how to ask for a share.

# WHO IS IN THE CLASS

You need to decide whether you are affected by this lawsuit.

## 10. Am I part of this Class?

Judge Jones decided that all women who were employed by MNO, Inc. as account executives (full time or part time) at any time from June 6, 1996, through July 15, 2003, are Class Members. She also specified that "temp" employees and independent contractors are *not* part of the class. See question 12 below.

## 11. Which current and former employees are included?

Former employees are in the Class as long as they were employed by MNO any time from June 6, 1996, through July 15, 2003. If you were hired after July 15, 2003—even if you are a current employee—you are not included. In other words, these women are included:

- **Women account executives currently employed by MNO who were hired on or before July 15, 2003.**
- **Women account executives no longer employed by MNO but who were employed by MNO any time from June 6, 1996, through July 15, 2003.**

## 12. Are any women who worked at MNO not included in the Class?

If you *worked at* MNO during the time period in question 10, but you were not directly *employed by* MNO, you are NOT a Class Member. Think about whether you were paid for your work at MNO by a temporary staffing service or an independent contractor for MNO. If so, you were not employed by MNO. If you were later hired by MNO after a temporary period, you may be part of the Class as long as MNO hired you on or before July 15, 2003.

## 13. I'm still not sure if I am included.

If you are still not sure whether you are included, you can get free help at www.mnoclassaction.com, or by calling or writing to the lawyers in this case, at the phone number or address listed in question 23.

# YOUR RIGHTS AND OPTIONS

You have to decide whether to stay in the Class or ask to be excluded before the trial, and you have to decide this now.

## 14. What happens if I do nothing at all?

You don't have to do anything now if you want to keep the possibility of getting money or benefits from this lawsuit. By doing nothing you are staying in the Class. If you stay in and the Plaintiffs obtain money or benefits, either as a result of the trial or a settlement, you will be notified about how to apply for a share (or how to ask to be excluded from any settlement). Keep in mind that if you do nothing now, regardless of whether the Plaintiffs win or lose the trial, you will not be able to sue, or continue to sue, MNO—as part of any other lawsuit—about the same legal claims that are the subject of this lawsuit. This means that if you do nothing, you may only be able to sue for gender discrimination that occurred *before* June 6, 1996 or occurs *after* July 15, 2003 only. You will also be legally bound by all of the Orders the Court issues and judgments the Court makes in this class action.

## 15. Why would I ask to be excluded?

If you already have your own gender discrimination lawsuit against MNO and want to continue with it, you need to ask to be excluded from the Class. If you exclude yourself from the Class—which also means to remove yourself from the Class, and is sometimes called "opting-out" of the Class—you won't get any money or benefits from this lawsuit even if the Plaintiffs obtain them as a result of the trial or from any settlement (that may or may not be reached) between MNO and the Plaintiffs. However, you may then be able to sue or continue to sue MNO for employment discrimination that occurred or occurs at any time. If you exclude yourself, you will not be legally bound by the Court's judgments in this class action.

If you start your own lawsuit against MNO after you exclude yourself, you'll have to hire and pay your own lawyer for that lawsuit, and you'll have to prove your claims. If you do exclude yourself so you can start or continue your own lawsuit against MNO, you should talk to your own lawyer soon, because your claims may be subject to a statute of limitations.

Note that if you exclude yourself from this lawsuit and you are currently employed by MNO, any changes made to MNO's policies about the treatment of women would still apply to you.

## 16. How do I ask the Court to exclude me from the Class?

To ask to be excluded, you must send an "Exclusion Request" in the form of a letter sent by mail, stating that you want to be excluded from *Johnson v. MNO*. Be sure to include your name and address, and sign the letter. You must mail your Exclusion Request postmarked by **Month 00, 0000**, to: Johnson v. MNO Exclusions, P.O. Box 0000, City, ST 00000-0000. You may also get an Exclusion Request form at the website, www.mnoclassaction.com.

# THE LAWYERS REPRESENTING YOU

| 17. Do I have a lawyer in this case? |
| --- |

The Court decided that the law firms of Lawfirm One, LLP, of City, ST, and Lawfirm Two, P.C., of City, ST, are qualified to represent you and all Class Members. Together the law firms are called "Class Counsel." They are experienced in handling similar cases against other employers. More information about these law firms, their practices, and their lawyers' experience is available at www.lawfirmone.com and www.lawfirmtwo.com.

| 18. Should I get my own lawyer? |
| --- |

You do not need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want your own lawyer, you will have to pay that lawyer. For example, you can ask him or her to appear in Court for you if you want someone other than Class Counsel to speak for you.

| 19. How will the lawyers be paid? |
| --- |

If Class Counsel get money or benefits for the Class, they may ask the Court for fees and expenses. You won't have to pay these fees and expenses. If the Court grants Class Counsels' request, the fees and expenses would be either deducted from any money obtained for the Class or paid separately by MNO.

# THE TRIAL

The Court has scheduled a trial to decide who is right in this case.

| 20. How and when will the Court decide who is right? |
| --- |

As long as the case isn't resolved by a settlement or otherwise, Class Counsel will have to prove the Plaintiffs' claims at a trial. The trial is set to start on Tuesday, Month 00, 0000, in the United States District Court for the District of State, 100 Court Street, City, State, in Courtroom 1. During the trial, a Jury or the Judge will hear all of the evidence to help them reach a decision about whether the Plaintiffs or Defendant are right about the claims in the lawsuit. There is no guarantee that the Plaintiffs will win, or that they will get any money for the Class.

| 21. Do I have to come to the trial? |
| --- |

You do not need to attend the trial. Class Counsel will present the case for the Plaintiffs, and MNO will present the defenses. You or your own lawyer are welcome to come at your own expense.

**22. Will I get money after the trial?**

If the Plaintiffs obtain money or benefits as a result of the trial or a settlement, you will be notified about how to participate.  We do not know how long this will take.

# GETTING MORE INFORMATION

**23. Are more details available?**

Visit the website, www.mnoclassaction.com, where you will find the Court's Order Certifying the Class, the Complaint that the Plaintiffs submitted, the Defendant's Answer to the Complaint, as well as an Exclusion Request form.  You may also speak to one of the lawyers by calling 1-000-000-0000, or by writing to: MNO Class Action, P.O. Box 000, City, ST 00000-0000.

DATE:  MONTH 00, 0000.