**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
TODD BAZZINI, GREGORY LEONARCZYK,          :
NOAH ALLEN, and JOHN MARKIEWICZ,           :
Individually and on behalf of all other persons   :    Civil Action No. 08 Civ 4530 (BSJ)(MHD)
similarly situated,                        :
                                           :
                  Plaintiffs,              :    Document Electronically Filed
                                           :
        -against-                          :
                                           :
CLUB FIT MANAGEMENT, INC., JEFFERSON       :
VALLEY RACQUET CLUB, INC., DAVID           :
SWOPE, BETH BECK and BILL BECK,            :
                                           :
                  Defendants.              :
------------------------------------------------------------x
```

---

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

---

PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
973-274-3200
212-736-8185

Attorneys for Defendants
*Club Fit Management, Inc., Jefferson Valley*
*Racquet Club, Inc., David Swope, Beth Beck,*
*and Bill Beck*

On The Brief

Fredric C. Leffler
Mark A. Saloman, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ..................................................................................... 1

COUNTERSTATEMENT OF FACTS........................................................................... 3

    The Plaintiffs Received Club Fit's Written Overtime Policy. ....................................................4

    The Plaintiffs Did Not Work "Off-The-Clock." ......................................................................4

    As A Former Member Of Management, Noah Allen Is Dissimilar To The Other
    Tennis Employees. .....................................................................................................................7

        *Allen's Promotion To Tennis Manager*............................................................... 7

        *Allen's Removal From Management Due To His Underperformance* ............................... 8

    Gregory Leonarczyk Is Dissimilar To The Other Tennis Employees Because He Also
    Held A Variety Of Different Positions. ......................................................................................9

    Erin Crandall Is Dissimilar To The Other Tennis Employees Because She Held
    Different Positions Inside And Outside Of The Tennis Department. ..........................................9

    The Plaintiffs Are Not Substantially Similar To Any Other Club Fit Employees...................10

ARGUMENT.................................................................................................................... 13

  I.   COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE
      PLAINTIFFS HAVE FAILED TO DEFINE THE CLASS OF CLUB FIT
      EMPLOYEES WHOM THEY PURPORT TO REPRESENT .........................................13

  II.  COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE
      PLAINTIFFS HAVE NOT DEMONSTRATED THAT OTHERS HAVE A
      SUFFICIENT INTEREST IN THIS ACTION..................................................................15

III. COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE
PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE
SIMILARLY SITUATED TO ANY OTHER CLUB FIT EMPLOYEE. .......................... 16

    A. Plaintiffs' Conclusory Allegations Are Insufficient To Establish That They Are
       Similarly Situated To Every Other Club Fit Employee. ............................................ 17

    B. Plaintiffs' Allegation That Club Fit Misclassified Exempt Employees Is Too
       Individualized For Collective Treatment. .................................................................. 24

    C. Plaintiffs' Allegation That Club Fit Did Not Pay Employees For "Off-The-Clock
       Work Is Inappropriate For Collective Action Treatment. ........................................... 27

IV. PLAINTIFFS' PROPOSED NOTICE IS INADEQUATE .............................................. 29

**CONCLUSION** ..................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Aguirre v. SBC Communs., Inc.*,
   No. H-05-3198, 2006 U.S. Dist. LEXIS 22211  (S.D. Tex. Apr. 11, 2006)......................19, 26

*Barfield v. N.Y. City Health & Hosps. Corp.*, 05 Civ 6319 (JSR), 2005 U.S. Dist. LEXIS
   28884 (S.D.N.Y. Nov. 18, 2005) ............................................................................19

*Barten v. KTK & Assocs.*,
   No. 06 Civ. 1574, 2007 U.S. Dist. LEXIS 54068 (M.D. Fla. July 24. 2007)..........................15

*Blohm + Voss GmbH v. M/V Olympia Explorer*,
   No. 05 Cv. 7753 (BSJ), 2008 WL 2756377 (S.D.N.Y. July 15, 2008) ............................ 16-17

*Briggs v. United States*,
   54 Fed. Cl. 205 (Fed. Cl. 2002) ........................................................................16, 19

*Cash v. Conn Appliances, Inc.*,
   2 F. Supp. 2d 884 (E.D. Tex. 1997)........................................................................15

*D'Anna v. M/A-Com, Inc.*,
   903 F.Supp. 889 (D.Md. 1995) ............................................................................17

*Davis v. Charoen Pokphand*,
   303 F. Supp. 2d 1272 (M.D. Ala. 2004) ..................................................................15

*Davis v. Lenox Hill Hosp.*,
   2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004)..........................................................25

*Diaz v. Electronics Boutique of America, Inc.*,
   No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ....................21, 25, 27

*Dybach v. Florida Dep't of Corrections*,
   942 F.2d 1562 (11th Cir. 1991) ............................................................................15

*England v. New Century Financial Corp.*,
   370 F. Supp. 2d 504 (M.D. La. 2005)......................................................................27

*Evancho v. Sanofi-Aventis*,
   Civil Action No. 07-2266 (MLC), 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 19,
   2007) ..........................................................................................17, 19, 26

*Flores v. Osaka Health Spa, Inc.*,
   No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675 (S.D.N.Y. March 16, 2006)....... 1, 13-14, 21

**Cases** (cont'd)                                                                                    **Page(s)**

*Hampshire v. Port Arthur Ind. Sch. Dist.*,
   No. 06 Civ. 235, 2006 U.S. Dist. LEXIS 88874 (E.D. Tex. Dec. 7, 2006) .............................15

*Hoffmann v. Sbarro, Inc.*,
   982 F. Supp. 249 (S.D.N.Y. 1997) .................................................................................. 16-17

*Jacobsen v. Stop & Shop Supermarket Co.*,
   No. 02 Civ. 5915, 2004 U.S. Dist. LEXIS 17031 (S.D.N.Y. Aug. 30, 2004) ........................17

*Lawrence v. City of Philadelphia, P.A.*,
   2004 WL 945139 (E.D.Pa. April 29, 2004)............................................................................27

*Levinson v. Primedia Inc.*,
   No. 02 Civ. 2222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)......................... 22-23

*Mackenzie v. Kindred Hosps. East, L.L.C.*,
   276 F. Supp. 2d 1211 (M.D. Fla. 2003).................................................................................15

*Mike v. Safeco Ins. Co. of Am.*,
   274 F.Supp.2d 216 (D.Conn. 2003)........................................................................................25

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
   111 F. Supp. 2d 493 (D.N.J. 2000) ..................................................................................17, 26

*Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2,
   2006) ......................................................................................................................................22

*Pfohl v. Farmers Ins. Group*,
   No. 03 Civ. 3080, 2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004) ...................... 15-16

*Prizmic v. Armour, Inc.*,
   No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006).... 13-14, 16, 22

*Reich v. Homier Distrib. Co., Inc.*,
   362 F.Supp.2d 1009 (N.D. Ind. 2005) ...................................................................................26

*Robinson v. Dolgencorp, Inc.*,
   No. 06 Civ. 122, 2006 U.S. Dist. LEXIS 85471 (M.D. Fla. Nov. 13, 2006)...........................15

*Rodgers v. CVS Pharm., Inc.*,
   No. 05 Civ. 770, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006)...........................15

*Scholtisek v. Eldre Corp.*,
   229 F.R.D. 381 (W.D.N.Y. 2005)..........................................................................................17

**Cases** (cont'd)                                                                                    Page(s)

*Severtson v. Phillips Beverage Co.*,
    137 F.R.D. 264 (D. Minn. 1991)..............................................................................16

*Silva v. Gordon Gaming Corp.*,
    2006 U.S. Dist. LEXIS 71847, No. 06-cv-00696 (D.Nev. Sept. 27, 2006)............................24

*Silverman v. SmithKline Beecham*,
    No. 06 Civ. 7272, 2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 15, 2007) ..................15, 24

*Smalls v. Allstate Ins. Co.*,
    396 F.Supp.2d 364 (S.D.N.Y. 2005)........................................................................16

*Smith v. Sovereign Bancorp, Inc.*,
    Civ. No. 03-2420, 2003 WL 22701017 (E.D.Pa. Nov. 13, 2003) ..........................................17

*Tucker v. Labor Leasing, Inc.*,
    872 F. Supp. 941 (M.D. Fla. 1994).........................................................................30

*Tyler v. Payless Shoe Source, Inc.*,
    Case No. 2:05-cv-33-F (WO), 2005 U.S. Dist. LEXIS 31682 (N.D.Ala. Nov. 23,
    2005) ....................................................................................................17

*West v. Border Foods, Inc.*,
    Civ. No. 05-2525 (DWF/RLE), 2006 U.S. Dist. LEXIS 96963 (D.Minn. June 12,
    2006) ....................................................................................................29

*Wombles v. Title Max of Ala., Inc.*,
    No. 03 Civ. 1158, 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005) ..........................15

## PRELIMINARY STATEMENT

Former tennis pros Todd Bazzini, Gregory Leonarczyk, Noah Allen, Ryan O'Neal, Erin Crandall, Adrian Cosma, Leaf O'Neal (the "Tennis Employees") and personal trainer John Markiewicz (collectively referred to as "Plaintiffs") claim that they—and *every* manager, administrator, and employee at *every* level in *every* department of defendant Club Fit—were improperly denied overtime pay and subjected to other violations of the Fair Labor Standards Act ("FLSA"). It is manifestly clear that Plaintiffs' attempt to conditionally certify such a disparate and dissimilar group of current and former Club Fit employees should be denied for three independent and dispositive reasons.

*First*, Plaintiffs have failed to consistently define the class of employees whom they purport to represent. No less than four different groupings of past and present Club Fit employees have been identified in Plaintiffs' Complaint, Motion, and proposed form of notice. This Court recognizes that, where the named plaintiffs are unable to state with precision to whom they contend they are similarly situated, "*it is not possible for the Court to conclude that a collective action certification is warranted.*"[1]

*Second*, Plaintiffs have not met their burden of proving that they are similarly situated to every other past and present Club Fit employee—regardless of title, duties, or pay status—with respect to a single uniform unlawful policy. Indeed, they wholly ignore Club Fit's written overtime policy governing non-exempt employees—even though they supplied this policy to the Court.[2] Club Fit's overtime policy—which allows eligible and approved employees to receive overtime pay—is lawful and was in place during the Plaintiffs' respective employment.

---

[1] *Flores v. Osaka Health Spa, Inc.,* No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675, *3 (S.D.N.Y. March 16, 2006) (emphasis added).

[2] *See* Marlborough Decl., Exhibit N at 5.

Plaintiffs nonetheless side-step Club Fit policy and rely on alleged remarks which they claim were made at unidentified points in time by defendant Bill Beck. In the face of Club Fit's written policy and Mr. Beck's vehement denial of the alleged comments, Plaintiffs are left with nothing more than their own speculation and assumptions to purportedly link them (and their unique, personal circumstances) to every other past and present Club Fit employee. Despite more than 25 years of combined work experience at Club Fit, Plaintiffs' own allegations lack documentary evidence to support their self-serving declarations. They only submit two pay stubs, covering one two-week pay period in 2006 for Leonarczyk and one pay period in 2005 for O'Neal, which, at best, might suggest a possible overtime discrepancy during discrete pay periods for those particular Plaintiffs. It is implicit in the dearth of corroborating evidence that even the named and opt-in Plaintiffs cannot establish their own claims against Club Fit.

Moreover, Club Fit employees work a variety of positions at every level spanning more than a dozen different departments beyond teaching tennis. These personnel handle Club Fit's operations, administration, finance, information technology, human resources, service training, community events, sales, marketing/advertising, creative services, maintenance, member services, Club Fit's restaurant and its nursery, party planning, fitness, aquatics, children's programming, perinatal fitness, physical therapy, and massage therapy. The submission of two pay stubs by two Tennis Employees is insufficient as a matter of law to support Plaintiffs' conclusory allegation that they are similarly situated to Club Fit's diverse workforce.

*Third*, Plaintiffs' contention that Club Fit commonly misclassified past and present Club Fit employees as exempt from overtime under the FLSA is entirely unsupported by even their conclusory Declarations. The law, moreover, is well-settled that potential collective action members are not similarly situated—*even at the notice stage*—where an employee-by-employee

2

analysis must be undertaken to determine their respective classifications. Likewise, Plaintiffs' unspecified claims that Club Fit did not compensate unnamed employees for unidentified work allegedly performed "off-the-clock" are groundless. Again, they fail to supply the most basic information (names, dates, tasks performed, whether they sought payment, the identity of the supervisor(s) who allegedly denied compensation, *etc.*) to support this allegations. Precedent, moreover, is again clear that the fact-intensive inquiry necessary to analyze Plaintiffs' alleged "off-the-clock" claims make those claims too individualized for adjudication through a collective action.

In their Motion, Plaintiffs misrepresent certain relevant facts and omit others in alleging that they are similarly situated to every other Club Fit employee—regardless of title, duties, or status. Contrary to their assertions, Plaintiffs and each of their different proposed collective action groups were not subjected to a common unlawful policy nor do they share similar job duties or compensation status with every other past and present Club Fit employee. Indeed, the Plaintiffs are not even substantially similar to each other. Denial of their Motion is, therefore, warranted.

## COUNTERSTATEMENT OF FACTS

For more than 30 years, Club Fit has offered comprehensive health and fitness facilities and programming to enhance quality of life and physical well being for community members of all ages. Founded in 1973, Club Fit presently operates clubs in Briarcliff Manor and Jefferson Valley, New York. (Beck Decl., ¶¶3-4).

With the exception of Markiewicz, the Tennis Employees are former or current employees of Club Fit's Tennis Department. They held various staff, administrative, and management positions within and outside of the Tennis Department, worked for different

supervisors, and performed different functions during their tenures with Club Fit.  (Beck Decl.,

¶¶5-6).

### The Plaintiffs Received Club Fit's Written Overtime Policy.

For at least the last six years, Club Fit maintained a written overtime policy in its

Employee Handbook, which the Plaintiffs received and could readily access.  (Beck Decl., ¶7;

Marlborough Decl., Exhibit N at 5).  Club Fit's overtime policy states:

> **Overtime**
> Employees who are eligible to receive overtime pay may not work more than 40 hours in
> a workweek without obtaining prior approval from their manager.

(Beck Decl., ¶8; Marlborough Decl., Exh. N at 5).  Club Fit's written overtime policy also states:

"It is the employee's responsibility to maintain accurate records for all hours worked."  The Handbook

also contains Club Fit's policy on recording time, which makes clear that all employees will be

paid for "the time that is correctly recorded and approved by your manager."  (Beck Decl., ¶9;

Marlborough Decl., Exh. N at 5).

When, at times, Tennis Employees or others expressed an interest in working overtime,

they were reminded of this written overtime policy.  Contrary to Plaintiffs' allegation, Club Fit

never maintained a blanket prohibition against paying overtime to eligible employees and Club

Fit managers have granted, and continue to grant, employees permission to work overtime and

pay overtime wages when necessary for specific tasks.  During their employment, moreover,

none of the Plaintiffs complained to management that their various supervisors had violated

these written policies.  (Beck Decl., ¶¶9-12).

### The Plaintiffs Did Not Work "Off-The-Clock."

The Tennis Employees contend that every task they ever performed beyond teaching

tennis—including picking up tennis balls after a lesson—was improper "off-the-clock" work.

4

This arises from their creation of an artificial distinction between their "on court" and "off court" duties. Such a fictitious distinction never existed. (Beck Decl., ¶13).

Indeed, each Tennis Employee acknowledged in signed writings that they were expected to do more than simply teach tennis. Their daily routines included a variety of other tasks including, for example, coordinating some of the financial aspects of the lessons they provided. In that regard, each Tennis Employee was expected to:

- insure that clients paid for lessons;
- make sure prepaid lesson packages are kept up to date and finished within limits;
- collect daily chits for private lessons;
- return phone calls within 24 hours; and
- attend monthly and bimonthly meetings.

(Beck Decl., ¶14 and Exhibit 2). In the normal course of their work, the Tennis Employees also understood that they were expected to:

- wear tennis attire;
- put away tennis balls and leave the courts neat and clean;
- prepare and submit their own payroll information at the end of each month;
- arrange for coverage of all lessons; and
- address managers, staff, and members professionally.

(Beck Decl., ¶15 and Exh. 2). By signing off on their job descriptions, the Tennis Employees acknowledged their "complete understanding of these items." (Beck Decl., ¶¶16-17 and Exh. 2, No. 41).[3]

Markiewicz' job duties and responsibilities as a Personal Trainer also included related administrative tasks which he (like the Tennis Employees) erroneously claims constitute

---

[3] The Tennis Employees fail to identify a day, week, or month within the last three years when they tried to record time for a specific task but were stopped by their supervisor.

uncompensated "off-the-clock" work. In his only example of this, Markiewicz asserts that he was not compensated for his "frequent telephone contact with club members." Yet, his Personal Trainer job description—which he signed—specifically states that he was required to "Provide follow up through use of telephone calls" *as part of his job.* (Beck Decl., ¶¶57-58 and Exhibit 8; Markiewicz Decl., ¶11).[4]

Club Fit further did not require the Tennis Employees to accompany junior players to off-site tournaments. The Tennis Employees' job descriptions contain no reference whatsoever to such a requirement. On occasion, some Club Fit members may have asked a Tennis Employee to accompany them and/or their child to an off-site tournament. Whether a Tennis Employee agreed or refused such a request was strictly between the Tennis Employee and the Club Member. Club Fit played no role in the decision to accept or decline that opportunity. Likewise, travel arrangements, hotel accommodations, and additional expenses—including compensation of the Tennis Employee's time, if any—were handled directly between the Club Fit member and the Tennis Employee. Such excursions were not part of the Tennis Employees' essential job functions and Club Fit was not involved in such arrangements. (Beck Decl., ¶¶18-20).

What the Plaintiffs call "off-the-court" tasks were normal requirements of their positions, as stated in the descriptions they signed and for which they were duly compensated. They were not "coerced" into working "off-the-clock"; they were simply doing their jobs. (Beck Decl., ¶16). For their provision of tennis lessons and related tasks, the Tennis Employees received hourly commissions, ranging from $22 to $33 per hour. This, however, is where the similarities between the Tennis Employees end. (Beck Decl., ¶¶22-23).

---

[4] Markiewicz also fails to specify any instance within the last three years when he was stopped from recording time by his supervisor.

6

**As A Former Member Of Management, Noah Allen Is Dissimilar To The Other Tennis Employees.**

In July 2003, Allen was offered and accepted the position of Co-Director of Adult Tennis Programming and Men's League Coordinator at Club Fit. For administrative duties associated with that work, Allen received $17.00 per hour, in addition to his $29.00 hourly rate as a tennis pro.[5] (Beck Decl., ¶24).

### Allen's Promotion To Tennis Manager

On September 7, 2004, Allen was offered and accepted a promotion to the position of Tennis Manager, a full-time exempt administrative position with an attendant annual salary of $50,000. As a member of Club Fit management, Allen's title, job duties, and exempt status were different from every other Tennis Employee. In that role, Allen handled day-to-day operational issues of the Tennis Department at an administrative level, which included processing payments, scheduling, holding meetings, supervising tennis programming and planning, and managing, growing, and developing Club Fit's tennis program and staff of professionals. Allen also assumed supervision of Club Fit's Junior Development Program, which included registration, try-outs, placements, scheduling, and other administrative issues. (Beck Decl., ¶¶25-26 and Exhibit 3).[6]

### Allen's Removal From Management Due To His Underperformance

Over time, Allen's supervisor, Mitchell David, noted numerous deficiencies in Allen's performance as Tennis Manager. In a special evaluation conducted on January 13, 2005, Mr.

---

[5] Allen's Declaration omits any reference to his work as League Coordinator or the additional compensation he received and he submits no pay stubs or other documents to corroborate his claim of allegedly unpaid overtime.

[6] Allen claims that he worked in excess of 40 hours per week after September 2004 but conspicuously omits the fact that he was an exempt salaried member of Club Fit management at that time.

David and Allen reviewed at least a dozen areas in which Allen needed to improve.  A 60-day follow-up evaluation was then set for March 2005.  Allen signed documentation memorializing his performance evaluation without comment on January 22, 2005.  (Beck Decl., ¶¶28-29 and Exhibit 4).

Allen's 60-day evaluation took place on or about March 17, 2005.  Though Mr. David noted that Allen had "made progress" since January 2005, the evaluation identified at least nine areas where Allen was "starting to slip."  Allen signed documentation memorializing that performance review without comment on March 25, 2005.  (Beck Decl., ¶30 and Exhibit 5). Despite repeated guidance and instruction, Mr. David believed that Allen's performance did not further improve and he was removed as Club Fit's Tennis Manager on June 27, 2005.  (Beck Decl., ¶¶31-32).

Regardless of the fiction that Allen apparently spread to the other Plaintiffs (which they parrot verbatim in their Declarations), Allen's demotion was the result of well-documented performance problems.  It was not motivated in any way by a desire to retaliate against him for non-existent "wage and hour grievances."  Indeed, no one at Club Fit ever threatened or retaliated against Allen or any of the Plaintiffs for any reason.  (Beck Decl., ¶¶31-33).

After his demotion, Allen was offered the opportunity to resume teaching and his responsibilities as Men's League Coordinator.  Instead, he took a sabbatical from Club Fit from June 27 to August 15, 2005.  Allen then resumed work at Club Fit as a Head Tennis Pro. Roughly one month later, he resigned to re-locate to California.  (Beck Decl., ¶¶34-36).

8

**Gregory Leonarczyk Is Dissimilar To The Other Tennis Employees Because He Also Held A Variety Of Different Positions.**

In addition to teaching tennis and performing related tasks, Leonarczyk was offered and accepted the position of Program Director for Club Fit's Junior Challenge Ladder. In that role, Leonarczyk was responsible for insuring that:

- Saturday night league matches are played and results tabulated;
- tables and paperwork removed from the courts;
- the courts are ready for scheduled maintenance; and
- the building is locked and secure at the conclusion of play.

(Beck Decl., ¶¶37-39 and Exhibit 6). On top of his teaching rate and coordinator rate, Leonarczyk was also offered and accepted work as a tennis racquet stringer at Club Fit. (Beck Decl., ¶40).[7]

**Erin Crandall[8] Is Dissimilar To The Other Tennis Employees Because She Held Different Positions Inside And Outside Of The Tennis Department.**

In addition to teaching tennis and performing related tasks, Crandall was offered and accepted the position of Administrative Assistant to Club Fit's Assistant General Manager, Joseph Chavez. In that capacity, she reported directly to Mr. Chavez and was responsible for ordering supplies, maintaining inventory, managing insurance certificates, and handling frontline staff and management requests outside of the Tennis Department. (Beck Decl., ¶¶41-43). On top of her teaching and administrative functions, Crandall was offered and accepted the position

---

[7] Leonarczyk's Declaration omits any reference to his work as Program Director or as a racquet stringer and the additional compensation he received for that work.

[8] Although Plaintiffs did not submit a Declaration from opt-in plaintiff Crandall, a review of her work experience at Club Fit demonstrates that her work and responsibilities also are different from the other Tennis Employees. She, like Allen, Bazzini, Cosma, and Markiewicz, submits no pay stubs or other documentation to support Plaintiffs' Motion.

of Assistant Coordinator of Club Fit's Junior Ladder League.  In that role, for which she received

an additional $18,000, Crandall was responsible for:

- taking attendance, accepting payments, and providing safety instructions;
- monitoring all matches; and
- supervising the departure of the junior players.

(Beck Decl., ¶44 and Exh. 6).

**The Plaintiffs Are Not Substantially Similar To Any Other Club Fit Employees.**

Though the above demonstrates that the Tennis Employees are not even similarly situated

to each other, there are more than a dozen different departments within Club Fit whose salaried

and hourly employees perform work outside of the Tennis and Fitness Departments that is

entirely distinct from that of the Plaintiffs.  Those departments include:

- Operations
- Administration
- Finance
- Information Technology
- Human Resources
- Service Training
- Community Events
- Sales
- Marketing/Advertising
- Creative Services
- Maintenance
- Member Services
- Nursery
- Party Planning
- Children's Programming
- Perinatal Fitness
- Physical Therapy
- Massage Therapy
- Cancer Wellness
- Reception
- Child Care

Each of these departments employs a variety of managers, administrators, and exempt and non-exempt personnel who perform a wide range of different functions. Though Plaintiffs contend that Club Fit "commonly" misclassified as exempt employees within these various programs, Plaintiffs do not claim that they were misclassified nor identify one such person in any of these Departments who was even unintentionally misclassified. (Beck Decl., ¶¶46-47).

Plaintiffs further intimate that they are similarly situated to unnamed aquatics employees or workers in Club Fit's Café. Club Fit's aquatics department includes supervisors, lifeguards, swim instructors, and swim team coaches who are compensated differently based upon their respective responsibilities. Likewise, Club Fit's restaurant workers include supervisors, chefs, cashiers, food preparation workers, and catering staff. Some of them work fixed schedules while others work sporadically; some are eligible to receive tips, while others are not. (Beck Decl., ¶¶48-49).

Plaintiff Markiewicz' employment with Club Fit further illustrates how he (and his colleagues in the Fitness Department) differs from the Tennis Employees and every other Club Fit employee. As a Fitness Professional, Markiewicz assisted Club Fit members as they exercised in the gym area and his duties included observing, assisting, and spotting gym members as needed, and cleaning equipment and racking weights after use. (Beck Decl., ¶¶50-52 and Exhibit 7; Markiewicz Decl., ¶3). Markiewicz reported to Fitness Directors Donna Berta and David Garcia. His starting rate was $8.50 per hour and, at the time that his employment was terminated for cause, he was earning $12.70 per hour as a Fitness Professional. In that role,

Markiewicz admits that he rarely, if ever, worked more than 40 hours per week. (Beck Decl., ¶53; Markiewicz Decl., ¶¶7-8).[9]

On July 1, 2002, Markiewicz was offered and accepted the additional position of Personal Trainer. As a Personal Trainer, Markiewicz was responsible for providing one-on-one individualized fitness instruction by appointment to Club Fit members. In that role, Markiewicz reported to a different Director, Barbara Cullen. His starting rate was $18.00 per hour and, at the time that his employment was terminated for cause, Markiewicz was earning $27.00 per hour as a Personal Trainer. He admits that his two jobs at Club Fit were different positions with different job descriptions, responsibilities, supervisors, expectations, hours, and rates of compensation. (Beck Decl., ¶¶54-57 and Exhibit 8; Markiewicz Decl., ¶¶5, 9).

Markiewicz nonetheless claims that his rate of pay as a Personal Trainer should have been at time-and-a-half his rate as a Fitness Professional. In addition to the fact that he worked two different jobs at Club Fit, there can be no doubt that Markiewicz *was paid more than twice* his Fitness Professional rate for *every* hour worked as a Personal Trainer. If Markiewicz' argument is followed to its logical conclusion, then Club Fit *overpaid* him for every hour that he worked as a Personal Trainer. (Beck Decl., ¶¶60-61; Markiewicz Decl., ¶10).

---

[9] Markiewicz' claim that he was occasionally so busy that he could not complete his work as a Fitness Professional in an eight-hour day is specious. Indeed, he wrote on his 2003 Performance Evaluation that he needed "more responsibilities and involvement to keep me busy." (Beck Decl., ¶59 and Exhibit 9).

**ARGUMENT**

I.   **COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE PLAINTIFFS HAVE FAILED TO DEFINE THE CLASS OF CLUB FIT EMPLOYEES WHOM THEY PURPORT TO REPRESENT**

As a threshold matter, this Court has recognized that a plaintiff seeking collective action certification and court-authorized notice under the FLSA must "consistently define the universe of similarly situated individuals" whom they claim to represent. *Flores v. Osaka Health Spa, Inc.,* No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675, *3 (S.D.N.Y. March 16, 2006); *accord Prizmic v. Armour, Inc.,* No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, *3 (E.D.N.Y. June 12, 2006). Yet, Plaintiffs identify at least four different groups of Club Fit employees to whom they claim to be substantially similar. As a matter of law, Plaintiffs' fundamental inability to define the proposed class of potential plaintiffs warrants denial of their Motion.

In *Flores*, Magistrate Judge Fox made clear that a plaintiff's failure to describe the scope of the purported group fatally undermines any application for collective action certification:

> The plaintiff's description of the universe of proposed plaintiffs, that is, the class of persons she maintains is similarly situated to her, is not consistent. On one occasion, the class is alleged to be composed of masseuses who work and did work at the defendants' spa facilities in excess of 40 hours in a work-week and were not compensated for the hours beyond 40 hours that they worked. On another occasion, the class is not limited to masseuses, but is claimed to be composed of "all [] current and former employees of the defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants." On yet another occasion, the class is described as "all non-exempt current and former employees" of an entity, "Osaka Health Spa of New York," that is not a defendant in the action. In addition, Flores has confused matters further by describing the proposed plaintiffs as "home health aide employees" in the notice concerning the pendency of this action that she has asked the Court to approve for publication.

2006 WL 695675, at *3. The Court concluded: "In a situation such as this, where the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, *it is not possible for the Court to conclude that a collective action certification is*

13

*warranted.*" *Id.* (Emphasis added). *Accord Prizmic,* 2006 WL 1662614, at *3 (collective action certification denied where "[i]n his complaint, plaintiff alleges that only his fellow installation installers were denied overtime compensation. Yet, in the instant motion, plaintiff seeks to notify 'all current and former employees of Armour, Inc.' over the past three years who were not paid overtime.").

Plaintiffs here also fail to define the proposed class. In their Complaint, Plaintiffs make their allegations "on behalf of all hourly employees, within the meaning of the FLSA, who were not paid appropriate overtime compensation within three years of the date of the filing of this Complaint." (Marlborough Decl., Exh. A: Complaint at ¶18). In Plaintiffs' Motion, however, they define the proposed class differently, to include "all employees of Club Fit within the last six years who do not have an ownership interest in the corporate defendants"—regardless of whether they are exempt from eligibility for overtime under the FLSA. (Pl. Mem. at 17). Plaintiffs then seek to distribute their proposed court-authorized notice to yet another potential class—anyone "employed by Club Fit between May 15, 2002 and the present"—regardless of whether they are exempt or have an ownership interest in Club Fit. (Marlborough Dec., Exh. P at 1). Finally, Plaintiffs' proposed notice muddies the waters further by identifying a fourth potential class—"tennis, fitness, aquatics, wellness and café staff"—who "were not paid wages required by law, including overtime wages." *Id.* at 2.

So far, Plaintiffs have proposed four different class definitions in their pleadings. There is no room for doubt that "[i]n a situation such as this, where the named plaintiff is unable to state clearly and specifically to whom it is that [they] contend [they are] similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted." *Flores,* 2006 U.S. Dist. LEXIS 11378, at *3.

14

## II.    COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE PLAINTIFFS HAVE NOT DEMONSTRATED THAT OTHERS HAVE A SUFFICIENT INTEREST IN THIS ACTION.

Courts are increasingly recognizing that plaintiffs bear the initial burden of establishing

that other employees exist who actually desire to opt-in to the litigation. *See Davis v. Charoen*

*Pokphand*, 303 F. Supp. 2d 1272, 1276-77 (M.D. Ala. 2004);[10] *see also Robinson v. Dolgencorp,*

*Inc.*, No. 06 Civ. 122, 2006 U.S. Dist. LEXIS 85471, *19-21 (M.D. Fla. Nov. 13, 2006) (three

affidavits filed in support of conditional certification "insufficient to demonstrate to the Court's

satisfaction that there are other similarly situated employees who desire to opt-in to this

action").[11]  Here, Plaintiffs have failed to proffer evidence that current or former Club Fit

employees have any interest in joining this litigation.  Since this lawsuit was filed several months

ago, the Plaintiffs personally spread news of the lawsuit to current (and presumably former) Club

Fit employees. (Beck Decl., ¶62).  Despite Plaintiffs' solicitations, only two people with viable

---

[10] (citing *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Silverman v. SmithKline Beecham*, No. 06 Civ. 7272, 2007 U.S. Dist. LEXIS 80030, at *5 (C.D. Cal. Oct. 15, 2007); *Hampshire v. Port Arthur Ind. Sch. Dist.*, No. 06 Civ. 235, 2006 U.S. Dist. LEXIS 88874, at *4-5 (E.D. Tex. Dec. 7, 2006); *Pfohl v. Farmers Ins. Group*, No. 03 Civ. 3080, 2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004); *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003); *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 897 (E.D. Tex. 1997)).

[11] *Accord Barten v. KTK & Assocs.*, No. 06 Civ. 1574, 2007 U.S. Dist. LEXIS 54068, *7-8 (M.D. Fla. July 24. 2007) (denying conditional certification where plaintiff identified "only one viable opt-in plaintiff" in eleven months); *Rodgers v. CVS Pharm., Inc.*, No. 05 Civ. 770, 2006 U.S. Dist. LEXIS 23272, 14-15 (M.D. Fla. Mar. 22, 2006) (denying conditional certification because "[p]laintiff has failed to provide sufficient evidence that there are other employees who desire to opt in to this action, other than the two who have filed consents"); *Wombles v. Title Max of Ala., Inc.*, No. 03 Civ. 1158, 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005) (denying plaintiff's motion to facilitate notice where "plaintiffs' unsubstantiated belief about other employees' willingness to join this action and their inability to identify more than two other employees willing to join shows that the plaintiffs have not met their burden").

claims have opted-in to this action.[12]  Moreover, no one outside of Club Fit's Tennis Department

has opted-in.  This is insufficient to justify the overbroad notice that Plaintiffs seek through this

Motion.  *See, e.g., Pfohl*, 2004 U.S. Dist. LEXIS 6447, at * 31-32.

Though the FLSA is remedial in nature, courts also have a responsibility to deny a

needless motion so as to avoid unnecessarily "stirring up" litigation through unwarranted

solicitation.  *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-7 (D. Minn. 1991); *see*

*also Briggs v. United States*, 54 Fed. Cl. 205, 207 (Fed. Cl. 2002) ("issuance of such notice when

certification will not be granted would be a futile act, would delay the disposition of this case as

to the plaintiffs presently involved, and itself may cause this case to become unmanageable.").

### III.  COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE SIMILARLY SITUATED TO ANY OTHER CLUB FIT EMPLOYEE.

To warrant certification as a collective action under § 216(b) of the FLSA, a plaintiff

must prove facts "sufficient to demonstrate that they *and* potential plaintiffs *together* were

victims of a common policy or plan that violated the law."  *Hoffmann v. Sbarro, Inc.*, 982 F.

Supp. 249, 261 (S.D.N.Y. 1997) (emphasis added).  Though this burden may not be onerous, "[a]

plaintiff must provide actual evidence of a factual nexus between his situation and those that he

claims are similarly situated rather than mere conclusory allegations."  *Prizmic*, 2006 WL

1662614, at *2; *see, e.g., Smalls v. Allstate Ins. Co.*, 396 F.Supp.2d 364, 369 (S.D.N.Y. 2005)

("conclusory statements" cannot defeat summary judgment motion); *Blohm + Voss GmbH v.*

*M/V Olympia Explorer*, No. 05 Cv. 7753 (BSJ), 2008 WL 2756377, *3 (S.D.N.Y. July 15, 2008)

(same).

---

[12] Cosma also opted-in, although his last day of work at Club Fit is outside either the two-year or three-year statute of limitations of the FLSA.  (Cosma Decl., ¶2).

A plaintiff's ability to satisfy this burden is important because "[a]bsent such a showing, an employer may be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *Id.* (citing *D'Anna v. M/A-Com, Inc.*, 903 F.Supp. 889, 893-94 (D.Md. 1995); *see Smith v. Sovereign Bancorp, Inc.*, Civ. No. 03-2420, 2003 WL 22701017, *2 (E.D.Pa. Nov. 13, 2003) (improvidently granted conditional certification is "an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant"); *Tyler v. Payless Shoe Source, Inc.*, Case No. 2:05-cv-33-F (WO), 2005 U.S. Dist. LEXIS 31682, *20 (N.D.Ala. Nov. 23, 2005) (refusing to certify collective action where "the evidence shows that certifying a collective action in this case would undermine, rather than promote, the purpose of judicial efficiency.").

The decision to authorize notice to hundreds of current and former employees, therefore, is not automatic and the Court has broad discretion to determine whether or not notice is appropriate. *See Evancho v. Sanofi-Aventis*, Civil Action No. 07-2266 (MLC), 2007 U.S. Dist. LEXIS 93215, *9 (D.N.J. Dec. 19, 2007); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000).

### A.    Plaintiffs' Conclusory Allegations Are Insufficient To Establish That They Are Similarly Situated To Every Other Club Fit Employee.

Plaintiffs first must make a "substantial" showing that the unnamed potential plaintiffs in their proposed notice—every past and present Club Fit employee, regardless of position, title, duties, or payroll status—are "victims of a common policy or plan that violated the law." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005); *see also Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915, 2004 U.S. Dist. LEXIS 17031, *3 (S.D.N.Y. Aug. 30, 2004); *Hoffmann*, 982 F. Supp. at 261. Here, the gravamen of Plaintiffs' claim is that they are substantially similar to every past and present employee because Club Fit allegedly never paid

17

overtime to any employee under any circumstances in the past six years. As support, Plaintiffs

rely upon two pay stubs and their own vague, imprecise, largely identical, and wholly self-

serving statements. The sum total of Plaintiffs' "actual evidence" lacks even a scintilla of

credible proof to support their conclusory allegation that *every* current and former Club Fit

employee was a "victim" of some unlawful "common plan."

Drilling down to the core of Plaintiffs' claims leaves nothing more than their:

- unidentified, undated "conversations" with unknown "co-workers and management";[13]
- observation of swim meets at unknown dates and times attended by unknown employees;[14]
- undated "observations" of unidentified employees in unidentified departments performing unidentified tasks at unidentified times;[15] or
- subjective "belief" that unidentified workers reporting to unidentified supervisors in unidentified positions did not receive overtime for unidentified work at unidentified times.[16]

Despite having amassed more than 25 years of combined work experience at Club Fit, Plaintiffs

only offer two pay stubs to support their ambiguous and unspecified perceptions of their own

unique circumstances. They fail to name even one other current or former Club Fit employee

outside of the Tennis Department to whom they claim to be similarly situated. They do not state

when these unnamed employees allegedly worked more than 40 hours per week; what were the

weekly schedules of these other employees; which supervisor allegedly denied authorizing

overtime pay to which employee; or how much overtime they were allegedly denied. It is

---

[13] Leonaczyk Decl., ¶32; Bazzini Decl., ¶¶19, 21; O'Neal Decl., ¶¶23, 25.

[14] Leonarczyk Decl., ¶33.

[15] Allen Decl., ¶21; Markiewicz Decl., ¶16; Bazzini Decl., ¶¶21-22; Cosma Decl., ¶23.

[16] Allen Decl., ¶20; Markiewicz Decl., ¶17.

beyond dispute that this proof is patently insufficient to support their Motion. *See Barfield v. N.Y. City Health & Hosps. Corp.*, 05 Civ. 6319 (JSR), 2005 U.S. Dist. LEXIS 28884, *2-3 (S.D.N.Y. Nov. 18, 2005) (despite alleged widespread practice of defendants' knowing failure to pay overtime to nurses who worked more than 40 hours per week, the District Court denied collective action certification because "plaintiff presents nothing but limited anecdotal hearsay to suggest that there is a widespread practice of referral nurses working in excess of 40 hours per week by signing up through multiple agencies"); *Briggs*, 54 Fed. Cl. at 207 (evidence that workers in as many as five states failed to receive overtime pay insufficient to support collective action certification because plaintiff "offers no specific support for the allegations of a violation (*e.g.*, names, dates, places, types of unlawful action, *etc.*). This evidence is insufficient."); *Evancho*, 2007 U.S. Dist. LEXIS 93215 ("[u]nsupported assertions of widespread violations are not sufficient"); *Aguirre v. SBC Communs., Inc.*, No. H-05-3198, 2006 U.S. Dist. LEXIS 22211, *18-19 (S.D. Tex. Apr. 11, 2006) (denying conditional certification where "plaintiffs' conclusory and unsupported allegations [were] inadequate even for first-stage certification and notice.").

　　　　Plaintiffs' reliance on Allen's demotion in 2005 and random remarks claimed to have been made by Mr. Beck at undefined points in time does not create a connection between their unique personal circumstances and that of every other Club Fit employee. Even if the Court takes this extraordinary leap—and rejects Club Fit's written policies, Mr. Beck's unequivocal denials, *and* Allen's well-documented underperformance—collective action certification remains inappropriate.

Indeed, Allen claims that he noted one alleged compensation concern at some undefined point prior to 2002[17] after which he was *promoted* to an exempt management position in 2004.[18] His subsequent demotion in 2005 was based upon his own unique, well-documented performance deficiencies, and he has offered no proof that Club Fit's actions were related to anything that occurred prior to 2002 (before Mr. David was hired)[19] or to some undefined attempt to "mobilize" Allen's subordinates against Club Fit management. (Beck Decl., ¶¶28-33 and Exhibits 4 and 5). Most telling, and entirely consistent with the Plaintiffs' flimsy "evidence":

- Allen never identifies who he was trying to "mobilize" in 2005, when this allegedly took place, or what he allegedly did to try to "mobilize" these unidentified individuals;[20] *and*

- Leonarczyk and O'Neal—who parrot Allen's story verbatim—never state that Allen was trying to "mobilize" *them* in 2005 nor do they identify who Allen was allegedly trying to "mobilize," or how or when this occurred.[21]

Moreover, Plaintiffs wholly ignore the written overtime policy contained in the Club Fit Employee Handbook they submitted to the Court in support of their Motion. (Marlborough Decl., Exh. N). It cannot be disputed that this policy governs all non-exempt Club Fit employees: "Employees who are eligible to receive overtime pay may not work more than 40 hours in a workweek without obtaining prior approval from their manager." *Id*. at 5. In fact, Club Fit managers have granted and continue to grant employees permission to work overtime and pay overtime wages when necessary for specific tasks. (Beck Decl., ¶9). The Handbook

---

[17] Allen Decl., ¶23. Club Fit denies that such a complaint was made.

[18] Allen Decl., ¶¶9-10; Beck Decl., ¶¶25-26.

[19] Mr. David was hired by Club Fit in 1993. (Beck Decl., ¶28).

[20] Allen Decl., ¶23.

[21] Leonarczyk Decl., ¶35; O'Neal Decl., ¶27.

further instructs that "[e]mployees are required to 'punch in/out' when arriving and leaving their shift"; "[i]t is the employee's responsibility to maintain accurate records for all hours worked"; and employees will be paid for "the time that is correctly recorded and approved by your manager." *Id.* These written policies are lawful and there has been, and can be, no assertion to the contrary.

Plaintiffs have offered no evidence that any other past and present Club Fit employee shares Plaintiffs' personal and individualized circumstances. *Flores v. Osaka* is again instructive. Flores—like Plaintiffs here—claimed that she "served at least 7-8 customers per [12-hour] shift and [that] it is [her] understanding that the other massage therapists working my shift did the same." 2006 WL 695675, at *3. The District Court nonetheless found that plaintiff failed to make even a "modest" showing "to establish that she and the proposed plaintiffs together were the victims of a common policy or plan that violated the law":

> The submissions made by the plaintiff to the Court do not provide any factual information concerning the basis for Flores' "understanding" of the quantum of work performed by "other massage therapists" assigned to work during the shift on which Flores worked. Flores also alleges, in her memorandum of law, that the defendants' spa customers typically paid cash tips in amounts ranging from $20 to $50, and that the defendants "confiscated our tips." These allegations, like the allegations Flores made in an affidavit she submitted in reply to the defendants' opposition to her motion, are broad conclusory allegations. As such, they offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated Flores and the way they may have compensated other employees during the relevant time period.

*Id.* The court concluded that reliance upon such "broad conclusory allegations" militates against certification as an FLSA collective action. *Id. Accord Diaz v. Electronics Boutique of America, Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270, *5 (W.D.N.Y. Oct. 17, 2005) (collective action certification denied because potential plaintiffs "have not been shown to be similarly situated and

21

plaintiffs' speculative allegations do not rescue their claims from being insufficiently specific beyond their own respective circumstances.") (citation omitted);

In *Morales v. Plantworks, Inc.*, plaintiffs were landscapers who contended that their employer maintained a policy of requiring plaintiffs to work more than forty hours per week without paying them minimum wage and overtime compensation. Plaintiffs submitted documentation concerning their own claims but no evidence relating to any other Plantworks employee other than the conclusory allegation that "[t]here are over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation while working for Defendants." No. 05 Civ. 2349 (DC), 2006 WL 278154, *2 (S.D.N.Y. Feb. 2, 2006). Judge Chin denied plaintiffs' application for collective action certification because plaintiffs "offered nothing of evidentiary value" concerning any member of the purported class of additional plaintiffs. *Id.* at *3.

In *Prizmic,* the plaintiff made the broad allegation that "he and other installation installers were denied overtime compensation." In refusing to certify a collective action, the District Court observed the same deficiencies present in the application at bar, namely that plaintiff failed to show how "anyone else employed by defendants were paid, what their job duties were or the hours they worked." 2006 WL 1662614, *3.

Likewise, in *Levinson v. Primedia Inc.*, the District Court denied collective action certification where, like here, plaintiffs "provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants, and that *they* were deprived of a minimum wage and overtime rates," because "they [] failed to make a sufficient showing that the same was true for other potential plaintiffs." No. 02 Civ. 2222 (CBM), 2003 WL 22533428,

22

at *1 (S.D.N.Y. Nov. 6, 2003) (emphasis in original). Indeed, the Court held that plaintiffs failed

to support their conclusory assertions:

> with a factual showing that extends beyond their own circumstances. With regard
> to the alleged failure to provide a minimum wage or overtime pay, plaintiffs'
> documentation is similarly limited to *their own compensation*. While the
> contracts submitted to the court, and their attached compensation schedules, do
> appear to be substantially similar, *a demonstration of the similarity of
> circumstances of the existing plaintiffs is, of course, insufficient*. Even if the
> assertion, found in each of plaintiffs' affidavits submitted to the court, that "All
> guides worked under the same contracts," were true, this would not constitute a
> showing that defendants' compensation structure violated the law. The
> compensation schedules may lack a provision for overtime rates or a guaranteed
> minimum wage, but it is only when this evidence is combined with evidence such
> as that provided in connection with the existing plaintiffs, of hourly rates below
> minimum wage, or overtime hours without overtime pay, that the necessary
> showing becomes possible. Plaintiffs' attempts to broaden their allegations
> beyond the existing plaintiffs are insufficiently specific to make such a showing.

*Id.* at *2 (emphasis added). Thus, this Court routinely denies conditional certification where, as

here, plaintiffs fail to provide admissible evidence that demonstrates that they are similarly

situated to the employees to whom they seek to include in the proposed collective action.

For a stark illustration of how dissimilar the Plaintiffs are from each other—let alone

from every other Club Fit employee—the Court need look no further than Markiewicz'

circumstances. He admits that he worked two different jobs, with different job descriptions,

hours, job duties, supervisors, and pay rates. (Beck Decl., ¶¶52-57 and Exhibits 7 and 8;

Markiewicz Decl., ¶¶2, 5-6, 9). Markiewicz admits that as a Fitness Professional he rarely, if

ever, worked more than 40 hours per week. (Beck Decl., ¶59 and Exh. 9; Markiewicz Decl.,

¶¶7-8). On top of his work as a Fitness Professional, he provided one-on-one instruction by

appointment as a Personal Trainer. (Beck Decl., ¶¶54-56; Markiewicz Decl., ¶¶2-3). Based on

his admission that he worked two different jobs and that neither exceeded 40 hours per week,

Markiewicz' FLSA allegations are misplaced. Moreover, his assertion that he should have been

23

paid 1.5 times his Fitness Professional rate for all hours worked over 40 ignores the fact that his Personal Trainer rate was *more than double* his Fitness Professional rate. (Beck Decl., ¶¶60-61). That Markiewicz, a named Plaintiff, has no cognizable claim against Club Fit is demonstrative proof that geometric expansion of this litigation is not warranted. *See Silva v. Gordon Gaming Corp.*, 2006 U.S. Dist. LEXIS 71847, No. 06-cv-00696, *9 (D.Nev. Sept. 27, 2006) (allegations based upon "information and belief" that other employees were subjected to a common policy insufficient to determine whether a similarly situated group of potential plaintiffs existed).

Because the record does not support Plaintiffs' allegation that every past and present Club Fit employee was treated in the same manner, they cannot use their conclusory assumptions to bind their claims to those of a putative class. *See Silverman*, 2007 U.S. Dist. LEXIS 80030, at *5 (denying certification and notice where, as here, plaintiff submitted "nearly identical" declarations from former sales reps that were not representative of the company's various discrete business divisions and which all contained numerous hearsay and other evidentiary problems). The Court should, therefore, exercise its broad discretion and deny Plaintiffs' Motion.

## B.    Plaintiffs' Allegation That Club Fit Misclassified Exempt Employees Is Too Individualized For Collective Treatment.

Plaintiffs' Complaint does not allege that Club Fit misclassified exempt employees as non-exempt. Despite their collective years of experience at Club Fit, Plaintiffs' Declarations do not state that Club Fit misclassified them—or anyone else—as exempt. Yet, Plaintiffs assert— for the first time in their Motion—an argument that an unknown number of unidentified Club Fit employees have been "mischaracterized" as exempt in order to avoid the payment of overtime. (Pl. Mem. at 17). Plaintiffs, therefore, have no foundation—not even a "belief"—for their claim

that any employee at any time in any department was misclassified. This wholly unsupported assertion is strong grounds to deny Plaintiffs' Motion.

Denial is further warranted because "[d]etermining whether an employee is exempt is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities." *Diaz*, 2005 WL 2654270, at *2 (citing *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220 (D.Conn. 2003)). Indeed, any allegation that these unknown Club Fit employees were misclassified "will involve an analysis of daily duties and responsibilities and the amount of time spent on each, whereas [the Plaintiffs'] claims . . . will involve an examination of hours worked, payroll records and [Club Fit's] knowledge and/or permission of the alleged overtime hours worked." *Diaz*, 2005 WL 2654270, at *4. As such, Plaintiffs are not similarly situated to these unidentified Club Fit employees because "no factual nexus exists between their situations." *Id.*; *accord Davis v. Lenox Hill Hosp.*, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (holding that exempt plaintiff claiming denial of overtime wages was not similarly situated to nonexempt employees); *Mike*, 274 F.Supp.2d at 220-221 (denying class certification where plaintiff claimed that he was misclassified as exempt "because the proof in th[e] case [was] specific to the individual [and] . . . any other plaintiff would also have to present specific evidence of his or her daily tasks, and the court would have to apply the regulations on an individual basis . . . [and] engage in an *ad hoc* inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [plaintiff's]").

Courts routinely refuse to certify a class, "even conditionally, when determining whether the employer improperly treated the plaintiffs as nonexempt would require a highly

individualized, fact-intensive inquiry." *Aguirre*, 2006 U.S. Dist. LEXIS 22211, at \*7. In

*Morisky*, the plaintiff alleged that he and over 100 other opt-in plaintiffs were the victim of

defendants' "common scheme" to deny them overtime thus making all the plaintiffs similarly

situated. 111 F. Supp. 2d at 498. In rejecting collective action certification, the court concluded

that the determination of:

> which employees are entitled to overtime compensation under the FSLA depends
> on an individual, fact-specific analysis of each employee's job responsibilities
> under the relevant statutory exemption criteria. Therefore, "similarly situated" in
> this case must be analyzed in terms of the nature of the job duties performed by
> each class member, as the ultimate issue to be determined is whether each
> employee was properly classified as exempt. Plaintiffs have made no showing
> that the job responsibilities of the named plaintiffs are the same or similar to those
> of the remaining members of the proposed class, or that the opt-in plaintiffs could
> properly be classified as non-exempt employees. In fact, plaintiffs do not even
> discuss the job responsibilities of the opt-in plaintiffs.

*Id.* Likewise, Plaintiffs make no effort to identify the so-called "mischaracterized" Club Fit

employees, either by name, title, or department.

Club Fit has more than a dozen different departments whose exempt and non-exempt

employees perform a wide range of functions entirely distinct from the work done by Plaintiffs.

(Beck Decl., ¶46). "Potential collective action members, thus, are not 'similarly situated' as to

FLSA status when that status may differ depending on their job responsibilities and duties."

*Evancho*, 2007 U.S. Dist. LEXIS 93215, at \*9. *Accord Aguirre*, 2006 U.S. Dist. LEXIS 22211,

at \*7 (denying motion for conditional certification because differences among potential plaintiffs'

job responsibilities and duties predominated over similarities); *Reich v. Homier Distrib. Co.,*

*Inc.*, 362 F.Supp.2d 1009, 1013-15 (N.D. Ind. 2005) (denying motion for conditional

certification because plaintiff and potential collective action members were not similarly

situated, as application of FLSA exemption would depend on each employee's specific duties).

C.    **Plaintiffs' Allegation That Club Fit Did Not Pay Employees For "Off-The-Clock Work Is Inappropriate For Collective Action Treatment.**

In the same manner that an individual factual determination is necessary to distinguish between exempt and nonexempt employees, such an analysis is also required of Plaintiffs' allegations that all Club Fit employees worked "off-the-clock," that their time was "shaved," and that they were not paid "spread of hours" pay. These claims are, as a matter of law, "too individualized to warrant collective action treatment." *Diaz*, 2005 WL 2654270, at *5. *See Lawrence v. City of Philadelphia, P.A.*, 2004 WL 945139, *2 (E.D.Pa. April 29, 2004):

> [T]he "off-the-clock" claim does not involve regularly scheduled time that is worked by all members of the class. Rather, each of the Plaintiffs may potentially claim that on any given day he or she arrived early or departed outside of their regularly scheduled hours and were not compensated for such. The circumstances of those individual claims potentially vary too widely to conclude that in regard to their "off-the-clock" claim, the Plaintiffs are similarly situated.

The Court in *Lawrence* confirmed that "questions of fact would most likely differ for each plaintiff," such that it would become "unduly burdensome to manage as a collective claim." *Id.*

Likewise, *Diaz* held that plaintiffs' "off-the-clock claims require an examination by the Court of when [plaintiff] was scheduled to work, when he actually worked, whether he was paid for such and whether [defendant] altered his timesheets and, then, the Court would to have conduct the same inquiry as to each other class member." 2005 WL 2654270, at *5; *see England v. New Century Financial Corp.*, 370 F. Supp. 2d 504, 509 (M.D. La. 2005) (conditional certification improper where off-the-clock claim involved different managers).

Here, Plaintiffs' own "off-the-clock" claims—based upon tasks outlined within their job descriptions for which they were duly compensated—are factually and legally groundless. (Beck Decl., ¶¶13-20, 57-58 and Exhs. 2, 3, 6, 7, and 8). Indeed, the Plaintiffs—who acknowledged that they kept their own time records—submit no corroborating documentation to support their claims. Plaintiffs likewise do not state when other (unnamed) employees in other departments

27

allegedly worked "off-the-clock"; how Plaintiffs know that the alleged "off-the-clock" tasks were part of the unnamed employees' normal job functions; whether these employees requested compensation for the alleged "off-the-clock" task; which supervisor allegedly denied authorizing payment; or how much "off-the-clock" pay was allegedly denied. Moreover, Club Fit policy clearly mandated that each employee was responsible for maintaining accurate records for all hours worked, that they would be paid for time correctly recorded and approved by their respective manager(s), and that they are required to punch in/out when arriving and leaving their shift. (Marlborough Decl., Exh. N at 5). Any deviation from Club Fit's official policy, which is denied, would have occurred on a manager-by-manager and employee-by-employee basis. (Beck Decl., ¶12). Though Plaintiffs fail to submit actual evidence that any manager from any other department allegedly violated Club Fit's written policies in the last five years,[22] there are numerous past and current managers across the wide spectrum of departments at Club Fit whose actions would require individual examination if this case is expanded to include all current and former employees of Club Fit. That makes this claim unsuitable for collective action.

*Basco v. Wal-Mart Stores, Inc.*, is instructive on this point. In that case, plaintiffs alleged "wide-spread occurrence of off-the-clock-work and unpaid overtime" at Wal-Mart stores and presented testimony from a former store manager—that six persons worked off-the-clock at his store and that he had been instructed to delete overtime hours from employee time records—and five employees who claimed they worked more than 40 hours without receiving overtime. 2004 U.S. Dist. LEXIS 12441, at *6. Wal-Mart presented evidence that their employees—like Plaintiffs here—were individually responsible for punching themselves in and out and that Wal-

---

[22] The sole reference to alleged misconduct attributed to a supervisor in another area of Club Fit, (O'Neal Decl., ¶25), is inadmissible hearsay.

Mart's official policy required payment for all working time. 2004 U.S. Dist. LEXIS 12441, at
*7. The court rejected plaintiffs' application for collective action certification and notice
because Wal-Mart's overtime policy "and its effects are neither homogeneous nor lend
themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say
particularized. Plaintiffs' own witnesses demonstrate that the 'policy' was not even uniformly or
systematically implemented at any given store." 2004 U.S. Dist. LEXIS 12441, at *7. *See also*
*West v. Border Foods, Inc.*, Civ. No. 05-2525 (DWF/RLE), 2006 U.S. Dist. LEXIS 96963, *21
(D.Minn. June 12, 2006) (denying collective action certification where different individual
managers allegedly used varying means to deprive plaintiffs of proper compensation and alleged
violations are contrary to the defendants' written policy).

    Based upon the Plaintiffs' vague and unspecified allegations, and the granular case-by-
case inquiry needed to examine (and rebut) them, collective action certification would impede,
rather than effectuate, judicial efficiency in this case. *See West*, 2006 U.S. Dist. LEXIS 96963,
*21 ("neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be
advanced if we were to overlook facts which generally suggest that a collective action is
improper."); *Basco*, 2004 WL 1497709 at *5 ("To create a collective action class, including the
cost associated with that when a Court is convinced that there is insufficient support for the same
prior to certification would be an exercise in futility and wasted resources for all parties
involved.").

## IV.    **PLAINTIFFS' PROPOSED NOTICE IS INADEQUATE**

    If, for sake of argument, the Court authorizes notice, Plaintiffs' Proposed Notice is
improper and generally misleading on numerous grounds including, but not limited to: (i) failing
to fully and accurately describe Club Fit's position as to the defenses asserted in this action; (ii)
improperly defining the class and the class period; (iii) setting an overly lengthy deadline to opt-

29

in, particularly in light of the solicitation that Plaintiffs have already engaged; and (iv) implying that individuals can only join the lawsuit by returning the opt-in form to class counsel. In the unlikely event that the Court grants Plaintiffs' Motion, Defendants respectfully request that the Court order the parties to meet and confer in good faith to draft a mutually agreed-upon notice that can be jointly submitted to the Court for approval. *See Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 949 (M.D. Fla. 1994). In the unlikely event that the parties cannot agree, Club Fit respectfully requests the opportunity to submit its own proposed notice.

**<u>CONCLUSION</u>**

For the foregoing reasons, all Defendants respectfully request that the Court deny Plaintiffs' motion for conditional certification and notice.

Dated: Newark, New Jersey
      August 11, 2008

PROSKAUER ROSE LLP

BY:   */s/ Mark A. Saloman*
      Lawrence R. Sandak
      Mark A. Saloman
      One Newark Center, 18th Floor
      Newark, New Jersey 07102
      973-274-3200 or 212-736-8185

      Fredric C. Leffler
      1585 Broadway
      New York, New York 10036
      212.969.3000

      Attorneys for Defendants