**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

TODD BAZZINI, GREGORY LEONARCZYK,  :
NOAH ALLEN, and JOHN MARKIEWICZ,  :
Individually and on behalf of all other persons  :  Civil Action No. 08 Civ 4530 (BSJ)(MHD)
similarly situated,  :
  :
  :
                     Plaintiffs,  :  <u>Document Electronically Filed</u>
  :
      -against-  :
  :
CLUB FIT MANAGEMENT, INC., JEFFERSON  :
VALLEY RACQUET CLUB, INC., DAVID  :
SWOPE, BETH BECK and BILL BECK,  :
  :
                     Defendants.  :

------------------------------------------------------------x

---

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

---

PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
973-274-3200
212-736-8185

Attorneys for Defendants
*Club Fit Management, Inc., Jefferson Valley*
*Racquet Club, Inc., David Swope, Beth Beck,*
*and Bill Beck*

<u>On The Brief</u>

Fredric C. Leffler
Mark A. Saloman, Esq.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................... iii

**PRELIMINARY STATEMENT** .................................................................................. 1

**COUNTERSTATEMENT OF FACTS** ....................................................................... 3

The Plaintiffs Received Club Fit's Written Overtime Policy. ...................................................4

The Plaintiffs Did Not Work "Off-The-Clock." ......................................................................4

As A Former Member Of Management, Noah Allen Is Dissimilar To The Other
Tennis Employees. ....................................................................................................................7

   *Allen's Promotion To Tennis Manager* ............................................................................ 7

   *Allen's Removal From Management Due To His Underperformance* ............................... 8

Gregory Leonarczyk Is Dissimilar To The Other Tennis Employees Because He Also
Held A Variety Of Different Positions. .....................................................................................9

Erin Crandall Is Dissimilar To The Other Tennis Employees Because She Held
Different Positions Inside And Outside Of The Tennis Department. ..........................................9

The Plaintiffs Are Not Substantially Similar To Any Other Club Fit Employees ...................10

**ARGUMENT** ............................................................................................................. 13

I.  COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE
    PLAINTIFFS HAVE FAILED TO DEFINE THE CLASS OF CLUB FIT
    EMPLOYEES WHOM THEY PURPORT TO REPRESENT .........................................13

II. COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE
    PLAINTIFFS HAVE NOT DEMONSTRATED THAT OTHERS HAVE A
    SUFFICIENT INTEREST IN THIS ACTION. ...............................................................15

III. COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE
PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE
SIMILARLY SITUATED TO ANY OTHER CLUB FIT EMPLOYEE. ......................... 16

A. Plaintiffs' Conclusory Allegations Are Insufficient To Establish That They Are
Similarly Situated To Every Other Club Fit Employee. ............................................ 17

B. Plaintiffs' Allegation That Club Fit Misclassified Exempt Employees Is Too
Individualized For Collective Treatment. ................................................................... 24

C. Plaintiffs' Allegation That Club Fit Did Not Pay Employees For "Off-The-Clock
Work Is Inappropriate For Collective Action Treatment. ........................................... 27

IV. PLAINTIFFS' PROPOSED NOTICE IS INADEQUATE ............................................. 29

CONCLUSION ........................................................................................................................ 30

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Aguirre v. SBC Communs., Inc.*,
   No. H-05-3198, 2006 U.S. Dist. LEXIS 22211  (S.D. Tex. Apr. 11, 2006).....................19, 26

*Barfield v. N.Y. City Health & Hosps. Corp.*, 05 Civ 6319 (JSR), 2005 U.S. Dist. LEXIS
   28884 (S.D.N.Y. Nov. 18, 2005) ............................................................................19

*Barten v. KTK & Assocs.*,
   No. 06 Civ. 1574, 2007 U.S. Dist. LEXIS 54068 (M.D. Fla. July 24. 2007)..........................15

*Blohm + Voss GmbH v. M/V Olympia Explorer*,
   No. 05 Cv. 7753 (BSJ), 2008 WL 2756377 (S.D.N.Y. July 15, 2008) ............................ 16-17

*Briggs v. United States*,
   54 Fed. Cl. 205 (Fed. Cl. 2002) ......................................................................16, 19

*Cash v. Conn Appliances, Inc.*,
   2 F. Supp. 2d 884 (E.D. Tex. 1997)........................................................................15

*D'Anna v. M/A-Com, Inc.*,
   903 F.Supp. 889 (D.Md. 1995)...........................................................................17

*Davis v. Charoen Pokphand*,
   303 F. Supp. 2d 1272 (M.D. Ala. 2004) ................................................................15

*Davis v. Lenox Hill Hosp.*,
   2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004).........................................................25

*Diaz v. Electronics Boutique of America, Inc.*,
   No. 04-CV-0840E(SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ....................21, 25, 27

*Dybach v. Florida Dep't of Corrections*,
   942 F.2d 1562 (11th Cir. 1991) ..........................................................................15

*England v. New Century Financial Corp.*,
   370 F. Supp. 2d 504 (M.D. La. 2005)....................................................................27

*Evancho v. Sanofi-Aventis*,
   Civil Action No. 07-2266 (MLC), 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 19,
   2007) .................................................................................................17, 19, 26

*Flores v. Osaka Health Spa, Inc.*,
   No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675 (S.D.N.Y. March 16, 2006)....... 1, 13-14, 21

**Cases** (cont'd)                                                                                    <u>Page(s)</u>

*Hampshire v. Port Arthur Ind. Sch. Dist.,*
  No. 06 Civ. 235, 2006 U.S. Dist. LEXIS 88874 (E.D. Tex. Dec. 7, 2006) ...............................15

*Hoffmann v. Sbarro, Inc.,*
  982 F. Supp. 249 (S.D.N.Y. 1997) ................................................................................. 16-17

*Jacobsen v. Stop & Shop Supermarket Co.,*
  No. 02 Civ. 5915, 2004 U.S. Dist. LEXIS 17031 (S.D.N.Y. Aug. 30, 2004) .........................17

*Lawrence v. City of Philadelphia, P.A.,*
  2004 WL 945139 (E.D.Pa. April 29, 2004)...........................................................................27

*Levinson v. Primedia Inc.,*
  No. 02 Civ. 2222 (CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)......................... 22-23

*Mackenzie v. Kindred Hosps. East, L.L.C.,*
  276 F. Supp. 2d 1211 (M.D. Fla. 2003)................................................................................15

*Mike v. Safeco Ins. Co. of Am.,*
  274 F.Supp.2d 216 (D.Conn. 2003)......................................................................................25

*Morisky v. Pub. Serv. Elec. & Gas Co.,*
  111 F. Supp. 2d 493 (D.N.J. 2000) ................................................................................17, 26

*Morales v. Plantworks, Inc.,* No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2,
  2006) ......................................................................................................................................22

*Pfohl v. Farmers Ins. Group,*
  No. 03 Civ. 3080, 2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004) ...................... 15-16

*Prizmic v. Armour, Inc.,*
  No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614 (E.D.N.Y. June 12, 2006).... 13-14, 16, 22

*Reich v. Homier Distrib. Co., Inc.,*
  362 F.Supp.2d 1009 (N.D. Ind. 2005) ..................................................................................26

*Robinson v. Dolgencorp, Inc.,*
  No. 06 Civ. 122, 2006 U.S. Dist. LEXIS 85471 (M.D. Fla. Nov. 13, 2006)..........................15

*Rodgers v. CVS Pharm., Inc.,*
  No. 05 Civ. 770, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006)...........................15

*Scholtisek v. Eldre Corp.,*
  229 F.R.D. 381 (W.D.N.Y. 2005)..........................................................................................17

**Cases** (cont'd)                                                                                    Page(s)

*Severtson v. Phillips Beverage Co.*,
    137 F.R.D. 264 (D. Minn. 1991)............................................................................16

*Silva v. Gordon Gaming Corp.*,
    2006 U.S. Dist. LEXIS 71847, No. 06-cv-00696 (D.Nev. Sept. 27, 2006)............................24

*Silverman v. SmithKline Beecham*,
    No. 06 Civ 7272, 2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 15, 2007) ..................15, 24

*Smalls v. Allstate Ins. Co.*,
    396 F.Supp.2d 364 (S.D.N.Y. 2005)........................................................................16

*Smith v. Sovereign Bancorp, Inc.*,
    Civ. No. 03-2420, 2003 WL 22701017 (E.D.Pa. Nov. 13, 2003) ...........................................17

*Tucker v. Labor Leasing, Inc.*,
    872 F. Supp. 941 (M.D. Fla. 1994)........................................................................30

*Tyler v. Payless Shoe Source, Inc.*,
    Case No. 2:05-cv-33-F (WO), 2005 U.S. Dist. LEXIS 31682 (N.D.Ala. Nov. 23,
    2005) .........................................................................................................17

*West v. Border Foods, Inc.*,
    Civ. No. 05-2525 (DWF/RLE), 2006 U.S. Dist. LEXIS 96963 (D.Minn. June 12,
    2006) .........................................................................................................29

*Wombles v. Title Max of Ala., Inc.*,
    No. 03 Civ. 1158, 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005) .........................15

## PRELIMINARY STATEMENT

Former tennis pros Todd Bazzini, Gregory Leonarczyk, Noah Allen, Ryan O'Neal, Erin Crandall, Adrian Cosma, Leaf O'Neal (the "Tennis Employees") and personal trainer John Markiewicz (collectively referred to as "Plaintiffs") claim that they—and *every* manager, administrator, and employee at *every* level in *every* department of defendant Club Fit—were improperly denied overtime pay and subjected to other violations of the Fair Labor Standards Act ("FLSA"). It is manifestly clear that Plaintiffs' attempt to conditionally certify such a disparate and dissimilar group of current and former Club Fit employees should be denied for three independent and dispositive reasons.

*First*, Plaintiffs have failed to consistently define the class of employees whom they purport to represent. No less than four different groupings of past and present Club Fit employees have been identified in Plaintiffs' Complaint, Motion, and proposed form of notice. This Court recognizes that, where the named plaintiffs are unable to state with precision to whom they contend they are similarly situated, "*it is not possible for the Court to conclude that a collective action certification is warranted.*"[1]

*Second*, Plaintiffs have not met their burden of proving that they are similarly situated to every other past and present Club Fit employee—regardless of title, duties, or pay status—with respect to a single uniform unlawful policy. Indeed, they wholly ignore Club Fit's written overtime policy governing non-exempt employees—even though they supplied this policy to the Court.[2] Club Fit's overtime policy—which allows eligible and approved employees to receive overtime pay—is lawful and was in place during the Plaintiffs' respective employment.

---

[1] *Flores v. Osaka Health Spa, Inc.,* No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675, *3 (S.D.N.Y. March 16, 2006) (emphasis added).

[2] *See* Marlborough Decl., Exhibit N at 5.

Plaintiffs nonetheless side-step Club Fit policy and rely on alleged remarks which they claim were made at unidentified points in time by defendant Bill Beck. In the face of Club Fit's written policy and Mr. Beck's vehement denial of the alleged comments, Plaintiffs are left with nothing more than their own speculation and assumptions to purportedly link them (and their unique, personal circumstances) to every other past and present Club Fit employee. Despite more than 25 years of combined work experience at Club Fit, Plaintiffs' own allegations lack documentary evidence to support their self-serving declarations. They only submit two pay stubs, covering one two-week pay period in 2006 for Leonarczyk and one pay period in 2005 for O'Neal, which, at best, might suggest a possible overtime discrepancy during discrete pay periods for those particular Plaintiffs. It is implicit in the dearth of corroborating evidence that even the named and opt-in Plaintiffs cannot establish their own claims against Club Fit.

Moreover, Club Fit employees work a variety of positions at every level spanning more than a dozen different departments beyond teaching tennis. These personnel handle Club Fit's operations, administration, finance, information technology, human resources, service training, community events, sales, marketing/advertising, creative services, maintenance, member services, Club Fit's restaurant and its nursery, party planning, fitness, aquatics, children's programming, perinatal fitness, physical therapy, and massage therapy. The submission of two pay stubs by two Tennis Employees is insufficient as a matter of law to support Plaintiffs' conclusory allegation that they are similarly situated to Club Fit's diverse workforce.

*Third*, Plaintiffs' contention that Club Fit commonly misclassified past and present Club Fit employees as exempt from overtime under the FLSA is entirely unsupported by even their conclusory Declarations. The law, moreover, is well-settled that potential collective action members are not similarly situated—*even at the notice stage*—where an employee-by-employee

2

analysis must be undertaken to determine their respective classifications. Likewise, Plaintiffs'
unspecified claims that Club Fit did not compensate unnamed employees for unidentified work
allegedly performed "off-the-clock" are groundless. Again, they fail to supply the most basic
information (names, dates, tasks performed, whether they sought payment, the identity of the
supervisor(s) who allegedly denied compensation, *etc.*) to support this allegations. Precedent,
moreover, is again clear that the fact-intensive inquiry necessary to analyze Plaintiffs' alleged
"off-the-clock" claims make those claims too individualized for adjudication through a collective
action.

    In their Motion, Plaintiffs misrepresent certain relevant facts and omit others in alleging
that they are similarly situated to every other Club Fit employee—regardless of title, duties, or
status. Contrary to their assertions, Plaintiffs and each of their different proposed collective
action groups were not subjected to a common unlawful policy nor do they share similar job
duties or compensation status with every other past and present Club Fit employee. Indeed, the
Plaintiffs are not even substantially similar to each other. Denial of their Motion is, therefore,
warranted.

<u>**COUNTERSTATEMENT OF FACTS**</u>

    For more than 30 years, Club Fit has offered comprehensive health and fitness facilities
and programming to enhance quality of life and physical well being for community members of
all ages. Founded in 1973, Club Fit presently operates clubs in Briarcliff Manor and Jefferson
Valley, New York. (Beck Decl., ¶¶3-4).

    With the exception of Markiewicz, the Tennis Employees are former or current
employees of Club Fit's Tennis Department. They held various staff, administrative, and
management positions within and outside of the Tennis Department, worked for different

3

supervisors, and performed different functions during their tenures with Club Fit. (Beck Decl.,
¶¶5-6).

### The Plaintiffs Received Club Fit's Written Overtime Policy.

For at least the last six years, Club Fit maintained a written overtime policy in its

Employee Handbook, which the Plaintiffs received and could readily access. (Beck Decl., ¶7;

Marlborough Decl., Exhibit N at 5). Club Fit's overtime policy states:

> **Overtime**
> Employees who are eligible to receive overtime pay may not work more than 40 hours in
> a workweek without obtaining prior approval from their manager.

(Beck Decl., ¶8; Marlborough Decl., Exh. N at 5). Club Fit's written overtime policy also states:

"It is the employee's responsibility to maintain accurate records for all hours worked." The Handbook

also contains Club Fit's policy on recording time, which makes clear that all employees will be

paid for "the time that is correctly recorded and approved by your manager." (Beck Decl., ¶9;

Marlborough Decl., Exh. N at 5).

When, at times, Tennis Employees or others expressed an interest in working overtime,

they were reminded of this written overtime policy. Contrary to Plaintiffs' allegation, Club Fit

never maintained a blanket prohibition against paying overtime to eligible employees and Club

Fit managers have granted, and continue to grant, employees permission to work overtime and

pay overtime wages when necessary for specific tasks. During their employment, moreover,

none of the Plaintiffs complained to management that their various supervisors had violated

these written policies. (Beck Decl., ¶¶9-12).

### The Plaintiffs Did Not Work "Off-The-Clock."

The Tennis Employees contend that every task they ever performed beyond teaching

tennis—including picking up tennis balls after a lesson—was improper "off-the-clock" work.

This arises from their creation of an artificial distinction between their "on court" and "off court" duties. Such a fictitious distinction never existed. (Beck Decl., ¶13).

Indeed, each Tennis Employee acknowledged in signed writings that they were expected to do more than simply teach tennis. Their daily routines included a variety of other tasks including, for example, coordinating some of the financial aspects of the lessons they provided. In that regard, each Tennis Employee was expected to:

- insure that clients paid for lessons;
- make sure prepaid lesson packages are kept up to date and finished within limits;
- collect daily chits for private lessons;
- return phone calls within 24 hours; and
- attend monthly and bimonthly meetings.

(Beck Decl., ¶14 and Exhibit 2). In the normal course of their work, the Tennis Employees also understood that they were expected to:

- wear tennis attire;
- put away tennis balls and leave the courts neat and clean;
- prepare and submit their own payroll information at the end of each month;
- arrange for coverage of all lessons; and
- address managers, staff, and members professionally.

(Beck Decl., ¶15 and Exh. 2). By signing off on their job descriptions, the Tennis Employees acknowledged their "complete understanding of these items." (Beck Decl., ¶¶16-17 and Exh. 2, No. 41).[3]

Markiewicz' job duties and responsibilities as a Personal Trainer also included related administrative tasks which he (like the Tennis Employees) erroneously claims constitute

---

[3] The Tennis Employees fail to identify a day, week, or month within the last three years when they tried to record time for a specific task but were stopped by their supervisor.

5

uncompensated "off-the-clock" work.  In his only example of this, Markiewicz asserts that he was not compensated for his "frequent telephone contact with club members."  Yet, his Personal Trainer job description—which he signed—specifically states that he was required to "Provide follow up through use of telephone calls" *as part of his job*.  (Beck Decl., ¶¶57-58 and Exhibit 8; Markiewicz Decl., ¶11).[4]

Club Fit further did not require the Tennis Employees to accompany junior players to off-site tournaments.  The Tennis Employees' job descriptions contain no reference whatsoever to such a requirement.  On occasion, some Club Fit members may have asked a Tennis Employee to accompany them and/or their child to an off-site tournament.  Whether a Tennis Employee agreed or refused such a request was strictly between the Tennis Employee and the Club Member.  Club Fit played no role in the decision to accept or decline that opportunity.  Likewise, travel arrangements, hotel accommodations, and additional expenses—including compensation of the Tennis Employee's time, if any—were handled directly between the Club Fit member and the Tennis Employee.  Such excursions were not part of the Tennis Employees' essential job functions and Club Fit was not involved in such arrangements.  (Beck Decl., ¶¶18-20).

What the Plaintiffs call "off-the-court" tasks were normal requirements of their positions, as stated in the descriptions they signed and for which they were duly compensated.  They were not "coerced" into working "off-the-clock"; they were simply doing their jobs.  (Beck Decl., ¶16).  For their provision of tennis lessons and related tasks, the Tennis Employees received hourly commissions, ranging from $22 to $33 per hour.  This, however, is where the similarities between the Tennis Employees end.  (Beck Decl., ¶¶22-23).

---

[4] Markiewicz also fails to specify any instance within the last three years when he was stopped from recording time by his supervisor.

**As A Former Member Of Management, Noah Allen Is Dissimilar To The Other Tennis Employees.**

In July 2003, Allen was offered and accepted the position of Co-Director of Adult Tennis Programming and Men's League Coordinator at Club Fit. For administrative duties associated with that work, Allen received $17.00 per hour, in addition to his $29.00 hourly rate as a tennis pro.[5] (Beck Decl., ¶24).

### Allen's Promotion To Tennis Manager

On September 7, 2004, Allen was offered and accepted a promotion to the position of Tennis Manager, a full-time exempt administrative position with an attendant annual salary of $50,000. As a member of Club Fit management, Allen's title, job duties, and exempt status were different from every other Tennis Employee. In that role, Allen handled day-to-day operational issues of the Tennis Department at an administrative level, which included processing payments, scheduling, holding meetings, supervising tennis programming and planning, and managing, growing, and developing Club Fit's tennis program and staff of professionals. Allen also assumed supervision of Club Fit's Junior Development Program, which included registration, try-outs, placements, scheduling, and other administrative issues. (Beck Decl., ¶¶25-26 and Exhibit 3).[6]

### Allen's Removal From Management Due To His Underperformance

Over time, Allen's supervisor, Mitchell David, noted numerous deficiencies in Allen's performance as Tennis Manager. In a special evaluation conducted on January 13, 2005, Mr.

---

[5] Allen's Declaration omits any reference to his work as League Coordinator or the additional compensation he received and he submits no pay stubs or other documents to corroborate his claim of allegedly unpaid overtime.

[6] Allen claims that he worked in excess of 40 hours per week after September 2004 but conspicuously omits the fact that he was an exempt salaried member of Club Fit management at that time.

7

David and Allen reviewed at least a dozen areas in which Allen needed to improve.  A 60-day follow-up evaluation was then set for March 2005.  Allen signed documentation memorializing his performance evaluation without comment on January 22, 2005.  (Beck Decl., ¶¶28-29 and Exhibit 4).

Allen's 60-day evaluation took place on or about March 17, 2005.  Though Mr. David noted that Allen had "made progress" since January 2005, the evaluation identified at least nine areas where Allen was "starting to slip."  Allen signed documentation memorializing that performance review without comment on March 25, 2005.  (Beck Decl., ¶30 and Exhibit 5).  Despite repeated guidance and instruction, Mr. David believed that Allen's performance did not further improve and he was removed as Club Fit's Tennis Manager on June 27, 2005.  (Beck Decl., ¶¶31-32).

Regardless of the fiction that Allen apparently spread to the other Plaintiffs (which they parrot verbatim in their Declarations), Allen's demotion was the result of well-documented performance problems.  It was not motivated in any way by a desire to retaliate against him for non-existent "wage and hour grievances."  Indeed, no one at Club Fit ever threatened or retaliated against Allen or any of the Plaintiffs for any reason.  (Beck Decl., ¶¶31-33).

After his demotion, Allen was offered the opportunity to resume teaching and his responsibilities as Men's League Coordinator.  Instead, he took a sabbatical from Club Fit from June 27 to August 15, 2005.  Allen then resumed work at Club Fit as a Head Tennis Pro.  Roughly one month later, he resigned to re-locate to California.  (Beck Decl., ¶¶34-36).

8

**Gregory Leonarczyk Is Dissimilar To The Other Tennis Employees Because He Also Held A Variety Of Different Positions.**

In addition to teaching tennis and performing related tasks, Leonarczyk was offered and accepted the position of Program Director for Club Fit's Junior Challenge Ladder. In that role, Leonarczyk was responsible for insuring that:

- Saturday night league matches are played and results tabulated;
- tables and paperwork removed from the courts;
- the courts are ready for scheduled maintenance; and
- the building is locked and secure at the conclusion of play.

(Beck Decl., ¶¶37-39 and Exhibit 6). On top of his teaching rate and coordinator rate, Leonarczyk was also offered and accepted work as a tennis racquet stringer at Club Fit. (Beck Decl., ¶40).[7]

**Erin Crandall[8] Is Dissimilar To The Other Tennis Employees Because She Held Different Positions Inside And Outside Of The Tennis Department.**

In addition to teaching tennis and performing related tasks, Crandall was offered and accepted the position of Administrative Assistant to Club Fit's Assistant General Manager, Joseph Chavez. In that capacity, she reported directly to Mr. Chavez and was responsible for ordering supplies, maintaining inventory, managing insurance certificates, and handling frontline staff and management requests outside of the Tennis Department. (Beck Decl., ¶¶41-43). On top of her teaching and administrative functions, Crandall was offered and accepted the position

---

[7] Leonarczyk's Declaration omits any reference to his work as Program Director or as a racquet stringer and the additional compensation he received for that work.

[8] Although Plaintiffs did not submit a Declaration from opt-in plaintiff Crandall, a review of her work experience at Club Fit demonstrates that her work and responsibilities also are different from the other Tennis Employees. She, like Allen, Bazzini, Cosma, and Markiewicz, submits no pay stubs or other documentation to support Plaintiffs' Motion.

of Assistant Coordinator of Club Fit's Junior Ladder League.  In that role, for which she received

an additional $18,000, Crandall was responsible for:

- taking attendance, accepting payments, and providing safety instructions;
- monitoring all matches; and
- supervising the departure of the junior players.

(Beck Decl., ¶44 and Exh. 6).

**The Plaintiffs Are Not Substantially Similar To Any Other Club Fit Employees.**

Though the above demonstrates that the Tennis Employees are not even similarly situated

to each other, there are more than a dozen different departments within Club Fit whose salaried

and hourly employees perform work outside of the Tennis and Fitness Departments that is

entirely distinct from that of the Plaintiffs.  Those departments include:

- Operations
- Administration
- Finance
- Information Technology
- Human Resources
- Service Training
- Community Events
- Sales
- Marketing/Advertising
- Creative Services
- Maintenance
- Member Services
- Nursery
- Party Planning
- Children's Programming
- Perinatal Fitness
- Physical Therapy
- Massage Therapy
- Cancer Wellness
- Reception
- Child Care

Each of these departments employs a variety of managers, administrators, and exempt and non-exempt personnel who perform a wide range of different functions. Though Plaintiffs contend that Club Fit "commonly" misclassified as exempt employees within these various programs, Plaintiffs do not claim that they were misclassified nor identify one such person in any of these Departments who was even unintentionally misclassified. (Beck Decl., ¶¶46-47).

Plaintiffs further intimate that they are similarly situated to unnamed aquatics employees or workers in Club Fit's Café. Club Fit's aquatics department includes supervisors, lifeguards, swim instructors, and swim team coaches who are compensated differently based upon their respective responsibilities. Likewise, Club Fit's restaurant workers include supervisors, chefs, cashiers, food preparation workers, and catering staff. Some of them work fixed schedules while others work sporadically; some are eligible to receive tips, while others are not. (Beck Decl., ¶¶48-49).

Plaintiff Markiewicz' employment with Club Fit further illustrates how he (and his colleagues in the Fitness Department) differs from the Tennis Employees and every other Club Fit employee. As a Fitness Professional, Markiewicz assisted Club Fit members as they exercised in the gym area and his duties included observing, assisting, and spotting gym members as needed, and cleaning equipment and racking weights after use. (Beck Decl., ¶¶50-52 and Exhibit 7; Markiewicz Decl., ¶3). Markiewicz reported to Fitness Directors Donna Berta and David Garcia. His starting rate was $8.50 per hour and, at the time that his employment was terminated for cause, he was earning $12.70 per hour as a Fitness Professional. In that role,

Markiewicz admits that he rarely, if ever, worked more than 40 hours per week. (Beck Decl., ¶53; Markiewicz Decl., ¶¶7-8).[9]

On July 1, 2002, Markiewicz was offered and accepted the additional position of Personal Trainer.  As a Personal Trainer, Markiewicz was responsible for providing one-on-one individualized fitness instruction by appointment to Club Fit members.  In that role, Markiewicz reported to a different Director, Barbara Cullen.  His starting rate was $18.00 per hour and, at the time that his employment was terminated for cause, Markiewicz was earning $27.00 per hour as a Personal Trainer.  He admits that his two jobs at Club Fit were different positions with different job descriptions, responsibilities, supervisors, expectations, hours, and rates of compensation. (Beck Decl., ¶¶54-57 and Exhibit 8; Markiewicz Decl., ¶¶5, 9).

Markiewicz nonetheless claims that his rate of pay as a Personal Trainer should have been at time-and-a-half his rate as a Fitness Professional.  In addition to the fact that he worked two different jobs at Club Fit, there can be no doubt that Markiewicz *was paid more than twice* his Fitness Professional rate for *every* hour worked as a Personal Trainer.  If Markiewicz' argument is followed to its logical conclusion, then Club Fit *overpaid* him for every hour that he worked as a Personal Trainer. (Beck Decl., ¶¶60-61; Markiewicz Decl., ¶10).

---

[9] Markiewicz' claim that he was occasionally so busy that he could not complete his work as a Fitness Professional in an eight-hour day is specious. Indeed, he wrote on his 2003 Performance Evaluation that he needed "more responsibilities and involvement to keep me busy." (Beck Decl., ¶59 and Exhibit 9).

## ARGUMENT

**I.    COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE PLAINTIFFS HAVE FAILED TO DEFINE THE CLASS OF CLUB FIT EMPLOYEES WHOM THEY PURPORT TO REPRESENT**

As a threshold matter, this Court has recognized that a plaintiff seeking collective action

certification and court-authorized notice under the FLSA must "consistently define the universe

of similarly situated individuals" whom they claim to represent. *Flores v. Osaka Health Spa,*

*Inc.,* No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675, *3 (S.D.N.Y. March 16, 2006); *accord*

*Prizmic v. Armour, Inc.,* No. 05-CV-2503 (DLI)(MDG), 2006 WL 1662614, *3 (E.D.N.Y. June

12, 2006). Yet, Plaintiffs identify at least four different groups of Club Fit employees to whom

they claim to be substantially similar. As a matter of law, Plaintiffs' fundamental inability to

define the proposed class of potential plaintiffs warrants denial of their Motion.

In *Flores*, Magistrate Judge Fox made clear that a plaintiff's failure to describe the scope

of the purported group fatally undermines any application for collective action certification:

> The plaintiff's description of the universe of proposed plaintiffs, that is, the class of persons she maintains is similarly situated to her, is not consistent. On one occasion, the class is alleged to be composed of masseuses who work and did work at the defendants' spa facilities in excess of 40 hours in a work-week and were not compensated for the hours beyond 40 hours that they worked. On another occasion, the class is not limited to masseuses, but is claimed to be composed of "all [] current and former employees of the defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants." On yet another occasion, the class is described as "all non-exempt current and former employees" of an entity, "Osaka Health Spa of New York," that is not a defendant in the action. In addition, Flores has confused matters further by describing the proposed plaintiffs as "home health aide employees" in the notice concerning the pendency of this action that she has asked the Court to approve for publication.

2006 WL 695675, at *3. The Court concluded: "In a situation such as this, where the named

plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly

situated, *it is not possible for the Court to conclude that a collective action certification is*

13

*warranted.*" *Id.* (Emphasis added). *Accord Prizmic,* 2006 WL 1662614, at \*3 (collective action certification denied where "[i]n his complaint, plaintiff alleges that only his fellow installation installers were denied overtime compensation. Yet, in the instant motion, plaintiff seeks to notify 'all current and former employees of Armour, Inc.' over the past three years who were not paid overtime.").

Plaintiffs here also fail to define the proposed class. In their Complaint, Plaintiffs make their allegations "on behalf of all hourly employees, within the meaning of the FLSA, who were not paid appropriate overtime compensation within three years of the date of the filing of this Complaint." (Marlborough Decl., Exh. A: Complaint at ¶18). In Plaintiffs' Motion, however, they define the proposed class differently, to include "all employees of Club Fit within the last six years who do not have an ownership interest in the corporate defendants"—regardless of whether they are exempt from eligibility for overtime under the FLSA. (Pl. Mem. at 17). Plaintiffs then seek to distribute their proposed court-authorized notice to yet another potential class—anyone "employed by Club Fit between May 15, 2002 and the present"—regardless of whether they are exempt or have an ownership interest in Club Fit. (Marlborough Dec., Exh. P at 1). Finally, Plaintiffs' proposed notice muddies the waters further by identifying a fourth potential class—"tennis, fitness, aquatics, wellness and café staff"—who "were not paid wages required by law, including overtime wages." *Id.* at 2.

So far, Plaintiffs have proposed four different class definitions in their pleadings. There is no room for doubt that "[i]n a situation such as this, where the named plaintiff is unable to state clearly and specifically to whom it is that [they] contend [they are] similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted." *Flores,* 2006 U.S. Dist. LEXIS 11378, at \*3.

## II.    COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE PLAINTIFFS HAVE NOT DEMONSTRATED THAT OTHERS HAVE A SUFFICIENT INTEREST IN THIS ACTION.

Courts are increasingly recognizing that plaintiffs bear the initial burden of establishing

that other employees exist who actually desire to opt-in to the litigation. *See Davis v. Charoen*

*Pokphand*, 303 F. Supp. 2d 1272, 1276-77 (M.D. Ala. 2004);[10] *see also Robinson v. Dolgencorp,*

*Inc.*, No. 06 Civ. 122, 2006 U.S. Dist. LEXIS 85471, *19-21 (M.D. Fla. Nov. 13, 2006) (three

affidavits filed in support of conditional certification "insufficient to demonstrate to the Court's

satisfaction that there are other similarly situated employees who desire to opt-in to this

action").[11]  Here, Plaintiffs have failed to proffer evidence that current or former Club Fit

employees have any interest in joining this litigation.  Since this lawsuit was filed several months

ago, the Plaintiffs personally spread news of the lawsuit to current (and presumably former) Club

Fit employees.  (Beck Decl., ¶62).  Despite Plaintiffs' solicitations, only two people with viable

---

[10] (citing *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Silverman v. SmithKline Beecham*, No. 06 Civ. 7272, 2007 U.S. Dist. LEXIS 80030, at *5 (C.D. Cal. Oct. 15, 2007); *Hampshire v. Port Arthur Ind. Sch. Dist.*, No. 06 Civ. 235, 2006 U.S. Dist. LEXIS 88874, at *4-5 (E.D. Tex. Dec. 7, 2006); *Pfohl v. Farmers Ins. Group*, No. 03 Civ. 3080, 2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004); *Mackenzie v. Kindred Hosps. East, L.L.C.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003); *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 897 (E.D. Tex. 1997)).

[11] *Accord Barten v. KTK & Assocs.*, No. 06 Civ. 1574, 2007 U.S. Dist. LEXIS 54068, *7-8 (M.D. Fla. July 24. 2007) (denying conditional certification where plaintiff identified "only one viable opt-in plaintiff" in eleven months); *Rodgers v. CVS Pharm., Inc.*, No. 05 Civ. 770, 2006 U.S. Dist. LEXIS 23272, 14-15 (M.D. Fla. Mar. 22, 2006) (denying conditional certification because "[p]laintiff has failed to provide sufficient evidence that there are other employees who desire to opt in to this action, other than the two who have filed consents"); *Wombles v. Title Max of Ala., Inc.*, No. 03 Civ. 1158, 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005) (denying plaintiff's motion to facilitate notice where "plaintiffs' unsubstantiated belief about other employees' willingness to join this action and their inability to identify more than two other employees willing to join shows that the plaintiffs have not met their burden").

claims have opted-in to this action.[12]  Moreover, no one outside of Club Fit's Tennis Department

has opted-in.  This is insufficient to justify the overbroad notice that Plaintiffs seek through this

Motion.  *See, e.g., Pfohl*, 2004 U.S. Dist. LEXIS 6447, at * 31-32.

Though the FLSA is remedial in nature, courts also have a responsibility to deny a

needless motion so as to avoid unnecessarily "stirring up" litigation through unwarranted

solicitation.  *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 266-7 (D. Minn. 1991); *see*

*also Briggs v. United States*, 54 Fed. Cl. 205, 207 (Fed. Cl. 2002) ("issuance of such notice when

certification will not be granted would be a futile act, would delay the disposition of this case as

to the plaintiffs presently involved, and itself may cause this case to become unmanageable.").

### III.    COLLECTIVE ACTION CERTIFICATION IS INAPPROPRIATE BECAUSE PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY ARE SIMILARLY SITUATED TO ANY OTHER CLUB FIT EMPLOYEE.

To warrant certification as a collective action under § 216(b) of the FLSA, a plaintiff

must prove facts "sufficient to demonstrate that they *and* potential plaintiffs *together* were

victims of a common policy or plan that violated the law."  *Hoffmann v. Sbarro, Inc.*, 982 F.

Supp. 249, 261 (S.D.N.Y. 1997) (emphasis added).  Though this burden may not be onerous, "[a]

plaintiff must provide actual evidence of a factual nexus between his situation and those that he

claims are similarly situated rather than mere conclusory allegations." *Prizmic*, 2006 WL

1662614, at *2; *see, e.g., Smalls v. Allstate Ins. Co.*, 396 F.Supp.2d 364, 369 (S.D.N.Y. 2005)

("conclusory statements" cannot defeat summary judgment motion); *Blohm + Voss GmbH v.*

*M/V Olympia Explorer*, No. 05 Cv. 7753 (BSJ), 2008 WL 2756377, *3 (S.D.N.Y. July 15, 2008)

(same).

_____

[12] Cosma also opted-in, although his last day of work at Club Fit is outside either the two-year or three-year statute of limitations of the FLSA.  (Cosma Decl., ¶2).

16

A plaintiff's ability to satisfy this burden is important because "[a]bsent such a showing, an employer may be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense." *Id.* (citing *D'Anna v. M/A-Com, Inc.*, 903 F.Supp. 889, 893-94 (D.Md. 1995); *see Smith v. Sovereign Bancorp, Inc.*, Civ. No. 03-2420, 2003 WL 22701017, *2 (E.D.Pa. Nov. 13, 2003) (improvidently granted conditional certification is "an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant"); *Tyler v. Payless Shoe Source, Inc.*, Case No. 2:05-cv-33-F (WO), 2005 U.S. Dist. LEXIS 31682, *20 (N.D.Ala. Nov. 23, 2005) (refusing to certify collective action where "the evidence shows that certifying a collective action in this case would undermine, rather than promote, the purpose of judicial efficiency.").

The decision to authorize notice to hundreds of current and former employees, therefore, is not automatic and the Court has broad discretion to determine whether or not notice is appropriate. *See Evancho v. Sanofi-Aventis*, Civil Action No. 07-2266 (MLC), 2007 U.S. Dist. LEXIS 93215, *9 (D.N.J. Dec. 19, 2007); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000).

## A.    Plaintiffs' Conclusory Allegations Are Insufficient To Establish That They Are Similarly Situated To Every Other Club Fit Employee.

Plaintiffs first must make a "substantial" showing that the unnamed potential plaintiffs in their proposed notice—every past and present Club Fit employee, regardless of position, title, duties, or payroll status—are "victims of a common policy or plan that violated the law." *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005); *see also Jacobsen v. Stop & Shop Supermarket Co.*, No. 02 Civ. 5915, 2004 U.S. Dist. LEXIS 17031, *3 (S.D.N.Y. Aug. 30, 2004); *Hoffmann*, 982 F. Supp. at 261. Here, the gravamen of Plaintiffs' claim is that they are substantially similar to every past and present employee because Club Fit allegedly never paid

overtime to any employee under any circumstances in the past six years. As support, Plaintiffs

rely upon two pay stubs and their own vague, imprecise, largely identical, and wholly self-

serving statements. The sum total of Plaintiffs' "actual evidence" lacks even a scintilla of

credible proof to support their conclusory allegation that *every* current and former Club Fit

employee was a "victim" of some unlawful "common plan."

Drilling down to the core of Plaintiffs' claims leaves nothing more than their:

- unidentified, undated "conversations" with unknown "co-workers and management";[13]
- observation of swim meets at unknown dates and times attended by unknown employees;[14]
- undated "observations" of unidentified employees in unidentified departments performing unidentified tasks at unidentified times;[15] or
- subjective "belief" that unidentified workers reporting to unidentified supervisors in unidentified positions did not receive overtime for unidentified work at unidentified times.[16]

Despite having amassed more than 25 years of combined work experience at Club Fit, Plaintiffs

only offer two pay stubs to support their ambiguous and unspecified perceptions of their own

unique circumstances. They fail to name even one other current or former Club Fit employee

outside of the Tennis Department to whom they claim to be similarly situated. They do not state

when these unnamed employees allegedly worked more than 40 hours per week; what were the

weekly schedules of these other employees; which supervisor allegedly denied authorizing

overtime pay to which employee; or how much overtime they were allegedly denied. It is

---

[13] Leonaczyk Decl., ¶32; Bazzini Decl., ¶¶19, 21; O'Neal Decl., ¶¶23, 25.

[14] Leonarczyk Decl., ¶33.

[15] Allen Decl., ¶21; Markiewicz Decl., ¶16; Bazzini Decl., ¶¶21-22; Cosma Decl., ¶23.

[16] Allen Decl., ¶20; Markiewicz Decl., ¶17.

beyond dispute that this proof is patently insufficient to support their Motion. *See Barfield v. N.Y. City Health & Hosps. Corp.*, 05 Civ. 6319 (JSR), 2005 U.S. Dist. LEXIS 28884, *2-3 (S.D.N.Y. Nov. 18, 2005) (despite alleged widespread practice of defendants' knowing failure to pay overtime to nurses who worked more than 40 hours per week, the District Court denied collective action certification because "plaintiff presents nothing but limited anecdotal hearsay to suggest that there is a widespread practice of referral nurses working in excess of 40 hours per week by signing up through multiple agencies"); *Briggs*, 54 Fed. Cl. at 207 (evidence that workers in as many as five states failed to receive overtime pay insufficient to support collective action certification because plaintiff "offers no specific support for the allegations of a violation (*e.g.*, names, dates, places, types of unlawful action, *etc.*). This evidence is insufficient."); *Evancho*, 2007 U.S. Dist. LEXIS 93215 ("[u]nsupported assertions of widespread violations are not sufficient"); *Aguirre v. SBC Communs., Inc.*, No. H-05-3198, 2006 U.S. Dist. LEXIS 22211, *18-19 (S.D. Tex. Apr. 11, 2006) (denying conditional certification where "plaintiffs' conclusory and unsupported allegations [were] inadequate even for first-stage certification and notice.").

Plaintiffs' reliance on Allen's demotion in 2005 and random remarks claimed to have been made by Mr. Beck at undefined points in time does not create a connection between their unique personal circumstances and that of every other Club Fit employee. Even if the Court takes this extraordinary leap—and rejects Club Fit's written policies, Mr. Beck's unequivocal denials, *and* Allen's well-documented underperformance—collective action certification remains inappropriate.

Indeed, Allen claims that he noted one alleged compensation concern at some undefined point prior to 2002[17] after which he was *promoted* to an exempt management position in 2004.[18] His subsequent demotion in 2005 was based upon his own unique, well-documented performance deficiencies, and he has offered no proof that Club Fit's actions were related to anything that occurred prior to 2002 (before Mr. David was hired)[19] or to some undefined attempt to "mobilize" Allen's subordinates against Club Fit management. (Beck Decl., ¶¶28-33 and Exhibits 4 and 5). Most telling, and entirely consistent with the Plaintiffs' flimsy "evidence":

- Allen never identifies who he was trying to "mobilize" in 2005, when this allegedly took place, or what he allegedly did to try to "mobilize" these unidentified individuals;[20] *and*

- Leonarczyk and O'Neal—who parrot Allen's story verbatim—never state that Allen was trying to "mobilize" *them* in 2005 nor do they identify who Allen was allegedly trying to "mobilize," or how or when this occurred.[21]

Moreover, Plaintiffs wholly ignore the written overtime policy contained in the Club Fit Employee Handbook they submitted to the Court in support of their Motion. (Marlborough Decl., Exh. N). It cannot be disputed that this policy governs all non-exempt Club Fit employees: "Employees who are eligible to receive overtime pay may not work more than 40 hours in a workweek without obtaining prior approval from their manager." *Id.* at 5. In fact, Club Fit managers have granted and continue to grant employees permission to work overtime and pay overtime wages when necessary for specific tasks. (Beck Decl., ¶9). The Handbook

---

[17] Allen Decl., ¶23. Club Fit denies that such a complaint was made.

[18] Allen Decl., ¶¶9-10; Beck Decl., ¶¶25-26.

[19] Mr. David was hired by Club Fit in 1993. (Beck Decl., ¶28).

[20] Allen Decl., ¶23.

[21] Leonarczyk Decl., ¶35; O'Neal Decl., ¶27.

further instructs that "[e]mployees are required to 'punch in/out' when arriving and leaving their shift"; "[i]t is the employee's responsibility to maintain accurate records for all hours worked"; and employees will be paid for "the time that is correctly recorded and approved by your manager." *Id.* These written policies are lawful and there has been, and can be, no assertion to the contrary.

Plaintiffs have offered no evidence that any other past and present Club Fit employee shares Plaintiffs' personal and individualized circumstances. *Flores v. Osaka* is again instructive. Flores—like Plaintiffs here—claimed that she "served at least 7-8 customers per [12-hour] shift and [that] it is [her] understanding that the other massage therapists working my shift did the same." 2006 WL 695675, at *3. The District Court nonetheless found that plaintiff failed to make even a "modest" showing "to establish that she and the proposed plaintiffs together were the victims of a common policy or plan that violated the law":

> The submissions made by the plaintiff to the Court do not provide any factual information concerning the basis for Flores' "understanding" of the quantum of work performed by "other massage therapists" assigned to work during the shift on which Flores worked. Flores also alleges, in her memorandum of law, that the defendants' spa customers typically paid cash tips in amounts ranging from $20 to $50, and that the defendants "confiscated our tips." These allegations, like the allegations Flores made in an affidavit she submitted in reply to the defendants' opposition to her motion, are broad conclusory allegations. As such, they offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated Flores and the way they may have compensated other employees during the relevant time period.

*Id.* The court concluded that reliance upon such "broad conclusory allegations" militates against certification as an FLSA collective action. *Id. Accord Diaz v. Electronics Boutique of America, Inc.*, No. 04-CV-0840E(SR), 2005 WL 2654270, *5 (W.D.N.Y. Oct. 17, 2005) (collective action certification denied because potential plaintiffs "have not been shown to be similarly situated and

plaintiffs' speculative allegations do not rescue their claims from being insufficiently specific beyond their own respective circumstances.") (citation omitted);

In *Morales v. Plantworks, Inc.*, plaintiffs were landscapers who contended that their employer maintained a policy of requiring plaintiffs to work more than forty hours per week without paying them minimum wage and overtime compensation. Plaintiffs submitted documentation concerning their own claims but no evidence relating to any other Plantworks employee other than the conclusory allegation that "[t]here are over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation while working for Defendants." No. 05 Civ. 2349 (DC), 2006 WL 278154, *2 (S.D.N.Y. Feb. 2, 2006). Judge Chin denied plaintiffs' application for collective action certification because plaintiffs "offered nothing of evidentiary value" concerning any member of the purported class of additional plaintiffs. *Id.* at *3.

In *Prizmic,* the plaintiff made the broad allegation that "he and other installation installers were denied overtime compensation." In refusing to certify a collective action, the District Court observed the same deficiencies present in the application at bar, namely that plaintiff failed to show how "anyone else employed by defendants were paid, what their job duties were or the hours they worked." 2006 WL 1662614, *3.

Likewise, in *Levinson v. Primedia Inc.*, the District Court denied collective action certification where, like here, plaintiffs "provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants, and that *they* were deprived of a minimum wage and overtime rates," because "they [] failed to make a sufficient showing that the same was true for other potential plaintiffs." No. 02 Civ. 2222 (CBM), 2003 WL 22533428,

at *1 (S.D.N.Y. Nov. 6, 2003) (emphasis in original).  Indeed, the Court held that plaintiffs failed

to support their conclusory assertions:

> with a factual showing that extends beyond their own circumstances.  With regard
> to the alleged failure to provide a minimum wage or overtime pay, plaintiffs'
> documentation is similarly limited to *their own compensation*.    While the
> contracts submitted to the court, and their attached compensation schedules, do
> appear to be substantially similar, *a demonstration of the similarity of*
> *circumstances of the existing plaintiffs is, of course, insufficient*.  Even if the
> assertion, found in each of plaintiffs' affidavits submitted to the court, that "All
> guides worked under the same contracts," were true, this would not constitute a
> showing that defendants' compensation structure violated the law.    The
> compensation schedules may lack a provision for overtime rates or a guaranteed
> minimum wage, but it is only when this evidence is combined with evidence such
> as that provided in connection with the existing plaintiffs, of hourly rates below
> minimum wage, or overtime hours without overtime pay, that the necessary
> showing becomes possible. Plaintiffs' attempts to broaden their allegations
> beyond the existing plaintiffs are insufficiently specific to make such a showing.

*Id.* at *2 (emphasis added).  Thus, this Court routinely denies conditional certification where, as

here, plaintiffs fail to provide admissible evidence that demonstrates that they are similarly

situated to the employees to whom they seek to include in the proposed collective action.

For a stark illustration of how dissimilar the Plaintiffs are from each other—let alone

from every other Club Fit employee—the Court need look no further than Markiewicz'

circumstances.  He admits that he worked two different jobs, with different job descriptions,

hours, job duties, supervisors, and pay rates.  (Beck Decl., ¶¶52-57 and Exhibits 7 and 8;

Markiewicz Decl., ¶¶2, 5-6, 9).  Markiewicz admits that as a Fitness Professional he rarely, if

ever, worked more than 40 hours per week.  (Beck Decl., ¶59 and Exh. 9; Markiewicz Decl.,

¶¶7-8).  On top of his work as a Fitness Professional, he provided one-on-one instruction by

appointment as a Personal Trainer.  (Beck Decl., ¶¶54-56; Markiewicz Decl., ¶¶2-3).  Based on

his admission that he worked two different jobs and that neither exceeded 40 hours per week,

Markiewicz' FLSA allegations are misplaced.  Moreover, his assertion that he should have been

paid 1.5 times his Fitness Professional rate for all hours worked over 40 ignores the fact that his

Personal Trainer rate was *more than double* his Fitness Professional rate.  (Beck Decl., ¶¶60-61).

That Markiewicz, a named Plaintiff, has no cognizable claim against Club Fit is demonstrative

proof that geometric expansion of this litigation is not warranted.  *See Silva v. Gordon Gaming*

*Corp.*, 2006 U.S. Dist. LEXIS 71847, No. 06-cv-00696, *9 (D.Nev. Sept. 27, 2006) (allegations

based upon "information and belief" that other employees were subjected to a common policy

insufficient to determine whether a similarly situated group of potential plaintiffs existed).

Because the record does not support Plaintiffs' allegation that every past and present

Club Fit employee was treated in the same manner, they cannot use their conclusory assumptions

to bind their claims to those of a putative class.  *See Silverman*, 2007 U.S. Dist. LEXIS 80030, at

*5 (denying certification and notice where, as here, plaintiff submitted "nearly identical"

declarations from former sales reps that were not representative of the company's various

discrete business divisions and which all contained numerous hearsay and other evidentiary

problems).  The Court should, therefore, exercise its broad discretion and deny Plaintiffs'

Motion.

**B.    Plaintiffs' Allegation That Club Fit Misclassified Exempt Employees Is Too Individualized For Collective Treatment.**

Plaintiffs' Complaint does not allege that Club Fit misclassified exempt employees as

non-exempt.  Despite their collective years of experience at Club Fit, Plaintiffs' Declarations do

not state that Club Fit misclassified them—or anyone else—as exempt.  Yet, Plaintiffs assert—

for the first time in their Motion—an argument that an unknown number of unidentified Club Fit

employees have been "mischaracterized" as exempt in order to avoid the payment of overtime.

(Pl. Mem. at 17).  Plaintiffs, therefore, have no foundation—not even a "belief"—for their claim

24

that any employee at any time in any department was misclassified. This wholly unsupported assertion is strong grounds to deny Plaintiffs' Motion.

Denial is further warranted because "[d]etermining whether an employee is exempt is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities." *Diaz*, 2005 WL 2654270, at *2 (citing *Mike v. Safeco Ins. Co. of Am.*, 274 F.Supp.2d 216, 220 (D.Conn. 2003)). Indeed, any allegation that these unknown Club Fit employees were misclassified "will involve an analysis of daily duties and responsibilities and the amount of time spent on each, whereas [the Plaintiffs'] claims . . . will involve an examination of hours worked, payroll records and [Club Fit's] knowledge and/or permission of the alleged overtime hours worked." *Diaz*, 2005 WL 2654270, at *4. As such, Plaintiffs are not similarly situated to these unidentified Club Fit employees because "no factual nexus exists between their situations." *Id.*; *accord Davis v. Lenox Hill Hosp.*, 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (holding that exempt plaintiff claiming denial of overtime wages was not similarly situated to nonexempt employees); *Mike*, 274 F.Supp.2d at 220-221 (denying class certification where plaintiff claimed that he was misclassified as exempt "because the proof in th[e] case [was] specific to the individual [and] . . . any other plaintiff would also have to present specific evidence of his or her daily tasks, and the court would have to apply the regulations on an individual basis . . . [and] engage in an *ad hoc* inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [plaintiff's]").

Courts routinely refuse to certify a class, "even conditionally, when determining whether the employer improperly treated the plaintiffs as nonexempt would require a highly

individualized, fact-intensive inquiry." *Aguirre*, 2006 U.S. Dist. LEXIS 22211, at *7.  In

*Morisky*, the plaintiff alleged that he and over 100 other opt-in plaintiffs were the victim of

defendants' "common scheme" to deny them overtime thus making all the plaintiffs similarly

situated.  111 F. Supp. 2d at 498.  In rejecting collective action certification, the court concluded

that the determination of:

> which employees are entitled to overtime compensation under the FSLA depends
> on an individual, fact-specific analysis of each employee's job responsibilities
> under the relevant statutory exemption criteria. Therefore, "similarly situated" in
> this case must be analyzed in terms of the nature of the job duties performed by
> each class member, as the ultimate issue to be determined is whether each
> employee was properly classified as exempt.  Plaintiffs have made no showing
> that the job responsibilities of the named plaintiffs are the same or similar to those
> of the remaining members of the proposed class, or that the opt-in plaintiffs could
> properly be classified as non-exempt employees. In fact, plaintiffs do not even
> discuss the job responsibilities of the opt-in plaintiffs.

*Id.*  Likewise, Plaintiffs make no effort to identify the so-called "mischaracterized" Club Fit

employees, either by name, title, or department.

Club Fit has more than a dozen different departments whose exempt and non-exempt

employees perform a wide range of functions entirely distinct from the work done by Plaintiffs.

(Beck Decl., ¶46).  "Potential collective action members, thus, are not 'similarly situated' as to

FLSA status when that status may differ depending on their job responsibilities and duties."

*Evancho*, 2007 U.S. Dist. LEXIS 93215, at *9.  *Accord Aguirre*, 2006 U.S. Dist. LEXIS 22211,

at *7 (denying motion for conditional certification because differences among potential plaintiffs'

job responsibilities and duties predominated over similarities); *Reich v. Homier Distrib. Co.,*

*Inc.*, 362 F.Supp.2d 1009, 1013-15 (N.D. Ind. 2005) (denying motion for conditional

certification because plaintiff and potential collective action members were not similarly

situated, as application of FLSA exemption would depend on each employee's specific duties).

26

**C.    Plaintiffs' Allegation That Club Fit Did Not Pay Employees For "Off-The-Clock Work Is Inappropriate For Collective Action Treatment.**

In the same manner that an individual factual determination is necessary to distinguish between exempt and nonexempt employees, such an analysis is also required of Plaintiffs' allegations that all Club Fit employees worked "off-the-clock," that their time was "shaved," and that they were not paid "spread of hours" pay. These claims are, as a matter of law, "too individualized to warrant collective action treatment." *Diaz*, 2005 WL 2654270, at *5. *See Lawrence v. City of Philadelphia, P.A.*, 2004 WL 945139, *2 (E.D.Pa. April 29, 2004):

> [T]he "off-the-clock" claim does not involve regularly scheduled time that is worked by all members of the class. Rather, each of the Plaintiffs may potentially claim that on any given day he or she arrived early or departed outside of their regularly scheduled hours and were not compensated for such. The circumstances of those individual claims potentially vary too widely to conclude that in regard to their "off-the-clock" claim, the Plaintiffs are similarly situated.

The Court in *Lawrence* confirmed that "questions of fact would most likely differ for each plaintiff," such that it would become "unduly burdensome to manage as a collective claim." *Id.*

Likewise, *Diaz* held that plaintiffs' "off-the-clock claims require an examination by the Court of when [plaintiff] was scheduled to work, when he actually worked, whether he was paid for such and whether [defendant] altered his timesheets and, then, the Court would to have conduct the same inquiry as to each other class member." 2005 WL 2654270, at *5; *see England v. New Century Financial Corp.*, 370 F. Supp. 2d 504, 509 (M.D. La. 2005) (conditional certification improper where off-the-clock claim involved different managers).

Here, Plaintiffs' own "off-the-clock" claims—based upon tasks outlined within their job descriptions for which they were duly compensated—are factually and legally groundless. (Beck Decl., ¶¶13-20, 57-58 and Exhs. 2, 3, 6, 7, and 8). Indeed, the Plaintiffs—who acknowledged that they kept their own time records—submit no corroborating documentation to support their claims. Plaintiffs likewise do not state when other (unnamed) employees in other departments

27

allegedly worked "off-the-clock"; how Plaintiffs know that the alleged "off-the-clock" tasks were part of the unnamed employees' normal job functions; whether these employees requested compensation for the alleged "off-the-clock" task; which supervisor allegedly denied authorizing payment; or how much "off-the-clock" pay was allegedly denied. Moreover, Club Fit policy clearly mandated that each employee was responsible for maintaining accurate records for all hours worked, that they would be paid for time correctly recorded and approved by their respective manager(s), and that they are required to punch in/out when arriving and leaving their shift. (Marlborough Decl., Exh. N at 5). Any deviation from Club Fit's official policy, which is denied, would have occurred on a manager-by-manager and employee-by-employee basis. (Beck Decl., ¶12). Though Plaintiffs fail to submit actual evidence that any manager from any other department allegedly violated Club Fit's written policies in the last five years,[22] there are numerous past and current managers across the wide spectrum of departments at Club Fit whose actions would require individual examination if this case is expanded to include all current and former employees of Club Fit. That makes this claim unsuitable for collective action.

*Basco v. Wal-Mart Stores, Inc.*, is instructive on this point. In that case, plaintiffs alleged "wide-spread occurrence of off-the-clock-work and unpaid overtime" at Wal-Mart stores and presented testimony from a former store manager—that six persons worked off-the-clock at his store and that he had been instructed to delete overtime hours from employee time records—and five employees who claimed they worked more than 40 hours without receiving overtime. 2004 U.S. Dist. LEXIS 12441, at *6. Wal-Mart presented evidence that their employees—like Plaintiffs here—were individually responsible for punching themselves in and out and that Wal-

---

[22] The sole reference to alleged misconduct attributed to a supervisor in another area of Club Fit, (O'Neal Decl., ¶25), is inadmissible hearsay.

Mart's official policy required payment for all working time. 2004 U.S. Dist. LEXIS 12441, at
*7.  The court rejected plaintiffs' application for collective action certification and notice
because Wal-Mart's overtime policy "and its effects are neither homogeneous nor lend
themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say
particularized.  Plaintiffs' own witnesses demonstrate that the 'policy' was not even uniformly or
systematically implemented at any given store." 2004 U.S. Dist. LEXIS 12441, at *7. *See also*
*West v. Border Foods, Inc.*, Civ. No. 05-2525 (DWF/RLE), 2006 U.S. Dist. LEXIS 96963, *21
(D.Minn. June 12, 2006) (denying collective action certification where different individual
managers allegedly used varying means to deprive plaintiffs of proper compensation and alleged
violations are contrary to the defendants' written policy).

        Based upon the Plaintiffs' vague and unspecified allegations, and the granular case-by-
case inquiry needed to examine (and rebut) them, collective action certification would impede,
rather than effectuate, judicial efficiency in this case. *See West*, 2006 U.S. Dist. LEXIS 96963,
*21 ("neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be
advanced if we were to overlook facts which generally suggest that a collective action is
improper."); *Basco*, 2004 WL 1497709 at *5 ("To create a collective action class, including the
cost associated with that when a Court is convinced that there is insufficient support for the same
prior to certification would be an exercise in futility and wasted resources for all parties
involved.").

## IV.    PLAINTIFFS' PROPOSED NOTICE IS INADEQUATE

        If, for sake of argument, the Court authorizes notice, Plaintiffs' Proposed Notice is
improper and generally misleading on numerous grounds including, but not limited to: (i) failing
to fully and accurately describe Club Fit's position as to the defenses asserted in this action; (ii)
improperly defining the class and the class period; (iii) setting an overly lengthy deadline to opt-

29

in, particularly in light of the solicitation that Plaintiffs have already engaged; and (iv) implying that individuals can only join the lawsuit by returning the opt-in form to class counsel. In the unlikely event that the Court grants Plaintiffs' Motion, Defendants respectfully request that the Court order the parties to meet and confer in good faith to draft a mutually agreed-upon notice that can be jointly submitted to the Court for approval. *See Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 949 (M.D. Fla. 1994). In the unlikely event that the parties cannot agree, Club Fit respectfully requests the opportunity to submit its own proposed notice.

## CONCLUSION

For the foregoing reasons, all Defendants respectfully request that the Court deny Plaintiffs' motion for conditional certification and notice.

Dated: Newark, New Jersey
      August 11, 2008

PROSKAUER ROSE LLP

BY:  */s/ Mark A. Saloman*

Lawrence R. Sandak
Mark A. Saloman
One Newark Center, 18th Floor
Newark, New Jersey 07102
973-274-3200 or 212-736-8185

Fredric C. Leffler
1585 Broadway
New York, New York 10036
212.969.3000

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

TODD BAZZINI, GREGORY LEONARCZYK,      :
NOAH ALLEN, and JOHN MARKIEWICZ,       :
Individually and on behalf of all other persons      :      Civil Action No. 08 Civ 4530 (BSJ)(MHD)
similarly situated,                    :
                                       :
            Plaintiffs,                :      Document Electronically Filed
                                       :
  -against-                            :
                                       :
CLUB FIT MANAGEMENT, INC., JEFFERSON   :
VALLEY RACQUET CLUB, INC., DAVID       :
SWOPE, BETH BECK and BILL BECK,        :
                                       :
            Defendants.                :

-------------------------------------------------------------x

---

## DEFENDANTS' APPENDIX OF UNPUBLISHED CASES

---

PROSKAUER ROSE LLP
One Newark Center, 18th Floor
Newark, New Jersey 07102
973-274-3200
212-736-8185

Attorneys for Defendants
*Club Fit Management, Inc., Jefferson Valley*
*Racquet Club, Inc., David Swope, Beth Beck,*
*and Bill Beck*

# UNREPORTED AUTHORITIES

*Aguirre v. SBC Communs., Inc.*,
    2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006) ...................................................1

*Anglada v. Linens 'N Things Inc.*,
    2007 WL 1552511 (S.D.N.Y. May 29, 2007) ......................................................................2

*Barfield v. N.Y. City Health & Hosps. Corp.*,
    2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 18, 2005)....................................................3

*Barten v. KTK & Assocs.*,
    2007 U.S. Dist. LEXIS 54068 (M.D. Fla. July 24. 2007)....................................................4

*Basco v. Wal-Mart Stores, Inc.*,
    2004 U.S. Dist. LEXIS 12441 (E.D. La. July 2, 2004)........................................................5

*Davis v. Lenox Hill Hosp.*,
    2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004) ....................................................................6

*Diaz v. Electronics Boutique of America, Inc.*,
    2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ...................................................................7

*Evancho v. Sanofi-Aventis*,
    2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 19, 2007)........................................................8

*Flores v. Osaka Health Spa, Inc.*,
    2006 WL 695675 (S.D.N.Y. March 16, 2006) ...................................................................9

*Hampshire v. Port Arthur Ind. Sch. Dist.*,
    2006 U.S. Dist. LEXIS 88874 (E.D. Tex. Dec. 7, 2006).....................................................10

*Jacobsen v. Stop & Shop Supermarket Co.*,
    2004 U.S. Dist. LEXIS 17031 (S.D.N.Y. Aug. 30, 2004)....................................................11

*Morales v. Plantworks, Inc.*,
    2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)........................................................................12

*Lawrence v. City of Philadelphia, P.A.*,
    2004 WL 945139 (E.D.Pa. April 29, 2004).......................................................................13

*Levinson v. Primedia Inc.*,
    2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003)...................................................................14

*Pfohl v. Farmers Ins. Group*,
    2004 U.S. Dist. LEXIS 6447 (C.D. Cal. Mar. 1, 2004)......................................................15

*Prizmic v. Armour, Inc.,*
    2006 WL 1662614 (E.D.N.Y. June 12, 2006) ...................................................................16

*Robinson v. Dolgencorp, Inc.,*
    2006 U.S. Dist. LEXIS 85471 (M.D. Fla. Nov 13, 2006) ................................................17

*Rodgers v. CVS Pharm., Inc.,*
    2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006)................................................18

*Silva v. Gordon Gaming Corp.,*
    2006 U.S. Dist. LEXIS 71847 (D.Nev. Sept. 27, 2006) ...................................................19

*Silverman v. SmithKline Beecham,*
    2007 U.S. Dist. LEXIS 80030 (C.D. Cal. Oct. 15, 2007)..................................................20

*Smith v. Sovereign Bancorp, Inc.,*
    2003 WL 22701017 (E.D.Pa. Nov. 13, 2003) ...................................................................21

*Tyler v. Payless Shoe Source, Inc.,*
    2005 U.S. Dist. LEXIS 31682 (N.D.Ala. Nov. 23, 2005) ................................................22

*West v. Border Foods, Inc.,*
    2006 U.S. Dist. LEXIS 96963 (D.Minn. June 12, 2006)...................................................23

*Wombles v. Title Max of Ala., Inc.,*
    2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7, 2005) .................................................24

1

LEXSEE 2006 U.S. DIST. LEXIS 22211



Caution
As of: Aug 07, 2008

### YOLANDA M. AGUIRRE, et al. Plaintiffs, v. SBC COMMUNICATIONS, INC., et al. Defendants.

### CIVIL ACTION NO. H-05-3198

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION

### *2006 U.S. Dist. LEXIS 22211; 152 Lab. Cas. (CCH) P35,133*

### April 11, 2006, Decided
### April 11, 2006, Filed

**SUBSEQUENT HISTORY:** Motion granted by, in part, Motion denied by, in part, Motion to strike denied by, Class certification denied by *Aguirre v. SBC Communs., Inc., 2007 U.S. Dist. LEXIS 17259 (S.D. Tex., Mar. 12, 2007)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employees sued defendant employer, asserting violations of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.* The employees moved for conditional certification, notice, and expedited discovery under *§ 216(b)* of the FLSA, *29 U.S.C.S. § 216(b).* The employer opposed the conditional certification and notice.

**OVERVIEW:** The employees worked as coach leaders, which was treated as a supervisory, exempt position by the employer, *29 U.S.C.S. § 213(a)(1).* The employees alleged they should have been treated as nonexempt workers and paid overtime, *29 U.S.C.S. § 207(a).* They sought certification of a class of individuals who worked as coach leaders from January 1, 2003, to the present. The case presented several problems for conditional certification and notice. First, in the absence of supporting affidavits, the employees' conclusory and unsupported allegations were inadequate even for first-stage certification and notice. Second, the employees did not make even a minimal showing that employees with the job title coach leader were similarly situated for the purposes of an opt-in FLSA class because their job duties

varied substantially. They did not perform the same type of work or exercise the same amount of discretion. Because the differences among coach leaders' job duties predominated over their similarities, the court had to determine the exempt or nonexempt status of the opt-in class members on an employee-by-employee basis. Therefore, litigating the case as a collective action was not efficient.

**OUTCOME:** The court denied the employees' motion for notice and conditional certification.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN1] Section 207(a) of the Fair Labor Standards Act requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily defined maximum hours. *29 U.S.C.S. § 207(a).*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN2] Section 216(b) of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 216(b),* creates a cause of action for employees against employers violating the FLSA's

overtime compensation requirements. *29 U.S.C.S. § 216(b)*.

***Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions***
[HN3] See *29 U.S.C.S. § 216(b)*.

***Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions***
[HN4] *29 U.S.C.S. § 216(b)* establishes an "opt-in" scheme under which the plaintiffs must affirmatively notify the court of their intention to become parties to a suit. District courts have discretion in deciding whether to order notice to potential plaintiffs.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Executives & Professional Employees***
[HN5] Section 13(a)(1) of Fair Labor Standards Act, *29 U.S.C.S. § 213(a)(1)*, exempts employees occupying bona fide executive, administrative, or professional positions from the overtime requirements of *29 U.S.C.S. § 207*.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Executives & Professional Employees***
[HN6] See *29 U.S.C.S. § 213(a)(1)*.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Executives & Professional Employees***
[HN7] The Code of Federal Regulations provide a short test to classify employees for the executive or administrative exemptions. An employee can be classified as an exempt executive if: (1) the employee is paid a salary of not less than $455 per week; (2) the employee's primary duty is the management of the enterprise or a subdivision; (3) the employee customarily and regularly directs the work of two or more employees; and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions. *29 C.F.R. § 541.1(a)*.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Executives & Professional Employees***
[HN8] An employee can be classified as an exempt administrative employee if: (1) the employee is paid a salary of not less than $455 per week; (2) the employee's primary duty is the performance of office or nonmanual work directly related to the management or general business of the employer; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *29 C.F.R. § 541.2*.

***Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions***
[HN9] The first-stage test for conditional certification of a class under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit. Most courts require some factual support for the complaint allegations of class-wide discrimination to authorize notice.

**COUNSEL:** [*1] For Yolanda M Aguirre, Ana M Morris, Corina Ramos, Rose Urdialez, Olga Zertuche, Plaintiffs: H Paul Pressler, III, Jared R Woodfill, V, Woodfill & Pressler LLP, Houston, TX.

For Alejandra S Amie, Nara Deleon, Sylvia Diahnn Sanchez, Plaintiffs: Jared R Woodfill, V, Woodfill & Pressler LLP, Houston, TX.

For SBC Communications Inc, Southwestern Bell Telephone Company, Southwestern Bell Telephone LP, Defendants: Elizabeth K Ferrell, Bellaire, TX; Teresa S Valderrama, Julia Tucker Matheny, Baker Botts LLP, Houston, TX.

**JUDGES:** Lee H. Rosenthal, United States District Judge.

**OPINION BY:** Lee H. Rosenthal

**OPINION**

**MEMORANDUM AND ORDER**

Plaintiffs Yolanda Aguirre, Ana M. Morris, Corina Ramos, Rose Urdialez, Nara Deleon, Sylvia Diahnn Sanchez, Alejandra Amie, and Olga Zertuche filed this suit against their employer, Southwestern Bell Telephone L.P. (SWBT), asserting violations of the Fair Labor Standards Act, *29 U.S.C. § 201 et seq.* Plaintiffs were "coach leaders" for SWBT. They allege that they were treated as exempt and paid salaries but should have been nonexempt employees paid for overtime hours at

Page 3

2006 U.S. Dist. LEXIS 22211, *; 152 Lab. Cas. (CCH) P35,133

overtime rates. Plaintiffs allege that each branch of SWBT has [*2] at least eight coach leaders who were treated as salaried employees and not paid overtime, in violation of the FLSA. Plaintiffs move for conditional certification, notice, and expedited discovery under *section 216(b) of the FLSA*. Plaintiffs seek certification of a class of individuals who worked as coach leaders at SWBT from January 1, 2003 to the present. (Docket Entry No. 19). SWBT opposes the conditional certification and notice, asserting that plaintiffs have failed to show that they are "similarly situated" to each other, or that the misclassification claim is appropriate for collective treatment. (Docket Entry No. 25).

Based on a careful review of the pleadings, the motion, response, and reply; the present record, and applicable law, this court denies plaintiffs' motion for notice and conditional certification. The reasons for this ruling are set out below.

## I. Background

Aguirre and the other named plaintiffs worked as "coach leaders" in a SWBT Park West Call Center in Houston, Texas. A coach leader, also known as a Call Center Manager, is treated by SWBT as a supervisory position. Plaintiffs allege that their duties are primarily clerical, consisting of "observing [*3] and monitoring of employees, inputting and documenting employees calls, speaking with employees as to areas of improvement." (Docket Entry No. 19 at 2). Plaintiffs assert that they lack college or professional degrees, did not have "full" authority to hire or fire employees, lacked control over the hours they worked, and had "little, if any, discretion in performing [their] primary job duties." *Id.*

In response, SWBT has submitted affidavits from Sophia Pena, Associate Sales Director for SWBT in the same location plaintiffs worked from July to August 2005 and from November 2005 to the present, and from Nancy Garcia, now the Manager/Special Services Engineering and an Associate Sales Director in the same location from November 1999 to November 2005 (except for July to August 2005, when she was out on disability). Pena and Garcia both describe the call managers' responsibilities in that location, as follows:

Responsibilities of Call Center Managers in the Diverse Market Group at the Park West Call Center concern two distinct sections: Developmental, related to achieving the production and performance goals for the Customer Service Representatives in the Diverse Market Group, [*4] and Administrative, relating to the administration of attendance and other administrative

matters affecting Customer Service Representatives in the Diverse Market Group. Developmental Managers generally are responsible for supervising the development, performance and positive discipline of the team of Customer Service Representatives assigned to that Call Center Manager. The Administrative/Attendance Manager generally is responsible for supervising the performance and providing positive discipline of clerical employees who handle clerical duties related to the administration of the Diverse Market Group at the Park West Location, including particularly the administration of attendance issues, for monitoring and providing positive discipline relating to attendance for all Customer Service Representatives in the Park West Center Diverse Market Group, and for supervising a team of experienced Customer Service Representatives who provide training and support to their peers on "back-fill" duties, and hence are called "Back-fills."

(Docket Entry No. 25, Ex. 1). Pena emphasized that the responsibilities of call center managers varied from "time to time and from manager to manager. [*5] " Their duties, however, always included:

supervising many more than two full-time, subordinate employees, including, among other duties, the responsibility (i) to handle certain disciplinary matters and to make recommendations about others, up to and including termination of employment, (ii) to apply the union contract in behalf of management as its first level of authority, such as adjusting certain grievances and make recommendations about others, (iii) to administer policies that directly affect their team of subordinate employees, (iv) to authorize certain adjustments of customer accounts up to $ 200, (v) to determine whether performance is meeting standards set by management and to take responsive action if it is not, and (vi) to achieve revenue and/or customer service objectives for the unit.

(*Id.*)

2006 U.S. Dist. LEXIS 22211, *; 152 Lab. Cas. (CCH) P35,133

Pena described the duties of "developmental" call center managers, distinguishing them from "administrative/attendance" call center managers' duties:

> Presently, Call Center Managers in the Developmental Section of the Call Center each supervise teams ranging from fifteen to more than 30 Customer Service Representatives on the Call Center floor. The teams are [*6] designated based upon achievement of performance objectives (such as teams made up of Customer Service Representatives who achieve a particular performance level) or based upon a defined management need (such as the team of Customer Service Representatives assigned to handle customers calling in the cancel their accounts).

> Developmental Call Center Managers have the authority to handle and adjust certain grievance issues according to the requirements of the union contract (e.g., grievances about vacation or work schedules) and may contact the union if they identify performance problems with a certain Customer Service Representative. The Developmental Call Center Managers have the authority to determine when to revoke certain rights granted to employees under the union contract. They also have authority to work with union regarding disciplinary decisions and make decisions regarding when to escalate discipline to me.

> The Developmental Call Center Managers have authority to recommend discipline, including termination of a Customer Service Representative's employment, and I, in turn, then make a recommendation relying upon the Call Center Manager's input and observations, as well as [*7] my own judgment.

(*Id.*)

By contrast, an "administrative/attendance" call center manager

> handling the Administrative Section of the Park West Call Center supervises five attendance clerks and a team of senior Customer Service Representatives called Back-Fills, who provided troubleshooting and training for less experienced Customer Service Representatives. These are her direct reports.

> The Administrative/Attendance Call Center Manager is authorized to handle performance and misconduct issues concerning her direct reports, and must decide when to escalate such issues to me. She also has authority to recommend termination of one of her clerks or "back-fills" for performance, and I would rely upon her input. In addition to coaching and developing her direct reports, the Administrative/Attendance Call Center Manager manages the attendance of all Customer Service Representatives. She has the ability to adjust or settle grievances if the union can prove that disciplinary action taken against the employee is incorrect. She may call the union representative if discipline is necessary and holds positive disciplinary meetings with employees; she also would meet to notify the [*8] Customer Service Representative of a suspension decision.

> The Administrative/Attendance Call Center Manager also has authority to recommend termination of the Customer Service Representatives with respect to attendance. I rely upon the Administrative/Attendance Call Center Manager's input in making my own recommendations about a termination or other disciplinary decision related to attendance, or relating to one of the clerks or Back-Fills that the Administrative/Attendance Call Center Manager supervises.

(*Id.*) Pena's affidavit summarized the variation in the duties of a call center manager on a day-to-day basis:

> Each of the Call Center Managers manages separate teams of employees. Because each team of employees has different needs and issues that arise, the management duties that each Call Center Manager actually performs on a day-to-day basis, and the time that each Call Center Manager spends performing any particular management duty, will vary, sometimes substantially, from Call Center Manager to Call Center Manager. For example, Call Center Managers

Case 1:08-cv-04530-BSJ-MHD    Document 26-3    Filed 08/11/2008    Page 6 of 21

Page 5

2006 U.S. Dist. LEXIS 22211, *; 152 Lab. Cas. (CCH) P35,133

sometimes must perform administrative tasks when necessary. On rare occasions, when a Back-fill Customer Service [*9] Representative is not available, the Call Center Managers may fill in for a Customer Service Representative and handle customer calls. In addition, the Call Center Managers have different levels of involvement in the adjustment of Customer Service Representative grievances and in affecting the Customer Service Representatives' rights regarding performance review options under the union contract, depending upon the team of Customer Service Representatives for which they have responsibility.

(*Id.*)

Garcia similarly described the duties of call center managers and the variations among the managers' duties. She emphasized in her affidavit that "developmental" coach leaders

had authority to handle performance and misconduct issues concerning their direct reports, including the authority to handle certain grievance issues according to the terms of the union contract (e.g., grievances about vacation or work schedules) and could contact the union if they identified performance problems with a certain customer service representative. The Call Center Developmental Managers also had authority to work with the union regarding disciplinary decisions and used their judgment regarding [*10] when to escalate discipline.

Developmental Coach Leaders who reported to me also had authority to recommend termination of customer service representatives. Most decisions by Developmental Coach Leaders to recommend termination were based on established standards and guidelines provided by SWBT. If the Coach Leader wished to deviate from these established standards and guidelines, the Developmental Coach Leader was required to consult with Human Resources and to explain her rationale to me, and I would consider the rationale in deciding my recommendation for the final

termination decision. All terminations had to have my General Manager's and Vice President's approval, along with the Human Resources Department's concurrence, and was based upon input via a separation proposal put together by the Call Center Manager.

(Docket    Entry    No.    25,    Ex.    2). "Administrative/attendance" call center managers supervised five clerks plus the "Back-fills" in the Call Center. In addition to coaching and developing her direct reports, the Administrative Coach Leader managed the attendance of all Customer Service Representatives. In addition, the Administrative Coach Leader was responsible [*11] for ensuring that customer service representatives were scheduled for work and were properly trained by the "back-fills." She also was responsible for "force issues," which included such things as having the clerks keep up with trade time, flex time, customer callbacks, etc. Finally, the Administrative/Attendance Coach Leader handled the first level of employee grievances for items pertaining to her direct reports, to attendance, and to sales-incentive issues for all Customer Service Representatives. She had the authority to adjust or settle grievances with the union.

The Administrative/Attendance Call Center Manager was required to handle performance and misconduct issues concerning her direct reports. An Administrative/Attendance Coach Leader's input for termination often was relied upon in making the final termination decision, and usually involved terminating someone with severe attendance issues.

(*Id.*)

These affidavits are not controverted by any affidavits or declarations from the plaintiffs. In their motion for notice, plaintiffs assert that they performed primarily clerical duties, did not control the hours they worked, did not have a college or professional degree, [*12] and did not have "full" authority to hire or fire employees. (Docket Entry Nos. 13, 19).

Case 1:08-cv-04530-BSJ-MHD    Document 26-3    Filed 08/11/2008    Page 7 of 21

Page 6

2006 U.S. Dist. LEXIS 22211, *; 152 Lab. Cas. (CCH) P35,133

## II. The Applicable Legal Standards

[HN1] *Section 207(a) of the FLSA* requires covered employers to compensate nonexempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. *29 U.S.C. § 207(a).* [HN2] *Section 216(b)* creates a cause of action for employees against employers violating the overtime compensation requirements. *29 U.S.C. § 216(b). Section 216(b)* provides:

> [HN3] An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* [HN4] *Section 216(b)* establishes an "opt-in" scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995).* District courts have discretion in deciding whether [*13] to order notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-171, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989); Villatoro v. Kim Son Rest., L.P., 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003).*

Courts recognize two methods to determine whether to authorize notice to similarly-situated employees advising them of their right to join an FLSA collective action. These methods are the two-step *Lusardi* approach and the spurious class action *Shushan* approach. *See id.; Shushan v. Univ. of Colo. at Boulder, 132 F.R.D. 263 (D. Colo. 1990); Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987).* In *Mooney,* the Fifth Circuit found it unnecessary to determine which method is most appropriate. *54 F.3d at 1216.* Most courts use the "two-step *ad hoc* approach" as the preferred method for making the similarly-situated analysis, rather than the Rule 23 requirements. *See Basco v. Wal-Mart Stores Inc., 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); Grayson v. K Mart Corp., 79 F.3d 1086, 1096 n.12 (11th Cir. 1996)* (noting that "the requirements for pursuing a *§ 216(b)* class action [*14] are independent of, and unrelated to, the requirements for class action under *Rule 23*"); *LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975)* (finding a fundamental difference between Rule 23 class actions and FLSA collective actions); *Mielke v. Laidlaw Transit, Inc., 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004)* (stating

that the majority of courts have employed or implicitly approved the two-step method); *Villatoro, 286 F. Supp. 2d at 810.*

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Mooney, 54 F.3d at 1213.* The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. *See id. at 1213-1214.* The court's decision is often based only on the pleadings and affidavits that have been submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification' [*15] of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id. at 1214 n.8.* Even this lenient standard appears to require substantial allegations that potential members "were together the victims of a single decision, policy, or plan. . . ." *Id.* (citing *Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988)).* A factual basis for the allegations is needed to satisfy this first step. *See Hall v. Burk, 2002 U.S. Dist. LEXIS 4163, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002)* (stating that "unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983).* Some courts place an emphasis on finding "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys., 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003)* (citing *Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002)); see Basco, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *5* (quoting *Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)* [*16] (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 507 (M.D. La. 2005); see Barron, 242 F. Supp. 2d at 1104* ("The mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences."). If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney, 54 F.3d at 1214.*

The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify"

Case 1:08-cv-04530-BSJ-MHD    Document 26-3    Filed 08/11/2008    Page 8 of 21

Page 7

2006 U.S. Dist. LEXIS 22211, *; 152 Lab. Cas. (CCH) P35,133

the conditionally-certified class. *See id.; Lusardi, 118 F.R.D. at 359*. At that point, the court makes a factual determination as to whether there are similarly-situated [*17] employees. *Id.* If the district court finds that the claimants are similarly situated, the collective action may proceed. *See Mooney, 54 F.3d at 1214; Basco, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *3*. If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *See id.; England, 370 F. Supp. 2d at 508.*

[HN5] *Section 13(a)(1) of FLSA* exempts employees occupying "bona fide executive, administrative, or professional" positions from the overtime requirements of *section 7. 29 U.S.C. § 213(a)(1)*. [HN6] "The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." *Id.* [HN7] The Code of Federal Regulations provide a "short test" to classify employees for the executive or administrative exemptions. An employee can be classified as an exempt executive if: (1) the employee is paid a salary of not less than $ 455 per week; (2) the employee's primary duty is the management of the enterprise or a subdivision; (3) the employee customarily [*18] and regularly directs the work of two or more employees; and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions. *29 C.F.R. § 541.1(a)*. [HN8] An employee can be classified as an exempt administrative employee if: (1) the employee is paid a salary of not less than $ 455 per week; (2) the employee's primary duty is the performance of office or nonmanual work directly related to the management or general business of the employer; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *29 C.F.R. § 541.2.*

Plaintiffs do not appear to dispute that they are paid on a salary basis and earn more than $ 455 per week. Instead, plaintiffs allege that they do not have primarily managerial or supervisory duties under *29 C.F.R. §§ 541.1 and 541.2. See York v. City of Wichita Falls, Tex., 944 F.2d 236, 241 (5th Cir. 1991).*

## III. Analysis

This case presents several problems for conditional certification and notice. First, plaintiffs' conclusory [*19] and unsupported allegations are inadequate even for first-stage certification and notice, particularly given the affidavits from Pena and Garcia describing significant differences in coach leaders' job duties. [HN9] The first-stage test requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions

that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit. *See, e.g., Haynes, 696 F.2d at 887; H&R Block, 186 F.R.D. at 400; Dybach, 942 F.2d at 1567-68; D'Anna, 903 F.Supp at 894; Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358 (M.D. Ala. 1999)*. As noted, most courts require some factual support for the complaint allegations of classwide discrimination to authorize notice. *See, e.g., Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991)* (allegations of plaintiff alone insufficient); *Thiessen v. General Electric Capital Corp., 996 F. Supp. 1071 (D. Kan. 1998)* [*20] (pleadings plus 30 opt-in forms filed sufficient); *Sperling v. Hoffman-La Roche, 118 F.R.D. 392, 406 (D.N.J. 1988)* (pleadings plus 400 opt-in forms filed sufficient); *Felix de Asencio v. Tyson Foods Co., 130 F. Supp. 2d 660, 663 (E.D. Pa. 2001)* (pleadings and four declarations from putative class members sufficient). In this case, plaintiffs have not submitted affidavits or other information beyond the brief and conclusory statements in the complaint and motion for notice.

Second, the record shows that determining whether other potential plaintiffs are similarly situated would require a fact-specific and individualized inquiry into each employee's daily job duties. For some employees, including the named plaintiffs, the inquiry would extend into the number of employees supervised; the ability to recommend hiring, firing, and reprimanding workers; the employee's opportunity to exercise discretion, and the amount of time the employee spends on nonmanagerial tasks. *See 29 C.F.R. §§ 541.1, 541.2.*

The members of the proposed opt-in class have two job titles -- Development Coach Leader and Administrative/Attendance [*21] Coach Leader -- but employees with the same job title are not "similarly situated" for the purposes of an "opt-in" FLSA class if their day-to-day job duties vary substantially. *Morisky, 111 F. Supp. 2d at 495, 499 n.8* ("Technical Analysts" for the defendant were not similarly situated where one was assigned to operations, one to maintenance, and one quality assurance, and accordingly, the focus of their work differed); *Tumminello v. U.S., 14 Cl.Ct. 693, 696 (Ct. Cl. 1988)* ("employees within the Defense Mapping Agency of similar grade (GS-11) and job category (Electronics Technician)" were not similarly-situated because they were employed in different federal agencies and in various job categories).

In this case, plaintiffs do not make even a minimal showing that all coach leaders perform the same type of work or exercise the same amount of discretion. The evidence in the record shows that some coach leaders are assigned duties that require them to exercise more

Case 1:08-cv-04530-BSJ-MHD    Document 26-3    Filed 08/11/2008    Page 9 of 21

Page 8

2006 U.S. Dist. LEXIS 22211, *; 152 Lab. Cas. (CCH) P35,133

discretion and independent decision-making on a daily basis than other coach leaders, and that an individual coach leader's duties often vary from day-to-day and change over time. The record [*22] shows that coach leaders manage separate teams of hourly-paid customer service representatives and clerks. A coach leader's duties vary depending on whether they are working as developmental managers or as administrative/attendance managers, which team each coach leader is supervising at a given time, whether other supervisors or team members are absent, and whether the coach leader is herself on "performance improvement plans" or given specific assignments by her supervisor or manager, requiring specific duties or tasks. (Docket Entry No. 25, Ex. 1, PP 6-14; Ex. 2, PP 7-13).

A number of courts have refused to certify a class, even conditionally, when determining whether the employer improperly treated the plaintiffs as nonexempt would require a highly individualized, fact-intensive inquiry. *See Reich v. Homier Distributing Co., Inc., 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005)*; *Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004)*; *Morisky v. Public Service Elec. and Gas Co., 111 F. Supp. 2d 493, 498 (D.N.J. 2000)*. The present record

shows that the differences among coach leaders predominate over their similarities [*23] and will require individual inquiry at trial. Because the exempt or nonexempt status of the opt-in plaintiffs would need to be determined on an employee-by-employee basis, litigating this case as a collective action would not be efficient. *Holt, 333 F.Supp.2d at 1274* (variations in evidence concerning amount of time spent running a cash register, stocking shelves, making signs, etc. versus managing the retail store defeated any claim that the day-to-day tasks of store managers and assistant managers were sufficiently similar to designate a class for the purposes of deciding if they were properly designated as exempt); *Koren v. SUPERVALU, Inc., 2003 U.S. Dist. LEXIS 4104, 2003 WL 1572002, *16 (D.Minn.2003)* (opt-in plaintiffs performing different job duties are not appropriate for class treatment).

On the present record, the motion for certification and notice is denied.

SIGNED on April 11, 2006, at Houston, Texas.

Lee H. Rosenthal

United States District Judge

**2**

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1552511 (S.D.N.Y.)
**2007 WL 1552511 (S.D.N.Y.)**

Page 1

**H**Anglada v. Linens 'N Things, Inc.
S.D.N.Y.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Jose ANGLADA, individually and on behalf of
others similarly situated, Plaintiffs,
v.
LINENS 'N THINGS, INC., Defendant.
No. 06 Civ. 12901(CM)(LMS).

May 29, 2007.

*REPORT AND RECOMMENDATION*

LISA MARGARET SMITH, Chief United States
Magistrate Judge.
**\*1   TO: THE HONORABLE COLLEEN
MCMAHON, UNITED STATES DISTRICT
JUDGE**

Plaintiff Jose Anglada (herein, "Plaintiff")
commenced the instant action against his former
employer Defendant Linens 'N Things, Inc. (herein,
"Defendant" or "LNT") pursuant to the Fair Labor
Standards Act (herein, "FLSA"), 29 U.S.C. § 1, *et
seq.,* and Articles 6 and 19 of the New York Labor
Law, and their accompanying regulations,
challenging the Defendant's alleged failure to pay
premium overtime wages to him, and to those
similarly situated to him, for hours worked in excess
of forty hours per week. *See* Docket # 1, Plaintiff's
Complaint (herein, "Comp.") at ¶¶ 20-24. Presently
before this Court is the Plaintiff's motion to certify a
conditional national collective action pursuant to 29
U .S.C. § 216(b) in order to notify those employees
who may be similarly situated to the Plaintiff that
they may "opt-in" to this action challenging the
Defendant's alleged failure to pay overtime wages.
*See* Docket # 9, Notice of Plaintiff's Motion to
Conditionally Certify an FLSA Collective
Action.^FN1 In addition, the Plaintiff also moves the
Court to direct the Defendant to produce the names
and addresses of potential "opt-in" class members to
Plaintiff's counsel prior to the issuance of the
proposed collective action notice. *Id.*

FN1. Although the Plaintiff's Complaint

asserts parallel state law claims for the
alleged failure to provide overtime
compensation under the provisions of New
York Labor Law, the Plaintiff has not
moved this Court for the certification of a
class of employees under FED. R. CIV. P.
23. *See, e.g., Iglesias-Mendoza v. La Belle
Farm. Inc.,* 239 F.R.D. 363, 370
(S.D.N.Y.2007) (analyzing employees'
motion to certify a class under Rule 23(b)(3)
of the Federal Rules of Civil Procedure for
alleged violations of New York Labor Law).
As such, only the factors for certifying an
FLSA collective action, which differ from
the Rule 23 factors the Court would use when
certifying a class action as to the New York
Labor Law claims, will be considered. *Id.*

The Defendant opposes the instant applications on
the grounds that the Plaintiff has not submitted
sufficient indicia that there exist similarly situated
employees who would join a collective action if
certified, that the Plaintiff has not established the
sufficient basis for the certification of a national
collective action under the FLSA, and that the
Plaintiff does not qualify for the protections of the
FLSA because the Plaintiff's former position of
employment falls within the FLSA's executive
exemption. *See* Docket # 14, Defendant's Brief in
Opposition (herein, "Def's Mem."). The Defendant
also opposes the Plaintiff's request for the production
of putative class members' names and addresses on
the grounds that such production would be unduly
burdensome. *Id.*

For the following reasons, I conclude, and
respectfully recommend that Your Honor should
conclude, that the Plaintiff's motion to certify a
conditional collective action should be granted with
the caveat that the conditional collective action class
members should be limited to employees who, within
three years of the date of the proposed notice being
sent, held or currently hold Department Manager or
Assistant Store Manager of Merchandising positions
in either of the two store locations where the Plaintiff
worked while employed by the Defendant.
Additionally, I conclude, and respectfully
recommend that Your Honor should conclude, that

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

the Defendant should be directed to produce the names and addresses of any and all putative collective action members to Plaintiff's counsel.

## BACKGROUND

A. *Facts*

The following facts are drawn from the Plaintiff's Complaint, his accompanying declaration in support of the certification of a conditional collective action, and the declarations submitted by the Defendant in opposition to such certification.

*2 The Plaintiff served as an employee of Defendant LNT from January 2003 until October 2006. *See* Docket # 10, Plaintiff's Memorandum in Support of Motion to Conditionally Certify a Collective Action (herein, "Pl's Mem."), Exhibit 2, Declaration of Jose Anglada (herein, "Anglada Decl.") at ¶ 1. The Plaintiff worked as a Department Manager from September 2004 until March 2006, and as an Assistant Store Manager of Merchandising from March 2006 until October 2006. *See* Comp. at ¶ 13.[FN2] Pursuant to a personnel restructuring plan effective April 2006, the Defendant changed the job title of the Plaintiff's employment position and created two new positions of employment into which most employees holding the position of Department Manager were transferred. *See* Roselli Decl. at ¶¶ 3-4. As dictated by the Defendant's April 2006 personnel restructuring plan, each LNT store currently has two levels of managers: a General Manager, who is the highest ranking manager for a particular store, and an Assistant Store Manager of Merchandising, as well as an Assistant Store Manager of Operations, both of who report to the General Manager. *See* Roselli Decl. at ¶ 3. Below this level, the Defendant employs Group Selling Managers and Sales Associates who are paid on an hourly basis. *See id.*

> FN2. The Defendant, however, contends that the position "Department Manager" did not exist "during the time period relevant to the proposed class as defined by Plaintiff Jose Anglada," and that the position of employment the Plaintiff refers to during the pre-April 2006 time period was entitled Merchandising Manager rather than Department Manager. *See* Docket # 27,

Declaration of Susan Roselli (herein, "Roselli Decl.") at ¶ 3. Any confusion in nomenclature is best minimized by including both position titles in the FLSA collective action notice.

The Plaintiff contends that he did not have the authority "to hire or fire other employees" and that his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees" were not given weight by the Defendant in either of his employment positions with the Defendant. *See* Comp. at ¶¶ 14-15. The Plaintiff maintains that he, along with four other employees who held similar managerial positions of employment with the Defendant, regularly worked more than forty hours per week and were not paid overtime compensation for these hours as required by the FLSA. *See* Comp. at ¶¶ 16-17. The Plaintiff avers that he experienced this practice of non-payment of overtime compensation in his position as a Department Manager in two different stores owned and operated by the Defendant. *See* Anglada Decl. at ¶¶ 6, 15, 18, 20. The Plaintiff first worked as a Department Manager in the Defendant's Kingston, New York, store from September 2004 until October 2005, and then worked as a Department Manager, and then as an Assistant Store Manager of Merchandising, in the Defendant's Poughkeepsie, New York, store from October 2005 until October 2006. *See* Anglada Decl. at ¶¶ 2, 3, 5.

In contradistinction to the nature of the Plaintiff's position of employment outlined by the Plaintiff in his own declaration, the Defendant advances a different characterization of the Assistant Store Manager of Merchandising position in a series of declarations submitted by employees who work in various LNT stores across the country. *See, e.g.,* Docket 18-26, Declarations of LNT Assistant Store Managers of Merchandising (herein, "Assistant Store Manager Declarations"). These Assistant Store Managers of Merchandising contend that their respective job responsibilities include managerial oversight of other employees, hiring new employees, taking over certain managerial responsibilities when other Assistant Managers are unavailable or not present, and offering suggestions as to whether lower level employees should be terminated from their positions of employment. *Id.* The Defendant also submits three declarations from District Managers

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3
Slip Copy, 2007 WL 1552511 (S.D.N.Y.)
**2007 WL 1552511 (S.D.N.Y.)**

who each oversee between eight and twelve LNT stores nationwide. *See* Docket 15-17, Declarations of LNT District Managers (herein, "District Manager Declarations). In this series of declarations, the District Managers offer their respective opinions about the roles and functions of Assistant Store Managers of Merchandising and insist that Assistant Store Managers of Merchandising "have significant supervisory authority." *See* District Manager Declarations at ¶ 6.

B. *Plaintiff's Proposed Certification of a Collective Action*

*3 The Plaintiff seeks this Court's order conditionally certifying an FLSA collective action on a nationwide basis pursuant to 29 U.S.C. § 216(b) for all employees similarly situated to the Plaintiff who did not receive overtime compensation for hours worked in excess of forty hours per week. *See* Docket # 9, Notice of Motion to Conditionally Certify an FLSA Collective Action. The Plaintiff proposes that the nationwide collective action should be opened to "Department Managers (or employees with the same or substantially similar job duties) and Assistant Store Managers [of] Merchandising (also known as Merchandising Managers) who did not have the authority to hire or fire other employees and whose suggestions or any other change of status of other employees were not given particular weight." *See* Pl's Mem., Exhibit 1, Proposed FLSA Collective Action Notice, (herein, "Pl's Proposed Collective Action Notice"). The Plaintiff asserts that this notice should be sent to Department Managers and Assistant Store Managers of Merchandising nationwide who worked for LNT within three years of date of the issuance of the proposed notice because of the willfulness of the Defendant's alleged violation of the FLSA's overtime provisions asserted in the Complaint. *Id.*

In opposition, the Defendant argues that the Plaintiff has failed to meet the lenient evidentiary standard that the Court uses to assess whether certifying an FLSA collective action under 29 U.S.C. § 216(b) is appropriate. In particular, the Defendant notes that the only declaration in support of certifying the collective action is that of the Plaintiff himself, and that the Plaintiff has not submitted the affidavits or declarations of other employees who have expressed an interest in opting in to the prospective collective action. *See* Def's Mem. at p. 11-12, 14-15. The

Defendant also submits that because individual issues take precedence over more general issues applicable to the proposed class as a whole, certifying a collective action in this case is improper. *See* Def's Mem. at pp. 15-16. Specifically, the Defendant argues that the Plaintiff's proposed classification of the collective action itself implies that employees in this position of employment with the Defendant are not similarly situated to one another and that certifying a collective action would be inappropriate because of the absence of commonality among employees in this position of employment in the Defendant's stores. *See* Def's Mem. at p. 11 ("Anglada's very definition of the class requires an individualized assessment of the actual duties [of the putative class members] performed to determine eligibility."). Finally, the Defendant argues that the grounds for a nationwide certification of the collective action have not been established, and that the names and addresses of potential "opt-in" members should not be provided to Plaintiff's counsel. *See* Def's Mem. at pp. 17-19.

*DISCUSSION*

A. *Standards for Conditionally Certifying an FLSA Collective Action*

*4 Despite the absence of a textual directive within 29 U.S.C. § 216(b) empowering district courts with the authority to issue notice to a prospective class of member plaintiffs under the FLSA, "it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs." *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 95 (S.D.N.Y.2003) (citations omitted). Courts in this Circuit follow a two-step process when considering whether an FLSA collective action should be certified conditionally. *See* *Iglesias-Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 367 (S.D.N.Y.2007). At the first step, known as the notice phase, courts utilize a lenient evidentiary standard in assessing whether the Plaintiff has presented sufficient evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the named Plaintiff. *Id.; see also* *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997). "[C]ourts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 4
Slip Copy, 2007 WL 1552511 (S.D.N.Y.)
**2007 WL 1552511 (S.D.N.Y.)**

violated the law."*Sbarro, 982 F.Supp. at 261* (citing *Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y.1995)*). A plaintiff can meet this standard by relying on his or her own pleadings, affidavit, or declaration, and the affidavits or declarations of other prospective class members. *See, e.g., Iglesias-Mendoza,* 239 F.R.D. at 368 (looking to the declarations of the named plaintiffs); *Gjurovich, 282 F.Supp.2d at 96* (relying on specific information presented by the plaintiff, including the names and number of potential class members). The Court need not consider the merit of the potential FLSA claim in assessing whether a collective action should be certified. *Sbarro,* 982 F.Supp. at 262.[FN3]

> FN3. The second step involved in the FLSA collective action certification process occurs after notice has been sent to the prospective class members and after discovery has been conducted. At the second stage, the Court entertains, upon proper application, a decertification motion by a defendant challenging the propriety of the presence of one or more of the opt-in plaintiffs in the class. *See Iglasias-Mendoza.* 239 F.R.D. at 367.

**B.** *Plaintiff's Proposed FLSA Collective Action Class Members*

Plaintiff moves this Court for an order certifying a conditional nationwide collective action for similarly situated employees who served as "Department Managers (or employees with the same or substantially similar job duties) and Assistant Store Managers [of] Merchandising (also known as Merchandising Managers) who did not have the authority to hire or fire other employees and whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight."*See* Pl's Proposed Collective Action Notice. The definition of the proposed collective action illustrates the Plaintiff's attempt to distinguish between employees who fall within the FLSA's executive employee exemption, and thus do not qualify for protection under the FLSA, and employees who fall outside of the executive employee exemption, and thus potentially qualify for FLSA protection.

A reading of the Plaintiff's Complaint and accompanying declaration in support of conditionally certifying a collective action leads me to conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff has met the lenient evidentiary standard for distributing notice to those employees who are situated similarly to the Plaintiff and who worked in either of the two LNT stores in which the Plaintiff worked during his time of employment with the Defendant. I do conclude, however, that the Plaintiff has not presented sufficient evidence to support sending such notice to a prospective nationwide class of member plaintiffs.

**\*5** In his Complaint and accompanying declaration, the Plaintiff avers that he, along with four other employees in similar managerial positions, were not compensated for time worked in excess of over forty hours per week. *See* Comp. at ¶¶ 17-18; Anglada Decl. at ¶¶ 6, 15, 18, 20. The Plaintiff declares that he has personal knowledge that he and "other Department and Assistant Store Managers work[ed] [similar] hours," and that neither he nor these similarly situated employees in either the Kingston, New York, or Poughkeepsie, New York, LNT stores were paid overtime compensation for hours worked in excess of forty hours per week. *See* Anglada Decl. at ¶¶ 18, 20. These personal declarations referencing similarly situated employees, a common plan or policy of not paying overtime to this classification of employees, and the specific number of potential employees who may wish to join this suit from either the Kingston, New York, or Poughkeepsie, New York, LNT stores, satisfy the minimal standards for conditionally certifying an FLSA collective action at this preliminary stage of the proceedings. *See Iglesias-Mendoza,* 239 F.R.D. at 368 (plaintiffs' reliance on personal statements as to common plan and policy sufficient to certify conditionally collective action); *Gjurovich,* 282 F.Supp.2d at 96 (plaintiff's declaration enumerating common policy and the number of prospective class members sufficient to certify conditional class); *Sbarro,* 982 F.Supp. at 261 (plaintiffs' complaint and supporting affidavits as to common policy affecting class of potential class members "amply satisfied" initial burden).

A reading of the Plaintiff's Complaint and the Plaintiff's declaration, however, leads me to conclude, and respectfully recommend that Your

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5
Slip Copy, 2007 WL 1552511 (S.D.N.Y.)
**2007 WL 1552511 (S.D.N.Y.)**

Honor should conclude, that there exists a "total dearth of factual support" for the Plaintiff's urging that a nationwide collective action should be certified conditionally in this case. The Plaintiff offers no supporting declarations or affidavits from other similarly situated employees who are located at any other LNT store, and avers no personal knowledge of the policies or practices of any LNT store other than the two stores in which he worked. *See generally* Anglada Decl. The only support offered in support of this broad certification is Plaintiff's counsel's declaration that contains printouts of job descriptions and postings for various LNT stores located across the country. *See* Docket # 11, Declaration of Michael J.D. Sweeney. These job descriptions and postings, however, do not evince whether prospective employees are in fact similarly situated to the Plaintiff or whether such similarly situated employees would opt-in to this FLSA lawsuit. Job vacancy postings suggest that there is an absence, rather than a presence, of employees who may be interested in opting into this action as they are, by definition, postings of unfilled positions of employment with the Defendant.

**\*6** In Opposition to certification of a nationwide collective action, the Defendant submits counter declarations from three District Managers who each attest to the individuality of the management and operation practices of LNT stores nationwide. *See* District Manager Declarations at ¶ 5 (each acknowledging that Assistant Store Managers in their respective stores perform a diversity of managerial and supervisory functions based upon a particular store's volume of sales). The Defendant also offers nine declarations of Assistant Store Managers of Merchandising from a selection of LNT stores nationwide that collectively evince a disparity in the apportionment of job responsibilities among these particular Assistant Store Managers of Merchandising.[FN4] *See generally* Assistant Store Managers Declarations (comparing and contrasting job responsibilities). Last, the Defendant iterates that it "is a foremost retailer of home decor and home accessories, operating stores in 47 of the 50 states," and not only implies that it is a large employer with a large number of stores nationwide, but also implies that the Plaintiff's extrapolation as to the nationwide condition of all LNT stores based only upon his personal experience in two LNT stores in New York, without supporting proof, is insufficient to certify a nationwide collective action. *See* Def's Mem. at p. 2.

FN4. Although ten Assistant Store Manager of Merchandising declarations were submitted to Chambers in the form of courtesy copies, only nine of the ten declarations were filed with the Clerk's Office and were docketed in this case. *See* Docket 18-26. The tenth declaration, that of Assistant Store Manager of Merchandising Donald Crawford, does not appear in the official record of this case.

Because the Plaintiff's inductive reasoning as to the nationwide condition of Assistant Store Managers of Merchandising in all LNT stores nationwide is not supported by the Plaintiff's personal knowledge or by the affirmation of one or more putatively similar employees, and because the job vacancy postings submitted by the Plaintiff do not evince the existence of similarly situated employees who would likely "opt-in" to the instant FLSA overtime compensation action, I conclude, and respectfully recommend that Your Honor should conclude, that the standard for certifying a nationwide collective action has not been met in this case. *See* Sbarro, 982 F.Supp. at 262 (noting that unsupported assertions by counsel cannot establish FLSA collective action certification) (citing, *inter alia, Haynes v. Singer Co., Inc.,* 696 F.2d 884 (11th Cir.1983)).

C. *Application of the FLSA's Executive Employee Exemption*

In further Opposition to the Plaintiff's motion for conditional certification of an FLSA collective action, the Defendant also argues that the Plaintiff himself is exempt from the overtime compensation provisions of the FLSA, and that by extension, he should not be able to move for the certification of the instant collective action. *See* Def's Mem. at pp. 11-12. In support of these contentions, the Defendant submits the declaration of Susan Roselli, Executive Director of Human Resources and Operations for the Defendant, which contains copies of documents bearing the Plaintiff's signature that the Defendant argues supports its position that the Plaintiff falls within the executive employee exemption of the FLSA and its accompanying regulations. *See* 29 U.S.C. § 213(a)(1); 29 C.F.R. § 541.100(a)(1)-(4).

**\*7** These arguments, rather than addressing the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 6
Slip Copy, 2007 WL 1552511 (S.D.N.Y.)
**2007 WL 1552511 (S.D.N.Y.)**

propriety of the proposed class of similarly situated employees, question the underlying merits of the instant action. "Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff: '[T]he Court need not evaluate the merits of [a plaintiff's] claims in order to determine that a definable group of "similarly situated" plaintiffs' exists."*Gjurovich,* 282 F.Supp.2d at 96 (quoting *Sbarro,* 982 F.Supp. at 262). Such merits-based arguments are best considered by the Court after discovery has been conducted upon a motion for decertification or for summary judgment. I conclude, and respectfully recommend that Your Honor should conclude, that this is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action at this time.

D. *Plaintiff's Motion for Production of Contact Information of Similarly Situated Employees, Temporal Scope of Prospective Class, and Proposed Notice*

The Plaintiff has made an accompanying motion to compel the Defendant to produce the names and addressed of individuals who held, or who currently hold, a Department Manager or Assistant Store Manager of Merchandising position with the Defendant within three years of the issuance of the proposed notice of a collective action to Plaintiff's counsel in electronic format. *See* Pl's Mem. at 10. In support of this application, the Plaintiff notes that its allegation that the Defendant willfully violated the FLSA's overtime compensation provisions opens the temporality of the prospective class of member plaintiffs to three years from the date of the issuance of the proposed notice. *See* Pl's Mem. at p. 9 (citing 29 U.S.C. § 255(a)). The Defendant opposes the production of such information on the grounds that it is unduly burdensome because of the way in which the Plaintiff has formulated the class be certified and in light of the breadth of the proposed class of member plaintiffs nationwide. *See* Def's Mem. at p. 19.

In light of the undersigned's recommendation that a collective action should be certified on a conditional basis only as to the employees in the Defendant's Kingston, New York, and Poughkeepsie, New York, stores who held or currently hold either of the positions of employment that the Plaintiff held while employed with the Defendant-which is a much narrower class of prospective member plaintiffs than originally proposed by the Plaintiff-I conclude, and respectfully recommend that Your Honor should conclude, that the Defendant's objection to the production of the names and addresses of these particular employees in electronic format to Plaintiff's counsel is without merit. Courts within this Circuit routinely grant plaintiffs' motions to compel production of the names and addresses of potentially similarly situated employees who may wish to "opt-in" to a collective action. *See, e.g., Iglesias-Mendoza,* 239 F.R.D. at 369-70;*Gjurovich,* 282 F.Supp.2d at 100 (citing *Hoffmann-La Roche, Inc., v. Sperling,* 493 U.S. 165, 170 (1989); *Realite v. Ark Rest. Corp.,* 7 F.Supp.2d 303, 309-10 (S.D.N.Y.1998); *Masson v. Ecolab, Inc.,* 04 Civ. 4488(MBM), 2005 WL 2000133, at *16 (S.D.N.Y. Aug. 17, 2005).

**8** The Defendant's assertion that the production of such information necessarily incorporates a case-by-case review on the part of the Defendant to ensure that only the names of the appropriate employees are produced to the Plaintiff is misplaced. The second phase of the collective action process-that of potential decertification of one or more class members-is the portion of the process that allows the Defendant to argue why certain collective action class members should be excluded from the class based upon information produced during the course of discovery. *See Gjurovich,* 282 F.Supp.2d at 96 (emphasizing that the first phase of the certification process is not a merits-based decision, and that parties who opt-in but do not meet the proposed class criteria can be excluded during the decertification process). The Defendant need not, and should not, undertake this evaluation on its own initiative.*Id.* Additionally, where there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate, during the second phase of the collective action certification process. *See Gjurovich,* 282 F.Supp.2d at 96;*Masson,* 2005 WL 2000113, at *15 (noting that the class of member plaintiffs can be limited subsequently to only those employees who meet the two year statute of limitations if there has been no evidence propounded by a plaintiff supporting his or her averment of a defendant's willful FLSA violation).

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Finally, the Defendant challenges the substance of the Plaintiff's proposed FLSA collective action notice on several grounds, including a failure to explain that prospective "opt-in" members can elect to participate in the suit without hiring Plaintiff's counsel, the usage of conclusory language as to the allegations in the case, and a failure to enumerate all of the accompanying burdens that a prospective plaintiff may have to endure should they opt-in to this suit, including participation in discovery and appearance for trial in this District. *See* Def's Mem. at pp. 18-19.The Defendant has offered its own proposed notice of a conditionally certified FLSA collective action. *See* Docket # 31, Defendant's Notice of FLSA Collective Action Proposed Alternative.

The concerns that the Defendant raises in Opposition to the Plaintiff's proposed notice appear, in part, to be overstated. In particular, and contrary to the Defendant's assertion, the Plaintiff's proposed notice includes language under the "Effect of Joining This Lawsuit" heading that informs prospective class members of their right to retain their own counsel, and the proposed notice also includes language at the end of the notice section that appears in capital letters and in bold informing prospective class members that the Court takes no position on the merits of the Plaintiff's claims or the Defendant's defenses. *See* Pl's Proposed Collective Action Notice at pp. 3, 4. Additionally, in light of the undersigned's recommendation that the proposed class should be limited to employees who worked or currently work in either the Kingston, New York, or Poughkeepsie, New York, LNT stores within three years of the date of the issuance of the notice, the Defendant's concerns about informing prospective plaintiffs about the burden of traveling to, or to appearing for trial in, this Court is moot.

**\*9** The undersigned has reviewed both of the proposed FLSA collective action notices and agrees in large part that the Plaintiff's proposed collective action notice is sufficient, save for some minor changes.[FN6]Attached to this Report and Recommendation as Exhibit A is a copy of the Plaintiff's proposed FLSA collective action notice with the undersigned's recommended changes for Your Honor's consideration. The undersigned's recommended changes to the Plaintiff's proposed FLSA collective action notice appear in bolded and

italicized text.

FN5. I note that there appears to be some subtle disagreement as to the proper statute of limitations in this case. In the Defendant's proposed notice, the Defendant identifies January 19, 2007, as the date on which the Plaintiff commenced suit in this Court and sets this date as the starting date for a two year class of prospective member plaintiffs. *See* Docket # 31. The Plaintiff, however, filed his Complaint on November 2, 2006, and has argued for the use of a three year time period effective as of the date of the issuance of this collective action notice.

Pursuant to 29 U.S.C. § 256, an action as to an individual plaintiff who is a member of a collective action pursuant to the FLSA "shall be considered to be commenced ... (a) on the date when the complaint is filed, if he [or she] is specifically named as a party plaintiff ... or (b) ... on the subsequent date on which such written consent [on behalf of the individual] is filed in the court ...." The Defendant's usage of the errant January 17, 2007, filing date does not apply to the "opt-in" plaintiffs, and the Plaintiff's usage of the three year date from the issuance of the notice is more in keeping with § 256(b).*Accord* Gjurovich, 282 F.Supp.2d at 98 (relying on date on which collective action notice was issued). Specific challenges to the timeliness of the claims of certain "opt-in" plaintiffs or the named Plaintiff can be addressed subsequent to the completion of discovery during the second phase of the collective action certification process. *See* Masson, 2005 WL 2000113, at \*15.

### CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the Plaintiff's motion to certify conditionally an FLSA collective action should be granted, but that the notice of the proposed collective action should only be sent to employees who held or who currently hold the position of Department

Manager or Assistant Store Manager of Merchandising in the Defendant's Kingston, New York, or Poughkeepsie, New York, stores within three years of the date of the issuance of this proposed FLSA collective action notice. Additionally, I conclude, and respectfully recommend that Your Honor should conclude, that the Defendant should be directed to produce the names and addresses of the employees who held or who currently hold either of these positions of employment in the Kingston, New York, or Poughkeepsie, New York, stores to Plaintiff's counsel in electronic format.

### NOTICE

Pursuant to 28 U.S.C. 636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(e), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Colleen McMahon at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order or judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge McMahon.

### Exhibit A

**THIS NOTICE HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**THIS IS NOT AN ATTORNEY SOLICITATION**

**FROM: Michael J.D. Sweeney, Esq.**

**TO: Department Managers (or employees with the same or substantially similar job duties) and**

**Assistant Store Managers for Merchandising (also known as Merchandise Managers) who did not have the authority to hire or fire other employees and whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight *who currently work, or who worked, at the Kingston, New York, or Poughkeepsie, New York, Linens 'N Things stores within three years of the date of this notice.***

### NOTICE OF LAWSUIT WITH OPPORTUNITY TO JOIN

**\*10** The purpose of this legal notice is to inform you that a lawsuit has been filed against LINENS 'N THINGS for unpaid overtime wages, and that you may be eligible to join the lawsuit. You may be able to join the lawsuit because you are potentially similarly situated to the Plaintiff who initially brought the lawsuit.

This notice advises you on how your rights may be affected by this lawsuit and how you may participate in this lawsuit if you decide that you want to participate in it.

### 1. DESCRIPTION OF THE LAWSUIT

Plaintiff Jose Anglada filed this lawsuit against LINENS 'N THINGS on November 2, 2006. He alleges that LINENS 'N THINGS violated the Federal Fair Labor Standards Act by not paying eligible employees overtime compensation at the rate of time and one-half for all hours worked in excess of 40 hours in a work week. The lawsuit is seeking back pay and liquidated damages (a payment equal to the amount of unpaid wages that may be awarded under certain circumstances under the Federal Fair Labor Standards Act for workers not paid overtime correctly) for eligible employees, as well as costs and attorney's fees. ***Defendant LNT denies the Plaintiffs allegations, and denies that it is liable to the Plaintiff for any of the back pay, damages, costs or attorney's fees sought.***

### 2. WHO MAY JOIN THE LAWSUIT

The named plaintiff seeks to sue on behalf of himself and also on behalf of other employees with whom he

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 9
Slip Copy, 2007 WL 1552511 (S.D.N.Y.)
**2007 WL 1552511 (S.D.N.Y.)**

is similarly situated. Specifically, the plaintiff seeks to sue on behalf of all current and former Department Managers (or employees with the same or substantially similar job duties) and Assistant Store Managers for Merchandising (also known as Merchandise Managers) who did not have the authority to hire or fire other employees and whose suggestions and recommendations as to the hiring, firing, advancement, promotion or other change of status of other employees were not given particular weight *who currently work, or who worked, at the Kingston, New York, or Poughkeepsie, New York, Linens and Things stores within three years of the date of this notice.*

### 3. ACTION TO TAKE IF YOU WANT TO PARTICIPATE IN THIS LAWSUIT

If you fit within the definition of the class members described above, you may join this case (that is, you may "opt-in") *either by retaining a lawyer of your own choosing as further described below,* or by completing and mailing the attached "Consent to Sue" form to the plaintiffs' counsel at the following address:

Getman Law Office

9 Paradies Lane

New Paltz, N.Y. 12561

*The form must be sent to plaintiff's counsel in sufficient time to have plaintiff's counsel file it the federal court on or before [insert date that is 60 days from date of notice mailing.] If you fail to return the "Consent to Sue" form to the plaintiff's counsel in time for it to be filed with the federal court on or before the above deadline, you may not be able to participate as a plaintiff in this lawsuit.*

### 4. EFFECT OF JOINING THIS LAWSUIT

*11 If you choose to join in this lawsuit, you will be bound by the Judgment for this lawsuit, whether it is favorable or unfavorable.

The attorneys for the plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery there will be no attorney's fee. If there is a

recovery, the attorney for the class will receive a part of any settlement obtained or money judgment entered in favor of all members of the class.

If you sign and return the Consent to Sue form attached to this Notice, you are agreeing to enter an agreement with plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

The Court will retain jurisdiction to determine the reasonableness of any contingency attorney's fee agreement entered into by the plaintiffs with counsel, and to determine the adequacy of the plaintiffs' counsel.

You may also join this lawsuit by retaining another lawyer of your own choosing. If you do so, your attorney must file an "opt-in" consent form *with the Court on or before [insert date that is 60 days from date of notice mailing].* The address of the Court is: U.S. District Court for the Southern District of New York, U.S. District Court, 300 Quarropas St., White Plains, N.Y. 10601. The Clerk cannot give legal advice about this case.

### 5. ACTION TO TAKE TO STAY OUT OF THE LAWSUIT

If you do not wish to be part of the lawsuit, you do not need to do anything. If you do not join the lawsuit, you will not be part of the lawsuit in any way and will not be bound by or affected by the result of the lawsuit (whether favorable or unfavorable). Your decision not to join this lawsuit will not affect your right to bring a similar lawsuit on your own at a future time. However, claims under the Fair Labor Standards Act must be brought within 2 years of the date the claim accrues, unless the employer's violation of the law was "willful," in which case the claim must be brought within 3 years.

### 6. NO RETALIATION PERMITTED

Federal law prohibits the defendant from discharging *you from your position of employment* or in any other manner discriminating against you because you "opt-in" to this case, or *because you* in any other way exercise your rights under the Fair Labor Standards Act.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

### 7. YOUR LEGAL REPRESENTATION IF YOU JOIN

*You may choose to join this lawsuit and be represented by an attorney of your own choosing. However,* if you choose to join this lawsuit, and *if you also* agree to be represented by plaintiffs' attorneys, your counsel in this action will be:

Michael J.D. Sweeney, Esq.

Getman Law Office

9 Paradies Lane

New Paltz, N.Y. 12561

(845) 255-9370 (voice)-(845) 255-8649(fax)

Website: http://getmanlaw.com

### 8. FURTHER INFORMATION

If you have questions or would like more information about this notice or lawsuit, or if you want to know more about the deadline for filing a Consent to Sue, please contact plaintiffs' attorney at the telephone number and address stated in Paragraph 7 above.

**\*12  Dated: _____, 2007**

**THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR OF THE DEFENDANT'S DEFENSES.**

**CONSENT TO SUE**

I hereby consent to be a plaintiff in the Fair Labor Standards Act case named *Jose Anglada v. Linens 'N Things, Inc., 06-cv-12901* (Judge Colleen McMahon). I hereby consent to the bringing of any claims I may have under the Fair Labor Standards Act (for unpaid overtime, liquidated damages, attorney's fees, costs

and other relief) against the defendant. I authorize the Getman Law Office, its successors and assigns, to represent me in this case. *I understand that I may choose, instead, to retain an attorney of my own choosing to represent me, but that if I do so, my attorney must file an "opt-in" consent form with the Court.*

By signing and returning this consent to sue, I certify that I worked for the Defendant as a Department Manager (or a title with the same or substantially similar job duties) and/or an Assistant Store Manager for Merchandising (also known as Merchandise Manager) and in that capacity I did not have the authority to hire or fire other employees and my suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees were not given particular weight, *and that I currently work, or I worked, at the Kingston, New York, or Poughkeepsie, New York, Linens 'N Things stores within three years of the date of the issuance of this notice.*

By signing and returning this consent to sue, I authorize Getman Law Office, their successors and assigns, to represent me in this case. By signing and returning this consent to sue, I understand that, if accepted for representation, I will be represented by the Getman Law Office without prepayment of costs or attorneys' fees. I understand that if plaintiff is successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment. I understand that the attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendant or 1/3 of my gross settlement or judgment amount, whichever is greater.

Dated: _____

Signature: _____

Name: _____

Address: _____

e-mail: _____

Phone: _____

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 1552511 (S.D.N.Y.)

**2007 WL 1552511 (S.D.N.Y.)**

**Mail this form to: Getman Law Office, 9 Paradies Lane, New Paltz, N.Y. 12561 no later than [60 days from date of notice].**

S.D.N.Y.,2007.

Anglada v. Linens 'N Things, Inc.

Slip Copy, 2007 WL 1552511 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**3**

LEXSEE 2005 U.S. DIST. LEXIS 28884



Analysis
As of: Aug 07, 2008

### ANETHA BARFIELD, Plaintiff, -v- NEW YORK CITY HEALTH AND HOSPITALS CORPORATION and BELLEVUE HOSPITAL CENTER, Defendants.

### 05 Civ. 6319 (JSR)

### UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

### 2005 U.S. Dist. LEXIS 28884; 151 Lab. Cas. (CCH) P35,065

### November 17, 2005, Decided
### November 18, 2005, Filed

**SUBSEQUENT HISTORY:** Summary judgment granted by *Barfield v. N.Y. City Health & Hosps. Corp., 2006 U.S. Dist. LEXIS 34449 (S.D.N.Y., May 30, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff nurse alleged that defendants, a corporation and a hospital, violated the overtime provisions of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 216(b)*. The nurse moved for an order authorizing the action to be certified as a collective action under the FLSA so as to embrace all similarly situated individuals, and directing defendants to provide the names and last known addresses of all potential opt-in plaintiffs.

**OVERVIEW:** By working through multiple agencies in a given week, the nurse was able to work more than 40 hours in the week, but she did not receive overtime pay for the hours worked in excess of 40 hours. The nurse alleged that this practice was widespread, that both defendants were aware of and approved it, and that they thereby violated the FLSA. But to warrant certification as a collective action under *29 U.S.C.S. § 216(b)*, a plaintiff had to make at least a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law. The court found that the nurse presented nothing but limited anecdotal hearsay to suggest that there was a widespread practice of referral

nurses working in excess of 40 hours per week by signing up through multiple agencies, and no evidence whatever that this was pursuant to a policy of either the hospital or the corporation.

**OUTCOME:** The motion was denied.

**LexisNexis(R) Headnotes**

*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN1] To warrant certification as a collective action under *29 U.S.C.S. § 216(b)* of the Fair Labor Standards Act, a plaintiff must make at least a modest factual showing sufficient to demonstrate that she and potential plaintiffs together were victims of a common policy or plan that violated the law.

**COUNSEL:** [*1] For Anetha Barfield, Individually, Anetha Barfield, and on behalf of all others similarly situated, Plaintiffs: Abdool Khalil Hassad, Law Office of Abdool Hassad, Jamaica, NY.

For New York Health and Hospitals Corporation, Bellevue Hospital Center, Defendants: Christopher Howard Lowe, Seyfarth Shaw LLP, New York, NY; Lorie Elizabeth Almon, Seyfarth Shaw LLP, Boston,

2005 U.S. Dist. LEXIS 28884, *; 151 Lab. Cas. (CCH) P35,065

MA; Michele Ann Molfetta, NYC Law Department, Office of the Corporation Counsel, New York, NY.

**JUDGES:** JED S. RAKOFF, U.S.D.J.

**OPINION BY:** JED S. RAKOFF

**OPINION**

*MEMORANDUM ORDER*

JED S. RAKOFF, U.S.D.J.

In this lawsuit, plaintiff alleges that the New York City Health and Hospitals Corporation ("the NYHHC") in general, and the Bellevue Hospital Center in particular, violated the overtime provisions of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216(b)*. Plaintiff now moves for an order authorizing the action to be certified as a "collective action" under the FLSA so as to embrace all similarly situated individuals, directing defendants to provide the names and last known addresses of all potential opt-in plaintiffs, and authorizing the mailing of notice along with consent opt-in forms to all potential [*2] opt-in plaintiffs. Defendants contend that plaintiff has failed to establish the existence of similarly situated individuals. Following briefing, the Court held an evidentiary hearing on September 28, 2005, not for the purpose of resolving factual disputes, but for the purpose of clarifying the positions of the contending parties and the evidentiary bases, vel non, for those positions so far as this motion is concerned. *See Fed. R. Civ. P. 43(e)*.

Such facts as are supported by competent evidence, when taken most favorably to plaintiff, show the following. For a little over three years, plaintiff Anetha Barfield was paid by nursing referral agencies for work she performed for and at Bellevue Hospital, which is owned and operated by the NYHHC. *See* Transcript, 9/28/05, at 47. Approximately eight different nursing referral agencies kept sign-in books at Bellevue, and nurses who worked through the agencies could use any of the books to sign in at the beginning of their shifts. *Id.* at 48. By working through multiple agencies in a given week, plaintiff was able to work more than 40 hours in the week; but she did not receive overtime pay [*3] for the hours worked in excess of 40 hours. *Id.* at 50.

In her Complaint, plaintiff alleges that this practice was widespread, that both Bellevue and NYHHC were aware of and approved it, and that they thereby violated the FLSA. But [HN1] to warrant certification as a collective action under *§ 216(b) of the FLSA*, a plaintiff must make at least "a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)*. While, for purposes of this motion, the Court disregards defendants' evidence that it is *more* expensive for the hospitals to hire nurses through the referral agencies than to hire them directly and pay them overtime, *see* transcript, 9/28/05, at 14, plaintiff presents nothing but limited anecdotal hearsay to suggest that there is a widespread practice of referral nurses working in excess of 40 hours per week by signing up through multiple agencies, and no evidence whatever that this is pursuant to a policy of either Bellevue or the NYHHC. [1]

> 1    That plaintiff herself chose to sign with multiple referral agencies so that she could work more than 40 hours in a given week is no proof of any policy of the hospital to evade the requirements of the FLSA. Nor did plaintiff controvert defendant NYHHC's showing that there is no corporate-wide contract or agreement between NYCHHC and the nursing referral agencies and that NYHHC does not review the agreements between the agencies and the individual hospitals. Transcript, 9/28/05, at 6-7, 9.

[*4]   Accordingly, the plaintiff's motion is hereby denied, and this case will proceed as a claim on behalf of plaintiff Anetha Barfield only. Counsel for the parties should jointly call the Court no later than November 23, 2005 to schedule discovery and other pretrial matters.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York

November 17, 2005

**4**

LEXSEE 2007 U.S. DIST. LEXIS 54068



Cited
As of: Aug 07, 2008

**NEAL BARTEN, et al., Plaintiffs, vs. KTK & ASSOCIATES, INC. d/b/a BARNACLES RESTAURANT, CARL GRAVES, ROBERT GRAVES, Defendants.**

**Case No. 8:06-CV-1574-T-27EAJ**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

*2007 U.S. Dist. LEXIS 54068*

**July 24, 2007, Decided
July 26, 2007, Filed**

**COUNSEL:** [*1] For Neal Barten, on behalf of all similarly situated Barnacles Servers and Bartenders, Jennifer Busciglio, on behalf of all similarly situated Barnacles Servers and Bartenders, Aron Grogan, on behalf of all similarly situated Barnacles Servers and Bartenders, Keith Harrell, on behalf of all similarly situated Barnacles Servers and Bartenders, Brian Johnson, on behalf of all similarly situated Barnacles Servers and Bartenders, Nicole Klausman, on behalf of all similarly situated Barnacles Servers and Bartenders, Steven Sheets, on behalf of all similarly situated Barnacles Servers and Bartenders, Plaintiffs: Anthony S. Arena, Darren Douglas McClain, LEAD ATTORNEYS, Tampa, FL.

For KTK & Associates, Inc., doing business as Barnacles Restaurant, Carl Graves, Robert Graves, Defendants: Todd Sidney Aidman, LEAD ATTORNEY, Robert David Hall, Jr., Ford & Harrison LLP, Tampa, FL.

**JUDGES:** JAMES D. WHITTEMORE, United States District Judge.

**OPINION BY:** JAMES D. WHITTEMORE

**OPINION**

*ORDER*

**BEFORE THE COURT** is Plaintiffs' Motion for Conditional Certification of Collective Action and Permission to Send Court-Supervised Notice (Dkt. 25), to which Defendants have responded in opposition (Dkt. 31). Upon consideration, Plaintiff's motion [*2] is DENIED without prejudice.

*Background*

Plaintiffs filed this collective action pursuant to the Fair Labor Standards Act (FLSA), *29 U.S.C. §§ 201 et seq.* and the *Florida Constitution, Article X, section 24.* (Dkt. 1). Plaintiffs are former employees of Defendant KTK & Associates, Inc., d/b/a Barnacles Restaurant ("Barnacles"). (Dkt. 1, PP 8-14). Defendants Robert and Carl Graves own and operate Barnacles. (Dkt. 1, PP 5-6). Plaintiffs allege that, as servers and bartenders at Barnacles, they were required to participate in an illegal tip pool. Specifically, Plaintiffs contend that they were required to pay to Carl and Robert Graves two percent of any sales made over $ 200.00 for the night, or a lower amount for lunch time. (Dkt. 1, P 18). For example, servers or bartenders who sold $ 1000.00 worth of food or beverages would pay the owners $ 20.00 out of their tip earnings. *Id.* The parties dispute the legality of this arrangement.

Plaintiffs have filed affidavits and consents to join from two servers who are not named plaintiffs, William Tyler Smith and Lisa Bryant, who aver that they were required to participate in the tip pool. [1] (Dkt. 25 at 14-15; Dkt. 32). Plaintiffs have also filed [*3] declarations from three of the named Plaintiffs, Keith Harrell, Jennifer Busciglio, and Steven Sheets, who generally aver that they have friends who are current employees at

2007 U.S. Dist. LEXIS 54068, *

Barnacles who are afraid to join the lawsuit, fearing retaliation. (Dkt. 26 at 22-27).

> 1    Robert Graves has submitted an affidavit stating that Barnacles has no records of an employee named Lisa Bryant for 2002, 2003, or 2004. (Dkt 31-4, P 3-4). Plaintiffs have filed an Amended Affidavit indicating that Lisa Bryant's maiden name is Lisa Castellano. (Dkt. 32, P 2). As such, the Court accepts, for the purposes of this motion, that Lisa Castellano did work at Barnacles during the times she alleges.

### Standard

Pursuant to *29 U.S.C. § 216(b)*, certification of collective actions in FLSA cases is based on a theory of judicial economy, by which "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*. Courts utilize a two-tiered approach in making collective action certification determinations under the FLSA:

> The first determination is made at the so-called "notice [*4] stage." At the notice stage, the district court makes a decision -- usually based only on the pleadings and any affidavits which have been submitted -- whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001); see also Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003)*.

At the notice stage, the court must initially determine whether: 1) there are other [*5] employees who desire to opt in to the action; and 2) the employees who desire to opt in are "similarly situated." *Dybach v. State of Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir. 1991)*. This determination is made using a fairly lenient standard. *Cameron-Grant, 347 F.3d at 1243 n.2*. However, the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996)* (internal quotations and citation omitted). Ultimately, the district court must satisfy itself that there are other employees who are similarly situated and who desire to opt in. *Dybach, 942 F.2d at 1567-68*.

### Discussion

"[P]laintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they proposed." *Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983)*. Evidence of other employees who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees. *Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1277 (M.D. Ala. 2004)*. [*6] Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. *Mackenzie v. Kindred Hosps. E., L.L.C., 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003)* (citing *Dybach, 942 F.2d at 1567-68*) (emphasis added). Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court. [2] *Id.*

> 2    *See e.g., Tyler v. Payless Shoe Source, Inc., 2005 U.S. Dist. LEXIS 31682, 2005 WL 3133763, *3 (M.D. Ala. Nov. 23, 2005)* (three to five consents to join were sufficient to establish that others desired to opt in); *Pendlebury v. Starbucks Coffee Co., 2005 U.S. Dist. LEXIS 574, 2005 WL 84500, *3 (S.D. Fla. Jan. 3, 2005)* (plaintiffs allegations and four affidavits by employees indicating that others desired to opt in were sufficient); *Bell v. Mynt Entm't, LLC, 223 F.R.D. 680, 683 (S.D. Fla. 2004)* (affidavits from seven plaintiffs indicating others desired to opt in and detailing allegations of wage violations were sufficient); *Harper v. Lovett's Buffet, Inc., 185*

*F.R.D. 358, 362-63 (M.D. Ala. 1999)* (fifteen affidavits by employees with specific allegations of wage violations were sufficient).

Plaintiffs have not demonstrated [*7] that other employees desire to opt in the lawsuit. Plaintiffs Busiglico, Harrel, and Sheets' averments that they "think" other employees would opt in are speculative, vague and conclusory. A plaintiff's belief in the existence of other employees who desire to opt in and "unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify" certification of a collective action and notice to a potential class. *Mackenzie, 276 F. Supp. 2d at 1220* (*citing Haynes, 696 F.2d at 887*); *Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1236-37 (M.D. Ala. 2003)*. In addition, it appears from the allegations in the Complaint that Plaintiffs Jennifer Busciglio and Michael Grogan worked at Barnacles before the commencement of the class period on or after May 2, 2005, as defined by the Complaint. (Dkt. 1, P 1). Lisa Bryant attests that she worked at Barnacles until "approximately sometime in 2004," which is also outside the class period. (Dkt. 32, P 2).

In the eleven months since this lawsuit was filed. Plaintiffs have identified only one viable opt-in plaintiff,

and it appears that two of the named Plaintiffs fall outside the class period. Taken together, [*8] Plaintiffs' allegations are simply not sufficient to establish that there are other individuals who would join in this action. *White v. Kcpar, Inc., No. 05-cv-1317, 2006 U.S. Dist. LEXIS 40952, 2006 WL 1722348, *3 (M.D. Fla. June 20, 2006)* (observing that additional two plaintiffs could join); *Wombles v. Title Max of Ala., Inc., No. 3:03-cv-1158, 2005 U.S. Dist. LEXIS 34733, 2005 WL 3312670, *3 (M.D.Ala. Dec.7, 2005)* (two consents to join and five nearly identical affidavits by plaintiffs indicating that they "believe" others desire to join the lawsuit were insufficient to establish that others desired to opt in).

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motion for Conditional Certification of Collective Action and Permission to Send Court-Supervised Notice (Dkt. 25) is **DENIED** without prejudice.

**DONE AND ORDERED** in chambers this 24th day of July, 2007.

**JAMES D. WHITTEMORE**

**United States District Judge**

**5**

LEXSEE 2004 U.S. DIST. LEXIS 12441



Caution
As of: Aug 07, 2008

**DERRIN BASCO, ET AL. VERSUS WAL-MART STORES INC., ET AL.**

**CIVIL ACTION NO. 00-3184 SECTION "K"(4)**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

*2004 U.S. Dist. LEXIS 12441*

**July 1, 2004, Decided**
**July 2, 2004, Filed, Entered**

**PRIOR HISTORY:** *Basco v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 4655 (E.D. La., Mar. 19, 2004)*

**DISPOSITION:** [*1] Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, employees, sued defendants, an employer, managers, and unnamed individuals, alleging claims under the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.* The employees moved for FLSA class certification and to approve notice to all similarly situated employees in Louisiana.

**OVERVIEW:** The employees alleged that the employer pursued a pattern of conduct in which (1) employees worked off the clock, (2) employees were "locked-in" at night off-clock while waiting for management to let them out, (3) and employees missed rest and meal breaks. The employees asserted that these practices resulted in violation of the minimum wage and overtime provision of the FLSA. The court found that the employees failed to present evidence of a policy or practice by the employer to require the employees to work off the clock; furthermore, the evidence appeared to extremely anecdotal. The employees failed in their burden of proof to demonstrate identifiable facts or legal nexus that bound the claims so that hearing the cases together would promote judicial efficiency. The employer's

potential defenses to any alleged FLSA overtime violations would require highly individualized evidence that concerned each of the employees. A collective action of this nature presented enormous manageability problems because there was no single decision, policy, or plan at issue. It would have been an exercise in gross mismanagement of judicial and litigant time and money to certify the class.

**OUTCOME:** The employees' motion for FLSA class certification and to approve notice to all similarly situated employees in Louisiana was denied.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN1] *29 U.S.C.S. § 207(a)* of the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. *29 U.S.C.S. § 207(a).* An employee is authorized to bring an action on behalf of himself and other "similarly situated" employees. *29 U.S.C.S. § 216(b).* This type of action is meant to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.

2004 U.S. Dist. LEXIS 12441, *

*Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN2] The Age Discrimination in Employment Act, *29 U.S.C.S. § 621 et seq.*, explicitly incorporates § 16(b), *29 U.S.C.S. § 216(b)*, of the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*


*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Civil Procedure > Dismissals > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN3] With regard to the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, a trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and affidavits-whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a lenient standard, and typically results in "conditional certification" of a representative class. If the court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery. The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is complete and the matter is ready for trial. At this stage, the court makes a factual determination on the similarly situated question. If the claimants are similarly situated, the court allows the representative action to proceed to trial. If the claimants are not similarly situated, the court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives (the original plaintiffs) proceed to trial on their individual claims.


*Civil Procedure > Class Actions > Judicial Discretion*
[HN4] The United States Court of Appeals for the Fifth Circuit considers the following factors to reach its decision to decertify a class at the second stage: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) the apparent absence of filings required by the statute prior to instituting suit.

*Civil Procedure > Class Actions > Judicial Discretion*
[HN5] Because the aim of collective actions is to promote judicial economy, where substantial discovery has already been undertaken such that the court can make an educated decision as to whether certifying a matter as a collective action would survive the decertification process, the ends of judicial economy require the court to make that enquiry. To create a collective action class, including the cost associated with that when a court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved.


*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN6] With regard to an action brought under the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.*, plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. Similarly situated does not mean identically situated. Rather, an FLSA class determination is appropriate when there is a demonstrated similarity among the individual situations some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice. Thus, a court can foreclose a plaintiff's right to proceed collectively only if the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.


*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN7] With regard to a proposed class action under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, although the standard for satisfying the first step is lenient, the court still requires at least substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination. Courts who have faced the question of whether movants have established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted. While a united policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must

bind the claims so that hearing the cases together promotes judicial efficiency.

*Civil Procedure > Class Actions > Judicial Discretion*
[HN8] It would be a waste of the court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.

COUNSEL: For WAL-MART STORES INC dba Wal-Mart dba Sam's Club, JAMES BANKS, CHRIS MARTIN, defendants: Robert K. McCalla, Lawrence Joseph Sorohan, II, Fisher & Phillips, LLP, New Orleans, LA.

JUDGES: STANWOOD R. DUVAL, JR., UNITED STATES DISTRICT COURT JUDGE.

OPINION BY: STANWOOD R. DUVAL, JR.

OPINION

ORDER AND REASONS

Before the Court is Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana. Oral argument was held on March 18, 2004, with supplemental briefing ordered; the last memorandum was filed into the record on May 27, 2004. Having reviewed the extensive pleadings, memoranda, exhibits, deposition testimony and the relevant law, the Court finds that the motion is without merit.

BACKGROUND

This case was originally filed on September 5, 2000 by Derrin Basco, Dorothy English and Colby Lagrue in Civil District Court for the Parish of Orleans, Louisiana, individually and on behalf of all other similarly situated class members ("original plaintiffs"), against Wal-Mart Stores, Inc. (including all Louisiana [*2] Wal-Mart stores, Supercenters and Sam's Clubs) ("Wal-Mart"). The petition also named Wal-Mart managers, James Banks, Chris Martin, Charles Lanclos, Charles Rinehart, Wayne Gordon and Pat Curan ("the individual defendants"), as well as all other store, club, district and regional managers for the past ten years ("John Does"). The Louisiana claims against the individual employees were dismissed, and a Motion to Remand was denied on June 15, 2001. The procedural history of this case was been discussed at length in Magistrate Judge Roby's order allowing the Sixth Amended Complaint to be filed in this matter, *Basco v. Wal-Mart Stores, Inc., 2004 U.S. Dist.*

LEXIS 4655, 2004 WL 574279 (E.D.La. March 19, 2004) and is incorporated herein. In addition, the factual and procedural history is further outlined in this Court's denial of a Motion for Class Certification on May 9, 2002. *Basco v. Walmart Stores, Inc., 216 F. Supp. 2d 592 (E.D.La. 2002)* which is incorporated herein as well. The United States Court of Appeals for the Fifth Circuit denied plaintiffs leave to appeal the denial of class certification on July 25, 2002.

On August 23, 2002, this matter was set for trial to commence [*3] on April 28, 2003. On January 24, 2003, defendants filed a Motion for Summary Judgment seeking dismissal of certain of plaintiffs' remaining claims based on prescription and all unjust enrichment claims. While that motion was pending, on February 27, 2003, four plaintiffs filed a Fourth Amended Complaint which asserted for the first time federal minimum wage and overtime violations pursuant to the Fair Labor Standards Act of 1938, as amended, *29 U.S.C. §§ 201-219* ("FSLA").

A status conference was held on February 27, 2003, during which plaintiffs sought a continuance of the trial based on the new allegations. A proper motion was filed by plaintiffs on March 17, 2003, noting their desire to pursue their rights as a collective action under the FLSA which required discovery. The Court sought to have a conference to set this matter for trial; however, plaintiffs moved for continuance of the pretrial scheduling conference because "plaintiffs and defense counsel have agreed that there must be some discovery and motion practice undertaken in order to prepare the case for a hearing on Plaintiffs' motion to proceed as a collective action." (Doc. 103). Thus, the parties [*4] set out to do the necessary discovery to present to the Court the instant issue. Based on counsel's request, the hearing on the certification of the collective action was set for January 15, 2004, with responses due on February 17, 2004 and a hearing on the matter set for March 4, 2004. No trial date was set at that time.

A Fifth Amended Complaint was filed on November 11, 2003 which added 15 additional plaintiffs to this suit to flesh out the FLSA claims. [1] The hearing on the Motion for Certification was continued to March 18, 2004. As previously noted, after that hearing counsel requested additional time to file briefing on representative testimony which was completed on May 24, 2004.

1   By virtue of the Sixth Amended Complaint, two plaintiffs were dropped and nine new plaintiffs were added. The Court has focused on those plaintiffs that were named in the Fifth Amended Complaint, that is at the time of the filing of this motion. The new plaintiffs do not

2004 U.S. Dist. LEXIS 12441, *

change the analysis of the matter before the Court.

[*5]    Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana

## The Claims

Plaintiffs seek class certification to pursue claims under the Fair Labor Standards Act of 1938, *29 U.S.C. §§ 201-219* (hereinafter "FLSA"). Plaintiffs allege in the Fifth Amended Complaint that Wal-Mart pursues a pattern of conduct that results in (1) employees working off the clock, (2) employees being "locked-in" at night off-clock while waiting for management to let employees out, (3) and employees missing rest and meal breaks. Plaintiffs move the Court for an order (1) certifying this case as a collective action under *§ 216(b) of the FLSA*, (2) approving the "Notice to Current and Former Wal-Mart and Sam's Club Hourly Employees in Louisiana" (Exh. No. 21 to this motion) which would then be sent to the approximately 100,000 employees to be identified, by (3) compelling Wal-Mart to answer Interrogatory No. 2 of Plaintiffs' Fourth Set of Interrogatories (Exh. No. 22 to this motion).

The "class" is defined in plaintiffs' suggested "Notice" as:

> any and all employees who are or have been, at any time within the past [*6] three (3) years: (a) Employed on an hourly basis at a Wal-mart or Sam's Club store that was owned and operated by Wal-Mart Stores, Inc. in the State of Louisiana; and (b) Did not receive minimum or overtime wages as a result of the practices described in Paragraph 2(a).

Paragraph 2(a) states:

> This lawsuit alleges that Wal-Mart Stores, Inc. has violated the Act with regard to hourly workers as follows: (1) after clocking out after a shift, employees are required to work beyond their regular hourly schedules and are not paid for the time worked off the clock; (2) after clocking out for meal breaks, employees are required to perform work duties and are not paid for the time worked off the clock during their unpaid meal breaks; (e) employees are not permitted to take rest and meal breaks; and (4) managers have manipulated time and wage records to

reduce amounts paid to Wal-Mart employees, including overtime pay.

(Plaintiffs' Memorandum in Support, Exh. 21).

Contained in Exhibit A is a list of the named plaintiffs [2] in the Fifth Amended Complaint, the location of the relevant store where that person is employed, the time of employment, the job description and the claims [*7] made on behalf of that person.

> 2    The claims of Teresa Buckner and Geneva Johnson-Heisler have been dismissed.

The claims as noted vary; not each plaintiff complains of all "illegal" activities. Plaintiffs contend that these practices have resulted in the violation of the minimum wage and overtime provisions of the FLSA.

## The FLSA and Collective Action Status

[HN1] *Section 207(a) of the FLSA* requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. *29 U.S.C. § 207(a)*; *Freeman v. Wal-Mart Stores, Inc., 256 F. Supp.2d 941, 943 (W.D.Ark. 2003)*. An employee is authorized to bring an action on behalf of himself and other "similarly situated" employees. *28 U.S.C. § 216(b)*. [3] This type of action is meant to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights. *Id.* citing *Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 170, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)* [*8]    (judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity). Thus, the inquiry before the Court is to determine whether the class as defined is "similarly situated."

> 3    [HN2] The Age Discrimination in Employment Act, *29 U.S.C. § 621*, also explicitly incorporates section 16(b) of the FLSA, *29 U.S.C. § 216(b)*. *Mooney v. Aramco Services Co., 54 F.3d 1207, 1212 (5th Cir. 1995)*. Thus, any discussion of this provision in the context of an ADEA claim is applicable to the case at bar.

In the seminal case *Mooney v. Aramco Services Co., 54 F.3d 1207 (5th Cir. 1995)*, the United States Court of Appeals for the Fifth Circuit noted that are the two different tests that have been applied to make this determination-a two-step approach found in *Lusardi v. Xerox Corp., 122 F.R.D. 463, 465-66(D.N.J. 1988)* and the "Spurious Class Action" outlined [*9] in *Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990)*.

[HN3] Under *Lusardi*, the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the [*10] claimants are similarly situated, the district court allows the representative action to proceed to trial. If th claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

*Mooney at 1213-14.* Indeed, in *Lusardi*, [HN4] the court considered the following factors to reach its decision to decertify the class at the second stage:

(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendant] which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) the apparent absence of filings required by the ADEA prior to instituting suit.

*Mooney, 54 F.3d at 1213 n.7, citing Lusardi v. Xerox Corp., 118 F.R.D. 351, 359; Thiessen v. GE Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)* (using the first three criteria).

The second analysis is known as Spurious Class Action [4]

The second line of cases is typified by *Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990).* [*11] *Shushan* espouses the view that *§ 16(b) of the Fair Labor Standards Act (FLSA)* merely breathes new life into the so-called "spurious" class action procedure previously eliminated from *Fed. R. Civ. P. 23.* Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA and ADEA context, but merely desired to limit the availability of *Rule 23* class action relief under either Act. In application, the court determined that Congress intended the "similarly situated" inquiry to be co-extensive with *Rule 23* class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.

*Mooney, 54 F.3d at 1214.* [5] This approach has not been embraced as often as the one found in *Lusardi.*

Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reached on how *section 216(b)* cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method [*12] for making the similarly situated analysis and that the similarly situated standard does not incorporate *Rule 23* requirements.

D. Bergen and L. Ho, "Litigation of Wage and Hour Collective actions under the Fair Labor Standards Act" 7 *Employee Rts. & Emp. Pol'y J.* 129, 134 (2003). [6] The authors continue:

While the recent court of appeals opinions have clarified the standards and procedure for making the 'similarly situated' determination, the district courts

are still wrestling with the application of such standards. The similarly situated standard is evaluated differently depending on if the inquiry takes place when: (1) plaintiffs seek court-facilitated notice early in the litigation; or (2) discovery has closed or the defendant seeks to decertify a previously certified class propr to trial.

*Id.*

4    *Bayles v. American Medical Response of Colorado, 950 F. Supp 1053 (D. Col. 1996)* identified three other analyses-all variations using a *Rule 23* analysis; however, in light of *Mooney,* the Court need not examine these other methods. "Litigation of Wage and Collective Actions" at 132.

[*13]

5    Both in *Mooney* and *Freeman,* the courts found it unnecessary to choose between the two tests. The courts found that based on the record before them that no matter which test was used a finding that the opt-in plaintiffs or potential opt-in plaintiffs were not similarly situated.

6    *Rule 23,* which is generally considered a "stricter" rule, *Garza v. Chicago Transit Authority, 2001 U.S. Dist. LEXIS 6132, 2001 WL 504036 (N.D. Ill. May 8, 2001)* would require findings on numerosity, commonality, typicality and adequacy tests.

Based on the foregoing, the Court will employ the two-step approach found in *Lusardi.* However, in light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter. At least one court has proceed directly to the second stage when "the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action." *Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6447, 2004 WL 554834 (C.D.Cal. March 1, 2004).* [*14] Indeed, in the instant matter substantial discovery has occurred; the Court has heard the video deposition testimony of a substantial number of plaintiffs at the hearing on this matter and has independently reviewed written deposition testimony as well. This case, as demonstrated by its long procedural history, is not in a nascent stages. Thus, an application of the second criteria is called for.

[HN5] Because the aim of collective actions is to promote judicial economy, and substantial discovery has already been undertaken such that the Court can make an

educated decision as to whether certifying this matter as a collective action would survive the decertification process, the ends of judicial economy and require the Court to make that enquiry at this stage. To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved.

**Similarly Situated**

**The Standard Employed**

[HN6] Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. *Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6447, 2004 WL 554834 [*15]* *(C.D. Cal. March 1, 2004, citing White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1313 (M.D.Ala. 2002).* As stated by Judge Feldman in *Helmerich and Payne Intern'l Drilling Co., 1992 U.S. Dist. LEXIS 5367, 1992 WL 91946 (E.D.La. April 16, 1992):*

Similarly situated does not mean identically situated. *See Heagney [v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)];* *Palmer v. Reader's Digest Asso., 1986 U.S. Dist. LEXIS 19547, 42 Fair Empl. Prac. 212, 213 (S.D.N.Y. 1986);Riojas [v. Seal Produce, Inc. 82 F.R.D. 613, 617 (S.D. Tex. 1979).* Rather, an FLSA class determination is appropriate when there is "a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Heagney, supra ....* Thus, a court can foreclose a plaintiffs right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp., 116 F.R.D. 276, 277 (D. Colo. 1987).* [*16]

*1992 U.S. Dist. LEXIS 5367, [WL] at *2.* This standard has been restated and further refined in *H&R Block v. Housden, 186 F.R.D. 399 (E.D.Tex. 1999):*

[HN7] although the standard for satisfying the first step is lenient, ..., the court still requires at least "substantial allegations    that    the    putative    class

members were together victims of a single decision, policy or plan infected by discrimination." courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified ...; whether affidavits of potential plaintiffs were submitted ...; and whether evidence of a widespread discriminatory plan was submitted ....

*Id. at 400.* Another district court has concluded "that while a united policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency. *Barron v. Henry County School System, 242 F. Supp. 2d 1096 (M.D. Ala. 2003), citing Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002).* [*17]

**First Step--Facts or Legal Nexus that Binds so as to Create Judicial Efficiency**

In essence, plaintiffs' argument of their being "similarly situated" as all to Louisiana Wal-Mart employees who are not paid overtime rests on the alleged "Wal-Mart mentality" of no overtime and strict budgeting of time and employee costs. To support this position, plaintiffs contend that Wal-Mart has engaged in a practice of limiting the amount of work its employees are allowed to perform on the clock during the week but not the amount of work they are required to do. They claim it is the result of a "Customer Service Scheduling System" which is a computer network used to monitor hours worked and control payroll costs at its individual stores on a daily basis-department-by-department and employee-by-employee. Plaintiffs rely on (1) the Customer Service Scheduling System; (2) evidence that hourly employees are not compensated for all of their work; and (3) bonus incentives for Store Managers.

**(1) Customer Service Scheduling System**

The Customer Service Scheduling System ("CSSS") is a computer program used to optimize the hours worked in relation to the historical needs of the business. It [*18] apparently creates "preferred hours" for each store which are determined as a percentage of historical and projected sales revenues. (Perrin Deposition pp. 5-10). These "preferred hours" are then used by store managers to create the "scheduled hours" for their stores. The store then tracks the "actual hours." Wal-Mart allegedly expects that payroll costs as a percentage of sales revenues be maintained at around 8%.

In addition there is a "Store Staffing Comparison by Day Report" to monitor Associates who may be working over or under their scheduled hours. There is also a "Associate Scheduling Review Report" which store managers can use to verify that the amount of wages scheduled is consistent with the budget.

Plaintiffs also provide evidence that they contend proves that (1) the computer prompts managers when they try to add shifts to obtain the District Managers approval for the addition, (2) the method by which the time clocks are "polled" and "finalized" shaved time off (which Wal-Mart vehemently denies), also (3) managers being "coached" on employee cost overruns.

**(2) Hourly Employees Not Compensated for All of Their Work**

**(a) Off the Clock**

Plaintiffs' counsel contends [*19] that plaintiffs were "often" required to work "off the clock. Reviewing the deposition testimony of the seven plaintiffs [7] however does not overwhelm the Court as evidence of a policy or practice, it appears to be extremely anecdotal-one manager requiring it as oppose to all, perhaps once or twice during the course of a plaintiff's work.

    7    Ferguson, Slaughter, Clark, McClain, Gauthreaux, Handy and Mayes.

**(b)working more than 40 hours-no overtime**

Likewise, plaintiffs presented testimony of five employees complaining that they worked more than 40 hours without receiving overtime pay.

**(3) Bonus Incentives for Store Managers**

In further support of this theory, plaintiffs contend that managers are awarded bonuses for keeping salary costs down and that as a result there is an added incentive for managers to have employees to work off the clock, contrary to Wal-Mart's written policies.

Based on these policies and procedures, plaintiffs rely on examples of the effect of the application of these alleged [*20] practices to demonstrate why this matter should proceed as a collective action. Plaintiffs focus on the fact that there is evidence of "wide-spread occurrence of off-the-clock-work and unpaid overtime" which they say they've uncovered without much discovery. Plaintiffs note that they've found nine more individuals that they've included in a Sixth Amended Complaint that have been deposed and have testified to working off the clock or not being paid overtime.

Plaintiffs point to the testimony of a former store manager for Wal-Mart Store No. 803, Mr. Mitchell, in Bogalusa from July 2000 to July 2002, who claims that

six people worked off the clock to "protect him". He also claims he was instructed to delete overtime from employees' time records in April or May of 2002. Mitchell names Charles Reinhardt and Donna Turpirtz as district managers who were making decisions that led him to be understaffed.

Nonetheless, Wal-Mart contends that even using the lenient standard, plaintiffs' request should be denied as plaintiffs have not identified a "single decision, policy or plan" as set forth in *Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 n.8 (5th Cir. 1995).* It contends [*21] that the anecdotal, that is to say individual instances cited are not enough to support a finding of being "similarly situated." To that end they have provided a number of affidavits from managers explaining the process of scheduling that they are instructed to use and they are not under any circumstances to have workers work "off-clock". Wal-Mart specifically counters each exhibit showing that the inferences promoted by plaintiffs are ill-founded.

Wal-Mart further contends that in order to prove plaintiffs' case, the facts are too individualized to warrant this kind of procedure. First, the plaintiffs themselves are responsible for punching in and out. Wal-Mart's policy requiring payment for all working time and any deviations for that policy occurs on a manager-by-manager and associate-by-associate basis involving particular circumstances and anecdotal testimony. The Court notes that one of the most telling example of this principle was supported by the testimony of Mr. Gautheraux who loved working in the meat department because he never was asked to be off-clock and had only been asked once to be off-clock; the testimony of Charles Ferguson supports the same conclusion.

Taking [*22] all of this into consideration, the Court must agree with Wal-Mart's characterization of the evidence presented. Simply put, plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal-Mart employees that have not been properly paid overtime in the last three years. It is obvious from the discovery presented that this "policy" and its effects are neither homogeneous nor lend themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the "policy" was not even uniformly or systematically implemented at any given store. While it is true that this "lesser" standard should not preclude certification, and "similarly situated" does not mean identically situated, plaintiffs have failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. For this reason the Court would deny the Motion to Certify Collective Action. However, pretermitting that finding, the Court will now examine this matter using the more demanding [*23] second step. [8]

> [8] The Court is not unaware that the two "step" inquiry somewhat collapses into one when a Court is faced with the plethora of evidence that was presented in this matter. Certainly the first "step" analysis is colored by the facts demonstrated-disparate factual and employment settings of the individual- and perhaps the Court should simply start at the second step as was done in the *Pfohl* case. Nonetheless, for purposes of appeal, the Court will go through the complete analysis.

### Second Step-Disparate Settings, Disparate Defenses and Procedural

Now, the Court will examine whether there are (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to Wal-Mart which appear to be individual to each plaintiff; and (3) fairness and procedural considerations that would make certification improper. [HN8] "It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that [*24] the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc., 256 F. Supp.2d 941 (W.D. Ark. 2003).*

The Court finds that the evidence presented and outlined above further underscores the disparate factual and employment settings of the individual plaintiffs. These facts demonstrate that it would not be in the interest of judicial economy to certify the state-wide class of employees. A store locate in Northern Louisiana faces different pressures and sales dynamics than a store in Southern Louisiana. Such variances would be equally possible even within the New Orleans area from store to store. Furthermore, the breadth of the type of employees and departments would also have to be placed into the equation. In addition, it is clear that even within a given store, one manager in one department would react to the "policy" differently than in another department. (e.g.--Mr. Gautheraux--working in the meat department versus working as a cashier).

Furthermore, Wal-Mart's potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate. [*25] As stated in *Mooney, 54 F.3d 1213, n.7* "the disparate individual defenses asserted by [defendant] heightens the individuality of the claims and complicates the significant management problems." As Wal-Mart correctly noted, it would be entitled to:

(1) contest whether any off-the-clock work occurred and whether it resulted in non-payment of FLSA overtime;

(2) argue specific defenses available under the FLSA that seem to require individual testimony particularly in reference as to what constitutes "work" under the FLSA;

(3) demonstrate its managers and supervisors did not know about the off-the-clock work and that plaintiffs failed to take advantage of Wal-mart's system for reporting time;

(4) demonstrate that plaintiffs' claims are barred by § 4 of the Portal to Portal Act, *29 U.S.C. § 254*, as to all hours during which plaintiffs were engaged in activities that were preliminary or post-liminary to their principal activities;

(5) demonstrate that any off-the-clock work falls within the *de minimus* exception to the FLSA;

(6) demonstrate associates claims are barred by statute of limitations or technical defaults; [*26] and

(7) demonstrate that each manager acted in good faith and that liquidated damages are not appropriate.

These factors also support the finding that a collective action of this nature presents enormous manageability problems because there is no single decision, policy or plan at issue. The findings decertifying the collective action in *Lusardi* are equally appropriate here. The members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices within the Wal-Mart organization. The potential opt-in plaintiffs performed different jobs at different geographic locations and were subject to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis. This case should not be certified; it would be an exercise in gross mismanagement of judicial and litigant time and money to certify the class as requested given the overwhelming evidence brought before the court. [9] Accordingly,

9 In *Thiebes v. Wal-Mart Stores, Inc., 1999 U.S. Dist. LEXIS 18649, 1999 WL 1081357 (D. Oregon Dec. 1, 1999)*, the court allowed an FSLA action to proceed against Wal-Mart based on its findings at the First Stage and allowed the action to proceed for notice and discovery purposes. Using the less stringent standard, the court held that there were sufficient identifiable factual and legal bases that the potential plaintiffs were a victim of a common policy. Although not reported, it is this Court's understanding that ultimately the liability questions went to a jury which found in favor of the plaintiffs. Moreover, it is the Court's understanding that approximately 425 employees oped-in. There is no reported case addressing a motion for decertification after discovery had been completed. Because there has been substantial discovery in this case, this Court's analysis is based on a stricter standard in this instance.

[*27] **IT IS ORDERED** that Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana is **DENIED.**

New Orleans, Louisiana, this 1st day of July, 2004.

**STANWOOD R. DUVAL, JR.**

**UNITED STATES DISTRICT COURT JUDGE**

Exhibit A

| Name | Store Locution | Time of Employment |
|---|---|---|
| Regina Geason | Sam's Club No. 8221, Harvey | Feb. 1995- Feb. 2000 |
| Betty Matthews | Wal-Mart No. 23, Ruston | June 1989-April 2001 |
| K. Busby-Dunn | Wal-Mart No. 1206 Baton Rouge | Nov. 1999-June 2001 |
| Janet Clay* | Wal-Mart No. 376 Bossier City | Nov. 1999-May 2001 |
| Merle Davis | Wal-Mart No. 839 Baton Rouge | Dec. 1992-July 2001 |
| A. Dixon-Clark | Wal-Mart No. 1169 New Roads | |
| C. Edwards | Wal-Mart No. 489 Hammond | Oct. 2000-July 2001 |

2004 U.S. Dist. LEXIS 12441, *

| C. Ferguson | Wal-Mart No. 2132 Baton Rouge | Sept. 1999-Sept. 2001 |
| D. Gauthreaux | Wal-Mart No. 2132 Baton Rouge | April 1998-Feb. 2001 |
| Silas Handy* | Wal-Mart No. 376 Bossier City | 1997-2001 |
| Linus Mayes | Wal-Mart No. 376 Bossier City | Aug. 2000-2001 |
| Fannie McClain | Wal-Mart No. 428 Zachery | March 2001-May2001 |
| Alfred Scott | Wal-Mart No. 201 Plaquemine | Feb. 2000-Aug.2001 |
| Lee Slaughter | Sam's Club No. 8273 Shreveport | 1984 to present |
| Trimty Taylor | Wal-Mart No. 1206 Baton Rouge | Aug. 2000-June 2001 |

[*28]

| Name | Job Description |
| --- | --- |
| Regina Geason | audit/inventory control |
| Betty Matthews | overnight stocker, photo processor |
| | demo coordinator, zone manager, |
| | dept. manager |
| K. Busby-Dunn | lingerie dept. |
| Janet Clay* | cashier |
| Merle Davis | cashier |
| A. Dixon-Clark | pharmacy dept. |
| C. Edwards | receiving dept. |
| C. Ferguson | grocery dept. |
| D. Gauthreaux | stoker and cashier |
| Silas Handy* | |
| Linus Mayes | receiving dept. |
| Fannie McClain | remodeling crew |
| Alfred Scott | overnight stocker |
| Lee Slaughter | grocery dept. |
| Trimty Taylor | hardware dept. |

| Name | Claims |
| --- | --- |
| Regina Geason | off clock/lock-in/rest and meals |
| Betty Matthews | off clock/lock-in/rest and meals |
| K. Busby-Dunn | off clock/lock-in/rest and meals |
| Janet Clay* | no overtime pay |
| Merle Davis | no overtime pay/lock-in/rest and meals |
| A. Dixon-Clark | off clock/rest and meals |
| C. Edwards | off clock/no overtime pay/rest and meals |
| C. Ferguson | off clock/no overtime pay |
| D. Gauthreaux | off clock/no overtime pay/rest and meals |
| Silas Handy* | off clock/rest and meals |
| Linus Mayes | off clock/rest and meals |
| Fannie McClain | off clock/rest and meals |
| Alfred Scott | off clock/no overtime pay/rest and meals |
| Lee Slaughter | off clock/rest and meals |

2004 U.S. Dist. LEXIS 12441, *

| Trimty Taylor | off clock/rest and meals |

[*29]

**6**



Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

▷Davis v. Lenox Hill Hosp.
S.D.N.Y.,2004.

United States District Court,S.D. New York.
Eulie DAVIS, Individually and on behalf of others
similarly situated, Plaintiff,
v.
LENOX HILL HOSPITAL, Access Private Duty
Services, Inc., and Louise Weadock, Defendants.
**No. 03 Civ.3746 DLC.**

Aug. 31, 2004.

<u>Michael Shen</u>, Michael Shen & Associates, P.C.,
New York, New York, for the Plaintiff.
<u>Kristin M. Burke</u>, <u>Daniel Moreland</u>, Clifton Budd &
DeMaria, LLP, New York, New York, for the
Defendant Lenox Hill Hospital.
<u>Dean L. Silverberg</u>, <u>Daniel B. Abrahams</u>, <u>Susan
Gross Sholinsky</u>, Epstein Becker & Green, P.C., New
York, New York, for the Defendants Access Private
Duty Services, Inc. and Louise Weadock.

*OPINION AND ORDER*

<u>COTE</u>, J.
**\*1** This Opinion addresses motions brought by
plaintiff Eulie Davis ("Davis") to amend her
complaint and for class certification. Davis brings
this action on behalf of herself and others against
defendants Access Private Duty Services, Inc. and
Louise Weadock (collectively, "Access") and Lenox
Hill Hospital ("Lenox Hill") for a refusal to pay
overtime wages, improper wage deductions, and the
denial of benefits in violation of the Federal Labor
Standards Act, <u>29 U.S.C. § 201</u>*et seq.* ("FLSA"), the
Employee Retirement Income Security Act of 1974
("ERISA"), <u>29 U.S.C. § 1001</u>*et seq.,* and the New
York Labor Law ("NYLL"), as well as for unjust
enrichment and breach of contract. Davis also asserts
an individual claim against the defendants for
retaliation under Section 215 of the NYLL.

In a separate Opinion issued today (*"Davis I"* ),
Davis' ERISA claim and her claim for violations of
the overtime pay provisions of the NYLL were
dismissed. Remaining in this action are Davis'
purported class claims for unjust enrichment and
breach of contract, her collective action claim for
violations of the FLSA, and her individual claim for
retaliation under the NYLL.

Davis now moves to amend her complaint to (1) add
fourteen named plaintiffs; <u>FN1</u> (2) certify a class under
<u>Rule 23(b)(3), Fed.R.Civ.P.</u>; and (3) expand her
unjust enrichment class action claim to include
Access. Davis defines the class as "all persons
employed by the defendants as private duty nurses
who were denied full compensation in pay and
benefits, including overtime premium compensation
for all hours worked in excess of forty per week ... at
any time after May 23, 1997," and also seeks to
circulate a notice of pendency of an FLSA collective
action for these same individuals. For the reasons
described below, each of the motions are denied with
the exception of the request to circulate a notice of
pendency of an FLSA collective action to a sub-
group of those whom Davis seeks to represent.

> <u>FN1.</u> It is assumed that the fourteen
> plaintiffs are intended to be additional class
> representatives. In her motion, Davis does
> not address this issue; the caption on her
> proposed Amended Complaint, however,
> identifies the fourteen proposed plaintiffs as
> bringing their claims "individually and on
> behalf of others similarly situated."

*Background*

This Opinion incorporates and assumes familiarity
with the facts described in *Davis I.* Only the facts
necessary to understand the parties' arguments in
connection with the plaintiff's motions to amend and
for class certification will be restated here.

Access is a nursing service that provides private
registered nurses ("RNs"), licensed practical nurses
("LPNs") and nurse's aids ("NAs") to healthcare
facilities. RNs, LPNs, and NAs possess significantly
different levels of training and specialization. An
Access employee manual dated March 23, 1995
provides job descriptions and qualifications for each
category of private duty nurse.<u>FN2</u>According to the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

manual, to qualify as an RN, the nurse must have graduated from an accredited school of nursing, possess a "minimum of two years professional experience; one year of which must be in an acute care setting," and have at least one year experience in an area of "special care." The manual explains that, as a general matter, an RN is "a highly qualified healthcare provider, who through educational preparation, possesses a distinct body of knowledge and skills."In contrast, LPNs "work under the supervision of the registered nurse ... [and] may be assigned to give nursing care which does not require the skill and/or judgment of a registered nurse."An LPN must have "at least one year's current and appropriate experience."The NA need only be a high school graduate, and is qualified to "provide companionship ... assist with personal hygiene, minor housekeeping and other related supportive tasks to the patient."

> FN2. "Private duty nurse" is the term used in the industry for RNs, LPNs, and NAs who, because of a doctor's order or a patient's choice, provide care for patients beyond that provided by the regular hospital staff.

*2 In 1994, Lenox Hill contracted with Access to assume certain employer functions, including payment of wages, with respect to all private duty nurses at Lenox Hill. In November 1994, Access announced the implementation of the "Elite Corps" program for interested RNs. The Elite Corps program was not open to LPNs and NAs. According to Access, Elite Corps RNs would be guaranteed a minimum number of shifts per week at a set salary, in exchange for which they would be exempt from the overtime compensation requirements of the FLSA.[FN3] Elite Corps RNs would also be eligible for extra vacation and other bonuses. *SeeDavis I.*

> FN3. In contrast, non-Elite Corps employees received compensation at the rate of time and one-half for hours worked beyond forty per week.

Despite statements by Access that Elite Corps RNs would be paid a weekly salary, issues of fact remain as to whether the Elite Corps RNs were in fact paid on an hourly basis. *SeeDavis I.* It also appears that Elite Corps RNs were subject to the same paycheck

deductions as the other private duty nurses.*Id.* The Elite Corps program was disbanded in December 2003.

Davis, an RN, worked for Access as a private duty nurse from 1994 until the termination of her employment on December 27, 2001.[FN4]On March 30, 1995, Davis joined the Elite Corps.

> FN4. In her complaint, Davis alleges she was employed as an RN by Access from November 1983 through December 27, 2001. In her declaration in opposition to this motion she clarifies that she worked as a private duty nurse at Lenox Hill from 1983 until 1994, at which time she joined Access.

*Procedural History*

Davis commenced this action on May 23, 2003. In her complaint, Davis sought class certification of her state law claims pursuant to Rule 23(b)(2), Fed.R.Civ.P., for all similarly situated persons, including LPNs, RNs, and NAs, who worked at Access at any time after May 23, 1997. Davis also sought to represent herself and all similarly situated Access employees who filed consents to join her FLSA claim.

An initial conference in this action was scheduled for August 22, 2003. The parties requested adjournment of the conference on several occasions so that they might consult with each other on class certification issues. For example, in a letter dated October 9, 2003, Davis asked for another adjournment so that the parties could "discuss whether or not the numerosity prong of a class action would be met in this case."

The initial pretrial conference was held on October 23. The conference principally centered on an evaluation of Davis' class action claim. As a member of the Elite Corps, Davis' employment at Access was subject to policies that were not applicable to non-Elite Corps employees. Concern was expressed over Davis' ability to represent fairly the LPNs, NAs and non-Elite Corps RNs in a class action lawsuit. It appeared, however, based on the facts presented by the parties in their pleadings and at the conference, that a class action brought solely on behalf of the Elite Corps RNs would fail to meet the numerosity requirement of Rule 23(a), Fed.R.Civ.P. Davis'

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

counsel was asked to consider whether a joinder action with other Elite Corps RNs might not be a preferable approach to litigating this case.

At the conclusion of the conference, the Court adopted a joint scheduling order proposed by the parties setting March 26, 2004 as the last day for class discovery. The Court asked the parties to consider the concerns raised at the conference and instructed them to return on December 19 to explore further the class certification issues following initial discovery. The class certification motion was scheduled to be filed on April 23.

**\*3** At the December 19 conference, Davis' counsel reaffirmed his desire to pursue a class action on behalf of all private duty nurses employed by Access, but agreed to take targeted class discovery to determine whether all private duty nurses were similarly situated. The defendants were ordered to produce payroll records and the parties were ordered to make certain witnesses available for depositions. The parties were reminded that March 26, 2004 was a firm date for the close of class discovery.

In one of several interrogatories served on Davis during the class discovery period, the defendants asked her to identify "all other similarly situated plaintiffs who have signed an 'opt in' election ... or who may be joined to this action, including companions [i.e., Nurse's Aids]." Davis did not identify any NAs. On the last day of class discovery, the defendants deposed Davis on the class certification issues.[FN5] At her deposition, Davis indicated that all putative class members who had signed notices to join the litigation had been or were currently members of Access' Elite Corps.

> FN5. On February 5, 2004, Access sought leave to file and filed an Amended Answer. Davis did not oppose the motion. Access' Amended Answer adds a counterclaim for defamation arising from documents produced by Lenox Hill during discovery.

On March 31, after the close of class discovery, Davis filed the instant motion to amend her complaint. Davis asserts that her primary incentive in filing this motion is to give all members of the class bringing unjust enrichment and breach of contract claims the opportunity to have their claims

back to the date on which Davis filed this action. According to Davis, "the main difference for prospective plaintiffs between amending the complaint and filing a separate complaint and then consolidating, would be the additional time that the prospective plaintiffs would have on their claims, other than under the FLSA, because their claims would relate back to the filing date of Ms. Davis' original complaint."

On April 27, Davis filed a motion for class certification pursuant to Rule 23(b)(3), Fed.R.Civ.P. Davis states that she contacted Access and Lenox Hill on April 27 and 28, respectively, to ask whether they wished to conduct class discovery on the proposed new plaintiffs. The defendants declined. On May 4, the defendants moved for judgment on the pleadings and/or summary judgment on all of Davis' claims. That motion is addressed in *Davis I*.

*Discussion*

A. *Motion to Amend*

Davis seeks to (1) add fourteen named plaintiffs; (2) add a Rule 23(b)(3) basis for class certification; and (3) expand her unjust enrichment class action claim to include Access.[FN6] Of the fourteen proposed new plaintiffs, seven are RNs who worked in the Elite Corps at least part of their time at Access; one is an RN who never worked in the Elite Corps; five are NAs and one is an LPN.

> FN6. Davis claims that she contacted the defendants on February 17 and again on March 15 to "discuss[ ] with them the major changes, including [ ] additional plaintiffs and different basis for class certification." Davis asked the defendants to stipulate to the amended complaint, but the defendants refused.

Once a responsive pleading has been served, a party may amend its pleadings "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Rule 15(a), Fed.R.Civ.P. Courts may refuse to grant leave to amend on grounds such as undue delay or prejudice, bad faith, or futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

Cir.2001). An amendment causes undue prejudice where it would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."*Block v. First Blood Assocs.*, 988 F.2d 344, 350-51 (2d Cir.1993); *see also* *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir.2000).

**\*4** Davis has not shown that her motion to amend is timely, or that amendment of her claims would not unfairly prejudice the defendants. Class discovery has closed. Davis waited until five days *after* the close of class discovery to file her motion to amend the complaint and to add seven named plaintiffs who are not Elite Corps RNs. There is no justification for this delay. Davis has been aware since the filing of this lawsuit of the obstacles facing her class claims. Both the defendants and the Court alerted Davis to the hurdles she faced in meeting the numerosity requirement for a class action on behalf of the Elite Corps RNs, and in meeting the typicality and commonality requirements for a broader class if she were the sole named plaintiff. The defendants raised these issues several times before the first court conference; these same concerns were reiterated at the October 24 and December 19 conferences.

The defendants have not had an opportunity to take class discovery of the fourteen new named plaintiffs,[FN7] and in particular the seven who could represent RNs who were not in the Elite Corps, LPNs and NAs. According to the defendants, class discovery confirmed that Davis could only properly assert claims, if at all, on behalf of present and former Elite Corps RNs. Although asked on numerous occasions about her plans to join other Access employees to her action, Davis consistently represented, including in her deposition and in her answer to an interrogatory, that all putative class members who had submitted notices to join her lawsuit were RNs who were or had been members of Access' Elite Corps. The defendants therefore limited the scope of their class discovery to that potential class, which consisted of less than twenty Elite Corps RNs over the last six years. Had Davis timely filed her motion to amend, the scope of class discovery could have been significantly broader.

FN7. Davis' purported class action was originally filed pursuant to Rule 23(b)(2), which raises significantly different issues with respect to the propriety of class certification. A class may be certified under Rule 23(b)(2) if the defendants have acted or refused to act on grounds generally applicable to the class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."Rule 23(b)(2), Fed.R.Civ.P. In contrast, class certification under Rule 23(b)(3) requires a finding that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."Rule 23(b)(3), Fed.R.Civ.P.

Accordingly, Davis has not shown that her motion to amend the complaint is timely, or that granting it would not cause unfair prejudice to the defendants. Davis' proposed amendments would change the nature of the claims in this case and would require the defendants to "expend significant additional resources to conduct discovery and prepare for trial."*Block,* 988 F.2d at 350-51.

B. *Rule 23 Class Certification*

Davis does not identify the claims for which she seeks class certification under Rule 23(b)(3). As described below, collective actions pursuant to the FLSA are governed by a different legal standard than class actions brought under Rule 23. It will be assumed that Davis' motion is directed at her non-FLSA claims, specifically her unjust enrichment and breach of contract claims.

As explained in the discussion of the requirements for class certification that follows, Davis cannot represent a class that includes employees other than Elite Corps RNs, and there are too few Elite Corps RNs to justify certification of a class. Even assuming that Davis had wished to preserve the basis under which she originally sought class certification of her non-FLSA claims, that is, Rule 23(b)(2),[FN8] certification on that basis would be denied for her failure, *inter alia,* to meet the threshold requirements

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

of Rule 23(a), Fed.R.Civ.P.[FN9]

> FN8. In her motion for class certification, Davis argues only that the purported class meets the requirements of Rule 23(b)(3). She makes no arguments relating to class certification under Rule 23(b)(2).

> FN9. Certification of a Rule 23(b)(2) class would also be denied for her failure to meet the specific requirements of Rule 23(b)(2). To certify a class under Rule 23(b)(2), a court must find that the equitable relief sought by the plaintiff predominates over any claims for monetary relief. *Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 164 (2d Cir.2001).* In making this assessment, a court should satisfy itself that "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits."*Id.* Davis' predominant claim in this action is for the recovery of unpaid benefits. She has not claimed that she would seek declaratory relief in the absence of any monetary recovery. Therefore, this action may not be maintained under Rule 23(b)(2).*SeeSpann v. AOL Time Warner, Inc.,* 219 F.R.D. 307, 322 (S.D .N.Y.2003).

### 1. *Rule 23(a)*

*\*5* A plaintiff seeking certification of a class must demonstrate that the proposed class action fulfills the four requirements of Rule 23(a).*SeeIn re Visa Check/MasterMoney,* 280 F.3d 124, 132 (2d Cir.2001).Rule 23(a) states that class members may act as class representatives only if

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*See*Rule 23(a), Fed.R.Civ.P. In reviewing a motion for class certification, the question is not whether the plaintiff has "stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met."*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974) (citation omitted).

### 1. *Numerosity*

To satisfy the numerosity requirement under Rule 23(a), a plaintiff must show that joinder is "impracticable," not that it is "impossible." *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). Numerosity is presumed when a class consists of forty or more members. *See*Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.1995).

Davis' putative class consists of all former and present private duty nurses who worked at Access after May 23, 1997. As will be discussed, Davis cannot adequately represent such a class. If the class is limited to those Access employees who are similarly situated to Davis-that is, RNs who were members of Access' Elite Corps program-approximately twenty Access employees would be eligible to join this class action.[FN10]Davis has not shown that joinder is impractical.

> FN10. Davis contends that the number may be as high as thirty-one.

### 2. *Commonality*

The commonality requirement of Rule 23(a) requires a plaintiff to show that the action raises an issue of law or fact that is common to the proposed class. *Robinson,* 267 F.3d at 155;*Marisol A. v.. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) (per curiam). The breach of contract and unjust enrichment claims advanced by Davis do not present common issues of law or fact with respect to members of the purported class. As proposed, the class would encompass Elite Corps RNs, non-Elite Corps RNs, LPNs, and NAs, categories of employees whose jobs were governed by different pay and benefits policies. The gravamen of Davis' claims is that Access willfully and falsely informed her and other members of the Elite Corps RNs that they were exempt from the overtime provisions of the FLSA, and that they made certain guarantees with respect to bonuses and minimum

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 6
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

work hours that they never intended to fulfill. At most, Davis' claims implicate common issues of law or fact only with respect to the RNs who participated in Access' Elite Corps program.

### 3. *Typicality*

The typicality requirement of Rule 23(a) "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Robinson,* 267 F.3d at 155; *Marisol,* 126 F.3d at 376. Class certification may not be granted "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation ." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir.2000) (citation omitted).

**\*6** Again, Davis' claims are not typical of those of the proposed class. According to Access, Elite Corps RNs-but not other RNs or LPNs and NAs-were exempt from the overtime provisions of the FLSA. Elite Corps RNs were also guaranteed minimum work hours and accrued certain vacation benefits at a faster rate than other Access employees. Former members of the Elite Corps program thus possess materially different claims and are subject to unique defenses such that Davis' claims and the interests of a broader class than one composed solely of Elite Corps RNs are not "so inter-related that the interests of the class members will be fairly protected in their absence." *Caridad v. Metro-North Commuter R.R.,* 191 F.3d 283, 291 (citation omitted).

### 4. *Adequacy*

To satisfy the adequacy requirement of Rule 23(a), a class representative must "possess the same interest and suffer the same injury as the class members." *Amchem Prods.,* 521 U.S. at 625-26. The adequacy criteria tend to merge with the commonality and typicality requirements, although courts chiefly inquire whether the named plaintiff's interests are antagonistic to those of the class, and whether class counsel is competent. *See Amchem Prods.,* 521 U.S. at 626 n. 20; *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13 (1982); *Baffa,* 222 F.3d at 60.

Davis does not possess the same interests and has not suffered the same injuries as other members of the purported class. She has not shown that she would be an appropriate representative of her broadly defined class either at trial or in settlement discussions. Given this deficiency, it is unnecessary to address the defendants' assertion that Davis also faces a counterclaim for defamation that will present her with unique litigation issues and undermine her ability to serve as a class representative. The fact that the defendants have not disputed the competency of class counsel is not, standing alone, sufficient to satisfy the requirements of Rule 23(a) .[FN11]

> FN11. Had the other requirements of Rule 23(a) been met in this action, it would be necessary to address the competency of putative class counsel.

In sum, Davis' motion to certify a Rule 23(b)(3) class for her non-FLSA claims is denied. As a consequence, her subsidiary motion to expand the class claim for unjust enrichment to include Access is also denied.

### C. *Collective Action Pursuant to the FLSA*

### 1. *Class Members*

Davis also seeks to bring this action on behalf of herself and others who were denied overtime compensation in violation of the FLSA. The consent procedures of the FLSA permit one or more employees to pursue an action in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b) ("Section 216(b)").Section 216(b) states, in relevant part, that an action to recover damages under the FLSA:

may be maintained against any employer ... by any one or more employees for and on behalf of himself or themselves *and other employees similarly situated.*No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

**\*7** 29 U.S.C. § 216(b) (emphasis added). In contrast to class actions brought pursuant to Rule 23(b)(3), a

Not Reported in F.Supp.2d                                                                                                          Page 7
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

"collective action" to recover benefits under the FLSA requires similarly situated class members to opt-in to the case. *See* *id.* The requirements of Rule 23 do not apply to FLSA actions and no showing of numerosity, commonality, typicality and adequacy of representation need be made.[FN12] *See* *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 84 (S.D.N.Y.2001); *Foster v. The Food Emporium,* No. 99 Civ. 3860(CM), 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000). In order to maintain a collective action under the FLSA, a named plaintiff bears the burden of showing that she is sufficiently "similarly situated" to the opt-in plaintiffs such that the case may proceed as a collective action. *Foster,* 2000 WL 1737858, at *1. The test is whether there is a "factual nexus" between the claims of the named plaintiff and those who have chosen to opt-in to the action. *Id.*

> FN12. "Although cases frequently make loose reference to certifying [FLSA] collective actions, neither the Federal Rules nor the FLSA requires that a motion for certification be made. Nevertheless, a district judge should be concerned about fair notice and other protections for parties who are not directly before the court." *Ansoumana,* 201 F.R.D. at 84 n. 1 (citation omitted).

Apart from Davis, twelve Access employees have filed opt-in notices with the Clerk of Court.[FN13] Of the twelve, only seven are RNs who worked in the Elite Corps during at least part of their employment at Access. As already discussed, the claims asserted by Davis in this lawsuit are representative only of other Elite Corps RNs. Davis has not met her burden of showing that she is similarly situated to Access employees who did not participate in the Elite Corps. Davis can only present a "factual nexus" between her claims and those of other Elite Corps RNs. Accordingly, an FLSA collective action will only be authorized for Elite Corps RNs and only the seven Elite Corps RNs who have filed opt-in notices will be permitted to pursue their FLSA claims in this lawsuit.[FN14] Davis will be permitted to send a notice of pendency of the collective action to Elite Corps RNs.

> FN13. Although Davis seeks to add fourteen plaintiffs to this action, only twelve current

and former Access employees have filed consent forms to join this lawsuit. They are:

- Isidora A. Gallego, *Elite Corps RN,* Access employee from 1987 to the present, opt-in filed on February 13, 2004.

- Tracey M. Glazebrook, *Elite Corps RN,* Access employee from June 1987 to the present, opt-in filed on February 13, 2004.

- Claudette Marshall, *Elite Corps RN,* Access employee in 1994, and from 1996 to 2001, opt-in filed on March 2, 2004.

- Anne V. McKnight, *Elite Corps RN,* Access employee from June 1987 to the present, opt-in filed on February 13, 2004.

-Merle Moore, *Elite Corps RN,* Access employee from 1986 to the present, opt-in filed on February 19, 2004.

- Misty Scalfarotto, *Elite Corps RN,* Access employee from May 1974 to August 2002, opt-in filed on March 2, 2004.

- Hyacinth Wiggan-James, *Elite Corps RN,* Access employee from 1980 to the present, opt-in filed on February 13, 2004.

- Mary Shortt, *Non-Elite Corps RN,* Access employee from 1991 to the present, opt-in filed on March 12, 2004.

- Ruth Rapada, *LPN,* Access employee from 1980 to the present, opt-in filed on April 1, 2004.

- Greta Blackman, *NA,* Access employee from September 2001 to October 2002, opt-in filed on April 1, 2004.

- Johnnie L. Brown, *NA* Access employee from October 1994 to July 2001, opt-in filed on April 1, 2004.

- Telethia McKenzie, *NA,* Access

Not Reported in F.Supp.2d                                                                              Page 8
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

employee from may 1004 to March 2003, opt-in filed on April 1, 2004.

> FN14. Should other Elite Corps RNs file timely consents to join this lawsuit, they will also be permitted to pursue FLSA claims.

The defendants contend that the number of Elite Corps RNs are too few and the program too old to justify the expense and burden of notification. They point out that there were only twenty Elite Corps RNs and that the program ceased in 2003. Whether large or small, the group of eligible plaintiffs have a right to notice of these claims and an opportunity to join this action.

2. *Date of Commencement of Action*

Defendants argue that this action is governed by the FLSA's two-year statute of limitations and therefore is barred.[FN15] According to the defendants, Davis' failure properly to file her consent to join the instant action until December 4, 2003 bars all but 23 days of her FLSA claim.[FN16] Defendants further maintain that even those 23 days are barred by her failure to serve the defendants until May 23, 2004.[FN17]

> FN15. Although the defendants briefly argue in their opposition to the motion for class certification that the majority of Davis' FLSA claim is barred by the statute of limitations, the defendants' principal arguments in this regard are contained in their motion for judgment on the pleadings and summary judgment, which is addressed in *Davis I.* A determination of the date on which this action is deemed to have commenced, however, is critical to Davis' motions to amend and for certification of a FLSA collective action. As such, the statute of limitations issue is addressed in this Opinion.

> FN16. Davis' employment with Access was terminated on December 27, 2001.

> FN17. In their reply to this motion, the defendants state that, by facsimile dated May 23, 2004, Davis finally provided to defendants "what purports to be the

Plaintiff's consent."The defendants argue, however, that the purported consent "contains no case caption and it is not clear what action Plaintiff is consenting to join."To date, Davis has not filed with the Clerk of Court an affidavit of service with respect to her consent form.

As an initial matter, whether this action is governed by a two or three year statute of limitations is an issue of fact. Although the statute of limitations for violation of the FLSA is ordinarily two years, it is extended to three years for willful violations. 29 U.S.C. § 255(a); *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1061 (2d Cir.1988). A willful violation exists when an employer knew or recklessly disregarded the fact that its conduct violated the FLSA. *McLoughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988); *Brock,* 840 F.2d at 1062. "Willfulness cannot be found on the basis of mere negligence or 'on a completely good faith but incorrect assumption that a pay plan complied with the FLSA in all respects." ' *Boekemeier v. Fourth Universalist Society in City of New York,* 86 F.Supp.2d 280, 288 (S.D.N.Y.2000) (citing *McLaughlin,* 486 U.S. at 135). Whether the defendants knew or recklessly disregarded the fact that a failure to pay Elite Corps RNs overtime violated the FLSA-thereby extending the statute of limitations to three years-is a disputed issue of fact and must be decided by a jury.

*8 Regardless of whether a two or three year statute of limitations applies to this case, the date upon which Davis' action was commenced must be resolved. An action for loss of overtime pay in violation of the FLSA

shall be considered to be commenced on the date when the complaint is filed; *except* that in the case of a *collective or class action ....* it shall be considered to be commenced in the case of any individual claimant-

(a) on the date when the complaint is filed, if he is *specifically named as a party plaintiff* in the complaint *and his written consent to become a party plaintiff is filed on such date* in the court in which the action is brought; *or*

(b) *if such written consent was not so filed* or if his

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 9
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

name did not so appear-*on the subsequent date on which such written consent is filed in the court in which the action was commenced.*"

29 U.S.C. § 256 (emphasis supplied). Somewhat surprisingly, Davis did not file her consent to join this lawsuit on the date on which she filed her complaint. Accordingly, to the extent that Davis wishes to pursue this action as a collective action, the date on which the statute of limitations is tolled will depend on the date on which Davis' consent to join was properly filed with the Clerk of Court.

Davis filed this action on May 23, 2003. Davis originally submitted her consent form to the Clerk of Court on July 23, but the form was returned to her attorney on the same day[FN18] for failure to comply with the Local Rules for the Southern District of New York. On August 20, Davis again sent her consent form to the Clerk of Court, which was forwarded to this Court for lack of compliance. The Court returned the consent form to Davis' attorney at a conference held on October 24. On November 18, Davis resent her consent form to the Clerk of Court, but it was again returned for failure to comply with the Local Rules of this district. On December 2, Davis mailed another consent form to the Clerk of Court with a cover letter requesting that it be filed with the "original date it was submitted for (August 20, 2003)." The Clerk of Court accepted Davis' consent for filing on December 4.

> FN18. Plaintiff's counsel represents that his office received the deficient consent form on July 28.

Davis claims that her consent form should be deemed filed on August 20, 2003. Davis' consent form was repeatedly rejected for its failure to comply with the Local Rules of this district. Davis does not claim that the Clerk of Court erroneously refused to accept her July 23, August 20, or November 18 filings, and has provided no excuse for her failure to comply with the rules of this district. Since this Court retained her deficient August 20 filing until it could return it to her counsel at the October 24 conference, she will be given a credit of 55 days, that is, the number of days her consent form was in the possession of the Court.[FN19] Accordingly, Davis' consent to join this lawsuit will be deemed filed on October 10, 2003.

> FN19. Defendants' argument that Davis' consent form should be deemed filed on May 23, 2004-the date on which the defendants claim they were finally served with Davis' consent form-is rejected. The defendants were on notice from the inception of this lawsuit that Davis intended to commence a collective action pursuant to the FLSA, and that she had engaged in multiple attempts to file her consent form. Court conferences were held in this case on October 24 and December 19, 2003; telephone conferences were held on February 26 and April 22, 2004. At each conference, Davis' counsel discussed the nature of her claims and her intent to pursue this lawsuit on behalf of herself and others. At the October 24 conference, Davis' counsel explicitly discussed his deficient filing of Davis' consent to join. Davis' counsel acknowledged that the filing of the consent to join was necessary to toll the statute of limitations, and represented that he would be refiling Davis' consent with the Clerk of Court immediately.

*Conclusion*

The plaintiff's motions to amend and for class certification of her state law claims are denied. The claims brought on behalf of Mary Shortt, Ruth Rapada, Greta Blackman, Johnnie L. Brown, and Telethia McKenzie are dismissed from this lawsuit. The application to maintain a collective action pursuant to the FLSA is granted with respect to plaintiffs Isidora A. Gallego, Tracey M. Glazebrook, Claudette Marshall, Anne V. McKnight, Merle Moore, Misty Scalfarotto, Hyacinth Wiggan-James. Davis' FLSA claim is deemed to have been filed as of October 10, 2003. Davis' request to send a notice of pendency of the FLSA collective action is granted to the extent that it concerns Elite Corps RNs.

**\*9** SO ORDERED:

S.D.N.Y.,2004.
Davis v. Lenox Hill Hosp.
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1926086 (S.D.N.Y.), 9 Wage & Hour Cas.2d (BNA) 1683
**2004 WL 1926086 (S.D.N.Y.)**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

7

*Westlaw.*

Not Reported in F.Supp.2d                                                                                                  Page 1
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)
**2005 WL 2654270 (W.D.N.Y.)**

▷Diaz v. Electronics Boutique of America, Inc.
W.D.N.Y.,2005.
Only the Westlaw citation is currently available.
United States District Court,W.D. New York.
Milton DIAZ, Tim Ostrander, Anthony Capizzi,
Andrew Secor and Jeffrey Hochmuth, Individually
and on Behalf of All Others Similarly Situated,
Plaintiffs,
v.
ELECTRONICS BOUTIQUE OF AMERICA, INC.
and Electronic Boutique Holding Corp., Defendants.
**No. 04-CV-0840E(SR).**

Oct. 17, 2005.

Judith Ann Biltekoff, Sullivan, Oliverio & Gioia,
Buffalo, NY, Brett Cebulash, Esq., Garwin, Gerstein
& Fisher, LLP, New York, NY, for Plaintiff.
Christina L. Feege, Littler Mendelson, P.C., New
York, NY, John G. Horn, Robert C. Weissflach,
Harter, Secrest and Emery LLP, Buffalo, NY, Samuel
S. Shaulson, Morgan, Lewis & Bockius LLP, New
York, NY, for Defendant.

MEMORANDUM and ORDER [FN1]

FN1. This decision may be cited in whole or
in any part.ELFVIN, J.

*1 Plaintiff Milton Diaz commenced this action on
October 13, 2004 against his former employer,
defendants Electronics Boutique of America, Inc. and
Electronics Boutique Holding Corp. (collectively
"EB"). On November 24, 2004 plaintiff Tim
Ostrander filed a consent to become a party plaintiff
and proposed to be a named representative for a
subclass of EB Store Managers ("SMs") and Diaz
filed a consent to become a party plaintiff and
proposed to be a named representative for a subclass
of EB Assistant Store Managers ("AMSs").[FN2]
Plaintiffs allege that EB routinely and intentionally
failed to pay its store employees minimum wages and
overtime pay in violation of (1) the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*,
("Federal Claims") and (2) Article 19 of New York
Labor Law ("NYLL") and its implementing
regulation, Section 142-2.2 of the New York
Compilation of Codes, Rules and Regulations
("NYCCRR"), Title 12 ("State Claims"). On

December 22, 2004 plaintiffs moved for conditional
certification and facilitation of notice of their Federal
Claims "on behalf of all current and former [EB]
employees who did not receive overtime pay at the
rate of time and one half for any hours worked in
excess of 40 per week and/or who were otherwise not
compensated for work performed."(Pls.' Mem. Supp.
Mot. Conditional Certification at 1-2 .) On March 17,
2005 plaintiffs, pursuant to Rule 23(a) and (b)(3) of
the Federal Rules of Civil Procedure ("FRCvP"),
moved for class certification of their State Claims on
behalf of "all current and former [EB][SMs] and
[ASMs] who worked in any of [EB's] New York
State stores from October 13, 1998 to the
present."(Pls.' Mem. Supp. Mot. Class Certification at
1.) On March 11, 2005 EB moved to dismiss
plaintiffs' State Claims. All three motions are pending
before the Court and, for the reasons set forth below,
all three motions will be denied.[FN3]

FN2. On April 18, 2005 Anthony Capizzi
filed a consent to become a party plaintiff
and proposed to represent others similarly
situated and Jeffrey Hochmuth and Andrew
Secor did so September 30, 2005. This
Order does not address these parties because
they were not included in plaintiffs' papers
and, even if they were included, such would
not alter the reasoning or the holding.

FN3. Plaintiffs in their motions also request
an order from the Court (1) authorizing
notification to all potential class members,
(2) directing EB to provide plaintiffs with
the names and residences of all potential
class members, (3) requiring EB to publicize
the action and (4) prohibiting EB from
threatening, harassing or retaliating against
those seeking to join the action. Because the
Court will deny certification of plaintiffs'
Federal and State Claims, notice to and
information about potential class members
will not be necessary. The Court,
furthermore, need not prohibit EB from
threatening, harassing or retaliating because
the law already prohibits such conduct.

The facts, for the purpose of the pending motions, are

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 2
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)
**2005 WL 2654270 (W.D.N.Y.)**

found as follows and are undisputed except where otherwise noted. EB is a retail chain that specializes in the sale of video game hardware and software and personal computer entertainment software and accessories. EB has more than 1,460 stores nationwide, 98 of which are located in New York State. EB stores are located in rural, urban and suburban areas, range from 422 to 5,000 square feet and earn between $514,999 and $3.5 million in annual sales. EB stores are divided into 112 districts, each consisting of 15 to 18 stores and each with a District Manager who supervises the SMs in the district. Each EB store has an SM-like Ostrander-who receives a flat annual salary, is exempt from overtime pay, is responsible for the daily operations of the store and ensures that each employee reviews his or her timesheet and is paid for all hours worked. Each SM supervises anywhere from three to twelve employees and may manage his or her own store while also supervising SMs in other stores. EB also employs over 1,375 ASMs-like Diaz-and nearly 4,700 Sales Associates ("SAs")-90 percent of whom work part-time. ASMs and SAs are paid at an hourly rate and thus are nonexempt from receiving overtime pay.

**\*2** Both plaintiffs are former employees of the Blasdell, N.Y. EB store where Ostrander was Diaz's manager. Plaintiffs first claim that Ostrander and other SMs were misclassified as exempt and thus wrongly denied overtime compensation because (1) they have "little, if any, significant discretion" in operating the store, (2) their "primary function" is not managing the store and (3) they spend nearly 80 percent of their time selling merchandise. (Pls.' Mem. Supp. Mot. Class Certification at 9.) Plaintiffs contend that, although Ostrander was paid a salary based on working 40 hours per week, he typically worked between 60 and 70 hours per week without receiving additional compensation. Plaintiffs further allege that SMs share similar experiences due to the significant control EB exercises over all aspects of the operations of stores.

Additionally, plaintiffs contend that Diaz, although classified as a nonexempt ASM, was not compensated for the overtime hours he had worked, which averaged ten to twelve per week. Plaintiffs allege that it was EB's practice to understaff the Blasdell store by allocating insufficient payroll hours, which required Ostrander and Diaz to work

uncovered shifts and resulted in their working more than 40 hours a week without receiving adequate overtime compensation. Ostrander allegedly attempted to compensate Diaz by allowing him to take time off in exchange for overtime hours worked, but such was often impossible due to understaffing of the store. Moreover, plaintiffs claim that Diaz's hours were manually adjusted to comply with EB's policy restricting overtime pay. According to plaintiffs, EB was aware of these allegedly illegal wage practices due to its advanced information technology system with centralized control and monitoring of payroll and hours worked. Thus, plaintiffs claim that EB's refusal to pay overtime for hours worked in excess of 40 hours per workweek was willful and EB persuaded its employees-allegedly through intimidation and empty promises of advancement-to work without adequate compensation, all in violation of federal and state wage laws.

Plaintiffs first move for class certification of their Federal Claims under FLSA § 216(b), alleging that they were deprived of minimum wages and overtime pay in violation of the FLSA. In particular, plaintiffs claim that EB engaged in a common scheme violating the FLSA by (1) misclassifying SMs as exempt from federally mandated wage laws, (2) requiring its employees to work hours in excess of 40 per workweek without compensation, (3) insisting that all employees clock-out prior to cleaning and closing the store-which often take over an hour to complete-, (4) requiring its employees to enter payroll early on Saturdays to ensure that employees are paid only the pre-determined number of scheduled work hours and (5) forcing SMs to "volunteer" their time to conduct inventories at other EB stores.

The FLSA requires covered employers to, *inter alia*, pay their employees at least the governing minimum wage, 29 U.S.C. § 206, and overtime wages, at the rate of time and one-half, for hours in excess of 40 hours worked in a single week. 29 U.S.C. § 207.[FN4]Exempt, however, from the FLSA's overtime requirements are employees who are "employed in a bona fide executive, administrative, or professional capacity".29 U.S.C. § 213(a)(1). An "employee employed in a bona fide executive capacity" is one, *inter alia*,"[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 3
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)
**2005 WL 2654270 (W.D.N.Y.)**

subdivision thereof" and "[w]ho customarily and regularly directs the work of two or more other employees".29 C.F.R. § 541.100. "Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption".29 C.F.R. § 541.106.[FN5]"Determining whether an employee is exempt is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful factual analysis of the full range of the employee's job duties and responsibilities.' " *Mike v. Safeco Ins. Co. of Am.,* 274 F.Supp.2d 216, 220 (D.Conn.2003) (citation omitted).

> FN4. The FLSA states, in pertinent part:
>
> "[N]o employer shall employ any of [its] employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed ."29 U.S.C. § 207(a)(1).

> FN5.29 C.F.R. § 541.106 states, in pertinent part:
>
> "(a) Concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met. Whether an employee meets the requirements of § 541.100 when the employee performs concurrent duties is determined on a case-by-case basis and based on the factors set forth in § 541.700. Generally, exempt executives make the decision regarding when to perform nonexempt duties and remain responsible for the success or failure of business operations under their management while performing the nonexempt work. In contrast, the nonexempt employee generally is directed by a supervisor to perform the exempt work or performs the exempt work for defined time periods. An employee whose primary duty is ordinary production work or routine, recurrent or repetitive tasks cannot qualify for exemption as an executive.

> (b) For example, an assistant manager in a retail establishment may perform work such as serving customers, cooking food, stocking shelves and cleaning the establishment, but performance of such nonexempt work does not preclude the exemption if the assistant manager's primary duty is management. An assistant manager can supervise employees and serve customers at the same time without losing the exemption. An exempt employee can also simultaneously direct the work of other employees and stock shelves."

**\*3** The FLSA provides a mechanism whereby plaintiffs can bring a collective action on behalf of themselves and other employees who are similarly situated. 29 U.S.C. § 216(b).[FN6] Plaintiffs have the burden of demonstrating that they are "similarly situated" to members of their proposed collective action. *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997). To meet this burden, plaintiffs must "mak[e] a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."*Ibid.* A similar situation exists if there is a factual nexus between Diaz and Ostrander's situations and the situations of other current and former employees whom plaintiffs seek to join as putative members of the collective action. *Id.* at 261-262.

> FN6. The FLSA states, in pertinent part:
>
> "An action to recover * * * liability * * * may be maintained against any employer * * * in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a

Not Reported in F.Supp.2d                                                                                        Page 4
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)
**2005 WL 2654270 (W.D.N.Y.)**

party and such consent is filed in the court in which such action is brought."29 U.S.C. § 216(b).

Plaintiffs have filed consents to become parties plaintiff.

Plaintiffs, therefore, must demonstrate that Ostrander and Diaz are similarly situated to a putative class consisting of nonexempt SAs and ASMs as well as exempt SMs. Plaintiffs assert similar situation based on the allegation that all putative class members were victims of EB's "company-wide plan of not paying their employees overtime or other wages for work performed."(Pls.' Mem. Supp. Mot. Conditional Certification at 10.) EB, in opposing certification of plaintiffs' Federal Claims, argues that (1) Ostrander and Diaz are not similarly situated to one another because Ostrander is exempt and Diaz is nonexempt and (2) plaintiffs are not similarly situated to other EB employees-SMs, ASMs or SAs-throughout the country because of the differences among the many stores. In response, plaintiffs claim that Ostrander and Diaz are similarly situated to each other and to proposed class members because (1) they are all victims of EB's common practice of failing to pay overtime and other wages and (2) SMs and ASMs had virtually identical job descriptions until EB's recent alterations.

The gravamen of Ostrander's claim, as distinct from that of Diaz's, is that EB avoided paying him overtime wages by willfully misclassifying him as exempt although his duties consisted primarily of nonexempt tasks. Ostrander's claim and the claims of other SMs thus will involve an analysis of daily duties and responsibilities and the amount of time spent on each, whereas Diaz's claim and the claims of ASMs and SAs will involve an examination of hours worked, payroll records and EB's knowledge and/or permission of the alleged overtime hours worked. As such, Ostrander and Diaz are not similarly situated to one another for no factual nexus exists between their situations. *See, e.g., Davis v. Lenox Hill Hosp., 2004 WL 1926086, at *7 (S.D.N.Y.2004)* (holding that the plaintiff, a nurse in an exempt program claiming denial of overtime wages, was not similarly situated to nonexempt nurses); *Mike,* at 220-221 (denying class certification where the plaintiff claimed that he was misclassified as exempt "because the proof in th[e] case [was] specific to the individual [and] * * *

any other plaintiff would also have to present specific evidence of his or her daily tasks, and the court would have to apply the regulations on an individual basis * * * [and] engage in an ad hoc inquiry for each proposed plaintiff to determine whether his or her job responsibilities were similar to [plaintiff's]"); *Morisky v. Pub. Serv. Elec. & Gas Co., 111 F.Supp.2d 493, 498-499 (D.N.J.2000)* (finding that the plaintiffs' claim that the defendant's "common scheme" was denying them overtime and thus making the exempt and nonexempt plaintiffs similarly situated was, in fact, "really challenging * * * defendant's determination that they are exempt under the FLSA", which would result in certification of "a class based upon [plaintiffs'] own belief as to which employees do not satisfy any of the exemption criteria-the very issue to be litigated in th[e] action [and one that if] litigat[ed] * * * as a collective action would be anything but efficient").

*4 Moreover, just as a determination of Ostrander's exempt or nonexempt status requires a detailed factual analysis of his daily activities and responsibilities, so does a determination of every individual SM's exempt or nonexempt status. *Morisky,* at 499 ("The exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis."). The responsibilities of SMs vary in number and types of employees supervised and in types of stores managed-in terms of physical space, sales volume and geographic location. Although SMs share the same job description, their responsibilities, in fact, may differ and thus a highly fact-specific and detailed analysis of each SM's duties is required, making class treatment inappropriate. *See29 C.F.R. § 541.2* ("A job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."); *Cooke v. Gen. Dynamics Corp., Elec. Boat Div., 993 F.Supp. 56, 61 (D.Conn.1997)* ("Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description."). Plaintiffs, therefore, cannot make the necessary modest showing that Ostrander is similarly situated to other SMs.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)
**2005 WL 2654270 (W.D.N.Y.)**

Diaz's claim, likewise, is particular to his experiences at the Blasdell store. Plaintiffs assert that Diaz's timesheets were altered so that EB would not be required to provide overtime pay. First, plaintiffs do not contend that such was at the direction of EB management or in conjunction with a clear EB policy. Rather, plaintiffs simply allege that ASMs' overtime work must be approved and, thus, EB had a policy of not paying for overtime work. This is insufficient to suggest that all ASMs and SAs were subject to a policy of requiring but not compensating employees for overtime work. *Compare Hoffmann,* at 261-262 (finding that the plaintiffs had made "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law" where the defendant had admitted that it had a policy of requiring managers to reduce their compensation and managers were required to sign a form agreement explicitly authorizing wage deductions), *with Holt v. Rite Aid Corp.,* 333 F.Supp.2d 1265, 1274-1275 (M.D.Ala.2004) (finding that, where the defendant's allegedly inaccurate exempt classification of store managers and assistant store managers was the formal policy allegedly in violation of the FLSA, certification of the collective action would require an inquiry "as to the daily tasks of each putative collective action member to determine whether they are similarly situated to the persons identified by the Plaintiffs, and then, on the merits, whether they had suffered an FLSA violation because they were not eligible for overtime compensation"; hence, "the Plaintiffs employed as Store Mangers or Assistant Managers, * * * even within the region * * *, are not similarly situated").

**\*5** Second, Diaz's allegations-*viz.,* that he worked "off-the-clock" without compensation and that his timesheets were altered to delete overtime hours worked-are too individualized to warrant collective action treatment.*Lawrence v. City of Philadelphia, P.A.,* 2004 WL 945139, at \*2 (E.D.Pa.2004) ("[T]he 'off-the-clock' claim does not involve regularly scheduled time that is worked by all members of the class. Rather, each of the Plaintiffs may potentially claim that on any given day he or she arrived early or departed outside of their regularly scheduled hours and were not compensated for such. The circumstances of those individual claims potentially vary too widely to conclude that in regard to their 'off-the-clock' claim, the Plaintiffs are similarly situated."). The court in *Lawrence* held that the

questions of fact would most likely differ for each plaintiff, as each worked in different locations with different supervisors, and thus would be unduly burdensome to manage as a collective claim. *Ibid.* Similarly here, Diaz's off-the-clock claims require an examination by the Court of when he was scheduled to work, when he actually worked, whether he was paid for such and whether Ostrander altered his timesheets and, then, the Court would to have conduct the same inquiry as to each other class member. Taking plaintiffs' allegations as true, altering Diaz's timesheets may have been the Blasdell store's method of dealing with overtime issues, but such may not have been the case at other stores. All ASMs, therefore, have not been shown to be similarly situated and plaintiffs' speculative allegations do not rescue their claims from being "insufficiently specific beyond their own [respective] circumstances."*See Levinson v. Primedia Inc.,* 2003 WL 22533428, at \*1-\*2 (S.D.N.Y.2003) (holding that employees who claimed that they were misclassified as independent contractors had failed to demonstrate that putative plaintiffs at other sites were "similarly situated" because "they failed to support [their] legal conclusion with a factual showing that extends beyond their own circumstances"-in particular, "[w]hile plaintiffs ha[d] provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants, and that *they* were deprived of a minimum wage and overtime rates, they ha[d] failed to make a sufficient showing that the same was true for other potential plaintiffs"); *Stubbs v. McDonald's Corp.,* 227 F.R.D. 661, 666 (D.Kan.2004) ("While * * * plaintiff [need not] come forward with evidence of actual proof of a decision, policy or plan, the initial *ad hoc* FLSA class certification standard does require plaintiff to provide more than his own speculative allegations, standing alone."); *Holt,* at 1272 ("[P]laintiffs are not similarly situated if the action relates to circumstances personal to the plaintiff rather than a generally applicable policy.").

As for claiming similar situation to SAs, for the reasons mentioned *supra*[FN7] and because 90 percent of SAs worked part-time and thus overtime laws do not apply to them, Diaz and Ostrander are not similarly situated to SAs. Plaintiffs, therefore, fail to show that Ostrander and Diaz are similarly situated to one another, that Ostrander is similarly situated to the proposed class of ASMs, that Diaz is similarly situated to the proposed class of SMs and that either

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 6
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)
**2005 WL 2654270 (W.D.N.Y.)**

is similarly situated to SAs and their motion for conditional certification of their Federal Claims will be denied .[FN8]

> FN7. Plaintiffs are not similarly situated to each other, to SMs or to ASMs; thus, logically, they are not similarly situated to SAs.

> FN8. Plaintiffs mention that, if the Court finds "significant differences" between SMs and ASMs, it can divide the class into subclasses. (Pls.' Mem. Further Supp. Mot. Conditional Certification at 19.) Plaintiffs, however, cannot show sufficient similarity to certify a class of SMs and ASMs, nor can they show sufficient similarity to certify a class of just SMs or just ASMs. Plaintiffs urge that, at this preliminary stage, the Court should certify the class for notice and discovery purposes and leave further determinations to a later date. *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218-1219 (11th Cir.2001).* Courts that have certified classes at the initial stage with the possibility of decertification or subclassification have done so when discovery may have revealed latent differences in the putative class. *See, e.g., Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 101, 105 (S.D.N.Y.2003).* In the instant case, however, significant differences are apparent at the outset and discovery cannot resolve the defects in plaintiffs' claims.

*6 Turning to plaintiffs' motion for class certification of their State Claims, plaintiffs assert violations of NYLL §§ 160 *et seq.,* 190 *et seq.* and 650 *et seq.* and seek class certification of their State Claims pursuant to FRCvP 23. NYLL § 652 delineates a minimum wage schedule and NYLL § 655 provides for overtime rates and requirements, which, pursuant to the implementing regulation, apply the FLSA standards in determining exemptions from New York State overtime laws. 12NYCCRR § 142-2.2.[FN9]Thus, plaintiffs have the same obstacle with respect to Ostrander's claim-*viz.,* that a determination of nonexempt status requires an inquiry into the specifics of Ostrander's job and a similarly individualized inquiry into the specifics of each SM

whom plaintiffs are seeking to join.

> FN9.12 NYCCRR § 142-2.2 states, in pertinent part:

> > "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of * * * the [FLSA] * * *. In addition, an employer shall pay employees subject to the exemptions of section 13 of the [FLSA] * * * overtime at a wage rate of one and one-half times the basic minimum hourly rate."

> > 12 NYCCRR § 142-2.4 provides that an employee shall receive one hour's pay at the basic minimum hourly wage rate for any day in which the spread of hours exceeds ten hours or there is a split shift or both situations occur.

FRCvP 23 sets forth the requirements for bringing and maintaining a class action in federal court and plaintiffs bear the burden of proof on a motion for class certification under FRCvP 23. *Monaco v. Stone, 187 F.R.D. 50, 59 (E.D.N.Y.1999).*"In determining the propriety of a class action, the question is not whether * * * plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of [FRCvP] 23 are met."*Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).* Although the Court will accept all of plaintiffs' allegations as true and avoid conducting an inquiry into the merits, "the decision whether to certify a class may involve considerations related to the factual and legal issues that comprise [plaintiffs'] cause of action [and] the presence of an affirmative defense should be considered in determining whether class certification is appropriate." *Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 337 (S.D.N.Y.2004)* (quotations and citation omitted).

Plaintiffs must demonstrate that under FRCvP 23(a) the putative class has (1) sufficient numerosity to make individual joinder impracticable, (2) commonality of questions of law or fact, (3) typicality of claims and (4) representatives who fairly

Not Reported in F.Supp.2d                                                    Page 7
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)
**2005 WL 2654270 (W.D.N.Y.)**

and adequately protect the interests of the class. Second, because plaintiffs move for class certification under FRCvP 23(b)(3), they must show that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class is superior to other available methods for fair and efficient adjudication of the controversy."FRCvP 23.[FN10]The numerosity element "requires a finding that the numerosity makes joinder of all class members 'impracticable.' " *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). A class comprised of more than forty members generally satisfies numerosity.*Consol. Rail Corp., v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). The Court will assume *arguendo* that plaintiffs have met the numerosity requirement of FRCvP 23(a)(1).

> FN10. FRCvP 23(a) and (b) states, in pertinent part:

> "(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Next, plaintiffs must demonstrate commonality-*viz.,* that there are "questions of law or fact common to the class."FRCvP 23(a)(2). Plaintiffs' claims and the class claims must be "so interrelated that the interests of the class members will be fairly and adequately protected in their absence."*Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 158 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). For the same reasons that plaintiffs cannot meet the similarly situated requirement of class certification under the FLSA-to wit, plaintiffs' factual allegations are specific to only Ostrander and Diaz and an individual factual determination is necessary to distinguish between exempt and nonexempt employees, to determine if an SM should be exempt or nonexempt and to determine if an ASM worked off-the-clock-, plaintiffs fail to meet the commonality requirement of FRCvP 23(a).*See Davis,* at *5 (finding that "categories of employees whose jobs were governed by different pay and benefits policies"-to wit, those who are allegedly incorrectly classified as exempt and those who are classified as nonexempt-do not share common issues of law or fact and thus cannot meet the commonality requirement of FRCvP 23(a)); *Morisky,* at 500 (holding that "the question of whether defendant improperly classified employees as exempt is unique to each employee and his or her particular job responsibilities" and claims so "individual in nature" do not meet the commonality requirement of FRCvP 23(a)). As stated *supra,* both Ostrander's and Diaz's claims are individual in nature, present factual questions specific to each and separate from the other's and from those of proposed class members. Plaintiffs admit that the commonality inquiry is one that asks "whether the common questions are at the 'core' of the cause of action alleged" and that such is the case when the "legal or factual questions linking class members are substantially related to the resolution of the litigation."(Pls.' Mem. Supp. Mot. Class Certification at 15 (citations omitted) .) Plaintiffs claim that the factual and legal issue is whether EB properly compensated its employees. This is clearly, as found *supra,* an oversimplification and misstatement of the

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 8
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)
**2005 WL 2654270 (W.D.N.Y.)**

issues. The factual issues with respect to Ostrander and SMs are based on their daily activities and responsibilities and with respect to Diaz and ASMs arise from their hours scheduled to work and actually worked. The legal issues with respect to Ostrander and SMs are based on the FLSA's definition of exempt employees and with respect to Diaz and ASMs focus on timesheets and authority to work overtime. Therefore, the commonality requirement of FRCvP 23(a) is not met.

**\*7** FRCvP 23(a) also conditions class certification on plaintiffs establishing that the legal positions of the representative parties-Ostrander and Diaz-are "typical" of the absent class members. To be typical, "claims of the class representatives [must] be typical of those of the class, and [occurs] when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."_Robinson v. Metro-North Commuter R.R. Co.,_ 267 F.3d 147, 155 (2d Cir.2001) (quotations and citation omitted); _see also Hoxworth v. Blinder, Robinson & Co., Inc.,_ 980 F.2d 912, 923 (3d Cir.1992) (finding that the typicality requirement is met if the plaintiffs' claims "arise[ ] from the same event of practice or course of conduct that gives rise to the claims of the class members, and \* \* \* [are] based on the same legal theory"). Class certification may not be granted "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation ."_Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,_ 222 F.3d 52, 59 (2d Cir.2000) (citation omitted). Again, plaintiffs' claims are not typical of each other or of those of the proposed class. As the courts in _Davis_ and _Morisky_ held, the individualized nature of claims alleging incorrect exemption status preclude meeting the typicality requirement. _See Davis,_ at \*6;_Morisky,_ at 500.Ostrander's misclassification claim is factually and legally different from Diaz's off-the-clock claim and warrant different defenses from EB. _Noble,_ at 343 ("[W]here [unique] defenses \* \* \* threaten [ ] to become the focus of the litigation, the plaintiff cannot be considered 'typical' of the class.") (citation and quotations omitted). Furthermore, as explained _supra,_ Ostrander's alleged reasons for claiming to be misclassified arises from a different course of events-_viz.,_ those particular to the Blasdell EB store-than those that may cause another SM to be misclassified. The same holds true for Diaz's claim as applied to other ASMs-_viz.,_ the reasons why he was allegedly

not compensated for off-the-clock overtime work is likely different from why another ASM performed and was not compensated for off-the-clock work. FRCvP 23(a)'s typicality requirement, therefore, has not been met.

The final FRCvP 23(a) requirement-adequacy-tends to merge with the commonality and typicality requirements. _Amchem Prod. Inc. v. Windsor,_ 521 U.S. 591, 626 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)."[C]lass representative[s] must \* \* \* 'possess the same interest and suffer the same injury' as the class members."_Id._ at 625-626 (citation omitted). Again, Ostrander and Diaz did not suffer the same injury inasmuch as Ostrander was allegedly misclassified and Diaz was allegedly required to work off-the-clock. _See Davis,_ at \*6 (finding that the plaintiff "does not possess the same interests and has not suffered the same injuries as other members of the purported class" because of the difference in their exemption status). As the claims of each individual SM and ASM also vary, Ostrander and Diaz are not adequate representatives of a class, or classes, with such highly individualized claims. _See Mike v. Safeco Ins. Co. of Am.,_ 223 F.R.D. 50, 53 (D.Conn.2004) ("The same reasons that preclude [plaintiff] from proceeding as a collective action under the FLSA preclude him from defining a tenable class under [FRCvP] 23. \* \* \* [N]o benefit is derived from proceeding as a class action because class membership is not founded upon any Safeco policy or other generalized proof, but rather on the fact-specific determination of each individual plaintiff's day-to-day tasks."). Plaintiffs, therefore, have failed to meet the requirements of FRCvP 23(a) and their motion for certification of their State Claims will be denied.[FN11]

> [FN11.] As plaintiffs' have failed to meet the requirements of FRCvP 23(a), there is no need to continue the analysis as to FRCvP 23(b)(3).

**\*8** Turning to EB's motion to dismiss plaintiffs' State Claims, EB claims that (1) a class action under NYLL would violate the Rules Enabling Act ("REA") on a variety of grounds and (2) there is no New York State overtime statute and the corresponding regulation, 12 NYCRR § 142-2.2, is thus illegitimate. This Order will deny certification of plaintiffs' State Claims and thus EB's REA claim will

be moot. As to EB's claim that there are no overtime laws in New York State, EB cites three cases- *Hornstein v. Negev Airbase Constructors,* 110 A.D.2d 884, 488 N.Y.S.2d 435 (2d Dep't 1985), *Gallegos v. Brandeis Sch.,* 189 F.R.D. 256 (E.D.N.Y.1999) and *Ballard v. Cmty. Home Care Referral Serv., Inc.,* 264 A.D.2d 747, 695 N.Y.S.2d 130 (2d Dep't 1999)-in support of its claim. The court in *Hornstein* stated that "New York does not have a mandatory overtime law" without citing to a prior decision. 488 N.Y.S.2d at 437.*Gallegos* states the same and cites *Hornstein* for the proposition. 189 F.R.D. at 259. Neither the *Hornstein* nor the *Gallegos* decision explains or justifies the proposition. The court in *Ballard,* on the other hand, explained that, although "[t]here are no provisions governing overtime compensation in the New York State Labor Law[,] * * * the Commissioner of Labor has the power to * * * appoint a wage board * * * [who] may recommend such regulations as it deems appropriate with respect to, *inter alia,* overtime rates * * *."695 N.Y.S.2d at 131. The court continued to explain that, "[i]n accordance with these empowering statutes, the Commissioner of Labor determined that some form of overtime compensation was appropriate and issued the Miscellaneous Wage Order found at [NYCCRR] 142-2.2."*Ibid.* Thus, the case that EB claims supports its position, in fact, directly conflicts with it. Furthermore, subsequent to *Hornstein* and *Gallegos,* the Second Circuit Court of Appeals and other New York District Courts have verified that overtime claims may be brought pursuant to NYLL § 650 *et seq.* and that implementing regulation 12 NYCCRR 142-2.2 carries the force of the law. *See, e.g., Zheng v. Liberty Apparel Co. Inc.,* 355 F.3d 61, 78 (2d Cir.2003) (upholding district court's analysis of the plaintiffs' state overtime claims under 12 NYCCRR 142-2.2 based on the "same analysis" as applied under the FLSA); *Mascol v. E & L Transp., Inc.,* 2004 WL 1541045 (E.D.N.Y.2005) (granting the plaintiffs' motion for class certification of a class of drivers allegedly not paid overtime wages in violation of NYLL and its implementing regulations, 12 NYCCRR § 142-2.2).

Accordingly, it is hereby ORDERED that plaintiffs' motion for conditional certification of their Federal Claims is denied, that plaintiffs' motion for class certification of their State Claims is denied and that EB's motion to dismiss is denied.

W.D.N.Y.,2005.
Diaz v. Electronics Boutique of America, Inc.
Not Reported in F.Supp.2d, 2005 WL 2654270 (W.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**8**

LEXSEE 2007 U.S. DIST. LEXIS 93215



Caution
As of: Aug 07, 2008

**LISA EVANCHO, et al., Plaintiffs, v. SANOFI-AVENTIS U.S. INC., et al., Defendants.**

**CIVIL ACTION NO. 07-2266 (MLC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2007 U.S. Dist. LEXIS 93215*

**December 18, 2007, Decided
December 19, 2007, Filed**

**NOTICE:** NOT FOR PUBLICATION

**COUNSEL:** [*1] For **LISA EVANCHO, MICHAEL KEELER, ALETH GUIRIBA, PATRICIA MAKI, CHRISTOPHER HAMILTON, MICHAEL VINCENT MARONICK, ELIZABETH NYSTROM, DANA J. GODFREY, II, KEVIN JOHN KIPPER, Plaintiffs:** NEIL MARC MULLIN, *LEAD ATTORNEY,* SMITH MULLIN, P.C., MONTCLAIR, NJ.

For **SANOFI-AVENTIS U.S., INC., Defendant:** MARK PATTON LUEDEKE, RICHARD G. ROSENBLATT, *LEAD ATTORNEYS,* MORGAN, LEWIS & BOCKIUS, LLP, PRINCETON, NJ.

For **SANOFI-AVENTIS U.S. LLC, Defendant:** MARK PATTON LUEDEKE, *LEAD ATTORNEY,* MORGAN, LEWIS & BOCKIUS, LLP, PRINCETON, NJ.

**JUDGES:** Mary L. Cooper, United States District Judge.

**OPINION BY:** Mary L. Cooper

**OPINION**

**MEMORANDUM OPINION**

   COOPER, District Judge

   Plaintiffs, Lisa Evancho, J. Aleth Guiriba, and Patricia Maki (collectively, "plaintiffs"), bring this action against defendants, Sanofi-Aventis U.S. Inc. and Sanofi-Aventis U.S. LLC (collectively, "defendants"), on behalf of themselves and others similarly situated, asserting violations of, inter alia, (1) the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.*, (2) the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), *43 Pa. Const. Stat. Ann. § 333.102, et seq.*, (3) *Sections 201, 202, 226(a), (b), 226.7, 510,* and *1174* of the California Labor Code and applicable California [*2] Industrial Welfare Commission Wage Orders, and (4) California's unfair competition law, *Cal. Bus. & Prof. § 17200, et seq.* (Dkt. entry no. 126, 2d Am. Compl.) [1] Plaintiffs allege the FLSA claims as a collective action pursuant to *29 U.S.C. § ("Section") 216(b)*, and allege the Pennsylvania and California state-law claims as class actions pursuant to *Federal Rule of Civil Procedure ("Rule") 23.* (See id.) [2] Plaintiffs now move for conditional collective action certification, Hoffman-LaRoche notice, and equitable tolling as to the FLSA claims. (Dkt. entry no. 121.) Defendants cross-move to strike plaintiffs' Pennsylvania and California state-law class allegations pursuant to *Rule 23(d)(4).* (Dkt. entry no. 133.) The Court, for the reasons stated herein, will (1) deny the motion for conditional collective action certification, Hoffman-LaRoche notice, and equitable tolling, and (2) grant the cross motion to strike plaintiffs' state-law class allegations.

   1   The proper plaintiffs as named in the complaint here are Lisa Evancho, J. Aleth Guiriba, and Patricia Maki. (See 2d Am. Comp.) The Court will direct the Clerk of the Court to terminate the additional plaintiffs listed on the docket and grant [*3] plaintiffs leave to file a

Third Amended Complaint naming additional plaintiffs.
2   Plaintiffs Lisa Evancho and J. Aleth Guiriba also assert claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), *29 U.S.C. § 1001, et seq.*, as a class action pursuant to *Rule 23*. (See 2d Am. Compl.) These allegations will not be addressed as they are not relevant to the motions here.

## BACKGROUND

Defendants are members of a pharmaceutical company. (2d Am. Compl., at P 7.) They employ thousands of pharmaceutical representatives ("PRs") to provide information about and obtain sales of defendants' pharmaceutical products. (Dkt. entry no. 121, Pl. Br., at 4; dkt. entry no. 127, Def. Opp'n Br., at 15.) [3] PRs have the job title of "Sales Professional." (Pl. Br., at 4 n.5; Def. Opp'n Br., at 1.) [4] They work in one of four business units, either (1) Internal Medicine, (2) Cardiovascular, (3) Metabolism, or (4) Specialty Products. (Def. Opp'n Br., at 1.) They have various types of clients, including primary care physicians, specialists, and institutional clients. (Id.) They are paid a salary and are eligible for bonuses based on their job performance. (Def. Opp'n Br., at 5.)

3   Defendants state that [*4] defendant Sanofi-Aventis U.S. Inc. is not a proper defendant, as PRs are employed by defendant Sanofi-Aventis U.S. LLC. (Def. Opp'n Br., at 1 n.1.) But Defendants have not moved to dismiss defendant Sanofi-Aventis U.S. Inc., and the parties have not stipulated to remove that defendant as a defendant in this action. For ease of reference, the Court will use the term "defendants" in this memorandum opinion.
4   It appears that some PRs have various prefixes to their title of "Sales Professional," including, for example, "Senior", "Executive", "Specialty", "Oncology", or "Medical Center." (Pl. Br., at 4 n.5). Defendants, however, refer to the PRs simply as "Sales Professionals." (See Def. Opp'n Br.)

PRs work in ninety-nine different regions in the United States. (Def. Opp'n Br., at 4.) Each region consists of approximately eight districts. (Id.) The number of PRs working in each district varies depending on, inter alia, geographic and demographic factors relevant to each district. (Id.) Each region has a Regional Sales Director, and each district has a District Sales Manager. (Id.) The Regional Sales Directors' responsibilities include, inter alia, overseeing the District Sales Managers. (Pl. [*5] Br., at 4.) The District Sales

Managers' responsibilities include, inter alia, supervising all sales activity throughout their designated region and overseeing the PRs. (Id.)

Plaintiff Lisa Evancho has been employed by the defendants as a PR in Pennsylvania since December 2005. (2d Am. Compl., at P 8.) She asserts the Pennsylvania state-law class allegations under the PMWA against defendants pursuant to *Rule 23*, alleging that defendants, inter alia, failed to (1) provide overtime compensation, and (2) maintain accurate time records. (2d Am. Compl., at P 66-74.) Plaintiff J. Aleth Guiriba was formerly employed by the defendants as a PR in California, from 1978 through 2006. (2d Am. Compl., at P 9.) Plaintiff Patricia Maki also was formerly employed by the defendants as a PR in California, from December 2003 to November 2004. (2d Am. Compl., at P 10.) Plaintiffs J. Aleth Guiriba and Patricia Maki allege that defendants violated California law by, inter alia, (1) failing to (a) provide overtime compensation, (b) maintain accurate time records, (c) pay for missed meal and rest periods, (d) pay wages due upon the termination of employment, and (e) furnish itemized wage statements, and (2) [*6] engaging in unlawful or unfair business acts or practices. (2d Am. Compl., at PP 75-106.) All three plaintiffs assert the FLSA claims as a collective action against the defendants pursuant to *Section 216(b)*, alleging defendants, inter alia, failed to (1) provide overtime compensation, and (2) maintain accurate time records. (Id. at PP 59-65.)

Plaintiffs now move for conditional collective action certification, Hoffman-LaRoche notice, and equitable tolling. (Dkt. entry no. 121.) Defendants cross-move to strike plaintiffs' state-law class allegations pursuant to *Rule 23(d)(4)*. (Dkt. entry no. 133.)

## DISCUSSION

### I. Plaintiffs' Motion for Conditional Collective Action Certification, Hoffman-LaRoche Notice, and Equitable Tolling

#### A. Conditional Collective Action Certification and Hoffman-LaRoche Notice

An FLSA action may proceed as a collective action under *Section 216(b)* if the potential collective action members are "similarly situated." *29 U.S.C. § 216(b)*; *Moeck v. Gray Supply Corp., No. 03-1950, 2006 U.S. Dist. LEXIS 511, 2006 WL 42368, at *4 (D.N.J. Jan. 6, 2006)*. A two-tier test applies when making this determination. *Moeck, 2006 U.S. Dist. LEXIS 511, 2006 WL 42368, at *4*. The Court first determines whether it should conditionally certify a [*7] collective action and give notice of the action to potential collective action members at the notice stage, occurring early in the case. *Id.*; *Morisky v. Pub. Serv. Elec. & Gas Co., 111*

*F.Supp.2d 493, 497 (D.N.J. 2000)*. The Court usually only has minimal evidence before it at this stage, in the form of pleadings and affidavits submitted by parties. *Morisky, 111 F.Supp.2d at 497*. As such, the Court uses a fairly lenient standard to determine whether potential collective action members are similarly situated. Id.

Certification at the notice stage, however, is not automatic; substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination are required. Id. Unsupported assertions of widespread violations are not sufficient. *Freeman v. Wal-Mart Stores, Inc., 256 F.Supp.2d 941, 945 (W.D. Ark. 2003)*. Plaintiffs must show a factual nexus between their situation and the situation of other current and former employees sufficient to determine that they are similarly situated. *Aquilino v. Home Depot, Inc., No. 04-4100, 2006 U.S. Dist. LEXIS 66034, 2006 WL 2583563, at *2 (D.N.J. Sept. 7, 2006)*. There must be a basis to conclude that questions common [*8] to a potential group of plaintiffs would predominate a determination of the merits in the case. *Mike v. Safeco Ins. Co. of Am., 274 F.Supp.2d 216, 220 (D. Conn. 2003)*.

The Court makes a second determination after discovery is nearly complete and the case is ready for trial. *Morisky, 111 F.Supp.2d at 497*. At this stage, the Court has more information before it, and thus applies a stricter standard to determine whether the collective action members are "similarly situated" and thus can proceed to trial as a collective action. *Moeck, 2006 U.S. Dist. LEXIS 511, 2006 WL 42368, at *4; Morisky, 111 F.Supp.2d at 497*.

A motion for conditional class certification may be denied, however, even under the less strict standard applied at the notice stage, if plaintiffs allege that potential collective action members are similarly situated because they were improperly classified by their employer as exempt from the FLSA. See *Aguirre v. SBC Communs., Inc., No. 05-3198, 2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006)*. Employees' status under the FLSA may vary, even if they have the same job title, if their job responsibilities and duties differ among each other. See id.; *Diaz v. Elecs. Boutique of Am., Inc., No. 04-0840, 2005 U.S. Dist. LEXIS 30382, 2005 WL 2654270, at *4 (W.D.N.Y. Oct. 17, 2005)*. [*9] This is because such differences are relevant to the statutory criteria of the FLSA exemptions. See *Aguirre, 2006 U.S. Dist. LEXIS 22211, 2006 WL 964554, at *7; Diaz, 2005 U.S. Dist. LEXIS 30382, 2005 WL 2654270, at *4*.

Potential collective action members, thus, are not "similarly situated" as to FLSA status when that status may differ depending on their job responsibilities and duties. See, e.g., *Aguirre, 2006 U.S. Dist. LEXIS 22211,*

*2006 WL 964554, at *7* (denying motion for conditional certification because differences among potential plaintiffs' job responsibilities and duties predominated over similarities); *Diaz, 2005 U.S. Dist. LEXIS 30382, 2005 WL 2654270, at *4* (denying motion for conditional certification because plaintiff was not similarly situated to others with same job title, as job responsibilities differed); *Reich v. Homier Distrib. Co., Inc., 362 F.Supp.2d 1009, 1013-15 (N.D. Ind. 2005)* (denying motion for conditional certification because plaintiff and potential collective action members were not similarly situated, as application of FLSA exemption would depend on each employee's specific duties).

This case is at the notice stage as little discovery has taken place. (Pl. Br., at 2; Def. Opp'n Br., at 1.) Plaintiffs argue that notice-stage certification and dissemination of notice [*10] is appropriate here because PRs have (1) the same primary job duty, and (2) been classified by defendants as exempt from the FLSA. (Pl. Br., at 12-14.) Defendants contend that all PRs are not "similarly situated" as to a uniform illegal policy, because they fall within either the "outside sales" or "administrative" exemption to the FLSA. (Def. Opp'n Br., at 15-40.)

The FLSA exempts "any employee employed . . . in the capacity of outside salesman." *29 U.S.C. § 213(a)(1)*. An employee meets this exemption when, inter alia, that employee's "primary duty" consists of "making sales." *29 C.F.R. § 541.500*. Whether an employee is engaged in "making sales" within the meaning of this exemption is a fact-intensive inquiry dependent on each employee's job responsibilities and duties. *Nielsen v. Devry, Inc., 302 F.Supp.2d 747, 756 (W.D. Mich., 2003)* ("[i]n deciding whether an employee is an outside salesperson, the Court must look beyond labels and descriptions and also inquire into the particular facts of the actual work performed.") Plaintiffs argue that "visiting medical professionals to deliver sanofi-aventis product information", does not constitute a "primary duty" of "making sales" in order [*11] to fall within this exemption. (Pl. Br., at 12.) Defendants point out, however, that PRs selling dermatological products, for example, are engaged in "making sales", as they sell pharmaceutical products directly to physicians, as opposed to only delivering product information. (Def. Opp'n Br., at 17.) Whether a particular PR's job responsibilities and duties consist of "making sales", therefore, may differ among PRs. (See id.)

The administrative exemption exempts any employee "employed in a bona fide . . . administrative . . . capacity." *29 U.S.C. § 213(a)(1)*. An employee meets the administrative exemption when, inter alia, that employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *29 C.F.R. § 541.200(a)(3)*.

Plaintiffs contend that the "duty to deliver pre-approved product information to medical professionals using pre-approved means" does not satisfy this requirement in order to exempt PRs as administrative employees. (Pl. Br., at 12-13.) For example, plaintiffs state that their work is "closely monitored and directed", and that they are "required to adhere closely to written materials provided to [them] by [their [*12] employer] when [speaking] with medical professionals." (Dkt. entry no. 121, Decl. of Lisa Evancho, at P 6; dkt. entry no. 121, Decl. of Aleth Guiriba, at P 6; dkt. entry no. 121, Decl. of Patricia Maki, P 6.)

Some of defendants' declarations, however, suggest that this is not accurate for other PRs. (See, e.g., dkt. entry no. 127, Decl. of Susan Zanetti, at P 3 (stating that "[w]hile there are guidelines as to when we should be in the field, no one on any given day tells me when I must be at work or doing anything in particular"); dkt. entry no. 127, Decl. of Jennifer Walker, at P 7 (stating that "[i]t would be impossible to follow a script [when visiting a client] given the need to adapt to the particular circumstances of each visit"); dkt. entry no. 127, Decl. of Justin Mott, at PP 5, 7 (stating that "I am not required to adhere strictly to [Sanofi-Aventis's] recommendations" and "I am free to discuss with physicians whatever topics I feel are appropriate").) [5] Whether PRs' job responsibilities and duties involve the exercise of discretion and judgment, therefore, may differ among PRs. (See id.)

> [5] Plaintiffs have objected to the declarations submitted by defendants in opposition to [*13] plaintiffs' motion. (Dkt. entry no. 153.) The Court has considered these objections and finds them to be without merit.

While the Court need not reach the merits of these exemption arguments at this point, these differences between various PRs' descriptions of their job responsibilities and duties show that status under the FLSA may vary among plaintiffs and potential collective action members. See Aguirre, 2006 U.S. Dist. LEXIS 22211, 2006 WL 964554, at *7; Diaz, 2005 U.S. Dist. LEXIS 30382, 2005 WL 2654270, at *4. Thus, at this juncture, it appears that plaintiffs are not "similarly situated" to potential collective action members as to their status under the FLSA, so conditionally certifying a collective action pursuant to Section 216(b) would be inappropriate. See Aguirre, 2006 U.S. Dist. LEXIS 22211, 2006 WL 964554, at *7; Diaz, 2005 U.S. Dist. LEXIS 30382, 2005 WL 2654270, at *4. Further, as the Court is denying plaintiffs' motion for conditional collective action certification, it will not facilitate notice to potential collective action members.

**B. Equitable Tolling**

The statute of limitations under the FLSA is not tolled until an individual party plaintiff files written consent to join the action. 29 U.S.C. § 256. As such, even if a complaint alleging FLSA claims as a collective action is filed, [*14] a potential collective action member's claims will not be tolled unless that claimant files written consent to join the action. Id.; see also Perella v. Colonial Transit, Inc., 148 F.R.D. 147, 149 (W.D. Pa. 1991) ("[A] claim is not asserted, for purposes of the statute of limitations, until both the complaint and the claimant's individual written consent are filed.") Some courts, as a result, when granting a motion for conditional collective action certification, have equitably tolled the statute of limitations for potential collective action members when they have been unable to join the action through no fault of their own. See, e.g., Baldozier v. Am. Family Mut. Ins. Co., 375 F.Supp.2d 1089, 1093 (D. Colo. 2005); Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 543 (N.D. Cal. 2007). The Court here, however, intends to deny the motion for conditional collective action certification, as discussed supra. As such, it will not equitably toll the FLSA claims as to unknown prospective claimants because plaintiffs have not shown there are potential collective action members similarly situated to the plaintiffs for whom equitable tolling may be justified. [6]

> [6] Equitable tolling is appropriate [*15] if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has timely asserted rights mistakenly in the wrong forum. Genarie v. PRD Mgmt., Inc., No. 04-2082, 2006 U.S. Dist. LEXIS 9705, 2006 WL 436733, at *15 (D.N.J. Feb. 17, 2006).

**II. Defendants' Cross Motion to Strike Plaintiffs' State-Law Class Allegations**

Plaintiffs alleging violations of the FLSA may proceed in a collective action pursuant to Section 216(b), as discussed supra. Any individual who wishes to become a member of such a collective action, however, must affirmatively consent, or opt-in, to join the action. 29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); Moeck, 2006 U.S. Dist. LEXIS 511, 2006 WL 42368, at *4. "Congress created the opt-in procedure under the FLSA for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions." Moeck, 2006 U.S. Dist. LEXIS 511, 2006 WL

42368, at *5. State law class actions brought pursuant to [*16] *Rule 23*, by contrast, include all putative class members in the class action unless those individuals expressly state otherwise, or opt-out of the action. *Fed.R.Civ.P. 23(c)(2)(B); Hyman v. WM Fin. Servs., Inc., No. 06-4038, 2007 U.S. Dist. LEXIS 41433, 2007 WL 1657392, at *2 (D.N.J. June 7, 2007)*. FLSA plaintiffs may not certify a class under *Rule 23*; they must proceed as an opt-in collective action pursuant to *Section 216(b)*. *De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 306 (3d Cir. 2003)*.

Plaintiffs here are attempting to bring both an FLSA "opt-in" collective action and state-law Rule 23 "opt-out" class actions, both based on claims related to defendants' failure to provide overtime compensation to PRs. (Dkt. entry no. 156, Pl. Opp'n Br., at 2.) Plaintiffs, however, are not permitted to "circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar to the FLSA", as this would "undermine Congress's intent to limit these types of claims to collective actions." See *Moeck, 2006 U.S. Dist. LEXIS 511, 2006 WL 42368, at *5*; see also *Otto v. Pocono Health Sys., 457 F.Supp.2d 522, 524 (M.D. Pa. 2006)* (granting defendants' motion to dismiss plaintiffs' PMWA claims when plaintiffs also alleged    [*17] violations of the FLSA because "[t]o allow [a] *Section 216(b)* opt-in action to proceed accompanied by a Rule 23 opt-out state law class action claim would essentially nullify Congress's intent in crafting *Section 216(b)* and eviscerate the purpose of *Section 216(b)*'s opt-in requirement"); *Himmelman v. Cont'l Cas. Co., No. 06-166, 2006 U.S. Dist. LEXIS 56187, 2006 WL 2347873, at *1-*2 (D.N.J. Aug. 11, 2006)* (granting defendant's motion to dismiss plaintiff's state-law class allegations relating to overtime compensation under *Rule 23* as legally incompatible with FLSA collective action); *Herring v. Hewitt Assocs., Inc., No. 06-267, 2006 U.S. Dist. LEXIS 56189, 2006 WL 2347875, at *1-*2 (D.N.J. Aug. 11, 2006)* (same). Therefore, even if, assuming arguendo, jurisdiction exists here for the state-law claims, plaintiffs cannot simultaneously bring a Rule 23

state-law class action and an FLSA collective action for overtime compensation. See *Moeck, 2006 U.S. Dist. LEXIS 511, 2006 WL 42368, at *5*. [7]

> 7    Defendants argue that allowing plaintiffs' FLSA opt-in collective action and state-law opt-out class action to proceed together would violate the Rules Enabling Act. (Def. Br., at 11-16.) The Court need not address this argument, but notes that several courts confronted with this argument [*18] have rejected it. See, e.g., *Lehman v. Legg Mason, Inc., No. 06-2484, 532 F. Supp. 2d 726, 2007 U.S. Dist. LEXIS 69648, 2007 WL 2768519, at *4-*5 (M.D. Pa. Sept. 20, 2007)* (holding that Rules Enabling Act does not preclude FLSA collective actions and state-law class actions to proceed together); *Westerfield v. Wash. Mut. Bank, No. 06-2817, 2007 U.S. Dist. LEXIS 54830, 2007 WL 2162989, at *1-*2 (E.D.N.Y. July 26, 2007)* (same); *Klein v. Ryan Beck Holdings, Inc., No. 06-3460, 2007 U.S. Dist. LEXIS 51465, 2007 WL 2059828, at *5-*7 (S.D.N.Y. July 13, 2007)* (same); *Farhy v. Janney Montgomery Scott, LLC, Nos. 06-3202 & 06-3969, 2007 U.S. Dist. LEXIS 39112, 2007 WL 1455764, at *1 (E.D. Pa. Apr. 26, 2007)* (same).

## CONCLUSION

The Court, for the reasons stated supra, will (1) deny the motion for conditional collective action certification, Hoffman-LaRoche notice, and equitable tolling, and (2) grant the cross motion to strike. The Court will issue an appropriate order.

s/ Mary L. Cooper

**MARY L. COOPER**

United States District Judge

**Dated:** December 18, 2007

**9**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 695675 (S.D.N.Y.)
**2006 WL 695675 (S.D.N.Y.)**

Page 1

**H**Flores v. Osaka Health SPA, Inc.
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Floren Basco FLORES, on behalf of herself and all
others similarly situated, Plaintiffs,
v.
OSAKA HEALTH SPA, INC., et al., Defendants.
**No. 05 Civ. 962VMKNF.**

March 16, 2006.

MEMORANDUM and ORDER

FOX, Magistrate J.
**\*1** In this action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, etseq., and related provisions of New York law, the plaintiff, Floren Basco Flores ("Flores"), has made an application, pursuant to 29 U.S.C. § 216(b), for an order: (1) directing the defendants to provide Flores with the names and addresses of persons they employed during the last three years, who are "similarly situated" to the plaintiff; and (2) approving, for publication to those employees, a notice prepared by Flores announcing, interalia, the existence of this action and inviting the relevant employees to participate in this action, as plaintiffs, along with Flores. The notice Flores proposes that the Court approve is styled "Notice of Lawsuit with Opportunity to Join ."

The defendants, except for Nam-Hi Lee ("Lee"), who is representing herself in the action, responded to Flores' motion by filing a cross-motion. Through that cross-motion, the moving defendants sought to have the action shifted to a state court for adjudication. According to the moving defendants, they are not engaged in commerce, as that term is defined in FLSA and, therefore, the plaintiff cannot prosecute a FLSA-based action against them in this court. However, after Flores responded to the cross-motion, the moving defendants advised the Court, during a conference, that they had determined to withdraw their cross-motion from consideration by the Court. Lee never responded to Flores' motion. Therefore, the motion is unopposed.

Flores maintains that during the period May 2004 through November 2004, she was employed principally as a masseuse at two spa facilities owned, operated and managed by the defendants. Flores contends that, on rare occasions, she was assigned to perform cleaning and other unspecified services. Flores recalls that, while she was in the defendants' employ, she worked six to seven days a week and typically performed her assignments from 3:00 p.m. to 3:00 a.m. Flores also recalls that other masseuses employed by the defendants worked the identical shift, and that they, like she, were not given overtime compensation for hours they worked in excess of 40 hours, during a work-week. Furthermore, according to Flores, she typically received tips from the spas' patrons, but the defendants confiscated those tips.

As noted above, in reliance upon FLSA § 216(b), Flores is seeking an order from the Court directing the defendants to disclose to her the names of their current and former employees who are or were similarly situated to Flores, so that notice of this action and an opportunity to join it as a plaintiff may be published to them. Flores defines the universe of current and former employees similarly situated to her as follows:

All non-exempt current and former employees of Osaka Health Spa of New York who were not paid overtime at any time during the past three years.

"Osaka Health Spa of New York" is not an entity that is a defendant in this action.

**\*2** Courts typically employ a two-step certification process in collective actions such as the one proposed by Flores. See Gjurovich v. Emmanuel's Marketplace, Inc., 282 F.Supp.2d 91, 95-96 (S.D.N.Y.2003); Masson v. Ecolab, Inc., No. 04 Civ. 4488, 2005 WL 2000133, at \*13 (S.D.N.Y. Aug. 17, 2005). First, a court reviews the pleadings and affidavits to determine whether the named plaintiff and the proposed plaintiffs are similarly situated. The named plaintiff has the burden of showing that the proposed plaintiffs for the collective action are similarly situated to him or her with respect to their claims that

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 2
Not Reported in F.Supp.2d, 2006 WL 695675 (S.D.N.Y.)
**2006 WL 695675 (S.D.N.Y.)**

FLSA has been violated. The named plaintiff can satisfy that burden by demonstrating a " 'factual nexus' between his or her situation and the situation of other current or former employees."*Young v. Cooper Cameron Corp.,* 229 F.R.D. 50, 54 (S.D.N.Y.2005) (citation omitted). The named plaintiff needs to make only "a modest factual showing sufficient to demonstrate that [the named plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law."*Hoffman v. SBARRO, Inc,* 982 F.Supp. 249, 261 (S.D.N.Y.1997)."The leniency of this requirement is consistent with the broad remedial purpose of FLSA."*Morales v. Plantworks,* No. 05 Civ. 2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006). If the court determines that the named plaintiff and the proposed plaintiffs are similarly situated, it certifies the class conditionally and allows notice of the action to be sent to proposed plaintiffs. *See Masson,* 2005 WL 2000133, at *13.

During the second step in the process, a defendant can make an application to the court that the class be decertified if, during the pretrial discovery phase of the litigation it becomes apparent that the plaintiffs are not similarly situated. *See id.,* at *14.

In the instant case, it is not clear to whom Flores contends she is similarly situated such that a class of proposed plaintiffs might be identified. In her complaint, Flores alleges that she was employed by the defendants as a masseuse, and that she and "fellow masseuses [ ] worked more than forty hours each work-week, but were not paid overtime compensation."In the memorandum of law that Flores submitted in connection with the instant motion, she alleges that she and "her fellow employees worked more than forty hours each work-week but were not paid overtime compensation."The plaintiff's complaint states that the action is brought on behalf of "all other current and former employees of defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants."The plaintiff's memorandum of law, as noted above, defines the universe of persons similarly situated to Flores as "all non-exempt current and former employees" of an entity that is not a defendant in the action, "who were not paid over-time at any time during the past three years."

*3 The plaintiff's description of the universe of proposed plaintiffs, that is, the class of persons she maintains is similarly situated to her, is not consistent. On one occasion, the class is alleged to be composed of masseuses who work and did work at the defendants' spa facilities in excess of 40 hours in a work-week and were not compensated for the hours beyond 40 hours that they worked. On another occasion, the class is not limited to masseuses, but is claimed to be composed of "all [ ] current and former employees of the defendants who were not paid in accordance with [FLSA's] overtime provisions and whose tips were misappropriated by the defendants."On yet another occasion, the class is described as "all non-exempt current and former employees" of an entity, "Osaka Health Spa of New York," that is not a defendant in the action. In addition, Flores has confused matters further by describing the proposed plaintiffs as "home health aide employees" in the notice concerning the pendency of this action that she has asked the Court to approve for publication. In a situation such as this, where the named plaintiff is unable to state clearly and specifically to whom it is that she contends she is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted.

Furthermore, the Court finds that the plaintiff has failed to make a "modest" showing to establish that she and the proposed plaintiffs together were the victims of a common policy or plan that violated the law. Flores contends, in her memorandum of law, that typically, she "served at least 7-8 customers per [12-hour] shift and [that] it is [her] understanding that the other massage therapists working my shift did the same."The submissions made by the plaintiff to the Court do not provide any factual information concerning the basis for Flores' "understanding" of the quantum of work performed by "other massage therapists" assigned to work during the shift on which Flores worked. Flores also alleges, in her memorandum of law, that the defendants' spa customers typically paid cash tips in amounts ranging from $20 to $50, and that the defendants "confiscated our tips." These allegations, like the allegations Flores made in an affidavit she submitted in reply to the defendants' opposition to her motion, are broad conclusory allegations. As such, they offer nothing of evidentiary value to support a finding that a factual nexus exists between the way the defendants allegedly compensated Flores and the way they may

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 695675 (S.D.N.Y.)
**2006 WL 695675 (S.D.N.Y.)**

Page 3

have compensated other employees during the relevant time period. The plaintiff's determination to rely upon broad conclusory allegations and nothing more, also militates against certifying this as a FLSA collective action. *SeeMorales,* 2006 WL 278154, at *3.

Since Flores has not met her burden of showing that she is similarly situated to former and current employees of the defendants, her motion, that this action proceed as a collective action, is denied.

**\*4** Although the Court has determined that certifying this action as a collective action, pursuant to 29 U.S.C. § 216(b), is not warranted at this juncture in the litigation, the Court remains mindful of the remedial purpose of FLSA and the broad discretionary power that the Court has. Therefore, the Court will direct the defendants to disclose to Flores the names of persons they employed at their spa facilities, in the job title masseuse, during the 3 years immediately preceding the date on which this action was commenced. *Seeid.,* at *3.

SO ORDERED:

S.D.N.Y.,2006.
Flores v. Osaka Health SPA, Inc.
Not Reported in F.Supp.2d, 2006 WL 695675 (S.D.N.Y.)

END OF DOCUMENT

**10**

LEXSEE 2006 U.S. DIST. LEXIS 88874

**LAURI L. HAMPSHIRE, Individually and on Behalf of All Others Similarly Situated, RAYMOND ELMORE, Individually and on Behalf of All Others Similarly Situated, KARY VINCENT, Individually and on Behalf of All Others Similarly Situated, APRIL COLEMAN, Individually and on Behalf of All Others Similarly Situated, DEBORAH AUGUSTUS, Individually and on Behalf of All Others Similarly Situated, and GLENDA WASHINGTON, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, versus PORT ARTHUR INDEPENDENT SCHOOL DISTRICT and JULIA SAMUELS, Defendants.**

CIVIL ACTION NO. 1:06-CV-235

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS

*2006 U.S. Dist. LEXIS 88874*

**December 7, 2006, Decided**
**December 7, 2006, Filed**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Pending before the court was plaintiffs' motion for conditional class certification and issuance of court supervised notice to potential class members in their action seeking damages from defendants, a school district and an individual, based on their alleged failure to pay overtime wages in violation of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. §§ 201-219*.

**OVERVIEW:** Plaintiffs contended that the court should conditionally certify a class of similarly situated individuals and authorize notice to potential class members. Plaintiffs' submissions offered little support for their contention that class certification and notice was warranted. Most of the affidavits only vaguely described purported FLSA violations. Because plaintiffs provided such limited information, the court was unable to conclude that the putative class members and the class representatives were similarly situated. Further, plaintiffs affirmatively intended to represent all employees owed overtime compensation regardless of how the failure to pay occurred. Also, defendants provided substantial evidence that the purported class members were not similarly situated. With respect to job title, the proposed class was particularly broad, encompassing custodians, cafeteria workers, bus drivers, mechanics, janitors, teacher's aides, secretaries, coach's assistants, painters,

plumbers, receptionists, and electricians. The disparate job titles, work schedules, and compensation methods illustrated that the proposed class members were not similarly situated to plaintiffs or to each other.

**OUTCOME:** Plaintiffs' motion for conditional class certification and issuance of court supervised notice to potential class members is denied. Accordingly, the 16 opt-in plaintiffs were dismissed from this action without prejudice, and defendants' motion for extension of deadlines and for leave to file sur-reply exceeding page limit was denied as moot.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN1] The Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219*, provides that an action may be maintained against any employer (including a public agency) in any federal or state court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. *29 U.S.C.S. § 216(b)*. In order to maintain a collective action, the named representatives and the members of the prospective collective action must be similarly situated, and the action must be one of general effect, not one which is purely personal to the individual plaintiffs.

Case 1:08-cv-04530-BSJ-MHD    Document 26-6    Filed 08/11/2008    Page 13 of 24

Page 2
2006 U.S. Dist. LEXIS 88874, *

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*

[HN2] In the context of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. §§ 201-219*, before proceeding as a collective action, a showing is required that other employees of the employer wish to opt into the lawsuit. To satisfy the "opt in" requirement, prospective plaintiffs in a FLSA collective action must provide written consent to participate in the lawsuit.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*

[HN3] In the context of the Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219*, a court maintains the discretion to conditionally certify a collective action and to authorize the sending of notice to potential class members so that they may choose to "opt-in" to the suit.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*

[HN4] In the context of the Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219*, in determining whether class certification is appropriate, courts generally employ one of two approaches--the "two-step" method or the "spurious" class action procedure. The United States Court of Appeals for the Fifth Circuit has expressly declined to endorse either method over the other. The two-step approach, however, is the predominant test utilized by federal courts.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*

[HN5] In the context of the Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219*, the first stage of the class certification inquiry is the "notice stage," during which the court determines whether notice of the lawsuit should be provided to potential class members. Because only limited evidence is available for making this initial determination, the court applies a fairly lenient standard, which typically results in "conditional certification" of a representative class. The second phase of the analysis is ordinarily precipitated by a motion for "decertification" by the defendant, filed after discovery is largely complete. If the court finds that the employees are not sufficiently similar, the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs proceed on their individual claims.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*

[HN6] In the context of the Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219*, although the standard for satisfying the first step of the class certification inquiry is lenient, a court requires at least substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. The plaintiff bears the burden of proving that a similarly situated group of potential plaintiffs exists. Such potential plaintiffs need not be identical, but there should be a demonstrated similarity among the individual situations some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*

[HN7] In the context of a Fair Labor Standards Act, *29 U.S.C.S. §§ 201-219*, collective action, a court examines a variety of factors when determining whether similarly situated plaintiffs exist. In cases involving class certification of school district employees, district courts have considered the following factors: (1) whether the plaintiffs held the same job titles; (2) whether the plaintiffs worked similar hours and received similar pay; (3) whether the plaintiffs worked in similar geographical locations; and (4) whether the plaintiffs worked for the same decision-maker. Additionally, courts consider whether potential plaintiffs are identified, whether affidavits are submitted, and whether evidence of a widespread unlawful plan is provided. However, conclusory allegations made by plaintiffs in affidavits are not sufficient to establish substantial similarity.

**COUNSEL:** [*1] For Lauri L Hampshire, Individually and on behalf of all others similarly situated, Glenda Faye Rose Alfred, Emilia Hernandez Ybarra, Linda Marie Barnes, Romona Bellard, Felicia Latrece Clayton, Lori Lynette George, Clara Faye Gertman, Bianca Maria Jackson, Jonathan Elliot Jacquet, Reginald Henry Ned, Ryan L Pickney, Jeannie Mae Scott, Katherine Simon, Michael Anthony Stearling, Glenda Faye Washington, Lanell Marie Windom, Kary Lamont Vincent, Clarence Williard August, Deborah K Augustus, April Coleman, Raymond Elmore, Plaintiffs: Joe Smith, Smith Litigation firm, Dallas, TX, US.

For Port Arthur ISD, Julia Samuels, Defendants: Richard Alan Morris, Robert Mason Dunn, Jr., Feldman & Rogers, Houston, TX.

**JUDGES:** MARCIA A. CRONE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARCIA A. CRONE

**OPINION**

**MEMORANDUM AND ORDER**

Pending before the court is Plaintiffs Lauri L. Hampshire ("Hampshire"), Raymond Elmore, Kary Vincent, April Coleman, Deborah Augustus, and Glenda Washington's (collectively, "Plaintiffs") Motion for Conditional Class Certification and Issuance of Court Supervised Notice to Potential Class Members (# 22). Plaintiffs seek damages from Defendants Port Arthur [*2] Independent School District ("PAISD") and Julia Samuels (collectively, "Defendants") based on their alleged failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 201-219.* Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that conditional class certification is not warranted.

I. Background

On April 27, 2006, Plaintiff Hampshire, individually and on behalf of all others similarly situated, filed this lawsuit pursuant to the FLSA's collective action provision to recover unpaid overtime wages from Defendants. *See 29 U.S.C. § 216(b).* Hampshire alleges that Defendants required her and others similarly situated to work routinely "off the clock" with little or no additional compensation. In a First Amended Complaint, filed on November 1, 2006, five additional plaintiffs, listed above, were named as class representatives. Sixteen other individuals have filed written consents with the court to participate in this lawsuit, although no formal request has been made to add these persons as named plaintiffs.

In the instant [*3] motion, Plaintiffs contend that the court should conditionally certify a class of similarly situated individuals and authorize notice to potential class members. Specifically, Plaintiffs request that notice be provided to all current and former non-certified employees of PAISD from April 2003 to the present who are or were employed as "custodians, cafeteria workers, bus drivers, mechanics, janitors, teacher's aides, secretaries, coach's assistants, painters, plumbers, receptionists, and/or electricians." Defendants filed a response in opposition to conditional class certification, contending that Plaintiffs have failed to show that the putative class members are similarly situated to the class representatives.

II. Analysis

[HN1] The FLSA provides that an action "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *29 U.S.C. § 216(b).* A collective action prevents "piecemeal litigation, inconsistent adjudications, and difficult *res judicata* issues." *Belt v. EmCare, Inc., 299 F. Supp. 2d 664, 665 (E.D. Tex. 2003)* [*4] (citing *Donovan v. University of Texas, 643 F.2d 1201, 1206-07 (5th Cir. 1981)).* In order to maintain a collective action, "'the named representatives and the members of the prospective [collective action] ... must be similarly situated, and ... the action must be one of general effect, not one which is purely personal to the [individual] plaintiff[s].'" *Cash v. Conn Appliances, Inc., 2 F. Supp. 2d 884, 897 (E.D. Tex. 1997)* (quoting *Wyatt v. Pride Offshore, Inc., Civ. A. No. 96-1998, 1996 U.S. Dist. LEXIS 13335, 1996 WL 509654, at *2 (E.D. La. Sept. 6, 1996)); see Villatoro v. Kim Son Rest., L. P., 286 F. Supp. 2d 807, 808-09 (S.D. Tex. 2003)* (citing *29 U.S.C. § 216(b)).*

In addition, [HN2] before proceeding as a collective action, a showing is required that other employees of the employer wish to opt into the lawsuit. *See id.; Belt, 299 F. Supp. 2d at 665.* To satisfy the "opt in" requirement, prospective plaintiffs in a FLSA collective action must provide written consent to participate in the lawsuit. *See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1212 (5th Cir. 1995),* overruled [*5] on other grounds by *Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); Donovan, 643 F.2d at 1208; LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 287 n.6 (5th Cir. 1975); Villatoro, 286 F. Supp. 2d at 808-09* (citing *29 U.S.C. § 216(b)); Cash, 2 F. Supp. 2d at 897 n.32.* [HN3] The court maintains the "discretion to conditionally certify a collective action and to authorize the sending of notice to potential class members so that they may choose to 'opt-in' to the suit." *Allen v. McWane, Inc., No. Civ. A. 2:06-CV-158, 2006 U.S. Dist. LEXIS 81543, 2006 WL 3246531, at *1 (E.D. Tex. Nov. 7, 2006)* (citing *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)); accord Johnson v. TGF Precision Haircutters, Inc., 319 F. Supp. 2d 753, 754 (S.D. Tex. 2004); Villatoro, 286 F. Supp. 2d at 809.*

[HN4] In determining whether class certification is appropriate, courts generally employ one of two approaches--the "two-step" method developed in *Lusardi v. Xerox Corporation, 118 F.R.D. 351 (D.N.J. 1987),* or the "spurious" class action procedure [*6] discussed in *Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990). See Mooney, 54 F.3d at 1213-14; Johnson, 319 F. Supp. 2d at 754-55; Villatoro, 286 F. Supp. 2d at*

809; *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400-01 (E.D. Tex. 1999). The United States Court of Appeals for the Fifth Circuit has expressly declined to endorse either method over the other. *See Mooney*, 54 F.3d at 1216. The two-step approach, however, is the predominant test utilized by federal courts. *See Allen*, 2006 U.S. Dist. LEXIS 81543, 2006 WL 3246531, at *1; *Bursell v. Tommy's Seafood Steakhouse*, Civ. A. No. H-06-0386, 2006 U.S. Dist. LEXIS 80526, 2006 WL 3227334, at *2 (S.D. Tex. Nov. 3, 2006); *Basco v. Wal-Mart Stores Inc.*, No. Civ. A. 00-3184, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). In accordance with the majority approach, this court will employ the two-step analysis.

[HN5] The first stage of the certification inquiry is the "notice stage," during which the court determines whether notice of the lawsuit [*7] should be provided to potential class members. *See Mooney*, 54 F.3d at 1213-14. Because only limited evidence is available for making this initial determination, the court applies "a fairly lenient standard," which "typically results in 'conditional certification' of a representative class." *Id.* at 1214; *accord Johnson*, 319 F. Supp. 2d at 754-55; *Villatoro*, 286 F. Supp. 2d at 809. The second phase of the analysis is ordinarily precipitated by a motion for "decertification" by the defendant, filed after discovery is largely complete. *See Mooney*, 54 F.3d at 1214. If the court finds that the employees are not sufficiently similar, the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice, and the original plaintiffs proceed on their individual claims. *See id.; Johnson*, 319 F. Supp. 2d at 755; *H & R Block, Ltd.*, 186 F.R.D. at 400. Here, because the case is at the first stage of the two-step inquiry, the court will consider whether conditional certification and notice to potential class members is appropriate based on the pleadings and submissions [*8] of the parties.

[HN6] "Although the standard for satisfying the first step is lenient, the court still requires at least 'substantial allegations that the putative class members were together the victims of a single decision, policy, or plan ...'" *Id.* (citation omitted) (quoting *Mooney*, 54 F.3d at 1214 n.8); *see also Allen*, 2006 U.S. Dist. LEXIS 81543, 2006 WL 3246531, at *2; *Bursell*, 2006 U.S. Dist. LEXIS 80526, 2006 WL 3227334, at *2; *Basco*, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *5. The plaintiff bears the burden of proving that a similarly situated group of potential plaintiffs exists. *See Allen*, 2006 U.S. Dist. LEXIS 81543, 2006 WL 3246531, at *2; *Basco*, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *5; *Reed v. Mobile County Sch. Sys.*, 246 F. Supp. 2d 1227, 1234 n.11 (S.D. Ala. 2003) (citing *Grayson v. K Mart*

*Corp.*, 79 F.3d 1086, 1097 (11th Cir.), *cert. denied*, 519 U.S. 982, 117 S. Ct. 435, 136 L. Ed. 2d 332 (1996)). Such potential plaintiffs need not be identical, but there should be "'a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]. [*9] " *Villatoro*, 286 F. Supp. 2d at 810 (quoting *Crain v. Helmerich & Payne Int'l Drilling Co.*, Civ. A. No. 92-0043, 1992 U.S. Dist. LEXIS 5367, 1992 WL 91946, at *2 (E.D. La. Apr. 16, 1992)); *accord Allen*, 2006 U.S. Dist. LEXIS 81543, 2006 WL 3246531, at *2; *Basco*, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709, at *5; *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988).

[HN7] The court examines a variety of factors when determining whether similarly situated plaintiffs exist. *See Mooney*, 54 F.3d at 1213 & n.7. In cases involving class certification of school district employees, district courts have considered the following factors: (1) whether the plaintiffs held the same job titles; (2) whether the plaintiffs worked similar hours and received similar pay; (3) whether the plaintiffs worked in similar geographical locations; and (4) whether the plaintiffs worked for the same decision-maker. *See, e.g., Fisher v. Houston Indep. Sch. Dist.*, Civ. A. No. H-04-477, slip op. at 7-9 (S.D. Tex. Nov. 9, 2004); *Sheppard v. Silsbee Indep. Sch. Dist.*, No. 1:03-CV-788, slip op. at 4 (E.D. Tex. Aug. 4, 2004); *Reed*, 246 F. Supp. 2d at 1232 (citing *Stone v. First Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla. 2001)). [*10] Additionally, courts consider whether potential plaintiffs are identified, whether affidavits are submitted, and whether evidence of a widespread unlawful plan is provided. *See H & R Block, Ltd.*, 186 F.R.D. at 400. However, "[c]onclusory allegations made by plaintiffs in affidavits are not sufficient to establish substantial similarity." *Fisher*, slip op. at 5; *accord H & R Block, Ltd.*, 186 F.R.D. at 400; *see Bursell*, 2006 U.S. Dist. LEXIS 80526, 2006 WL 3227334, at *2; *Sheppard*, slip op. at 6.

In the case at bar, Plaintiffs argue that class certification and notice is appropriate for the following reason:

> The Plaintiffs were all allowed and/or required to work in excess of 40 hours in a work week by the same board of directors, the same superintendent and the same assistant superintendent. The principal at each of the schools within the PAISD took direction from the board of directors and carried out such scheme in violation of the FLSA. They each had a

common plan to get something for nothing.

Attached to Plaintiffs' reply brief are the affidavits of eleven PAISD employees, including each of the six purported class representatives. [*11] Although some of the affidavits are unclear as to the specific job title of the affiant, it appears that the affidavits of the following classifications of employees are included: one custodial services coordinator, two cafeteria workers, one bus driver, three teacher's aides, three coaches or coach's assistants, and one athletic coordinator. Plaintiffs submit no evidence regarding alleged FLSA violations relating to the remaining categories of employees that they seek to represent, namely, mechanics, janitors, secretaries, painters, plumbers, receptionists, and electricians.

Plaintiffs' submissions offer little support for their contention that class certification and notice to potential class members is warranted in this case. While some of the affidavits are more detailed than others, most only vaguely describe purported FLSA violations. In particular, several of the affiants fail to identify their specific job titles, the locations of their job sites, the names of their direct supervisors, the nature of their compensation, or other specific facts to support their allegations under the FLSA. [1] Because Plaintiffs provide such limited information, the court is unable to conclude [*12] that the putative class members and the class representatives are similarly situated. Furthermore, "overtime violations may be wrought by any number of means, [and] the plaintiffs do not seek to represent a class alleging any particular manner of overtime violation but affirmatively intend to represent all employees owed overtime compensation regardless of how the failure to pay occurred." *Reed, 246 F. Supp. 2d at 1233.* Such a case is not appropriate for conditional class certification, which requires substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. *See Mooney, 54 F.3d at 1214 n.8; see also Reed, 246 F. Supp. 2d at 1233.*

    1  Indeed, the only information offered regarding such employment details was furnished by Defendants.

Finally, the nearly identical statements in the affidavits that the affiants have personal knowledge of other potential plaintiffs who are similarly situated are insufficient [*13] for the court to find that such plaintiffs exist. *See Sheppard,* slip op. at 5; *H & R Block, Ltd., 186 F.R.D. at 400.* "If such perfunctory efforts could lead to preliminary class certification and court authorized notice, the similarly situated requirement would be rendered essentially meaningless." *Sheppard,* slip op. at

5. Thus, despite the lenient standard for conditional class certification, Plaintiffs have failed to meet their burden of establishing that similarly situated plaintiffs exist.

Moreover, Defendants have provided substantial evidence that the purported class members in this case are, in fact, not similarly situated. With respect to job title, Plaintiffs' proposed class is particularly broad, encompassing custodians, cafeteria workers, bus drivers, mechanics, janitors, teacher's aides, secretaries, coach's assistants, painters, plumbers, receptionists, and electricians. As Defendants' response describes in detail, these positions entail starkly contrasting responsibilities and job demands. Additionally, they involve diverse schedules and include unique methods of compensation, such as annual salaries, hourly wages, stipends, and travel allowances. [*14] For example, PAISD employs approximately ninety bus drivers--approximately sixty-six drivers with regular routes and twenty-four substitute drivers who provide assistance when necessary. Each regular driver operates two to three routes per day, with some drivers opting to drive midday routes, evening athletic routes, or field trips. Drivers are paid hourly based on seniority and report to the district's transportation coordinator. In contrast, PAISD's approximately 150 teacher's aides are paid an annual salary and typically work eight-hour days, with variations depending on the particular school. A teacher's aide is supervised on a daily basis by the teacher to whom he or she is assigned but ultimately reports to the school principal. In sum, such disparate job titles, work schedules, and compensation methods illustrate that the proposed class members are not similarly situated to Plaintiffs or to each other.

Furthermore, PAISD's approximately 1,300 employees are geographically separated and report to different supervisors. PAISD educates students on fifteen campuses, consisting of nine elementary schools, three middle schools, one high school, one alternative school, and one vocational [*15] center. Additionally, it employs individuals at the school district's administration building, child nutrition building, bus barn, and maintenance facility. Depending on the specific position, employees may report to a school principal, coordinator, or other supervisor, such as a teacher or coach. These decision-makers individually determine the hours that an employee works and authorize overtime, if necessary. Thus, although PAISD exists as a single entity, the evidence presented by Defendants shows significant autonomy among the various locations within the district. Such autonomy belies Plaintiffs' contention that PAISD had a "common plan" to violate the FLSA.

III. Conclusion

2006 U.S. Dist. LEXIS 88874, *

Plaintiffs have failed to meet their burden of showing that similarly situated claimants exist in this case. Moreover, the evidence presented by Defendants reveals that Plaintiffs' proposed class consists of employees with diverse job titles, schedules, compensation, work locations, and supervisors. Therefore, Plaintiffs' Motion for Conditional Class Certification and Issuance of Court Supervised Notice to Potential Class Members is denied. Accordingly, the sixteen opt-in plaintiffs are dismissed [*16] from this action without prejudice, and Defendants' Motion for Extension of Deadlines and for Leave to File Sur-Reply Exceeding Page Limit (# 37) is denied as moot.

SIGNED at Beaumont, Texas, this 7th day of December, 2006.

MARCIA A. CRONE

UNITED STATES DISTRICT JUDGE

**11**

6 of 7 DOCUMENTS



Analysis
As of: Aug 07, 2008

**GLEN JACOBSEN, on behalf of himself and all others similarly situated, Plaintiff, -v- THE STOP & SHOP SUPERMARKET COMPANY, Defendant.**

**02 Civ. 5915 (DLC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2004 U.S. Dist. LEXIS 17031*

**August 27, 2004, Decided
August 30, 2004, Filed**

**PRIOR HISTORY:** *Jacobsen v. Stop & Shop Supermarket Co., 2003 U.S. Dist. LEXIS 7988 (S.D.N.Y., May 14, 2003)*

**DISPOSITION:**    Defendant's motion for partial summary judgment granted; twelve plaintiffs dismissed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former employee commenced a collective action against defendant former employer alleging violations of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.* The employer filed a motion for partial summary judgment.

**OVERVIEW:** The employee contended that the employer willfully misclassified three manager positions as exempt from FLSA overtime pay provisions. The employee sought to certify a class pursuant to *Fed. R. Civ. P. 23(b)(3)* to bring, inter alia, FLSA claims. The employer contended that 12 of the 110 former employees who opted into the action were barred by the statute of limitations. The employee contended that the statute of limitations should be equitably tolled or that the employee should be equitably estopped from asserting a statute of limitations defense. The court held that equitable tolling did not apply as the employee could not point to any trickery or affirmative deception, or any "extraordinary" behavior, on the part of the employer that impeded employees' ability to file timely consents. In addition, the doctrine of equitable estoppel did not

help, as the employee could not point to any misrepresentation by the employer regarding its reliance on a statute of limitations defense. Thus, the court held that the statute of limitations with respect to individual claims continues to run until an individual files with the clerk of court a written consent to the join the FLSA action.

**OUTCOME:** The employer's motion for partial summary judgment was granted and 12 plaintiffs were dismissed from the action on the ground that their claims were barred by the statute of limitations.

**LexisNexis(R) Headnotes**

*Governments > Legislation > Statutes of Limitations > Time Limitations*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN1] Under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, the statute of limitations with respect to an individual's claim is not tolled until he or she files a written consent to join the collective action.

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*

2004 U.S. Dist. LEXIS 17031, *

[HN2] Summary judgment may not be granted unless the submissions of the parties taken together show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c).*

*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Summary Judgment > Opposition > General Overview*
*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
[HN3] On motion for summary judgment, the moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set forth specific facts showing that there is a genuine issue for trial, and cannot rest on the mere allegations or denials of the movant's pleadings. *Fed. R. Civ. P. 56(e).*

*Civil Procedure > Trials > Jury Trials > Province of Court & Jury*
*Governments > Legislation > Statutes of Limitations > General Overview*
[HN4] Where the parties' legal claims do not share common issues of fact with the equitable claims or defenses, the court decides the equitable claims.

*Governments > Legislation > Statutes of Limitations > Extension & Revival*
*Governments > Legislation > Statutes of Limitations > Tolling*
[HN5] Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances. The doctrine only should be applied, however, in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights. Equitable tolling is generally considered appropriate in situations where the complainant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.

*Governments > Legislation > Statutes of Limitations > Tolling*

[HN6] When determining whether equitable tolling is applicable, a court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.

*Governments > Legislation > Statutes of Limitations > Tolling*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN7] Classifying a job as exempt from the overtime pay requirements of the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, is not "extraordinary" conduct such that the doctrine of equitable tolling should apply. To hold that a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime.

*Governments > Legislation > Statutes of Limitations > Equitable Estoppel*
*Governments > Legislation > Statutes of Limitations > Extension & Revival*
[HN8] The doctrine of equitable estoppel can be raised only where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.

*Contracts Law > Consideration > Enforcement of Promises > General Overview*
*Governments > Legislation > Statutes of Limitations > Equitable Estoppel*
[HN9] Under federal law, a party can be estopped from pursuing a claim where: (1) the party makes a misrepresentation of fact to another party with reason to believe that the other party will rely on it; (2) the other party relies on the misrepresentation to his detriment.

**COUNSEL:**    [*1]    For Plaintiff: Eric Steinberg, Eastwood Scandariato & Steinberg, North Bergen, NJ. Peter A. Cross, Jacob Medinger & Finnegan LLP, New York, NY.

For Defendant: Peter A. Walker, Christopher Lowe, Seyfarth Shaw, New York, NY.

**JUDGES:** DENISE COTE, United States District Judge.

**OPINION BY:** DENISE COTE

**OPINION**

*OPINION AND ORDER*

DENISE COTE, District Judge:

On July 25, 2002, plaintiff Glen Jacobsen ("Jacobsen") commenced this collective action against Stop & Shop Supermarket Company, LLC ("Stop & Shop"), alleging violations of the overtime pay provisions of the Fair Labor Standards Act, *29 U.S.C. § 201 et seq.* (the "FLSA" or the "Act"). Stop & Shop now moves for partial summary judgment, seeking an order (1) defining how the statute of limitations is calculated in a collective action brought under the FLSA, and (2) dismissing with prejudice from this action twelve plaintiffs [1] whose claims it contends are wholly barred by the statute of limitations. For the reasons set forth below, the motion is granted.

> 1   Stop & Shop originally sought to dismiss the claims of seventeen plaintiffs as time barred. The parties have since agreed to dismiss voluntarily the claims of five plaintiffs. The parties have dismissed the claims of Harold Grausam, Raquel Dias, and Boulem Kibboua because these individuals were never employed by Stop & Shop as GM Managers. The claims of Arman Tougas and Sandra Goodwin Murphy have been dismissed because both employees were on leaves of absences during the entire relevant time period and never returned to work.

[*2] *Background*

Familiarity with the issues at stake in this litigation as described in the Opinion certifying the collective action is assumed. *See Jacobsen v. Stop & Shop Supermarket Co., 2003 U.S. Dist. LEXIS 7988, No. 02 Civ. 5915 (DLC), 2003 WL 21136308 (S.D.N.Y. May 14, 2003).* Only the facts relevant to this motion will be discussed here.

Starting in February 2000, Jacobsen was employed at Stop & Shop's General Merchandise ("GM") Department. [2] Over the course of his employment he worked in three different capacities: as a GM Manager Trainee, GM Manager Reserve, and GM Manager. Jacobsen asserts that, in each of those three positions, he was required to work a minimum of forty-seven hours each week without receiving overtime compensation as required by *Section 207(a)(1) of the FLSA.*

> 2   Stop & Shop operates more than 500 grocery stores on the East Coast of the United States. Its

GM Department is in charge of the non-food items sold in the stores.

On July 25, 2002, Jacobsen filed this collective action on behalf of [*3] himself and other similarly situated GM Manager Trainees, GM Reserve Managers, and GM Managers who were denied overtime compensation. Jacobsen alleges that Stop & Shop willfully misclassified the three manager positions as exempt from the FLSA's overtime pay provisions.

At an initial pretrial conference held on September 20, 2002 (the "Conference"), the merits of the claims were discussed. At that time, the plaintiff was seeking to certify a class pursuant to *Rule 23(b)(3), Fed. R. Civ. P.*, to bring a civil rights claim in connection with the defendant's use of employee photographs for advertising purposes, [3] and was seeking to pursue a collective action for the FLSA claims. The defendant disputed, *inter alia*, that Jacobsen could adequately represent employees in all three positions or that a class should be certified. In order to determine the class certification issues as expeditiously as possible, discovery was bifurcated. Phase one was limited to discovery of Jacobsen's individual claims and whether he could serve as an adequate class representative. Depending on what was revealed by the initial discovery, the parties would then turn [*4] to phase two, which would center on the claims of other similarly situated Stop & Shop employees. The rulings issued at the Conference were memorialized in a Scheduling Order dated September 23 (the "Order").

> 3   Jacobsen has since abandoned the civil rights claim.

Immediately following the Conference, Jacobsen served Stop & Shop with initial discovery demands, which included a request for the names and addresses of employees in food departments as well as non-food departments. Jacobsen had never worked in Stop & Shop's food department. Stop & Shop objected to Jacobsen's request as exceeding the scope of initial discovery as defined in the Order. Over the next several months, the parties discussed with each other their respective positions on this and other discovery disputes. Through a letter of December 10, Jacobsen submitted a joint request for an extension of the discovery period. On December 17, in response to a letter request by Stop & Shop, the Court held a telephone conference in order to resolve the discovery [*5] disputes. At that conference, the Court reaffirmed the Order, ruling that the first phase of discovery was limited to Jacobsen's claims and that Stop & Shop was not required at that time to disclose the personal information of other potential plaintiffs.

In advance of a January 31, 2003 conference, plaintiff's counsel wrote to advise the Court of its belief that discovery had established that Jacobsen was an adequate representative for all three job positions in the GM Department, and that notice of the action be provided to all class members. As of the January 31 conference, Jacobsen was still pursuing a class action on the civil rights claim as well as the FLSA collective action. At the conference, the certification motion was scheduled to be filed on February 28.

On April 11, Jacobsen's motion to certify a collective action pursuant to the FLSA was fully briefed. Through an Opinion of May 14, the Court authorized a Notice of Pendency ("the Notice") to allow potential class members to "opt-in" to the class. [4] *See Jacobsen, 2004 U.S. Dist. LEXIS 7988, 2003 WL 21136308, at \*1.* On June 13, Jacobsen mailed the Court-approved Notice to 739 putative class members. Pursuant to the Notice, Stop [*6] & Shop employees who had worked as managers in the GM Department at anytime after July 18, 1999 were permitted to join the collective action by filing a consent with the Clerk of Court before August 15, 2003 (the "optin period"). On August 7, Jacobsen's motion to extend the opt-in period was denied. As of August 15, 199 individuals had opted into the action.

> 4   Unlike the opt-out provision of class actions filed pursuant to *Fed. R. Civ. P. 23(b)(3)*, the FLSA requires plaintiffs affirmatively to opt-in to a collective action. *29 U.S.C. § 216(b).*

In May 2004, the parties reached a settlement with respect to the claims of the GM Manager Trainees and GM Reserve Managers. The only claims that remain active in this lawsuit are those of the GM Managers, 110 of whom have filed a consent to join this action. A trial of the claims of the GM Managers is scheduled for September 2004.

The parties agree that, [HN1] under the FLSA, the statute of limitations with respect [*7] to an individual's claim is not tolled until he or she files a written consent to join the collective action. Stop & Shop asserts that the claims of twelve GM Manager plaintiffs are thus wholly barred by the statute of limitations. None of the twelve plaintiffs worked as a GM Manager at any time during the three years [5] preceding the date on which he or she filed a consent to join this collective action.

> 5   Stop & Shop assumes for the purposes of this motion that a three-year statute of limitations applies to collective actions brought under the FLSA. A suit under the FLSA must be commenced within two years after the cause of action has accrued, unless a plaintiff can show that a defendant's violation of the Act was willful,

in which case a three-year state of limitation applies. *29 U.S.C. § 255.*

Jacobsen contends that the statute of limitations should be equitably tolled, or that Stop & Shop should be equitably estopped from asserting a statute of limitations defense. According to Jacobsen, [*8] equitable relief is appropriate in this action because (1) Stop & Shop's classification of its GM Managers as exempt from the FLSA rendered the plaintiffs unaware of their right to overtime compensation and to participate in this lawsuit; (2) Stop & Shop delayed identifying all the potential plaintiffs in response to Jacobsen's initial discovery demands, thereby delaying the filing of consents by nine to ten months; and (3) Stop & Shop failed to raise such a defense "at the time the Court and counsel diligently worked towards preparing a clear and concise Notice" to be sent to potential class members.

*Discussion*

[HN2] Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rule 56(c), Fed. R. Civ. P.* [HN3] The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination the court must view all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986);* [*9] *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).* When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" of the movant's pleadings. *Rule 56(e), Fed. R. Civ. P.; accord Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).*

[HN4] Where the parties' legal claims do not share common issues of fact with the equitable claims or defenses, the court decides the equitable claims. *Pauling v. Secretary of Dept. of Interior, 71 F. Supp. 2d 231, 233 (S.D.N.Y. 1999)* (collecting cases). Here, the factual disputes relate only to whether certain equitable doctrines should toll the statute of limitations, and thus, will be decided by the Court.

A. *Equitable Tolling*

[HN5] "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir. 1996).* [*10] The doctrine only should be applied, however, in "rare

and exceptional circumstances in which a party is prevented in some *extraordinary way* from exercising his rights." *Zerilli-Edelglass v. New York City Transit Authority, 333 F.3d 74, 80 (2d Cir. 2003)* (citation omitted) (emphasis supplied). Equitable tolling is generally considered appropriate in situations where the complainant has "*actively pursued his judicial remedies by filing a defective pleading* during the statutory period, or where the complainant has been *induced or tricked* by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 112 L. Ed. 2d 435, 111 S. Ct. 453 (1990)* (emphasis supplied). *See also Dodds v. Cigna Sec., 12 F.3d 346, 350 (2d Cir. 1993).*

> [HN6] When determining whether equitable tolling is applicable, a court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.

*Zerilli-Edelglass, 333 F.3d at 80-81* [*11] (citation omitted).

Jacobsen has not shown that the twelve plaintiffs acted with reasonable diligence in seeking to litigate their FLSA claims within the three years following the conclusion of their employment as GM Managers. For example, Jacobsen does not argue that the plaintiffs filed timely but defective claims or consents to join this lawsuit. Jacobsen also cannot point to any trickery or affirmative deception, or to any "extraordinary" behavior, on the part of Stop & Shop that impeded the plaintiffs' ability to file timely consents.

Jacobsen points out that Stop & Shop classified GM Managers as "exempt" under the FLSA. He complains that the erroneous classification concealed from the plaintiffs their right to join this lawsuit. [HN7] Classifying a job as exempt from the FLSA's overtime pay requirements is not "extraordinary" conduct such that the doctrine of equitable tolling should apply. [*12] To hold that "a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime." *Patraker v. Council on the Env't, 2003 U.S. Dist. LEXIS 20519, No. 02 Civ. 7382 (LAK), 2003 WL 22703522, *2 (S.D.N.Y. Nov. 17, 2003).*

Jacobsen also argues that Stop & Shop did not immediately identify all the potential plaintiffs in response to Jacobsen's initial discovery demands, thereby delaying the filing of the plaintiffs' consent forms. According to Jacobsen, had Stop & Shop supplied the names and addresses of all potential plaintiffs at the time Jacobsen served his initial discovery demand on September 20, 2002, the consent forms would have been filed nine to ten months earlier. Jacobsen contends that if the statute of limitations ran from October 20, the day the response to this demand was due, seven of the twelve barred employees could participate in this litigation.

Jacobsen has not shown that Stop & Shop engaged in any "extraordinary" behavior or any trickery with respect to its obligation to provide the names of potential class members. At the time Jacobsen served Stop & Shop with this discovery demand, Jacobsen was pursuing a broader range of claims than he ultimately chose to press, and the focus of discovery was to determine as quickly as possible the dimensions of the class he could appropriately represent. In these circumstances, it was not feasible to mail a Notice [*13] of Pendency before a class determination was made, and Jacobsen never suggested otherwise. Stop & Shop supplied Jacobsen with the names and addresses of potential class managers shortly following certification of the class on May 14, 2003, and Jacobsen mailed the Notice to potential class members less than one month later. Jacobsen does not dispute that Stop & Shop has complied with court orders at every stage of this litigation.

## B. *Equitable Estoppel*

The doctrine of equitable estoppel also does not apply to extend the statute of limitations in this case. [HN8] The doctrine of equitable estoppel can be raised only "where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance on the former's words or conduct." *Marvel Characters, Inc. v. Simon, 310 F.3d 280, 292 (2d Cir. 2002)* (citation omitted). [HN9] Under federal law, applicable here because Jacobsen's claim is brought under a federal statute, "a party can be estopped from pursuing a claim where: (1) the party makes a misrepresentation of fact to another party with reason to believe that the other party will rely on it; (2) the other party relies [*14] on the misrepresentation to his detriment."*Id.*

Jacobsen cannot point to any misrepresentation by Stop & Shop regarding its reliance on a statute of limitations defense. Stop & Shop raised the defense in its initial Answer and in its Answer to the Amended Complaint. Jacobsen asserts that Stop & Shop should have reminded him at the time that the parties were preparing the Notice that it would be relying on a statute of limitations defense. Since only a few weeks had passed between the certification of the class and the

Case 1:08-cv-04530-BSJ-MHD    Document 26-6    Filed 08/11/2008    Page 24 of 24

Page 6
2004 U.S. Dist. LEXIS 17031, *

finalization of the Notice, it is difficult to perceive how the plaintiffs were prejudiced. In any event, at no time did Stop & Shop make a misrepresentation regarding its intention to assert a statute of limitation defense as to specific plaintiffs once individual employment circumstances were established.

Jacobsen suggests that the Notice was misleading when it advised its readers of their "right to join" the lawsuit without a discussion of the statute of limitations defense, and lays responsibility for this defect at the defendant's feet. The Notice was not misleading. Among other things, it advised its readers that:

> The purpose of this Notice is to advise [*15] you of the pendency of this lawsuit and of certain rights you *may* have with respect to this lawsuit. This Notice is not an expression by the Court of any opinion as to the merits of any claims or *any defenses* asserted by any party to this lawsuit.

(Emphasis supplied.)

In sum, Jacobsen has not shown that Stop & Shop affirmatively deceived its employees with respect to this lawsuit, used "extraordinary" means to prevent its employees from timely filing their consent forms, or misrepresented its intent to pursue a statute of limitations defense. Accordingly, equitable principles do not operate to toll the statute of limitations in this action.

*Conclusion*

For the reasons stated above, the defendant's motion for partial summary judgment is granted. For purposes of this action, the statute of limitations with respect to an individual's claim continues to run until the individual filed with the Clerk of Court a written consent to join the FLSA collective action. Twelve plaintiffs are dismissed from this action on the ground that their claims are wholly barred by the statute of limitations: Ida Bryan, Cheri Cardinal, William Chin, Michael Collins, Jennifer Crabb, [*16] Jacqueline Kelly, Christopher Kerr, Mathew Lyon, Jacob Miller, Robert Paulson, Nancy Taylor, and Sanford Weindruch.

SO ORDERED:

Dated: New York, New York

August 27, 2004

DENISE COTE

United States District Judge

**12**

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2006 WL 278154 (S.D.N.Y.)
**2006 WL 278154 (S.D.N.Y.)**

▷Morales v. Plantworks, Inc.
S.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
José MORALES, Efren Morales, and Felix Pacheco,
and on behalf of themselves and all others similarly
situated, Plaintiffs,
v.
PLANTWORKS, INC., Neil Mendeloff, and Verna
Mendeloff, Defendants.
No. 05 Civ. 2349(DC).

Feb. 2, 2006.

Michael Faillace & Associates, P.C., By: Michael
Faillace, New York, New York, for Plaintiffs.
Goldberg and Weinberger LLP, By: Stuart
Weinberger, New York, New York, for Defendants.

*MEMORANDUM DECISION*

CHIN, J.
**\*1** Plaintiffs José Morales, Efren Morales, and Felix
Pacheco were employed as landscapers by defendant
Plantworks, Inc. which is owned and operated by
defendants Neil Mendeloff and Verna Mendeloff.
Plaintiffs bring this action pursuant to the Fair Labor
Standards Act (the "FLSA"), the New York Labor
Law, and the "spread of hours" wage order of the
New York Commission of Labor. Plaintiffs contend
that defendants maintained a policy and practice of
requiring plaintiffs to work more than forty hours per
week without paying them minimum wage and
overtime compensation in violation of state and
federal labor laws. Plaintiffs also seek to recover
damages against defendants for discrimination and
retaliation under Section 1981 of the Civil Rights Act
of 1866, 42 U.S.C. § 1981, the New York State
Executive Law § 290*et seq.,* the FLSA, 29 U.S.C. §
201*et seq.,* and New York Labor Law § 215.

Plaintiffs move for an order (1) permitting plaintiffs
to proceed as a collective action with respect to their
FLSA claims; (2) compelling defendants to furnish
the names and last known addresses of all employees
of Plantworks since September 2002; (3) authorizing
plaintiffs to send a notice and "opt-in" form to all

prospective members of the collective action; and (4)
compelling Plantworks to post the Court-approved
"opt-in" notice in conspicuous locations in its offices.
The motion is denied in part and granted in part, as
set forth below.

*DISCUSSION*

The FLSA permits employees to maintain an action
"for and in behalf of ... themselves and other
employees similarly situated."29 U.S.C. § 216(b).
The named plaintiffs must be "similarly situated" to
the proposed members of the class, and proposed
class members must "opt in" and consent in writing
to being a party to the action. *Id.*

In collective actions, courts in this circuit frequently
follow a two-stage certification process. *Masson v.
Ecolab, Inc.,* No. 04 Cv. 4488(MBM), 2005 WL
2000133, at \*13 (S.D.N.Y. Aug. 17, 2005);
*Gjurovich v. Emmanuel's Marketplace, Inc.,* 282
F.Supp.2d 91, 96 (S.D.N.Y.2003); *Rodolico v. Unisys
Corp.,* 199 F.R.D. 468, 480 (E.D.N.Y.2001) (class
certification in ADEA case); *see also* Charles Alan
Wright, Arthur R. Miller, and Mary Kay Kane, 7B
*Federal Practice and Procedure: Civil 3d* § 1807, at
487-53 (2005) (discussing two stages of certification
process) ("Wright, Miller & Kane"). At the first
stage, the court examines the pleadings and affidavits
to determine whether the named plaintiffs and
putative class members are similarly situated.
*Masson,* 2005 WL 2000133, at \*13. If the court finds
that they are, it conditionally certifies the class and
permits notice to be sent to putative class
members.*Id.;* Wright, Miller, & Kane, 7B *Federal
Practice and Procedure* § 1807, at 492-93. At the
second stage, the employer can move to decertify the
class if discovery reveals that the claimants are not
similarly situated. *Masson,* 2005 WL 2000133, at
\*14.

**\*2** In collective actions, district courts have "broad
discretion to grant certification, to allow discovery,
and to regulate notice."Wright, Miller, & Kane, 7B
*Federal Practice and Procedure* § 1807, at 486.
See*Hoffman v. Sbarro, Inc.,* 982 F.Supp. 249, 261
(S.D.N.Y.1997) ("It is well settled that district courts
have the discretionary power to authorize the sending

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2006 WL 278154 (S.D.N.Y.)
**2006 WL 278154 (S.D.N.Y.)**

of ['opt-in'] notice[s] to potential class members."). Thus, at this early stage in the litigation, the threshold question for the Court is whether circumstances exist to warrant the exercise of this discretion or, in other words, whether plaintiffs have demonstrated that the potential class members are "similarly situated" to them. *Id.*

The FLSA does not define "similarly situated" nor does it set out standards for determining whether the requirement has been met. *See id.* In this Circuit, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffman,* 982 F.Supp. at 261 (citing cases). *See also Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995) ("[P]laintiffs need merely provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'") (quoting *Schwed v. General Electric Co.,* 159 F.R.D. 373, 376 (N.D.N.Y.1995)). The leniency of this requirement is consistent with the broad remedial purpose of the FLSA. *See Hoffman,* 982 F.Supp. at 262 (citing cases discussing broad remedial purpose of FLSA).

In this case, plaintiffs have not met their burden. In support of their motion, plaintiffs submitted an affidavit of their attorney, to which were attached the following exhibits: (1) plaintiffs' First Amended Complaint; (2) a proposed "opt in" form; (3) a copy of the settlement form and general release issued to plaintiff Pacheco by defendants; (4) copies of four payroll check stubs for plaintiff José Morales; (5) copies of two payroll stubs for plaintiff Efren Morales; and (6) copies of two payroll stubs for plaintiff Felix Pacheco. (Faillace Aff. Ex. A-F). The payroll stubs support plaintiffs' claim that they were paid the regular rate for overtime. (Faillace Aff. Ex. D-F). The affidavit and exhibits, however, contain no reference to any Plantworks employee other than plaintiffs, and they make no allegations of a common policy or plan to deny plaintiffs overtime. The only additional support for plaintiffs' claim that they are similarly situated to other Plantworks' employees comes from their conclusory allegation in the amended complaint that "[t]here are over 20 current and former employees that are similarly situated to Plaintiffs and have been denied minimum wage and overtime compensation while working for

Defendants. Plaintiffs are representative of these other workers and are acting on behalf of their interests as well as their own interests in bringing this action."(Am.Compl.¶ 33).

**\*3** Though the first stage of class certification only requires a "modest factual showing," it must be sufficient to demonstrate that plaintiffs and potential class members were victims of a common scheme or plan that violated the law. *See Hoffman,* 982 F.Supp. at 261; *Levinson v. Primedia Inc.,* 02 Cv. 2222(CBM), 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) (finding that plaintiff failed to meet "modest burden"). In making this showing, "[c]onclusory allegations are not enough."Wright, Miller, & Kane, 7B *Federal Practice and Procedure* § 1807, at 490-91. Here, plaintiffs have offered only a conclusory allegation in their complaint; they have offered nothing of evidentiary value. Because plaintiffs have failed to meet this minimal requirement, their motion for class certification is denied. In light of the remedial purpose of the FLSA and the Court's broad discretionary power, plaintiffs' motion for the names and addresses of Plantworks employees is granted, but only to the extent that defendants must produce the names and last known addresses of all individuals employed by Plantworks since 2002 in non-management positions with whom they have not entered settlement agreements. *See Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 168-70 (1989) (upholding district judge's order that employer produce names and addresses of discharged employees); Wright, Miller, & Kane, 7B *Federal Practice and Procedure* § 1807, at 495-96 ("If conditional certification is denied, the court may allow discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a collective to warrant conditional certification and the notice to opt in.")

*CONCLUSION*

Based on the record before the Court, plaintiffs' motion for certification and for authorization to send a notice and 'opt-in' form is denied. Plaintiffs may renew the motion should discovery reveal additional facts to support the application. Plaintiffs' motion for the names and addresses is granted to the limited extent set forth above.

SO ORDERED.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2006 WL 278154 (S.D.N.Y.)
**2006 WL 278154 (S.D.N.Y.)**

S.D.N.Y.,2006.
Morales v. Plantworks, Inc.
Not Reported in F.Supp.2d, 2006 WL 278154
(S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**13**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 945139 (E.D.Pa.)
**2004 WL 945139 (E.D.Pa.)**

▷Lawrence v. City of Philadelphia, Pennsylvania
E.D.Pa.,2004.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Richard LAWRENCE, et al., Plaintiff,
v.
THE CITY OF PHILADELPHIA,
PENNSYLVANIA, Defendant
**No. 03-CV-4009.**

April 29, 2004.

Robert A. Jones, Chamberlain Kaufman and Jones, Albany, NY, Solomon Z. Krevsky, Solomon Z. Krevsky, LLC, Harrisburg, PA, for Plaintiffs.
George A. Voegele, Jr., Mark J. Foley, Victoria L. Zellers, Klett Rooney Lieber & Schorling, Philadelphia, PA, for Defendant.

*MEMORANDUM*

GREEN, J.
*1 Presently before the Court is Defendant's Motion for Misjoinder of Claims and Plaintiffs' Opposition thereto. For the reasons set forth below, Defendant's motion will be granted.

Background

Plaintiffs filed a Complaint against Defendant City of Philadelphia ("City"), alleging that Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 etseq.. ("FLSA"), based on an alleged failure to pay Plaintiffs overtime wages for scheduled hours worked in excess of forty (40) in a single workweek. Plaintiffs also claim that Defendant's failure to pay Plaintiffs for unscheduled "off-the-clock" time, spent replenishing supplies before or after compensated hours, violates the overtime wage requirement under the FLSA. Plaintiffs seek to maintain both claims in a collective action against Defendant for FLSA overtime wage violations, as authorized by FLSA § 216(b). Plaintiffs are all current or former employees of Defendant who worked as Fire Service Paramedics. Subsequent to the filing of the Complaint, Plaintiffs filed numerous opt-in consent forms for Fire Service Paramedics to become

plaintiffs in this action.

Defendant's Motion for Misjoinder of Claims

Defendant presently moves for misjoinder of Plaintiff's off-the-clock claims pursuant to Federal Rule of Civil Procedure 21, and in the alternative for dismissal of the collective action pursuant to 29 U.S.C. § 216(b). Defendant argues that, unlike the claim based on overtime compensation for regularly scheduled hours, the "off-the-clock" claim is based on allegations of hours worked beyond a regular schedule, requiring an individual case-by-case analysis for each Plaintiff. In order to meet the FLSA § 216(b) collective action requirement for plaintiffs to be similarly situated to each other, Defendant argues that this Court should look at variations in employment activities, oversight and instruction, whether plaintiffs worked in different geographic locations, and discretionary powers given to plaintiffs.

On the other hand, Plaintiffs contend that the "similarly situated" requirement under FLSA § 216(b) is unrelated to the requirements for class action plaintiffs pursuant to Fed.R.Civ.P. 23, and is less strict than the requirements for joinder under Fed.R .Civ.P. 20(a). Urging this Court to adopt a lenient standard for the "similarly situated" requirement, Plaintiffs rely upon *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43, 51 (3rd Cir.1989), and argue that they are similarly situated for FLSA § 216(b) purposes because although they work in different locations: (1) all members of the collective action work(ed) in the Fire Department's Emergency Medical Services Unit; (2) their claims all arise from the same pattern, plan or practice of Defendant; and, (3) they all seek the same form of relief-unpaid overtime compensation, liquidated damages, costs and attorneys' fees.

Discussion

Section 216(b) of the FLSA reads, in pertinent part, "[a]n action to recover ... may be maintained against any employer (including a public agency) ... by any one or more employees for and in behalf of himself

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 2
Not Reported in F.Supp.2d, 2004 WL 945139 (E.D.Pa.)
**2004 WL 945139 (E.D.Pa.)**

or themselves and other employees similarly situated."29 U.S.C. § 216(b). Under Fed.R.Civ.P. 21, however, "[a]ny claim against a party may be severed and proceeded with separately."Fed.R.Civ.P. 21. In *Lockhart v. Westinghouse Credit Corp.,* 879 F.2d 43 (3rd Cir.1989), *overruled on other grounds,* the Third Circuit applied a three-prong test for determining whether plaintiffs are similarly situated under FLSA § 216(b): (1) whether they all worked in the same corporate department, division and location; (2) whether they all advanced similar claims; and (3) whether they sought substantially the same form of relief. *See,Lockhart,* 879 F.2d at 51 (citing *Plummer v. General Electric Co.,* 93 F.R.D. 311, 312 (E.D.Pa.1981)). As a result, Plaintiffs pursuing a collective action under FLSA § 216(b) only need to show that their positions are "similar, not identical" to each other.*Sperling v. Hoffman-LaRoche,* 118 F.R.D. 392, 407 (D.N.J.1988), *aff'd in part and appeal dismissed in part,*862 F.2d 439 (3rd Cir.1988), *aff'd.Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

**\*2** In the instant matter, all current and prospective plaintiffs are or were employed as Fire Service Paramedics within the City Fire Department's Emergency Medical Services Unit. According to Defendant's Personnel Department, each of the current Plaintiffs, and potential opt-in plaintiffs, is classified as a "Fire Service Paramedic" and has the same general job description. However, Plaintiffs work in different unit types, different platoons, different locations, and have different supervisors. Unlike the Plaintiffs' first claim, alleging failure to pay overtime wages for scheduled hours worked in excess of 40 in a single workweek, the "off-the-clock" claim does not involve regularly scheduled time that is worked by all members of the class. Rather, each of the Plaintiffs may potentially claim that on any given day he or she arrived early or departed outside of their regularly scheduled hours and were not compensated for such. The circumstances of those individual claims potentially vary too widely to conclude that in regard to their "off-the-clock" claim, the Plaintiffs are similarly situated. The questions of fact will likely differ for each Plaintiff and will be unduly burdensome to both Defendant and to the Court in managing as a collective claim. Consequently, Plaintiffs' "off-the-clock" claim for unpaid work performed outside of their regularly scheduled hours will be severed from

the collective claim for unpaid overtime for regularly scheduled hours. Plaintiffs' claims for "off-the-clock" unpaid work, will be dismissed without prejudice to each plaintiff filing said claim individually. The lead Plaintiff in this matter, Richard Lawrence, will be able to proceed in this civil action with his individual "off-the-clock" claim.

With regard to Plaintiffs' claims for unpaid overtime for regularly scheduled hours in excess of forty in a single work week, the court finds that the Plaintiffs are similarly situated for purposes of maintaining a collective action pursuant to FLSA § 216(b). Plaintiffs allege that they should be paid overtime for all weeks in which their regularly scheduled working hours exceed forty per week. This claim is the same for each Plaintiff. In its motion for misjoinder, Defendant does not assert that the Plaintiffs are not similarly situated for purposes of this claim. The Court, therefore, will permit Plaintiffs to maintain a collective active regarding their regularly scheduled hours claim. Defendant's alternative motion for dismissal of the entire action under FLSA § 216(b) will be denied.

Finally, in *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the Supreme Court clearly stated that collective actions maintained under FLSA § 216(b) authorize a district court to issue court-approved notice to additional potential plaintiffs at its discretion. This Court concludes that court-supervised notice is appropriate in the interest of promoting judicial economy and an efficient resolution to the collective action claim in this case.

**\*3** An appropriate order follows.

### ORDER

AND NOW, this day of April, 2004, IT IS HEREBY ORDERED that, Defendant City of Philadelphia's Motion for Misjoinder of Claims is GRANTED, and Defendant City of Philadelphia's alternative Motion to Dismiss the entire collective action is DENIED. With the exception of the lead Plaintiff in this action, Richard Lawrence, all other Plaintiffs' claims for wages for hours for which Plaintiffs were allegedly not paid for either reporting early or departing after their regularly scheduled hours are severed from this action and dismissed without prejudice to each

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 945139 (E.D.Pa.)
**2004 WL 945139 (E.D.Pa.)**

Plaintiff filing a separate action for said claim. If any said action is filed, it is to be randomly assigned.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Approval of Notice to Prospective Additional Plaintiffs and for Discovery is GRANTED to the extent that it applies only to the collective action claim permitted as a result of this Order. The form of Notice as set forth in Exhibit No. 6 to the Declaration of Robert A. Jones shall be revised to remove all references to the claims dismissed as a result of this order. Defendant shall provide to Plaintiffs' counsel, within fifteen (45) days of this Order, the last known names and addresses of all such similarly situated current and former employees who have worked as Fire Service Paramedics at any time from July 7, 2000 to the present date.

E.D.Pa.,2004.
Lawrence v. City of Philadelphia, Pennsylvania
Not Reported in F.Supp.2d, 2004 WL 945139 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**14**

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2003 WL 22533428 (S.D.N.Y.)
**2003 WL 22533428 (S.D.N.Y.)**

▷Levinson v. Primedia Inc.
S.D.N.Y.,2003.
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Deborah LEVINSON et al., Plaintiffs,
v.
PRIMEDIA INC., About.com, Inc., Scott Kurnit, and
"John Does", name fictitious, actual name and
number of such persons unknown, Defendants.
**No. 02 Civ.2222 (CBM).**

Nov. 6, 2003.

In their action under Fair Labor Standards Act
(FLSA) and New York state law, current and former
web page "guides" moved to circulate a "Notice of
Pendency and Consent to Join" to other such
employees of defendant corporations. The District
Court, <u>Motley</u>, J., held that notice would not be given
to other potential class members under FLSA "opt
in" provision, absent demonstration that putative
members of collective action were similarly situated.

Motion denied.

West Headnotes

**[1] Labor and Employment 231H ☜2374**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime
Pay
            231HXIII(B)6 Actions
                231Hk2373 Actions on Behalf of
Others in General
                    231Hk2374 k. In General. <u>Most
Cited Cases</u>
        (Formerly 232Ak1492.1 Labor Relations)
District court has power to order that notice be given
to other potential members of plaintiff class under
FLSA "opt in" provision. Fair Labor Standards Act
of 1938, § 16(d), <u>29 U.S.C.A. § 216(d)</u>.

**[2] Labor and Employment 231H ☜2375**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime
Pay
            231HXIII(B)6 Actions
                231Hk2373 Actions on Behalf of
Others in General
                    231Hk2375 k. Employees Similarly
Situated. <u>Most Cited Cases</u>
        (Formerly 232Ak1492.1 Labor Relations)
Strict requirements of Federal Rules of Civil
Procedure governing class actions do not apply to
FLSA collective actions, and thus no showing of
numerosity, typicality, commonality and
representativeness need be made; rather, plaintiffs
must meet only threshold requirement of
demonstrating that potential class members are
similarly situated. <u>Fed.Rules Civ.Proc. Rule 23(a), 28
U.S.C.A.</u>; Fair Labor Standards Act of 1938, § 16(d),
<u>29 U.S.C.A. § 216(d)</u>.

**[3] Labor and Employment 231H ☜2375**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime
Pay
            231HXIII(B)6 Actions
                231Hk2373 Actions on Behalf of
Others in General
                    231Hk2375 k. Employees Similarly
Situated. <u>Most Cited Cases</u>
        (Formerly 232Ak1493 Labor Relations)
FLSA plaintiffs can meet burden of demonstrating
that potential class members are "similarly situated"
by making modest factual showing sufficient to
demonstrate that they and potential plaintiffs together
were victims of common policy or plan that violated
the law. Fair Labor Standards Act of 1938, § 16(d),
<u>29 U.S.C.A. § 216(d)</u>.

**[4] Labor and Employment 231H ☜2375**

231H Labor and Employment
    231HXIII Wages and Hours
        231HXIII(B) Minimum Wages and Overtime
Pay
            231HXIII(B)6 Actions

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 22533428 (S.D.N.Y.)
**2003 WL 22533428 (S.D.N.Y.)**

231Hk2373 Actions on Behalf of Others in General

231Hk2375 k. Employees Similarly Situated. Most Cited Cases

(Formerly 232Ak1493 Labor Relations)

Current and former web page "guides" named as plaintiffs in FLSA action failed to demonstrate that putative members of collective action were similarly situated and thus would not be permitted under FLSA "opt in" provision to circulate to other current and former employees of defendant corporations a "Notice of Pendency and Consent to Join" similarly situated persons; while plaintiffs provided factual assertions in support of claim that they were in employee-employer relationship with defendants, rather than working as independent contractors, and that they were deprived of minimum wage and overtime rates, they failed to make sufficient showing that same was true for other potential plaintiffs. Fair Labor Standards Act of 1938, § 16(d), 29 U.S.C.A. § 216(d).

*MEMORANDUM OPINION AND ORDER*

MOTLEY, J.

**\*1** This is an action brought pursuant to the Fair Labor Standards Act ("FLSA") and New York state law, by former and present employees of defendant corporations. Plaintiffs allege, *inter alia,* that they and other persons who worked for defendants as "guides" on About.com web pages were uniformly paid less than the minimum wage and denied overtime pay for work which they performed in excess of 40 hours per week, in violation of 29 U.S.C. § 206 and 29 U.S.C. § 207. By the instant motion, they seek permission to circulate to other former and present employees of defendant corporations a Notice of Pendency and Consent to Join similarly situated persons pursuant to Section 216(b) of the FLSA. Defendants oppose the motion. The motion is denied.

DISCUSSION

Section 216(b) of the FLSA provides in pertinent part:

An action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee

shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. 29 U.S.C. § 216(b).

[1][2][3] The Second Circuit has held that a district court has the power to order that notice be given to other potential members of a plaintiff class under this "opt in" provision. *See* Braunstein v. Eastern Photographic Labs., Inc., 600 F.2d 335 (2d Cir.1978). The strict requirements of Rule 23 of the Federal Rules of Civil Procedure do not apply to FLSA "collective actions," and thus no showing of numerosity, typicality, commonality and representativeness need be made. Rather, plaintiffs must meet only one threshold requirement: they must demonstrate that potential class members are "similarly situated." *See* Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y.1997). Neither the FLSA nor its implementing regulations define the term "similarly situated." *Id.* However, plaintiffs can meet the burden of demonstrating that they are similarly situated by "making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.*

[4] Plaintiffs have failed to meet their burden. While the factual showing that they must make at this stage is "modest," *Id.,* it must be "sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* Central to plaintiffs' claim are the allegations that defendants were "employers" under the terms of the FLSA (rather than "independent contractors," as stated on the face of the contracts submitted to the court), and that in violation of the FLSA they denied plaintiffs a minimum wage and overtime pay. While plaintiffs have provided factual assertions in support of the claim that *they* were in an employee-employer relationship with defendants, and that *they* were deprived of a minimum wage and overtime rates, they have failed to make a sufficient showing that the same was true for other potential plaintiffs.

**\*2** With regard to the assertion that defendants acted as employers to plaintiffs and potential plaintiffs, plaintiffs allege that defendants have the "company-wide" policy of "[m]isclassifying guides as independent contractors exempt from the overtime

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 22533428 (S.D.N.Y.)
**2003 WL 22533428 (S.D.N.Y.)**

requirements of the FLSA," but they fail to support this legal conclusion with a factual showing that extends beyond their own circumstances. With regard to the alleged failure to provide a minimum wage or overtime pay, plaintiffs' documentation is similarly limited to their own compensation. While the contracts submitted to the court, and their attached compensation schedules, do appear to be substantially similar, a demonstration of the similarity of circumstances of the existing plaintiffs is, of course, insufficient. Even if the assertion, found in each of plaintiffs' affidavits submitted to the court, that "All guides worked under the same contracts," were true, this would not constitute a showing that defendants' compensation structure violated the law. The compensation schedules may lack a provision for overtime rates or a guaranteed minimum wage, but it is only when this evidence is combined with evidence such as that provided in connection with the *existing* plaintiffs, of hourly rates below minimum wage, or overtime hours without overtime pay, that the necessary showing becomes possible. Plaintiffs' attempts to broaden their allegations beyond the existing plaintiffs are insufficiently specific to make such a showing. *See, e.g.,* Lahey Aff. § 20 ("For many guides, and perhaps most guides, myself included, the monthly compensation that was received was often less than the minimum wage of $5.15 an hour."); Pls.' Mem. Supp. Mot. at 10 (alleging that guides were required "to complete certain work quotas and to undertake numerous tasks, that often required working in excess of 40 hours per week, without accounting for this time as overtime pay.").

## CONCLUSION

Based on the record presently before the court, plaintiffs have failed to demonstrate that the putative members of the collective action are similarly situated. Accordingly, plaintiffs' motion is denied without prejudice. Should further discovery disclose additional facts to support plaintiffs' application, they may renew it upon a proper showing.

SO ORDERED.

S.D.N.Y.,2003.
Levinson v. Primedia Inc.
Not Reported in F.Supp.2d, 2003 WL 22533428 (S.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**15**

LEXSEE 2004 U.S. DIST. LEXIS 6447


Caution
As of: Aug 07, 2008

**THOMAS PFOHL, et al, Plaintiffs, vs FARMERS INSURANCE GROUP, Defendant.**

**CASE NO. CV 03-3080 DT (RCx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2004 U.S. Dist. LEXIS 6447*

**March 1, 2004, Decided**
**March 1, 2004, Filed; March 5, 2004, Docketed**

**PRIOR HISTORY:** *Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6446 (C.D. Cal., Mar. 1, 2004).*

**DISPOSITION:**    [*1]    Amended motion for certification of collective action denied. Case allowed to proceed on individual claims of Plaintiff Pfohl only.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee, who worked on a temporary basis as a full-time adjuster, sued defendant insurance company for overtime wages for hours worked in excess of 40 per week. He brought suit on behalf of himself and all other similarly situated employees. Before the court was plaintiff's motion for certification of a collective action pursuant to *29 U.S.C.S. § 216(b)* of the Fair Labor Standards Act.

**OVERVIEW:** Plaintiff could not show that defendant, along with the temporary agency, was his "joint employer." Even if he had done so, he did not show that he was similarly situated to others in the proposed collective group consisting of adjusters from other employment agencies with respect to their employment relationship with defendant. On that basis alone, denial of a collective action was warranted. Second, plaintiff did not show that he was similarly situated to the other members with respect to the elements of the administrative exemption. There were diverse individualized factors among the proposed group members. The methods in payment varied, e.g. flat fee,

by the hour, and by salary, while plaintiff was allegedly paid by the hour, and there were differences between plaintiff and each of the proposed members in their actual job duties and the degree to which any one individual exercised independent judgment and discretion in carrying out their varying duties. The exempt or non-exempt status of hundreds of independent contractor adjusters had to be determined on an employee-by-employee basis. That would have been impractical, thereby defeating the purpose of a collective action.

**OUTCOME:** The court denied plaintiff's motion for certification of collective action; the court allowed the case to proceed on plaintiff's individual claims. Counsel for plaintiff was to notify, in writing, all persons who had attempted to file to opt-in to the purported collective action of the decision to deny class certification.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Private Suits*
[HN1] The Fair Labor Standards Act (FLSA) provides an "employee" with a private right of action against his "employer" when that employer fails to pay overtime

Case 1:08-cv-04530-BSJ-MHD    Document 26-7    Filed 08/11/2008    Page 15 of 24

Page 2
2004 U.S. Dist. LEXIS 6447, *

wages, i.e., one and one-half times the regular rate of pay per hour, when the employee works in excess of forty hours per week. *29 U.S.C.S. §§ 203, 207.* An employee is also authorized to bring an action on behalf of similarly situated employees. *29 U.S.C.S. § 216(b).* Such an action is a type of class action, known as a "collective action," for employees who are "similarly situated" to the plaintiffs and who opt-in to the suit by filing a consent in writing with the court. *29 U.S.C.S. § 216(b).* If employees do not opt-in by filing a written consent, they are not bound by the outcome of the collective action and may bring a subsequent private action. A district court may authorize the named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs and may set a deadline for plaintiffs to join the suit by filing consents to sue.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN2] A plaintiff bears the burden of establishing that he and the class he wishes to represent are similarly situated.

*Civil Procedure > Class Actions > Certification*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
[HN3] The majority of courts prefer the ad hoc, two-tiered approach in defining whether an employee is "similarly situated" for purposes of *29 U.S.C.S. § 216(b).* Under this approach, the district court makes two determinations, on an ad hoc, case-by-case basis. The first determination is made based on the pleadings and any affidavits that have been submitted as to whether the class should be certified. Because of the minimal evidence at this stage, this determination is made based on a fairly lenient standard. The second determination is made after discovery is largely complete. There, a court weighs various factors in making a factual determination as to whether the plaintiffs are similarly situated. Such factors include: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appeared to be individual to each plaintiff; and (3) fairness and procedural considerations.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN4] Independent contractors are not covered by the Fair Labor Standards Act; that is, there must be an employer-employee relationship for liability to accrue for alleged unpaid overtime.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN5] Under the Fair Labor Standards Act, "employer" includes: any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization. *29 U.S.C.S. § 203(d).*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN6] Two or more employers may jointly employ someone for the purposes of the Fair Labor Standards Act (FLSA). Joint employers are individually responsible for compliance with the FLSA. *29 C.F.R. § 791.2(a).* Determining whether the two entities may be considered joint employers requires consideration of the total employment situation, but should focus on four primary factors: whether the alleged employer (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of payment; (3) determined the rate and method of payment; and (4) maintained employment records.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > General Overview*
[HN7] Although an employer-employee relationship may exist for liability purposes, the Fair Labor Standards Act exempts bona fide administrative employees from its overtime pay requirements. *29 U.S.C.S. § 213(a)(1).* The administrative exemption is comprised of two parts: (1) whether the employee was paid on an appropriate salary or fee basis; and (2) whether the employee's duties satisfy the "duties test" set forth in the regulations.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > General Overview*
[HN8] To meet the requirements of the administrative exemption, an employee must have received a salary. 29 C.F.R. §§ 541.211-213. In lieu of being paid on a salary basis, an exempt administrative employee may receive his or her compensation on a fee basis. 29 C.F.R. §§ 541.213, 541.313(c). Fee basis compensation is the

2004 U.S. Dist. LEXIS 6447, *

payment of an agreed upon sum for a single job regardless of the time required for its completion. 29 C.F.R. § 541.313(b).

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > General Overview*
[HN9] To meet the administrative exemption, an employee's primary duties must consist of (a) the performance of office work directly related to the general business operations of the employer; and (b) duties that require the exercise of discretion and independent judgment. *29 C.F.R. § 541.2(a)(1).* The federal regulations expressly include claim agents and adjusters as employees who perform duties relating to the administrative operations of a business. 29 C.F.R. § 541.205(c)(5).

*Labor & Employment Law > Discrimination > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > General Overview*
[HN10] The issues of the joint employer test and the administrative exemption tests of the Fair Labor Standards Act require individualized inquiries. Unlike in a discrimination case, the focus cases brought under the Fair Labor Standards Act is not on the employer's action, but instead on the nature of the employee's job duties in the context of the relevant exemption criteria.

*Labor & Employment Law > Discrimination > Age Discrimination > Enforcement*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN11] A collective action under the Age Discrimination in Employment Act incorporates the standards for a collective action under the Fair Labor Standards Act.

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > Overtime & Work Period*
*Labor & Employment Law > Wage & Hour Laws > Remedies > General Overview*
[HN12] Distinct defenses available to a defendant that would apply to disparately situated individuals do not allow for a manageable case.

**COUNSEL:** For Thomas Pfohl, Joe Ferro, Billy Myers, Richard Reed, Charles Erhardt, Monte Cannon, William Keith, Gary C Odem, William F Moore, David Powell, Bruno Plocharczyk, Rick Andrews, Christopher J Hudson, Larry Hall, Raoul Rico, Dowlin Mayfield, Kenneth Ray Haraughty, Chris Macey, Richard Boblitz, Plaintiffs: Derrick Fisher, LEAD ATTORNEY, Derrick Fisher Law Offices, Pasadena, CA.

For Thomas Pfohl, Joe Ferro, Billy Myers, Richard Reed, Charles Erhardt, Monte Cannon, William Keith, Gary C Odem, William F Moore, David Powell, Bruno Plocharczyk, Rick Andrews, Christopher J Hudson, Larry Hall, Raoul Rico, Dowlin Mayfield, Kenneth Ray Haraughty, Chris Macey, Richard Boblitz, Plaintiffs: Joseph E Fieschko, Jr, LEAD ATTORNEY, Joseph E Fieschko Jr & Associates, Pittsburgh, PA.

For Thomas Pfohl, Plaintiff: Stephen C Ball, LEAD ATTORNEY, Stephen C Ball Law Offices, Pasadena, CA.

For Farmers Insurance Group, Defendant: Jessie Ann Kohler, [*2] Lee T Paterson, LEAD ATTORNEYS, Winston & Strawn, Los Angeles, CA.

**JUDGES:** Dickran Tevrizian, Judge, United States District Court.

**OPINION BY:** Dickran Tevrizian

**OPINION**

ORDER **DENYING** PLAINTIFF THOMAS PFOHL'S AMENDED MOTION FOR CERTIFICATION OF COLLECTIVE ACTION UNDER *SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT*I. Background

This action is brought by Plaintiff Thomas Pfohl ("Plaintiff") against Defendant Farmers Insurance Exchange, erroneously sued as Farmers Insurance Group ("Farmers"), for overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 216(b).* Plaintiff brings this action on behalf of himself and all other similarly situated employees who were employed by Farmers as temporary full-time insurance adjusters. Presently before this Court is Plaintiff's Amended Motion for Certification of Collection Action Under *Section 216(b) of the FLSA.*

**A. Factual Summary**

The following facts are alleged in the Complaint:

Plaintiff was employed by Farmers from February 26, 2002 until October 11, 2002. (Complaint, P 8.) He

was paid $ 40.00 per hour, with no minimum salary, worked approximately seventy hours per week and was not [*3] paid at a rate one and a half times his normal rate for hours worked in excess of forty hours per week. (See id.) His duties consisted of working on Farmers' files involving claims submitted to Farmers for property damage and other damages alleged to be caused by the formation of mold in residential and commercial buildings. (See id.)

Plaintiff brings this action as a collective action pursuant to the Fair Labor Standards Act, *29 U.S.C. § 216(b)*. (See id. at P 3.) All Plaintiffs were "employees" of Farmers because they were required to comply with Farmers' instructions about when, where and how they were expected to work. (See id. at P 6.) Plaintiffs have a right of recovery under the FLSA for unpaid overtime wages owed to them for hours worked in excess of forty hours per week in which their compensation was based upon the number of hours they worked each week, but they were not paid an amount equal to one and a half times their normal hourly rate for all hours worked in excess of forty hours per week. (See id. at P 5.)

**B. Procedural Summary**

On January 6, 2003, Plaintiff filed the Complaint in the United States District Court for [*4] the Northern District of California ("Northern District").

On February 3, 2003, Farmers filed its Answer in the Northern District.

On March 10, 2003, Farmers filed a Motion to Transfer Venue in the Northern District.

On April 14, 2003, the Northern District filed an Order of Transfer, transferring this action to the Central District of California. Upon receipt of this action, the action was assigned to this Court.

On August 11, 2003, this Court held a Scheduling Conference and set the following dates: Phase I discovery cutoff on November 28, 2003 and status conference on December 8, 2003.

On September 8, 2003, Plaintiff filed a Motion for Certification of Collective Action Under *Section 216(b) of the FLSA*.

On September 15, 2003, a Consent to Opt In as Class Member was filed.

On September 23, 2003, three Consents to Opt In as Class Member were filed.

On November 23, 2003, Plaintiff filed an Amended Motion for Certification of Collective Action Under *Section 216(b) of the Fair Labor Standards Act*, which is

currently before this Court. [1] The previously set Status Conference was also continued to this date.

> 1  Farmers filed an Opposition to this Motion, and Plaintiff filed a Reply. However, because Plaintiff submitted new evidence and raised new arguments in his Reply, Farmers was permitted to file a Sur-Reply.

[*5] On February 10, 2004, six Consents to Opt In as Class Member were filed.

On February 12, 2004, Plaintiff filed a "Hearing Date on Motion to Amend Complaint In Action At Law March 8, 2004 at 10:00 A.M." [2]

> 2  Plaintiff attempted to file a Motion to Amend Complaint on January 30, 2004; however, a Notice of Document Discrepancy was issued whereby said Motion was ordered not to be filed but instead rejected because written notice of motion was lacking or the timeliness of notice was incorrect and because the proposed order was not a separate document. On February 12, 2004, Plaintiff filed this document entitled "Hearing Date on Motion to Amend Complaint in Action at Law March 8, 2004 at 10:00 A.M," and he lodged a Proposed Order. Apparently, these documents were filed in response to the Notice of Document Discrepancy; however, the Motion to Amend itself was never filed with the Court. As such, the hearing date of March 8, 2004 does not exist because no "Motion to Amend Complaint" has been properly filed with the Court. Unfortunately, it appears that Plaintiff served a Motion to Amend on Fanners, even though such motion was not properly filed, because Farmers filed an opposition to such motion.

[*6] On February 24, 2004, three Consents to Opt In as Class Member were filed.

**II. Discussion**

**A. Standard**

[HN1] The FLSA provides an "employee" with a private right of action against his "employer" when that employer fails to pay overtime wages, i.e., one and one-half times the regular rate of pay per hour, when the employee works in excess of forty hours per week. See *29 U.S.C. §§ 203,207*. An employee is also authorized to bring an action on behalf of similarly situated employees. Id. at *§ 216(b)*; *Doe v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000)*. Such an action is a type of class action, known as a "collective action," for employees who are "similarly situated" to the plaintiffs and who opt-in to the suit by filing a consent in writing

with the court. *29 U.S.C. § 216(b)*. If employees do not optin by filing a written consent, they are not bound by the outcome of the collective action and may bring a subsequent private action. *EEOC v. Pan Am. Work Airways, Inc., 897 F.2d 1499, 1508 n. 11 (9th Cir. 1990)*. A district court may authorize the named plaintiffs in a FLSA [*7] collective action to send notice to all potential plaintiffs and may set a deadline for plaintiffs to join the suit by filing consents to sue. *Does I through XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000)(citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169, 172, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989))*.

### B. Analysis [3]

3    Rulings to the objections asserted by the parties shall be deemed consistent with the analysis set forth herein.

### 1. Plaintiff must show that he is "similarly situated" to the purported collective action group he wishes to represent

Based on the Standard set forth above, at issue here is whether Plaintiff and the proposed collective action group are "similarly situated" for purposes of *Section 216(b)*. [HN2] "A plaintiff bears the burden of establishing that he and the class he wishes to represent are similarly situated." *White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1313 (M.D. Ala. 2002)*. Section 216(b) [*8] does not define "similarly situated," and the Ninth Circuit has not defined it either. The Tenth Circuit has noted that various approaches have been taken in determining whether plaintiffs are "similarly situated." See *Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001)(discussing three possible approaches to the "similarly situated" analysis)*. As another district court in this district observed, of these approaches, [HN3] the majority of courts prefer the *ad hoc,* two-tiered approach. *Wynn v. National Broadcasting Company, Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002)*. Under this approach, the district court makes two determinations, on an *ad hoc,* case-by-case basis. See *id.* The first determination is made based on the pleadings and any affidavits that have been submitted as to whether the class should be certified. See *id.* Because of the minimal evidence at this stage, this determination is made based on a fairly lenient standard. See *id.* The second determination is made after discovery is largely complete. See *id.* There, the court weighs various factors in making a factual determination as to [*9] whether the plaintiffs are similarly situated. See *id.* Such factors include (1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which

appeared to be individual to each plaintiff, and (3) fairness and procedural considerations. *Thiessen, 267 F.3d at 1103.*

In this case, the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action. As such, the Court can proceed to the second determination discussed above and weigh relevant factors to determine whether the plaintiffs are similarly situated.

### 2. The parties' contentions

In his Motion, Plaintiff explains that an inordinate number of "mold claims" were submitted to Farmers by its policyholders during the years 2000 and 2001, and that in order to deal with this dramatic and sudden increase in this type of claim, Farmers contracted with outside personnel companies, including Continental Staffing, Inc. ("Continental"), and outside adjusting companies, including Wardlaw Claims Service, LLP ("Wardlaw"), NCA and Eberls, to hire additional adjusters on a full-time [*10] temporary basis to help Farmers' own adjusters handle this sudden influx of claims. Plaintiff himself was hired through Continental.

Plaintiff defines the class as follows:

> All those individuals who were paid on an hourly basis and who were not paid overtime wages at the rate of one and one-half times their regular rate. They were generally hired in December of 2001 and thereafter. They were hired as temporary full time adjusters through personnel companies (such as Continental) or adjusting companies (such as Wardlaw, NCA or Eberls). They usually worked on mold claim files. They generally worked in the states of Texas or California. They generally worked in (or out of) permanent Farmers offices, under the direction of Farmers supervisors, the Farmers supervisors approved their time cards, and they generally performed the same tasks that permanent Farmers employees performed.

In opposition, Farmers contends that Plaintiff has presented no evidence to support his contention that he is "similarly situated" to the other individuals he seeks to represent. Specifically, it argues that there are three primary issues in which Plaintiff must demonstrate that he is "similarly situated" [*11] to the proposed collective group before a collective action may proceed

in this case: (1) that Farmers was a joint employer; (2) that each of the putative plaintiffs was not paid according to the "salary basis test" or applicable fee-based regulations; and (3) that the putative plaintiffs did not meet the "duties test" of the administrative exemption. It argues that each of these requires a fact-intensive inquiry that, in this case, is not suitable to the collective action proposed by Plaintiff.

This Court examines each of these issues below.

**3. Farmers is not the joint employer of Plaintiff and even if it was, Plaintiff has not shown that he is similarly situated to the other members of the proposed collective action group with respect to each member's employment relationship with Farmers**

[HN4] Independent contractors are not covered by the FLSA; that is, there must be an employer-employee relationship for liability to accrue for alleged unpaid overtime. See *Chao v. A-One Med. Servs., 346 F.3d 908, 917-18 (9th Cir. 2003).*

> [HN5] Under the FLSA, "employer" includes: any person acting directly or indirectly in the interest of an employer in relation to an employee [*12] and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

*29 U.S.C. § 203(d).* Plaintiff admits that Farmers was not his direct employer. Instead, he claims that Farmers was a joint [HN6] employer. Two or more employers may jointly employ someone for the purposes of the FLSA. *Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983).* Joint employers are individually responsible for compliance with the FLSA. *29 C.F.R. § 791.2(a).* Determining whether the two entities may be considered "joint employers" requires consideration of the total employment situation, but should focus on four primary factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette, 704 F.2d at 1470.*

Farmers contends that Plaintiff fails to provide evidence to show that Farmers [*13] was a joint employer of Plaintiff or that Plaintiff is "similarly situated" to the other individuals he seeks to represent with regard to any alleged employment relationship with Farmers. As such, this Court examines the above factors

to determine whether Farmers was a joint employer of Plaintiff and whether Plaintiff is "similarly situated" to the other members of the proposed collective group with respect to the employment relationship with Farmers.

**a. power to hire and fire employees**

Farmers provides evidence that its contracts with insurance adjusting companies to provide independent contractor adjusters, such as with Wardlaw and Pilot Catastrophe Services, Inc., specifically state that the adjusters provided are independent contractors, not employee of Farmers. (Kohler Decl., Exhs. A and B at Article 6.) With respect to Continental, Farmers provides evidence that Continental required its employees to sign an employment agreement specifying that the adjusters were employees of Continental and that they had no rights or claims to employment with the client with which they worked. (See id. at P 4; Exh. C.)

In his Reply, Plaintiff contends that Farmers had the absolute [*14] power to hire and fire him. He relies on the December 20, 2001 engagement letter which specifically provides that Farmers had the option to hire the adjusters permanently at any time. He also claims that he was fired by his Farmers' supervisor. In response, Farmers disputes Plaintiff's interpretation of the evidence and further argues that Plaintiff has not shown that he is similarly situated with regard to adjusters from other companies, or even with adjusters from Continental. This Court agrees with Farmers.

The letter relied upon by Plaintiff gives Farmers the authority to hire Continental-provided workers without incurring a fee. (Reply Brief, Exh. A.) However, it is not relevant to whether Farmers had the ability to hire or fire Continental adjusters while they were employed by Continental. In fact, as stated above, the independent contractor adjusters signed contracts with Continental specifying that they had no rights or claims to employment with the client to whom they were assigned. (See Kohler Decl., P 4, Exh. C.) Furthermore, Plaintiff has presented no evidence in regard to the other contracting companies. By contrast, Farmers has shown that independent contractor adjusters [*15] from the other contracting companies Plaintiff seeks to represent were selected and assigned by those other adjusting companies, not by Farmers. (See, e.g., Bishop Decl., P 6; Kainer Decl., P9.)

With respect to Plaintiff's claim that he was fired by his Farmers' supervisor, Farmers point to Plaintiff's deposition testimony wherein he states the reason he stopped working for Farmers was because Farmers was downsizing, and he was offered a job by Continental to work on a Farmers' project in Texas which he refused. (Plaintiff Depo. at pp. 58, 61, 64-65, 81-82 and Exh. 8, attached to Warren Decl. as Exh. A.) Plaintiff admitted

in his deposition that he would contact Continental, and Continental would tell him what work was available. (Id. at 56.) Moreover, even if Farmers did control the hiring and firing of Plaintiff, then Plaintiff is not similarly situated to other Continental adjusters who worked in other locations because the evidence shows that on-site Continental managers handled personnel matters at those other locations. (Nguyen Decl., P 10, Shaver Decl., PP8, 10-11.)

**b. supervise and control employee work schedules or conditions of payment**

Farmers presents evidence [*16] that the Continental employees acknowledged that their employment agreement with Continental had no effect on the terms, conditions and limitations agreed to between Continental and the client (Farmers). (Kohler Decl., P 4; Exh. C.) It states that it did not have the authority to control the terms and conditions of the Continental workers' employment. (See id. at P 6; Exh. E; Shaver Decl., P 11.) It states that Farmers managers could not make personnel changes. (Shaver Decl., P 1; Kainer Decl., P 9.)

In support of his contention that Farmers had the absolute power to supervise the adjusters' work schedules and conditions of employment, Plaintiff generally states that he was supervised by Farmers' supervisors at certain assignments. He offers no specific facts whether this "supervision" related to work schedules or conditions of payment. Plaintiff attempts to meet this requirement by stating that the adjusters were only paid if their time sheets were approved and signed by their Farmers' supervisor; however, again, the approval of time sheets bears no relation to the initial setting of work schedules or the terms for payment. Plaintiff also relies on the engagement letter which [*17] states, "As a temporary employee you are expected to follow the rules, regulations, procedures and dress code of the client company to which you are assigned." Again, this general statement in the engagement letter says nothing about the control of work schedules or conditions of payment.

Moreover, even assuming Farmers had the requisite supervision and control over Plaintiff, Plaintiff presents no evidence that Farmers had the same requisite supervision and control of adjusters from other agencies. By contrast, Farmers presents evidence that it did not exercise such supervision and control, as the other contracting entities had their own supervisors on-site. (Bishop Decl., P 6; Kainer Decl., P 9; Nguyen Decl., P 6.) It also presents evidence that Continental provided supervisors who would determine the schedules and working conditions) at sites other than those at which Plaintiff worked. (Nguyen Decl., P 10; Shaver Decl., PP 8, 10-11.)

**c. determine rate and method of payment**

Farmers shows that its agreements with the entities which provide the independent contractor adjusters do not specify how the contracting entity is to pay these independent contractor adjusters, as that [*18] is a matter between the adjusting company and its workers. (Kohler Decl., Exhs. A and B at Article 4.) It states that it does not control the rate of pay or method of payment from the contracting entity to the worker. (See Smith Decl., P 8; Martin Decl., P 6; Shaver Decl., P 11.) It does not prepare the payroll or pay wages to the adjusters. (See Hongsdusit Decl., P 8; Martin Decl., P 6.) Similarly, Farmers did not determine the pay rates to Continental workers and did not determine the method of payment to Continental workers. (Shaver Decl., P 11.)

In support of his contention that Farmers determined the rate and method of payment, Plaintiff relies on Continental's proposal to Farmers in which Continental proposed, and Farmers accepted, the $ 40.00 per hour wage rate. However, while Farmers agreed to pay Continental on an hourly rate, such agreement did not determine the payment relationship between Continental and its employees. In fact, Plaintiff admits that Continental changed its rate and method of payment to its employees, by guaranteeing a minimum weekly salary of $ 250, then going to a $ 2,650 weekly salary, then to a $ 2,250 weekly salary, then to a hourly rate with [*19] overtime. (Kohler Decl., Exhs. G-K; Reply Brief, Exh. G.) There is simply no evidence that Farmers and not Continental changed these rates. Furthermore, Plaintiff admits he does not know how adjusters from other companies were paid. (Plaintiff Depo. at 85-87.)

**d. maintain employment records**

With respect to the maintenance of employment records, Plaintiff contends that Farmers had turned over two storage boxes of employment records on these individuals to Plaintiff's counsel through discovery. In response, Farmers states that these "employment records" consisted of nothing more than timesheets and invoices used to determine the appropriate payment to Continental, and regardless, Farmers obtained many of these records from Continental in order to respond to Plaintiff's discovery request. This Court agrees with Farmers that the factthat it obtained records at Plaintiff's request is not evidence that Farmers itself maintained or controlled them. Furthermore, Plaintiff again fails to offer any evidence to show that Farmers maintained similar so-called "employment records" for adjusters supplied by other companies and therefore has not shown he is similarly situated to them in this [*20] regard.

**e. conclusion**

Thus, based on the foregoing factors, this Court finds that Plaintiff has failed to show that Farmers together with Continental was his joint employer, and even if Plaintiff were able to establish this, he has failed to show that he is similarly situated to the other members of the proposed collective group consisting of adjusters from Wardlaw, NCA and Eberls with respect to the members' employment relationship with Farmers. On this basis alone, then, denial of certification of this action as a collective action is warranted.

### 4. Plaintiff has not shown that he is similarly situated to the other members with respect to the elements of the administrative exemption

[HN7] Although an employer-employee relationship may exist for liability purposes, the FLSA exempts bona fide administrative employees from its overtime pay requirements. See *29 U.S.C. § 213(a)(1)*. The administrative exemption is comprised of two parts: (1) whether the employee was paid on an appropriate salary or fee basis; and (2) whether the employee's duties satisfy the "duties test" set forth in the regulations.

Farmers argues that even if an employment relationship [*21] exists, Plaintiff has not shown that the putative collective action group is similarly situated to him in regard to the form or method of wages paid to them, and that he has not shown that the job duties of the putative collective group are sufficiently similar to his. This Court agrees that these are essential elements for determining the administrative exemption. As such, this Court must examine Farmers' contentions regarding these issues. However, before proceeding, this Court notes Plaintiff's claim that it is Farmers which must show that the employees meet the administrative exemption. While this is ultimately true, this substantive issue is not now before this Court. Instead, the issue presently before this Court is whether this case should proceed as a collective action. Plaintiff bears the burden of proving this, and it is for him to present evidence that all putative members were paid similarly and performed similar job duties. In other words, since Plaintiff alleges in his Complaint that he was not exempt from overtime pay requirements because he was paid on an hourly basis, he must demonstrate that he is similarly situated to the other adjusters he seeks to represent with [*22] regard to this issue.

### a. whether the employee was paid on a salary or fee basis

[HN8] To meet the requirements of the administrative exemption, the employee must have received a salary. See 29 C.F.R. §§ 541.211-213. In lieu of being paid on a salary basis, an exempt administrative employee may receive his or her compensation on a fee basis. See id. at §§ 541.213, 541.313(c). Fee basis compensation is "the payment of an agreed upon sum for a single job regardless of the time required for its completion." See id. at § 541.313(b).

Farmers contends that the wage payments made to the proposed collective action group differed, not only as between Continental and the other companies, but also between the Continental workers themselves. While Farmers' evidence supports this contention, this Court agrees that, at a minimum that Plaintiff has failed to show otherwise.

Plaintiff alleges he was paid by the hour by Continental, yet another Continental worker, a putative opt-in, Bill Myers, was paid in 2003 a guaranteed $ 250 base salary or a percentage of fees billed, whichever was greater; later, he was paid a flat salary of $ 2650 per week and then [*23] $ 2250 per week. (Kohler Decl., Exhs. F-J.) In August 2003, Continental again changed its method of payment to its workers - it went back to paying its adjusters by the hour, including overtime for hours worked over 40 in a week. (See id. at P 8, Exh. K.) With respect to how adjusters for other companies were paid, Plaintiff admits that he does not know how they were paid. (Plaintiff Depo. at 85-87.)

In his Reply, Plaintiff submits new affidavits; however, these affidavits state in a conclusory fashion that the individual worked for Farmers and was paid by the hour. None of them indicate for which contracting entity he/she worked. Without basic facts as to which contracting entity employed each affiant, Plaintiff has not shown that he is similarly situated to any adjuster from any company other than Continental. With respect to adjusters with Continental, Plaintiff's own evidence is in conflict. In his Reply, Plaintiff states that Continental adjusters were paid a regular flat salary rate in 2003 (Reply, pp. 3-4), but he then submits affidavits wherein each Continental worker states he worked in 2003 and was paid by the hour. (See Cannon, Capone, Erhardt, Ferro and Jackson [*24] Affidavits.) Since Plaintiff was paid by the hour while other Continental adjusters were paid on a salary basis, then he cannot represent them as being similarly situated. [4]

---

[4] Recognizing the problem, Plaintiff suggests that he wants to send notice only to those individuals who were paid by the hour. However, such a suggestion highlights that certification is not proper here. To determine who was actually paid by the hour would require an individualized determination and review of pay records, and such an individualized inquiry is not the purpose of a collective action.

### b. whether the employee's duties satisfy the "duties test"

[HN9] To meet the administrative exemption, the employee's primary duties must consist of (a) the performance of office work directly related to the general business operations of the employer; and (b) duties that require the exercise of discretion and independent judgment. *29 C.F.R. § 541.2(a)(1).* The federal regulations expressly include "claim agents and [*25] adjusters" as employees who perform duties relating to the administrative operations of a business. Id. at § 541.205(c)(5).

Farmers contends that job assignments and duties of independent contractor claims representatives vary widely, even among the adjusters provided by the same company. It provides evidence that Plaintiff's own job assignments and duties varied. For example, Plaintiff was employed by Continental in February 2002, when he first began work on mold claims for Farmers. (Plaintiff Depo. at pp. 9, 27.) His initial job responsibilities were as a "file examiner." (Id.) When Plaintiff moved to adjust mold claims in Sacramento, he became a "lead adjuster," which meant he generally supervised the work of several Wardlaw independent adjusters, who performed the initial field inspections and made the initial claim valuation. (Id. at 39, 43-44, 47.) Plaintiff then worked in Oklahoma City for about four weeks as a file examiner on mold files. (Id. at 53.) After that, he worked in Sacramento as a lead adjuster, and then Continental offered Plaintiff a job assignment in Texas, but Plaintiff rejected it. (Id. at 45-58, 61-82.)

Farmers also provides evidence [*26] demonstrating that the adjusters perform widely varying job duties. (See Bishop Decl., PP 5, 10 (describing different duties of "field adjusters" provided by Wardlaw, NCA and Eberls, with duties of "office adjusters" provided by Continental); Kainer Decl., PP 6-8 (stating that Continental adjusters "were assigned duties not performed by any other independent adjusters working mold claims at that time" and describing their job duties as "lead" adjusters, while other company adjusters had different job duties); Nguyen Decl., PP 4-9 (describing that Continental adjuster duties differed in that some Continental adjusters worked as "leads," while others worked as "office adjusters," which all differed from the "field adjusting" work performed by other company adjusters); Smith Decl., P 11 (stating that some Continental adjusters were assigned to the Complex Claims Unit and made presentations with recommendations during Legal Round Table meetings with Farmers' counsel; "No other independent adjusters from other agencies had duties at all similar to this duty.")).

Plaintiff offers no details of what the individuals in the putative collective action group actually did on the job. He merely [*27] states that they all were hired to work on "the mold claims project," and then he admits that "their duties may have varied to some extent." (Reply, p. 12.) In fact, some of the affidavits filed with his Reply reveal that the putative collective action members worked on different types of claims other than mold claims. (See, e.g., Reed Affidavit, Exh. E to Reply (stating that he worked on storm claims, not just mold claims); Roy Affidavit (stating he worked as a lead adjuster in the litigated claims section)). In sum, Plaintiff fails to rebut the evidence Farmers submitted demonstrating that the adjusters perform widely varying job duties. [5] The differing job duties and the individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case.

> 5   In his Reply, Plaintiff argues that Farmers' claims adjusters are production workers not covered by the FLSA administrative exemption. Farmers responds that this argument is incorrect and, in any event, irrelevant to a determination of whether they are similarly situated. This Court agrees with this latter argument; it does not need to address the issue of whether the insurance claims adjusters are exempt administrative employees or production workers at this time.

[*28]   **c. The existence of an alleged common plan or policy is not dispositive**

Plaintiff argues that the proposed collective action group is similarly situated because there is "clear evidence of a single decision, policy or plan which affected all of them." He specifically states that such plan was Farmers' decision "to hire numerous independent adjusters to work on mold claims and to pay them an hourly wage, but would not pay them overtime wages in clear violation of the overtime provisions of the FLSA." Plaintiff relies on the case of *Pines v. State Farm Ins. Co., 1992 U.S. Dist. LEXIS 6972 (C.D. Cal. 1992).*

This Court finds that Plaintiff's reliance on *Pines* is misplaced. In Pines, the plaintiff sought court facilitation of the opt-in procedure based upon the plaintiff's claim under the *Age Discrimination in Employment Act* ("ADEA") that defendants denied her, and other similarly situated persons, employment on the basis of age. [6] The Court granted plaintiffs' motion for court facilitation of the opt-in procedure because plaintiffs produced substantial allegations that the defendants participated in a plan of age discrimination that affected many similarly [*29] situated people. Thus, while the Court did focus on evidence of a plan of discrimination, the issue before it did not involve the need for

individualized inquiries. By contrast, in this case, [HN10] the issues of the joint employer test and the administrative exemption tests of the FLSA require such individualized inquiries. As another court stated, "unlike in a discrimination case, the focus [in FLSA cases] is not on [the employer's] action, but instead on the nature of the employee's job duties in the context of the relevant exemption criteria. See, e.g., *Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 498; Pfaahler, 2000 U.S. Dist. LEXIS 1772, \*9* (refusing to authorize FLSA collective action; distinguishing ADEA cases because, unlike FLSA cases, "in a discrimination case, it is relatively easy to satisfy the similarly situated standard [because] a discrimination case focuses on whether the defendant had a policy of discriminating against its employees."). In sum, while a policy or plan may be relevant to the inquiry of certification, it cannot be the sole factor in light of the other issues under the FLSA.

      6  [HN11] A collective action under the ADEA incorporates the standards for a collective action under the FLSA. *Pines, 1992 U.S. Dist. LEXIS 6972, \* 19.*

    [\*30] **d. conclusion**

Because Plaintiff has failed to show that he is similarly situated to the other members with respect to the payment of a salary and the performance of duties, the exempt or non-exempt status of hundreds of independent contractor adjusters would need to be determined on an employee-by-employee basis. This would be inefficient and impractical, thereby defeating the purpose of a collective action. See *Mike v. Safeco Insurance Co., 274 F. Supp. 2d 216, 2003 U.S. Dist. LEXIS 21438 (D. Conn. 2003)*(denying collective action certification in FLSA overtime case because plaintiff did not show similarity in job duties and job duties test would require individualized facts). This Court therefore finds that certification of a collective action is not warranted on this additional basis.

**5. Additional reasons exist for denying certification**

Farmers offers additional arguments why a *216(b)* collective action would not be appropriate. This Court agrees with these arguments. First, [HN12] distinct defenses available to Farmers that would apply to disparately situated individuals do not allow for a manageable case. See *Lusardi v. Xerox Corp., 118 F.R.D. 351, 370 (D. N. J. 1987)* [\*31] ("consolidation of these claims into a representative class with the attendant defenses would not provide for an efficient proceeding"). Further, all of the issues discussed so far highlight that allowing this proposed collective action is contrary to the purpose of allowing notice and a collective action to proceed - to allow "efficient resolution in one proceeding

of common issues of law and fact arising from the same alleged [conduct]." *Hoffmann-La Roche, 493 U.S. at 170.* Additionally, as Farmers states, notice should be denied because Plaintiff has engaged in solicitation and has failed to come up with significant numbers of allegedly similarly situated employees who are likely to assert similar claims. See, e.g., *Bernard v. Household International, Inc., 231 F. Supp. 2d 433, 436 (E.D. Va. 2002)*(collective action notice denied, in part, because there had been ads in local papers regarding the case); *Michaelson v. Arrow Transport Co., 1997 U.S. Dist. LEXIS 23665 (D. Or. 1997)*(denying notice to potential collective action members in a FLSA case where complaint failed to allege an inability to contact collective action members [\*32] in the absence of court-authorized notice). Here, Plaintiff's attorneys have posted a solicitation on a nationwide independent adjusters' website. (See Warren Decl., Exh. A - Plaintiff Depo., Exh. 10.) While "Consents to Opt In as Class Member" have been filed, no information is provided regarding these purported members, and even when affidavits have been provided, the affidavits lack the requisite information regarding the issues before the Court, as explained above.

Finally, Farmers argues that the Court should deny Plaintiff's motion because Plaintiff cannot show that either he or his attorney can adequately represent the proposed collective action members. Specifically, it claims that Plaintiff has a fundamental conflict with other potential collective action members in that Plaintiff supervised the adjusters he seeks to represent and approved their time records and denied payment for work performed by them. It also claims that Plaintiff's counsel, Mr. Fisher, has a client relationship with Wardlaw and Isabelle Arnold, a potential defendant and witness in this case who is Farmers' former mold claims manager primarily responsible for the relationship with Continental. These [\*33] arguments are based upon *Federal Rule of Civil Procedure 23* class action issues. While such class action issues are arguably relevant here, this Court finds that it need not make such determination in light of the analysis set forth above. Because Plaintiff has failed to show that a collective action is warranted here, issues as to his or his counsel's ability to represent such collective group are essentially moot.

**III. Conclusion**

Plaintiff has failed to show that a collective action of temporary contractor adjusters supplied to Farmers through different agencies to work on mold claims is warranted here. Instead, diverse individualized factors among the proposed collective group members exist, including the factors necessary to conclude that Farmers is a "joint employer" with a number of temporary

agencies, the variety of methods of payment to the proposed collective group members who were paid by flat fee, by the hour and by salary by the same and by different employers while Plaintiff allegedly was paid by the hour, and the differences between Plaintiff and each of proposed collective group members in their actual job duties [*34] and the degree to which any one individual exercised independent judgment and discretion in carrying out their varying duties.

Accordingly, this Court **denies** Plaintiff Thomas Pfohl's Amended Motion for Certification of Collective Action Under *Section 216(b) of the Fair Labor Standards Act*. [7] As such, this Court will allow this case to proceed on the individual claims of this Plaintiff, Thomas Pfohl, only. This Court orders counsel for Plaintiff Thomas Pfohl to notify, in writing, all persons that have attempted to file to opt in to this purported collective action of this Court's decision to deny class certification. This will enable said parties to file their own individual lawsuits to protect whatever rights they may have.

[7] As explained above, Plaintiff has attempted to file a Motion to Amend Complaint which he desires to be heard on March 8, 2004. However, no such Motion was properly filed. According to Farmers' opposition to the Motion to Amend, Plaintiff seeks to add three state law class claims under the California Labor Code and California Business and Professions Code, to add two additional named plaintiffs, to add two additional defendants, Wardlaw Adjusting and Continental Staffing, Inc., and to add two new FLSA collective action claims against the proposed new defendants. This Court notes that in light of this Court's determination to deny this instant motion for certification of collective action, any purported Motion to Amend may be moot, or at a minimum, require revision in light of this current Order before any attempt to refile.

[*35] IT IS SO ORDERED.

DATED: 3-1-04

Dickran Tevrizian, Judge

United States District Court

**16**



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 1662614 (E.D.N.Y.)
**2006 WL 1662614 (E.D.N.Y.)**

Page 1

▷Prizmic v. Armour, Inc.
E.D.N.Y.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. New York.
Elijo PRIZMIC, on behalf of himself and all others
similarly situated, Plaintiffs,
v.
ARMOUR, INC., et al., Defendants.
**No. 05-CV-2503 (DLI)(MDG).**

June 12, 2006.

Karl J. Stoecker, Law Offices of Karl J. Stoecker,
New York, NY, for Plaintiff.
Howard S. Krebs, Howard S. Krebs, P.C., Great
Neck, NY, for Defendants.

### ORDER

GO, United States Magistrate Judge.
**\*1** Plaintiff Elijo Prizmic ("plaintiff") brings this
action against defendants Armour, Inc., Ramiz
Mrkulic, and Al Parviz ("defendants") pursuant to
section 216(b) of the Fair Labor Standards Act
("FLSA"), 29 U.S.C. § 201*et seq.,* as a putative
collective action by employees of defendants alleging
that he and others similarly situated have been denied
overtime compensation, as required by the FLSA.
Plaintiff moves to compel defendants to provide the
names and addresses of their current and former
employees who were not paid overtime and for
permission to notify them of the pendency of this
action.<sup>FN1</sup>

> FN1. I note that the instant motion is within
> my pre-trial authority to decide under 28
> U.S.C. § 636(b)(1)(A). See *Patton v.*
> *Thomson Corp.,* 364 F.Supp.2d 263, 265-66
> (E.D.N.Y.2005) (magistrate judge had
> authority to compel production of
> information about putative class members
> and to permit notice of collective action);
> *Mazur v. Olek Lejbzon & Co.,* No. 05 Civ.
> 2194, 2005 WL 3240472, at \*2 n. 1
> (S.D.N.Y. Nov. 30, 2005).

For the reasons set forth below, plaintiff's motion to

compel and for permission to send notice to potential
class members is denied without prejudice.

### BACKGROUND

In his unverified complaint, plaintiff alleges that he
was employed as an asbestos installer by defendants,
from October 2004 through March 2005. Complaint
("Comp.") at ¶ 4. Plaintiff further alleges that during
his employment, plaintiff and his fellow insulation
installers routinely worked more than forty hours per
week but were not paid time and a half of their
regular rate of pay for any hours worked in excess of
forty hours per week.*Id.* at ¶ 8. Plaintiff has not
submitted any affidavit or documentation in support
of the instant motion.

At an initial conference held on July 28, 2005, the
Court ordered that automatic disclosures be served by
September 8, 2005 and that the parties informally
exchange information before the next conference. *See*
minute entry dated July 28, 2005. At a discovery
conference held on October 19, 2005, the Court
ordered that fact discovery be completed by April 12,
2006. *See* minute entry dated October 19, 2005. By
letter dated December 23, 2005, plaintiff's counsel
informed the Court that defendants had not responded
to plaintiff's discovery requests. Ct. doc. 7. On
January 4, 2006, the Court ordered defendants to
provide the outstanding discovery responses by
January 31, 2006. *See* minute entry dated January 4,
2006. At a conference held on June 8, 2006, the
parties confirmed that defendant had provided the
information sought. On February 24, 2006, plaintiff
filed the instant motion. *See* ct. doc. 8.

### DISCUSSION

Plaintiff moves to compel disclosure of the names
and addresses of "[a]ll current and former employees
of Armour, Inc., who were employed by the
Company at any time during the past three years and
were not paid overtime for each hour worked in
excess of forty hours per week" and for court
authorized notice informing those potential plaintiffs
of the opportunity to "opt-in" to the present lawsuit.
*See* ct. doc. 8-2 at 1, 6.

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 1662614 (E.D.N.Y.)
**2006 WL 1662614 (E.D.N.Y.)**

Section 216(b) of the FLSA provides:

An action to recover ... liability ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

**\*2** 29 U.S.C. § 216(b). It is well settled that district courts have the discretion whether to authorize the sending of notice to potential class members and direct an employer defendant to disclose the names and addresses of similarly situated potential plaintiffs in a collective action brought pursuant to section 216(b) of the FLSA. *Morales v. Plantworks, Inc.,* No. 05 Civ. 2349, 2006 WL 278154, at \*2 (S.D.N.Y. Feb. 2, 2006); *Patton,* 364 F.Supp.2d at 266;*Hoffmann v. Sbarro,* 982 F.Supp. 249, 262-63 (S.D.N.Y.1997); see also *Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 169 (1989).

The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are "similarly situated." *Morales,* 2006 WL 278154, at \*1;*Levinson v. Primedia, Inc.,* No. 02 Civ. 2222, 2003 WL 22533428, at \*1 (S.D.N.Y. Nov. 6, 2003); 29 U.S.C. § 216(b). Although neither the FLSA nor its implementing regulations define the term "similarly situated," in this Circuit, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."*Morales,* 2006 WL 278154, at \*2 (quoting *Hoffmann,* 982 F.Supp. at 261);*see Barfield v. New York City Health and Hospitals Corp.,* No. 05 Civ. 6319, 2005 WL 3098730, at \*1 (S.D.N.Y. Nov. 18, 2005); *Levinson,* 2003 WL 22533428, at \*1. At the initial stage, "the court examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated."*Morales,* 2006 WL 278154, at \*1;*Flores v. Osaka Health Spa, Inc.,* No. 05 Civ. 962, 2006 WL 695675, at \*2 (S.D.N.Y. March 16, 2006); *see Masson v. Ecolab,* Inc., No. 04 CV 4488, 2005 WL 2000133, at \*13 (S.D.N.Y. Aug. 17, 2005); *Lee v.*

*ABC Carpet & Home,* No. 00 CIV. 984, 2006 WL 1408837, at \*2 (S.D.N.Y. May 22, 2006) (court's initial determination based on "pleadings and affidavits"). If the court finds that they are similarly situated, it may conditionally certify the class and authorize notice to be sent to putative class members. *See Morales,* 2006 WL 278154, at \*1;*Lee,* 2006 WL 1408837, at \*2. Only after discovery has been completed should the Court engage in a second more heightened stage of scrutiny to determine whether the class should be decertified or the case should proceed to trial as a collective action. *See Lee,* 2006 WL 1408837, at \*2;*Masson,* 2005 WL 2000123, at \*14.

Although the plaintiff's burden at this initial stage is not onerous, "[m]ere allegations in the complaint are not sufficient; some factual showing by affidavit or otherwise must be made."*Camper v. Home Quality Mgmt. Inc.,* 200 F.R.D. 516, 519 (D.Md.2000); see Lee, 2006 WL 1408837, at \*2 (court's determination "based on pleadings and affidavits"); *Masson,* 2005 WL 2000133, at \*13 (same); 7B Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1807 (3d ed. 2005) ("Conclusory allegations are not sufficient .... courts requir[e] that there be some factual support and affidavits showing that the class members are 'similarly situated' "). A plaintiff must provide actual evidence of a factual nexus between his situation and those that he claims are similarly situated rather than mere conclusory allegations. *See Flores,* 2006 WL 695675, at \*3;*Morales,* 2006 WL 278154, at \*3. Absent such a showing, an employer may be "unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense."*D'Anna v. M/A-Com, Inc.,* 903 F.Supp. 889, 893-94 (D.Md.1995); *see Smith v. Sovereign Bancorp, Inc.,* No. civ. A. 03-2420, 2003 WL 22701017, at \*2 (E.D.Pa. Nov. 13, 2003) (conditional certification based solely on allegations in complaint is "an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery").

**\*3** Here, plaintiff has not submitted *any* evidence by affidavit or otherwise to demonstrate that he and other potential plaintiffs were victims of a common

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2006 WL 1662614 (E.D.N.Y.)
**2006 WL 1662614 (E.D.N.Y.)**

policy or plan that violated the law. On the contrary, plaintiff makes only general allegations in his complaint that he and other installation installers were denied overtime compensation. Denying in their answer that plaintiff was an employee of defendants within the meaning of the FLSA, defendants allege that plaintiff never performed insulation installation services for defendants and that plaintiff and other insulation installers never worked overtime without the proper compensation. Answer at ¶¶ 4, 6, 8, 9, 38. Defendants further allege that plaintiff was an independent contractor whose duties were limited to cleaning up debris and making deliveries. *Id.* at ¶¶ 4, 19, 38.Despite defendants' denials, plaintiff has not submitted any specific facts concerning his employment nor connecting his situation to others that he claims are similarly situated. For example, plaintiff fails to describe or submit any documentation showing how he or anyone else employed by defendants were paid, what their job duties were or the hours they worked. Nor has plaintiff identified a single potential plaintiff even though defendant apparently has provided the names of current and former employees. Not only has plaintiff failed to provide the minimal requisite factual showing that he was in an employee-employer relationship with defendants and was denied overtime pay, he has not substantiated his allegation that the same was true of other potential plaintiffs. Other than the allegation that plaintiff is an asbestos installer, there is no information that could distinguish this purported employment relationship from that of any other employer.

Moreover, plaintiff does not consistently define the universe of similarly situated individuals. In his complaint, plaintiff alleges that only his fellow installation installers were denied overtime compensation. Yet, in the instant motion, plaintiff seeks to notify "all current and former employees of Armour, Inc." over the past three years who were not paid overtime. Ct. doc. 8-2 at 1. "Where the named plaintiff is unable to state clearly and specifically to whom it is that she contends is similarly situated, it is not possible for the Court to conclude that a collective action certification is warranted."*Flores, 2006 WL 695675, at *3*.

Where "conditional certification is denied, the court may allow discovery to provide plaintiffs a second opportunity to obtain sufficient evidence of a

collective to warrant conditional certification and the notice to opt in."*Federal Practice & Procedure, § 1807*. However, plaintiff has not provided any facts for his claim that a class of similarly situated plaintiffs exist to warrant disclosure of the names and addresses of potential plaintiffs. *See Diaz v. Elec. Boutique of America,* No. 04-CV-0840E, 2005 WL 2654270, at *3-*5 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification, notice to and discovery about potential class members where plaintiff did not make requisite factual showing); *Barfield,* 2005 WL 3098730, at *1 (denying conditional certification, discovery of names and addresses of potential opt-in plaintiffs and mailing of notice because plaintiff provided no evidence of policy to deprive nurses of overtime compensation); *Hall,* 2002 WL 413901, at *3 (denying conditional certification, notice to potential plaintiffs and limited discovery of identifying information of similarly situated employees where plaintiff did not submit affidavits or even names of potential plaintiffs); *see also Levinson,* 2003 WL 22533428, at *2 (denying motion to circulate notice to potential plaintiffs where plaintiff failed to make factual showing that others were similarly situated). Unlike two cases from the Southern District of New York where conditional certification was denied but the court nonetheless ordered defendants to produce identifying information of potential plaintiffs, here, plaintiff submitted no evidence whatsoever to substantiate his claims that a collective action is appropriate. *Cf. Flores,* 2006 WL 695675, at *3 (plaintiff submitted affidavit in support of unopposed motion for discovery and approval of notice to putative plaintiffs); *Morales,* 2006 WL 278154, at *2 (plaintiffs submitted copies of payroll stubs supporting their claim that they were paid the regular rate for overtime). While plaintiff may be correct that he was not given addresses of employees, he has made no effort to utilize the payroll information received to assist in determining whether conditional certification is appropriate. As this Court warned in an endorsed order filed on January 4, 2006, the parties "must proceed diligently." Although plaintiff apparently has not, plaintiff's application is nonetheless denied without prejudice to a future "modest factual showing" that plaintiff and those similarly situated were victims of a common policy or plan that violated the FLSA.

CONCLUSION

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 4
Not Reported in F.Supp.2d, 2006 WL 1662614 (E.D.N.Y.)
**2006 WL 1662614 (E.D.N.Y.)**

**\*4** For the foregoing reasons, plaintiff's motion is denied without prejudice.

SO ORDERED.

E.D.N.Y.,2006.
Prizmic v. Armour, Inc.
Not Reported in F.Supp.2d, 2006 WL 1662614 (E.D.N.Y.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**17**

LEXSEE 2006 U.S. DIST. LEXIS 85471



Positive
As of: Aug 07, 2008

**PENNY ROBINSON, Plaintiff, v. DOLGENCORP, INC., a foreign corporation d/b/a Dollar General Corporation, Defendant.**

**Case No. 5:06-cv-122-Oc-10GRJ**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, OCALA DIVISION**

*2006 U.S. Dist. LEXIS 85471*

**November 13, 2006, Decided**
**November 13, 2006, Filed**

**COUNSEL:** [*1] For Penny Robinson, on behalf of herself and those similarly situated, Sandra Jerome, Beverly Smith, Karen Adkins, Plaintiffs: Richard Bernard Celler, LEAD ATTORNEY, Morgan & Morgan, Ft. Lauderdale, FL.

For Dolgencorp, Inc., a foreign corporation, doing business as Dollar General Corporation, Defendant: Anderson R. Scott, LEAD ATTORNEY, Fisher & Phillips LLP, Atlanta, GA; Anthony J. Hall, LEAD ATTORNEY, Fisher & Phillips LLP, Orlando, FL; Christine E. Howard, Fisher & Phillips, LLP, Atlanta, GA; E. Jewelle Johnson, Fisher & Phillips LLP, Atlanta, GA.

**JUDGES:** GARY R. JONES, United States Magistrate Judge.

**OPINION BY:** GARY R. JONES

**OPINION**

**REPORT AND RECOMMENDATION**

1 Specific written objections may be filed in accordance with *28 U.S.C. § 636*, and *Rule 6.02*, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[*2] Pending before the Court is Plaintiffs Motion For An Order Permitting Court Supervised Notice To Employees Of Their Opt-In Rights And Incorporated Memorandum Of Law. (Doc. 12.) Defendant has filed a Brief In Opposition to Plaintiff's Motion (Doc. 25) and, therefore, the matter is ripe for the Court's consideration. ² For the reasons discussed below, Plaintiffs Motion For An Order Permitting Supervised Notice To Employees Of Their Opt-In Rights is due to be **DENIED**.

2 Defendant has also filed a Motion to Strike Portions of Affidavits Submitted by Plaintiffs (Doc. 24) to which Plaintiff has filed a Response Memorandum In Opposition. (Doc. 27.)

**I. BACKGROUND & FACTS**

This is an action under the Fair Labor Standards Act of 1938 ("FLSA"), *29 U.S.C. §§ 201- 219*, to recover unpaid overtime compensation allegedly owed to Plaintiff and all similarly situated persons employed by Defendant Dolgencorp Inc. d/b/a Dollar General ("Dolgencorp") during the last three years. [*3] ³ Plaintiff requests that the Court issue an order facilitating notice to a class consisting of "all hourly paid customer service employees employed by Defendant ... over the last three (3) years who were subjected to Defendant's practice of not paying proper overtime compensation, for all hours worked in excess of forty (40) in a workweek." ⁴

2006 U.S. Dist. LEXIS 85471, *

3  Plaintiffs' Amended Complaint and Demand For Jury Trial, Doc. 16, p.1.
4  Plaintiff's Motion For An Order Permitting Court Supervised Notice To Employees Of Their Opt-In Rights, Doc. 12-1, p.1.

Dolgencorp is a nationwide general merchandise retail store with more than 8,000 stores in 34 states. [5] Dolgencorp's stores are divided into several regions, with multiple districts in each region. [6] Each store employs a Store Manager -- who is responsible for supervision of the store and is the highest level of management at the store level -- an Assistant Manager, a Lead Clerk and Clerks/Sales Associates [7] .

5  Declaration of JoAnn Lampe, Doc. 25, Ex. 1, P 9.

[*4]

6  Dolgencorp represents that there have been from 11 to 20 stores within each District at a time. Doc 25-1, p. 12.
7  Declaration of Jodean Outlaw, Doc. 25, Ex.2, P 4. In the middle of the specified time period, Dolgencorp changed the title of "Clerk" to that of "Sales Associate". Lampe Decl., Doc. 25, Ex.1, P 9.

Plaintiff is a former Assistant Store Manager. The job of an Assistant Store Manager is a full-time position with job duties that include opening and/or closing the store, assisting the Store Manager with managing the store, authorizing and signing refunds and overrides, and assisting with staging and storage of merchandise. [8] Furthermore, the Assistant Manager may be required to enter payroll information and assist with scheduling employees. [9]

8  Declaration of Karen Robinson, Doc. 25, Ex. 12, PP 2-3.
9  Declaration of Deborah Davis, Doc. 25, Ex. 16, P 3.

Lead Clerks and Clerk/Sales Associates [*5] (together "Store Clerks") generally perform the same duties, with some variations. The Lead Clerk is a full-time position, while the Clerks/Sales Associates positions are generally not full-time. [10] Lead Clerks are not required to manage the store and do not open and/or close the store nor possess cash register keys like Assistant Managers. [11] All Store Clerks report to the Store Manager and Assistant Managers. [12] The job duties of Store Clerks include unloading trucks, building merchandise displays, restocking, assisting customers in locating merchandise, cleaning the store and operating the cash register. [13]

10  Doc. 25, Ex. 2, Outlaw Decl. P 4.
11  Declaration of Darlene Partin, Doc. 25, Ex. 20, PP 2-3.
12  Id; Declaration of Carol Gray, Doc. 25, Ex. 21, PP 2-3.
13  Id.

At any given time, there are approximately 58,000 hourly in-store personnel in Dolgencorp's stores. [14] For the three-year period between August 1, 2003 and August 1, 2006, (the time period identified in Plaintiff's [*6] motion) Dolgencorp employed approximately 36,614 Assistant Store Managers, 44,270 Lead Clerks and 305,729 Clerks/Sales Associates nationwide. [15] Within the specified time period, approximately 20,483 people were employed as Clerks/Sales Associates in Florida. [16] At that same time, Dolgencorp employed approximately 3,024 as Lead Clerks in Florida and approximately 2,543 individuals as Assistant Managers in Florida. [17]

14  Doc. 25, Ex. 1, Lampe Decl. P 9.
15  Id.
16  Doc. 25, Ex. 1, Lampe Decl.P 10. There were approximately, 800 in District # 183, 1,052 in District # 372, 655 in District # 415, approximately 49 in Store # 1651 and 18 in Store # 1469. Id.
17  Id. Approximately, 140 were in District # 183, 204 were in District # 372, 83 were in District # 415, approximately 17 were in Store # 1651 and 4 were in Store # 1469. Id.

Dolgencorp represents that its global policies strictly prohibit off-the-clock work. [18] All Store Managers complete training regarding Dolgencorp's explicit [*7] policy that employees do not work off-the-clock. [19] Every employee receives a copy of Dolgencorp's Employee Handbook that contains several policies on pay, overtime, time-keeping, etc., and every employee signs a separate "Wage & Hour Policy Acknowledgment". [20] Additionally, each store is required to post a poster informing employees of their FLSA rights. [21]

18  Defendant's Brief In Opposition To Plaintiff's Motion For An Order Permitting Court Supervised Notice To Employees Of Their Opt-In Rights, Doc 25, p. 6.
19  Declaration of Sharon Geistlinger, Doc. 25, Ex. 17, P 3.
20  Declaration of JoAnn Lampe, Doc. 25, Ex. 4, P 3 and pp. 1-37.
21  Declaration of Mia Savaloja, Doc. 25, Ex. 8, P 4 and Exhibit A.

Time-keeping for hours worked is maintained by local management at each store. [22] Hourly store

employees are required to record their time by clocking-in and-out on the store's register, [23] which generates receipts that employees may keep. [24] At the end of the week, local store management [*8] reviews the clock-in/out information and makes any necessary adjustments, pursuant to company policies and training. [25] Adjustments are made for reasons such as an employee forgetting to clock-in [26] and then the adjusted hours are transmitted from the register to the payroll department at Dolgencorp's headquarters. [27] Once transmitted, local store management can only make further adjustments by calling the payroll department. [28]

> 22   Declaration of Charlotte Frakes, Doc. 25, Ex. 5, PP 4-7; Declaration of Tamera Bruner, Doc. 25, Ex. 14, P 4-6.
> 23   Doc. 25, Ex. 5, Frakes Decl., PP 4-7; Doc. 25, Ex. 12, Robinson Decl., P 5.
> 24   Declaration of Alicia Massey, Doc. 25, Ex. 15, P 5; Ex. 16, Davis Decl. P 5; Ex. 20, Partin Decl. P 6.
> 25   Doc. 25, Ex. 5, Frakes Decl., P 5.
> 26   Id.
> 27   Id. at P 4.
> 28   Id. at P 5.

Upon receipt of a paycheck, Dolgencorp requires employees to sign a payroll register form that accurately reflects the employee's hours worked for that pay period. [*9] [29] Furthermore, once or twice a quarter Dolgencorp prints the following language on every paycheck stub received by employees: "CALL 1-888-237-4114 TO REPORT WORK OFF THE CLOCK." [30] Dolgencorp also maintains an Employee Response Center with a toll-free number that is open during store hours for employees to complain about any issue, including to report specific pay and time-keeping problems. [31]

> 29   Robinson Decl., P 6; Declaration of Melissa Hamilton, Doc. 25, Ex. 13, P 5.
> 30   Doc. 25, Ex. 5, Frakes Decl., P 11.
> 31   Doc. 25, Ex. 8, Savaloja Decl., PP 6, 8-9.

The named Plaintiff and two other individuals, each of whom has filed a Notice of Consent to Join ("opt-ins"), have filed affidavits in support of Plaintiff's Motion For An Order Permitting Court Supervised Notice To Employees Of Their Opt-In Rights. Plaintiff Penny Robinson was employed as an Assistant Manager from October 2005 through February 2006 at Store # 1651 in District # 372, and then later she was reassigned to District # 183. [32] [*10] The other two affiants, Beverly Smith and Sandra Jean Jerome, were employed as Store Clerks in the same store as Plaintiff. [33] Another former employee, Karen Adkins, who also filed a consent to join but did not submit an affidavit, worked at Store # 1469 in

District # 415 as a Store Clerk. [34] Each of these individuals complain that they were subjected to Defendant's alleged illegal pay practices. [35]

> 32   Doc. 25, Ex. 1, Lampe Decl., P 5.
> 33   Id. at PP 6-7.
> 34   Id. at P 8.
> 35   Notice Of Filing Additional Notices Of Consent To Join, Doc. 13; Doc. 12, Affidavit of Penny Robinson, PP 7-11; Doc. 12, Affidavit of Beverly Smith, PP 7-9; Doc. 12, Affidavit of Sandra Jean Jerome, PP 7-9.

Plaintiff alleges that this is an "off-the-clock" case and urges the Court to grant conditional class certification for all current and former hourly paid "customer service employees" employed by Defendant over the last three years who did not receive full payment of time-and-a-half for all overtime hours worked [*11] during his/her employment with Defendant. Presumably, Plaintiff requests that court supervised notice should be sent nationwide to all "customer service employees." Plaintiff contends that the affidavits and Consent to Join forms, filed in this case, establish that there are similarly situated customer service employees who may wish to join the lawsuit if made aware of the pendency of this case and the procedures available for opting-in.

In response, Defendant argues that the Court should deny conditional class certification in this case because Plaintiff has failed to present any evidence of a companywide policy in violation of the FLSA, and that the claims of the Plaintiff and those who have filed opt-in notices are better suited in an individualized action rather than a collective action.

Specifically, Defendant maintains that the potential opt-in Plaintiffs are not similarly situated because Plaintiff's proposed class of "customer service employees" would include employees in several different job categories, scheduled for full-time versus part-time employment who worked at different stores under different Store Managers and different District Managers. Moreover, according [*12] to Defendant, the challenged overtime decisions were decentralized and were made on a store-by-store basis. Indeed, Plaintiff's claims in this case are limited to two store locations against two managers. Finally, Defendant points out that the class of "customer service employees" that Plaintiff seeks to conditionally certify is not manageable because the class is ill-defined and overly broad.

## II. DISCUSSION

Plaintiffs seek conditional class certification under § 216(b). [36] While § 216(b) does not expressly address class actions, courts in the Eleventh Circuit have employed a two-tiered analysis in evaluating the

appropriateness of class certification under *§ 216(b)*. First, during the early stages of the litigation, courts apply a lenient standard, requiring a plaintiff to show only that similarly situated persons exist that may wish to join the suit. [37] After conditional class certification is granted, at a later stage in the litigation, usually when discovery is nearly complete, the Court can then determine if class certification or decertification is appropriate at that time. [38] The decision on conditional class certification under *§ 216(b)*, however, is [*13] entirely within the discretion of the district court. [39]

> 36  *Section 216(b)* class actions differ from *F. R. Civ. P. 23* class actions in that, under *§ 216(b)*, a person who wishes to join the collective action must affirmatively "opt-in" by filing written consent with the Court. Under *F. R. Civ. P. 23*, a person must affirmatively "opt-out" if he/she wishes to abstain from the lawsuit. *29 U.S.C. § 216(b)*; see also *Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1216 (118i Cir. 2001).*
> 37  *Hipp at 1216-1217*; see also *Dybach v. State of Florida Department of Corrections, 942 F.2d 1562,1567 (11th Cir. 1991).*
> 38  *Id.*
> 39  *Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989); Hipp at 1219.*

In order for the Court to facilitate notice in a *§ 216(b)* case the plaintiff must demonstrate: (1) the existence of other employees who desire to "opt-in", [*14] and (2) that those employees are "similarly situated". [40] The Court will address each of these requirements in turn.

> 40  *Dybach, 942 F.2d at 1567.*

## A. Plaintiff Has Failed To Establish There Are Sufficient "Opt-Ins"

District courts have permitted plaintiffs to "present evidence of other employees who desire to join the action through affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees." [41]

> 41  See, e.g., *White v. KCPAR, Inc. 2006 U.S. Dist. LEXIS 40952, 2006 WL 1722348 (M.D. Fla. June 20, 2006); Rodgers v. CVS Pharm., Inc., 2006 U.S. Dist. LEXIS 23272, 2006 WL 752831, *3 (M.D. Fla. March 23, 2006).*

In the instant case, of the approximately 36,614 Assistant Store Managers, 44,270 Lead Clerks and 305,729 Clerks/Sales Associates employed by Defendant nation-wide, Plaintiff [*15] has provided affidavits of only herself and two other former employees of one of Defendant's Sumter County, Florida stores. Each of the affiants state in conclusory fashion that they were employed by Defendant as a "customer service employee," regularly worked in excess of forty (40) hours per workweek and that Defendant failed to properly pay them time and one-half for overtime hours. Without any explanation of whether a company or store wide policy was involved the affiants aver that Defendant required them to work overtime hours "off the clock" without compensation.

Defendant asserts that by filing only two affidavits of co-workers who purport to allege the same FLSA violations Plaintiff has failed to meet her burden of proof of establishing that there are other similarly situated employees who desire to opt-in. In addition to attacking the sufficiency of Plaintiff's proof, Defendant has filed several declarations of its own employees suggesting that there is no desire by other employees to join in the action and that the alleged overtime violations never occurred.

Several courts have found that "consents to join" and/or affidavits from only a couple of employees other [*16] than the plaintiff may not be sufficient to demonstrate the first prong under *Dybach,* particularly where a defendant counters with compelling evidence to the contrary. [42]

> 42  *Rodgers, 2006 U.S. Dist. LEXIS 23272, 2006 WL 752831, *3.*

For example, in *Rodgers v. CVS Pharmacy,* a judge from another division of this Court, denied the plaintiffs motion for conditional certification in a FLSA "shaving" time case for several reasons, including that the plaintiff failed to establish there were others who wished to join the lawsuit. [43] Like the Plaintiff here, the plaintiff in *Rodgers* only filed declarations on behalf of himself and two employees who worked at a different location from the plaintiff. [44] In analyzing plaintiffs burden of showing there were other employees who wanted to opt-in, the court, there, noted the plaintiff had offered only three declarations of employees (including himself) of the 250,000 hourly employees who worked for the defendant in the period in question. [45] Additionally, the Rogers court [*17] relied upon the fact that the defendant, there, had provided numerous affidavits of employees suggesting that they had no desire to join the lawsuit, that their time had not been shaved, and that they had not been denied overtime. [46] Based upon this evidence, the *Rogers* court denied Plaintiff's request for conditional certification and held that the plaintiff had failed to provide sufficient evidence that there were other potential opt-in plaintiffs. [47]

2006 U.S. Dist. LEXIS 85471, *

43  *Id. at *4-5.*
44  *Id. at *3.*
45  *Id. at *4.*
46  *Id.*
47  *Id. at *5-6.*

Similarly, in *White v. KCPAR, Inc.,* another judge in this District denied a request for conditional class certification in a FLSA overtime compensation case because the plaintiff had failed to satisfy the first prong under *Dybach* that there were other similarly situated individuals who wanted to join the action. [48] In *White* the plaintiff only filed his affidavit and the affidavits of the two-opt ins, attesting that each observed [*18] numerous other employees not being paid overtime. [49] In denying conditional certification, the court in *White* concluded that the plaintiff had been vague about the size of the putative class and the number of former and current employees affected by the alleged overtime violations. [50] Significant to the court in *White* was the fact that the plaintiff stated a mere belief in the existence of others who might desire to join the action if noticed, which was not enough. [51]

48  *White, 2006 WL 1722348 at *4.*
49  *Id. at *2-3.*
50  *Id. at *3.*
51  *Id* (quoting *Mackenzie v. Kindred Hosps. E., L.L.C., 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2004)).*

Both *Rodgers* and *White* are highly instructive with regard to the level of proof a plaintiff must present in an FLSA case to establish that there are other similarly situated employees who would join a collective action. The affidavits of Plaintiff, Beverly Smith and Sandra Jean Jerome merely assert [*19] in conclusory fashion that the former employees were required by Defendant to work overtime hours "off the clock" without compensation. With the exception of Plaintiff's affidavit, neither of the other two affidavits even suggest that there exist other former or current Dolgencorp employees who would like to join the suit. Instead, each affidavit simply states that the affiant observed other "customer service employees" who were working overtime without compensation. Plaintiff's affidavit is not much better. In her own affidavit Plaintiff merely suggests that there are other "customer service employees" that will join the lawsuit if given notice of it although she only identifies three other former employees, the two other affiants and Karen Adkins, a potential plaintiff who signed a consent to join. [52] The bottom line is that only three employees out of a potential class of the 58,000 nation-wide hourly employees employed by Defendant at any given time and the 26,000 employed in Florida filed affidavits to support Plaintiff's request for conditional certification.

52  *See* Doc. 13.

[*20]  Defendant -- on the other hand -- through the filing of twenty declarations of Dolgencorp officers, district managers, store managers, assistant store managers, lead clerks and store clerks/sales associates, identifies a substantial segment of the potential class of employees who have no desire to join the lawsuit and who allege that they never observed any overtime violations during the time period at issue. Notably, several of the declarants even worked in the same store as Plaintiff and the other opt-ins. [53] The other declarations are from employees who worked at stores in Florida and nationwide. [54]

53  Doc. 25, Ex. 9, Declaration of Erik Washburn, PP 2, 5-8; Doc. 25, Ex. 10, Declaration of Marlene Michaelsen, PP 3, 5-9; Doc. 25, Ex. 11, Declaration of Mark Jolly, PP 2, 6, 8-10; Doc. 25, Ex. 12, Declaration of Karen Robinson, PP 2, 8-9; Doc. 25, Ex. 13, Declaration of Melissa Hamilton, PP 2, 7-8; Doc. 25, Ex. 14, Declaration of Tamera Bruner, PP 2, 7-9; Doc. 25, Ex. 15, Declaration of Alicia Massey, PP 2, 8-9. Additionally, several other Dolgencorp employees submitted Declarations to the same effect from other stores in Florida. See Docs. 25, Exs. 16-20.
[*21]
54  *Id;* Doc. 25-31, Ex. 21, Declaration of Carol Gray; Doc. 25-32, Ex. 22, Declaration of Daisy Sarber.

Like *Rogers* and *White* the Court finds that the declarations filed by Defendant -- which cover not only the store where Plaintiff was employed but other stores in Florida and nationwide -- when contrasted with the conclusory affidavits of only three individuals is insufficient to demonstrate to the Court's satisfaction that there are other similarly situated employees who desire to opt-in to this action.

However, even assuming *arguendo* that the affidavits submitted by Plaintiff were considered sufficient to establish that there are other employees who might be interested in joining in a collective action, the Court nonetheless, concludes that the Plaintiff has also failed to establish that a class of other "customer service" employees is similarly situated to the Plaintiff, as required under the second prong of *Dybach.*

**B. The Proposed Class Is Not Similarly Situated**

The Eleventh Circuit has held that a plaintiff requesting conditional class certification under [*22]  *§ 216(b),* must "show that he is suing his employer for

Case 1:08-cv-04530-BSJ-MHD    Document 26-8    Filed 08/11/2008    Page 12 of 25

Page 6
2006 U.S. Dist. LEXIS 85471, *

himself and on behalf of other employees similarly situated." [55] In making this showing, plaintiffs need only show that their "positions are similar, not identical, to the positions held by the putative class members." [56] This "modest factual showing" is usually satisfied through the filing of affidavits of potential class members. [57] Although the similarly situated standard is a low threshold, a showing of similarity requires more than generalized allegations. [58]

> 55    Grayson v. K Mart Corporation, 79 F.3d 1086, 1096 (11th Cir. 1996) (internal quotations omitted).
> 56    Id.
> 57    Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306-307 (S.D.N.Y. 1998); see also Garner v. G.D. Searle Pharmaceuticals & Company, 802 F. Supp. 418, 422 (M.D. Ala. 1991).
> 58    Hipp, 252 F.3d at 1219 (citing Grayson, 79 F.3d at 1097).

Plaintiff contends that she and the [*23] two other affiants were employed by Defendant as "customer service employees". Plaintiff maintains that the three former employees performed similar customer service functions for Defendant, were paid on an hourly basis and regularly worked more than forty (40) hours per work week. Each of the affiants state that they were "responsible for greeting and assisting customers with their purchases, monitoring store inventory, and clean[ing] up of the store." [59]

> 59    Robinson Aff., P 5; Smith Aff., P 5; Jerome Aff., P 5.

Defendant contends that the affiants and potential opt-ins of "customer service employees" are not similarly-situated to Plaintiff. As evidenced by the proof submitted by Defendant the other two affiants held dissimilar job positions from Plaintiff with distinctly different duties and hours.

The most telling difference between the affiants and the Plaintiff is the fact that the affiants as store clerks generally worked part-time hours and they did not perform the same duties as the Plaintiff, [*24] who was an Assistant Store Manager. Moreover, as part-time clerks the Plaintiff has failed to suggest how these part-time store clerks were used so that they would have been required to work overtime hours.

Accordingly, for these reasons, the Court concludes that Plaintiff has failed to establish any basis to support the assertion that there are other employees who are similarly situated who wish to opt-in to a collective action.

## C. The Proposed Class Would Be Unmanageable Because There Is No Common Policy Alleged

In addition to Plaintiffs failure to establish that there are other similarly situated employees who wish to join the action sufficient for conditional certification, the Court concludes that permitting this case to proceed as a collective action involving all "customer service" employees nationwide would be completely unmanageable because there is no suggestion that this case involves a common plan or corporate policy that might make a collective action more efficient than handling the claims of employees individually.

Although, the existence of a common policy or plan is not a mandatory requirement in the Eleventh Circuit for conditional certification, [*25] nonetheless, the existence of a common policy or plan is relevant to the Court's exercise of its discretion in granting conditional certification because the underlying rationale for granting a collective action is to preserve judicial economy. [60] "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." [61] On the other hand, where a collective action would not serve the interests of judicial economy, plaintiffs should not be permitted to request court-supervised notice as a tool for drumming-up business. [62]

> 60    Hoffmann-La Roche Inc., 493 U.S. at 171-173.
> 61    Id. at 172.
> 62    Mackenzie, 276 F. Supp. 2d at 1221 n.6.

Plaintiff offers little to suggest that proceeding as a collective action would conserve judicial resources. Instead, Plaintiff simply proffers conclusory statements from two other former employees -- both of whom were employed [*26] at the same store -- that Defendant reduced their hours in the payroll system to avoid paying overtime. Plaintiff fails to make any suggestion that this happened to others -- even in the same store, let alone other stores nationwide -- and does not provide any information to suggest that the claimed reduction of hours in the payroll system was anything more than an isolated occurrence with regard to those employees.

In contrast, Defendant has filed declarations establishing that local store management is delegated the responsibility for making any appropriate edits to an employee's time. [63] After employees clock-in and -out for the week, only the Store Manager edits time, which is then sent to the payroll department at the headquarters. [64]

> 63    See supra notes 25 and 26 and accompanying text.

2006 U.S. Dist. LEXIS 85471, *

64 *See supra* notes 27 and 28 and accompanying text.

Thereafter, only the Store Manager can make edits by calling and requesting such from the payroll department. [65]

65 *See supra* note 28 and accompanying text.

[*27] Read together, the affidavits and declarations filed by the parties illustrate that even if there was a common practice, by necessity, it would have been limited to the particular store involved and could not have been a practice that occurred nationwide.

Accordingly, the Court concludes that this action is simply not suitable as a *§ 216(b)* collective action. The allegations at best involve practices at one local store and practices that are further limited to employees who were Assistant Store Managers, like the Plaintiff. To the extent that there are any other Assistant Store Managers who were employed at Store # 1651 in the period in question who contend that they were subject to the same overtime violations the claims of these individuals can be litigated on an individual basis either as additional plaintiffs in this case or in a separate action if they chose to proceed separately. There is, however, no justifiable reason for such claims to proceed as a collective action.

## III. RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's Motion For An Order Permitting Court Supervised Notice To Employees Of Their Opt-In Rights [*28]    (Doc. 12) should be **DENIED.** [66]

66    Because the Court has considered the affidavits filed by Plaintiff, Defendant's Motion To Strike Portions of the Affidavits (Doc. 24) is due to be **DENIED.**

**IN CHAMBERS** in Ocala, Florida, on November 13, 2006.

GARY R. JONES

United States Magistrate Judge

18

LEXSEE 2006 U.S. DIST. LEXIS 23272



Positive
As of: Aug 07, 2008

**CHRISTOPHER M. RODGERS, on behalf of himself and others similarly situated, Plaintiff, vs. CVS PHARMACY, INC., Defendant.**

**Case No. 8:05-CV-770-T-27MSS**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION**

*2006 U.S. Dist. LEXIS 23272*

**March 22, 2006, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by, Cause dismissed by *Rodgers v. CVS Pharm., Inc., 2006 U.S. Dist. LEXIS 57104 (M.D. Fla., Aug. 9, 2006)*

**COUNSEL:** [*1] For Christopher M. Rodgers, on behalf of himself and others similarly situated, Plaintiff: Gregory Keith Showers, Ryan D. Barack, Kwall, Showers & Coleman & Barack, P.A., Clearwater, FL.

For CVS Pharmacy, Inc., Defendant: Aaron Jarett Reed, Littler Mendelson, P.C., Miami, FL; Andrew J. Voss, Littler Mendelson, Chicago, IL; Lisa A. Schreter, Littler Mendelson, PC, Atlanta, GA.

**JUDGES:** JAMES D. WHITTEMORE, United States District Judge.

**OPINION BY:** JAMES D. WHITTEMORE

**OPINION**

**ORDER**

   **BEFORE THE COURT** are Plaintiff's Motion to Conditionally Certify Collective Action, to Facilitate Notice (Dkt. 11) and Defendant's Opposition (Dkt. 23). [1] Upon consideration, the Court having conducted a hearing, and being otherwise fully advised in the premises, Plaintiff's Motion to Conditionally Certify Collective Action, to Facilitate Notice (Dkt. 11) is DENIED.

   1   Also before the Court are Plaintiff's Notice of Supplemental Authority (Dkt. 37) and Defendant's Response (Dkt. 40).

**Factual Background**

   On April 20, 2005, Plaintiff, [*2] Christopher M. Rodgers, filed this action against Defendant, CVS Pharmacy, Inc., alleging failure to pay overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 201, et seq.* (Dkt. 1, Compl.). Plaintiff's suit is brought individually and on behalf of others similarly situated who are and were employed by Defendant during the three years preceding this lawsuit. (Dkt. 1). To date, two individuals have filed notices of consent to join the collective action: Sherry Sherer (Dkt. 4) and Francisco Lopez (Dkt. 17).

   Plaintiff alleges that Defendant violated the FLSA by "shaving" employees' time to avoid paying overtime wages. (Dkt. 1, PP2-3). Plaintiff alleges that Defendant did this through its managers, who would use a "manager override" feature to change time records on cash register "clock-in" systems. (Dkt. 1, PP18-21). Plaintiff asserts that Defendant's hourly employees with the following job titles are similarly situated:

   **Customer Service:** Responsible for customer service, cash handling, merchandising activities, light maintenance and any additional tasks specific to each position.

**Beauty Advisor:** Responsible [*3] for customer service and cosmetic merchandising activities.

**Photo Lab:** Responsible for customer service, photo finishing, cash handling and general equipment maintenance.

**Shift Supervisor:** Responsible for customer service, employee supervision, cash handling and merchandising activities.

**Pharmacy Technician:** Our Service Associates are responsible for ringing out prescriptions, answering telephones, and pharmacist referrals. Our Certified Technicians are responsible for customer service and prescription order processing, as well as problem resolution and inventory management.

(Dkt. 11, p. 2; Dkt. 11-3; http://www.cvs.com/corpInfo/careers/stores_hourly.html ).

Plaintiff filed the instant motion seeking conditional certification of a collective action, expedited discovery responses, and authorization for notice to potential collective action plaintiffs. (Dkt. 11). Specifically, Plaintiff requests certification of a collective class consisting of "all current and former hourly non-management employees of Defendant during the three (3) years prior to the filing of this action." (Dkt. 11, p. 10). Plaintiff also requests approval of the proposed notice [*4] to the class (Dkt. 11-9) and consent form (Dkt. 11-10) and authorization for Plaintiff's counsel to mail notices to potential opt-in plaintiffs. (Dkt. 11, pp. 10-11). Plaintiff also requests expedited discovery, including an interrogatory to Defendant seeking the names, addresses, telephone numbers, dates of employment, and job titles of all potential opt-in plaintiffs (Dkt. 11-11). (Dkt. 11, p. 13).

In opposition, Defendant argues that Plaintiff has failed to satisfy the requirements for conditional certification of a FLSA class. (Dkt. 23, pp. 2-3). Specifically, Defendant argues that Plaintiff has failed to provide sufficient evidence that potential opt-in plaintiffs are interested in joining the action, and even if he has, the potential opt-in plaintiffs are not similarly situated [2] (Dkt. 23, p. 2). Defendant further argues that the proposed opt-in class is too large and would consist of over 250,000 current and former CVS employees, regardless of their job title, store location, full-time or part-time status, or the identity of their supervisor/manager. (Dkt. 23, pp. 2-3). Defendant maintains that litigating with such a large class would violate its due process rights and would [*5] not meet the required goal of judicial economy and efficiency. (Dkt. 23, p. 3).

2   Defendant argues that the evidence offered by Plaintiff is insufficient because it is based on irrelevant and anonymous newspaper articles, unauthenticated Department of Labor reports, conclusory allegations and inadmissible hearsay. (Dkt. 23, pp. 10-11).

**Discussion**

**I. Applicable Law**

Pursuant to *29 U.S.C. § 216(b)*, certification of collective actions in FLSA cases is based on a theory of judicial economy, by which "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." [3] *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*. Courts utilize a two-tiered approach in making collective action certification determinations under the FLSA:

The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision [*6] -- usually based only on the pleadings and any affidavits which have been submitted -- whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question.

*Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001) (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)); see also Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).*

   3   The FLSA provides in pertinent part:

> Any employer who violates the provisions of *section 206* [the minimum wage statute] or *section 207* [the overtime pay statute] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

   *29 U.S.C. § 216(b).*

[*7]  At the notice stage, the court must initially determine whether: 1) there are other employees "who desire to opt in" to the action; and 2) the employees who desire to opt in are "similarly situated." *Dybach v. Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991).* This determination is made using a fairly lenient standard. *Cameron-Grant, 347 F.3d at 1243 n.2.* However, the plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotations and citation omitted).* Ultimately, the district court must satisfy itself that there are other employees who are similarly situated and who desire to opt in. *Dybach, 942 F.2d at 1567-68.*

**I. Other Employees Who Desire to Opt In**

"Plaintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they proposed." *Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983).* Evidence of other employees [*8] who desire to opt in may be based on affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees. *Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d. 1272, 1277 (M.D. Ala. 2004).* A plaintiff's or counsel's belief in the existence of other employees who desire to opt in and "unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify" certification of a collective action and notice to a potential class. *Mackenzie v. Kindred Hosps. East, L.L.C., 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (citing Haynes, 696 F.2d at 887); Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1236-37 (M.D. Ala. 2003).* Certification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit. *Mackenzie, 276 F. Supp. 2d at 1220 (citing Dybach, 942 F.2d at 1567-68) (emphasis added).* Rather, a showing that others desire to opt in is required before certification and notice will be authorized by the court. [*9] [4] *Id.*

   4  *See also Tyler v. Payless Shoe Source, 2005 U.S. Dist. LEXIS 31682, 2005 WL 3133763, *3 (M.D. Ala. Nov. 23, 2005)* (three to five consents to join were sufficient to establish that others desired to opt in); *Pendlebury v. Starbucks Coffee Co., 2005 U.S. Dist. LEXIS 574, 2005 WL 84500, *3 (S.D. Fla. Jan. 3, 2005)* (plaintiff's allegations and four affidavits by employees indicating that others desired to opt in were sufficient); *Bell v. Mynt Entm't, LLC, 223 F.R.D. 680, 683 (S.D. Fla. 2004)* (affidavits from seven plaintiffs indicating others desired to opt in and detailing allegations of wage violations were sufficient); *Hill v. CVS Rx Servs, Inc., Case No. CV00-HGD-3355-S, at 4-5 (N.D. Ala. July 27, 2001)* (plaintiff's affidavit and six consents to join were sufficient); *Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 362-63 (M.D. Ala. 1999)* (fifteen affidavits by employees with specific allegations of wage violations were sufficient).

In support of his argument that there are [*10] other employees who desire to opt in to this action, Plaintiff submits his own declaration in which he avers, "I am aware that other employees had changes made to their time sheets by CVS management using the 'manager override' feature to remove time from their payrolls records. This resulted in them not being paid properly for all hours worked." (Dkt. 11-5, Dec. of Christopher M. Rodgers, at P9). Plaintiff further avers, "I believe that if

other current and former employees of CVS became aware of this lawsuit they would choose to join in." (Rodgers' Dec. at P22). Plaintiff's declaration does not identify any individuals who desire to join this lawsuit.

In addition, Plaintiff offers the declarations of two former CVS employees, both of whom have filed notices of consent to join this lawsuit. (Dkt. 11-4, Dec. of Sherry Sherer; Dkt. 17-3, Dec. of Francisco Lopez). Sherry Sherer, who worked at a CVS in Florence, South Carolina, and Francisco Lopez, who worked at a CVS in Miami Beach, Florida, describe Defendant's failure to pay overtime compensation and "shaving time" by management. (Sherer's Dec. at PP2, 5, 7-8, 11, 13, 16, 17; Lopez's Dec. at PP2, 5-8, 10-11). Sherer and Lopez allege [*11] that their co-workers had similar experiences, and as a result, they "believe" that if other employees were aware of this lawsuit, they would choose to participate. (Sherer's Dec. at P18; Lopez's Dec. at P12). In their declarations, neither Sherer nor Lopez identify other employees who desire to join this lawsuit.

As further evidence that there are other employees who may desire to join the action, Plaintiff offers documents received from the Department of Labor which purport to show other employees have complained of alleged wage violations by Defendant. (Dkts. 11-6, 28, and 35). However, the complaints referenced in these documents relate to different types of wage violations and were made by employees with different job titles and descriptions who worked at CVS locations across the county. Although the documents indicate complaints of wage violations were made and investigated, none of the documents establish that any of those individuals desire to join this lawsuit. [5] Similarly, Plaintiff argues that Defendant's involvement in a prior lawsuit alleging FLSA violations based on paycheck deductions (not time shaving) serves as evidence of wage violations in this case and/or other [*12] individuals who would desire to join this lawsuit. (Dkt. 11-8). Again, even assuming the other lawsuit involved similar claims of wage violations, similarly situated employees, and allegations not barred by the statute of limitations, its mere existence does not provide evidence that other individuals desire to join this lawsuit.

> 5 Of the six investigations referenced in the Department of Labor documents, only two resulted in findings of violations of a different type than those alleged in this case. (Dkts. 11-6, 28, and 35). After an investigation of the one complaint involving time shaving that took place from February 19, 2001 through February 19, 2003, the Department of Labor found no violation based on a lack of documentation. (Dkt. 11-6). Plaintiff argues that the individuals who

filed this complaint would want to join this case "because a discovery request for their original time records would be able to support their assertions." (Dkt. 11, p. 8). However, even assuming these employees could be identified, were similarly situated, and desired to opt in, the wage violations they complained of occurred sometime prior to February, 2001 when the investigation began, which places their claims outside of the statute of limitations.

[*13] Plaintiff also offers two news paper articles in support of his motion. (Dkts. 11-2 and 11-7). The *New York Times* article merely addresses "shaving time" by other national retailers and is not relevant to a determination of whether other individuals desire to join this lawsuit. (Dkt. 11-2). The *Washington City Paper* article criticizes the CVS drugstore chain for everything from mistakes made by the pharmacy to dirty and cluttered stores. (Dkt. 11-7). In the twelve page article, there is one reference to CVS's wage practices, wherein an anonymous former employee of a "northeast" CVS store states that management "expected us to work unpaid overtime." (Dkt. 11-7, p. 5). The anonymous source does not allege his or her time was shaved. (Dkt. 11-7). This vague reference to a wage violation made by an anonymous former employee who worked at an undisclosed location is insufficient to support Plaintiff's motion.

In contrast, Defendant has submitted thirty one affidavits by current employees who worked with Plaintiff, Sherer and Lopez and who indicate that they do not desire to participate in this lawsuit. [6] (Dkt. 23, Exs. 3(a)-(n), 4(a)-(I), and 5(a)-(h)). These affiants deny that [*14] their work time has been "shaved" or that they have been denied overtime compensation. [7] (Dkt. 23, Exs. 3, 4 and 5 inclusive).

> 6 Specifically, Defendant has provided affidavits from fourteen employees from Plaintiff's store, nine employees from Sherer's store, and eight employees from Lopez's store. (Dkt. 23, Exs. 3, 4 and 5 inclusive).
> 7 For purposes of the instant motion, Defendant's affidavits are relevant only to a determination of whether Plaintiff has demonstrated a "reasonable basis" for crediting his assertions that aggrieved employees exist in the class he proposes. *Haynes, 696 F.2d at 887.*

Upon consideration, Plaintiff has failed to provide sufficient evidence that there are other employees who desire to opt in to this action, other than the two who have filed consents. In the year since this lawsuit was filed, Plaintiff has only been able to identify those two individuals. The significance of this number is drastically

minimized when compared to the 250,000 hourly employees [*15] who worked for Defendant in the last three years at 5,375 stores in 36 states. (Dkt. 23-2, Aff. of Mark Griffin, at PP6-7). Moreover, Plaintiff, Sherer and Lopez's averments that they "believe" other employees would opt in are speculative, vague and conclusory. They have failed to identify any other employees who desire to join or who have expressed an interest in joining this action. Plaintiff's unsupported beliefs and expectations that others *may* desire to opt in are insufficient to justify certification of a collective action and notice to a potential class. [8] *See Mackenzie, 276 F. Supp. 2d at 1220* (certification and notice are not appropriate to determine *whether* others desire to opt in).

> [8]  *See also Wombles v. Title Max of Ala., Inc., 2005 U.S. Dist. LEXIS 34733, 2005 WL 3312670, *3 (M.D. Ala. Dec. 7, 2005)* (two consents to join in and five nearly identical affidavits by plaintiffs indicating that they "believe" others desire to join the lawsuit were insufficient to establish that others desired to opt in); *Davis, 303 F. Supp. 2d at 1277* (plaintiff's testimony that twelve other employees "were unhappy with" Defendant's policies and would join the suit, without supporting affidavits or consents to join, were insufficient); *Slaughter v. CVS Rx Servs., Inc., 2004 U.S. Dist. LEXIS 30034, Case No. CV03-CO-01403-S, at 12-13 (N.D. Ala. Nov. 1, 2004)* (thirteen plaintiffs and one affidavit by an employee who desired to join was insufficient); *Horne, 279 F. Supp. 2d at 1236* (plaintiff's own affidavit indicating he "believed" others desire to opt in was insufficient); *Mackenzie, 276 F. Supp. 2d at 1220* (plaintiff's failure to provide evidence of other individuals who desired to join the lawsuit and plaintiff's admission that he did not know of any individuals who desired to opt in was insufficient); *Smith v. Tradesmen Int'l, Inc., 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003)* (three identical affidavits by employees with different job titles and job responsibilities who worked in different geographic locations were insufficient).

[*16] Plaintiff has not demonstrated a reasonable basis for crediting his assertions that other aggrieved employees exist in the class he proposes. *See Haynes, 696 F.2d at 887.* The three declarations offered by Plaintiff do not provide detailed allegations that engage Defendants' thirty one affidavits to the contrary. *See Grayson, 79 F.3d at 1097; Wombles, 2005 U.S. Dist. LEXIS 34733, 2005 WL 3312670, at *3* (plaintiffs' affidavits and two consents to join were not sufficient to engage defendant's forty six affidavits to the contrary). Accordingly, Plaintiff has failed to demonstrate to the Court's satisfaction that there are other employees who desire to opt in to this lawsuit.

## II. Similarly Situated Employees

Even if Plaintiff's motion was sufficient to demonstrate the existence of individuals who desire to opt in, he has not shown that he is similarly situated to Sherer, Lopez, or any other potential class plaintiffs. In determining whether employees are similarly situated, the court must consider whether the employees are similar with respect to their job requirements and pay provisions and the commonality of their claims. *Dybach, 942 F.2d at 1567-68;* [*17] *Horne, 279 F. Supp. 2d at 1234.* Plaintiffs must only demonstrate that their positions are similar, not identical, to the positions of the potential class plaintiffs. *Grayson, 79 F.3d at 1096.* Although the similarly situated standard is not a stringent one, a showing of similarity requires more than unsupported and generalized allegations. *Hipp, 252 F.3d at 1219 (citing Grayson, 79 F.3d at 1097); Haynes, 696 F.2d at 887.*

In his motion, Plaintiff argues that all of Defendant's hourly, non-management employees are similarly situated with respect to their job requirements and pay provisions, including customer service, beauty advisor, photo lab, shift supervisor, and pharmacy technician employees. (Dkt. 11, pp. 2, 9-10). Plaintiff maintains that these employees utilize the same computer system to clock in and out (the same computers that allegedly allow managers to shave time) and share the same job functions, including core duties to provide customer service and cash handling. (Dkt. 11, pp. 2, 9).

Despite these allegations, Plaintiff has not shown he is similarly situated with Sherer, Lopez or other [*18] potential class plaintiffs with regard to their job requirements. [9] In their declarations, Plaintiff, Sherer and Lopez do not describe their job requirements and/or job descriptions to allow for an evaluation of similarities. Plaintiff's reliance on the Defendant's descriptions of the positions on the company website, without more, is not sufficient to allow for a comparison of job requirements. [10] Moreover, Lopez's job title and job requirements are not provided in the record.

> [9]  Plaintiff, Sherer and Lopez were hourly employees. (Griffin's Aff. at P9; Sherer's Dec. at P3; Lopez's Dec. at P3). For purposes of the instant motion, it is undisputed that their pay provisions were similar.
> [10]  Plaintiff was a night shift supervisor, and Sherer was a pharmacy technician. (Griffin's Aff. at PP9-11). Although all of the five positions described on the website involve customer service, three of them involve cash handling

2006 U.S. Dist. LEXIS 23272, *

(customer service, photo lab, and shift supervisor) and two do not (beauty advisor and pharmacy technician). (Dkt. 11, p. 2; Dkt. 11-3). Accordingly, based on these job descriptions, Plaintiff's argument that he shares core duties with Sherer is without merit.

[*19] Although Plaintiff, Sherer and Lopez clocked in and out on the company computer, the fact that their respective stores are located in three different cities (and two states) and are run by different managers precludes a finding of similarity on this basis. [11] Further, although Plaintiff alleges that he and Sherer share core duties, such as customer service and cash handling, he has not provided any evidence to support this allegation. Because Plaintiff has not even provided Lopez's job title or job requirements, the Court cannot determine whether Plaintiff and Lopez share *any* similar duties, core or otherwise. Even assuming that Plaintiff shares core duties with Sherer and Lopez, he has not established that involvement in customer service and cash handling similarly situates them to Defendant's 250,000 hourly employees.

> 11  Defendant argues that Plaintiff has not shown a common policy or plan resulting in wage violations. (Dkt. 23, pp. 13-16). Although this type of evidence is not required, evidence of "a unified policy, plan, or scheme" may be sufficient to establish similarity of the putative class. *Grayson, 79 F.3d at 1095*. Plaintiff suggests that by requiring employees to clock in and out on company computers, Defendant allows it managers to override the time records and shave time. Despite Plaintiff's allegations that time shaving has affected three employees at three different stores, the allegations do not overcome Defendant's affidavits to the contrary. Again, Defendant has offered affidavits from multiple employees at each of those stores who deny that their time was shaved.

[*20]  Although Plaintiff is not required to demonstrate that his position is identical to the putative class plaintiffs, he must demonstrate similarity based on more that generalized allegations. *See Hipp, 252 F.3d at 1219; Grayson, 79 F.3d at 1096-97*. Plaintiff has failed to do so. [12] Therefore, Plaintiff has failed to demonstrate to the Court's satisfaction that there are other similarly situated employees who desire to opt in to this action.

> 12  Defendant also argues that Plaintiff has failed to show commonality between his claims and the claims of the putative class. In support, Defendant argues that Plaintiff, Sherer and Lopez assert divergent theories about how their rights to overtime were violated. Sherer asserts that her manager improperly designated time worked as sick time, deducted time for lunch breaks not taken, and reduced scheduled hours. (Sherer's Dec. at PP11, 13, 16, 17). Lopez asserts he was required to "work off the clock" and was not paid for the first two weeks of his employment. (Lopez's Dec. at PP5, 7, 11). Despite the different types of wage violations alleged, Plaintiff, Sherer and Lopez each assert that their managers shaved their time. (Plaintiff's Dec. at P5; Sherer's Dec. at P5; Lopez's Dec. at P5). The allegations of time shaving establish a commonality between Plaintiff, Sherer and Lopez's claims. Nevertheless, Plaintiff has not provided sufficient evidence of a commonality between these claims and the claims of the putative class.

[*21]  Accordingly, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Conditionally Certify Collective Action, to Facilitate Notice (Dkt. 11) is **DENIED**.

**DONE AND ORDERED** in chambers this 22nd day of March, 2006.

**JAMES D. WHITTEMORE**

**United States District Judge**

**19**

LEXSEE 2006 U.S. DIST. LEXIS 71847



Cited
As of: Aug 07, 2008

**RAY SILVA, et al., Plaintiffs v. GORDON GAMING CORPORATION, et al., Defendants**

**Case No. 2:06-cv-00696-JCM-PAL**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA**

*2006 U.S. Dist. LEXIS 71847; 12 Wage & Hour Cas. 2d (BNA) 90*

**September 25, 2006, Decided
September 27, 2006, Filed**

**COUNSEL:** [*1] For Ray Silva, Plaintiff: Sharon Nelson, Nelson Law Foundation, Las Vegas, NV.

For Gordon Gaming Corporation, doing business as Sahara Hotel and Casino, Defendant: Gary C. Moss, DLA Piper US LLP, Las Vegas, NV; Joanna S. Kishner, DLA Piper US LLP, Las Vegas, NV; Paul T. Trimmer, DLA Piper US LLP, Las Vegas, NV.

**JUDGES:** PEGGY A. LEEN, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** PEGGY A. LEEN

**OPINION**

***ORDER***

(M/Conditionally Certify - # 11)

(M/Protective Order - # 18)

Before the court is Plaintiff's Motion to Conditionally Certify Collective Action for Purposes of Discovery and Notice and Request to Send Notice to Putative Collective Action Members (# 11). The court has considered the motion, defendant's Opposition (# 15), plaintiff's Reply (# 16), and the arguments of counsel at a hearing conducted August 29, 2006. Sharon Nelson appeared on behalf of the plaintiff, and Joanna Kishner appeared on behalf of the defendant. Also, before the court is Plaintiff's Emergency Motion for Protective Order Pursuant to *Fed. R. Civ. P. 26(c)*(# 18).

The court has considered the motion, Defendant's Opposition (# 20), and Plaintiff's Reply (# 21).

***BACKGROUND***

[*2] The Complaint in this case was filed in state court and removed June 6, 2006 (# 1). Plaintiff Ray Silva brought an action on behalf of himself and on behalf of a class of all similarly situated individuals and seeks class/collective action certification, asserting the defendant violated the provisions of the Fair Labor Standards Act ("FLSA") by requiring plaintiff and others to work a minimum of fifteen minutes at a pre-shift briefing without being paid.

**I.** *Motion to Conditionally Certify (# 11)*

In the current motion, he seeks an order: (1) granting conditional certification of a collective action to proceed with his FLSA claims; (2) giving him permission to send a notice of collective action/class action and consent to join via mail or local news media; and (3) establishing a hearing to set up scheduling and status report deadlines, including class discovery deadlines. The motion is supported by Silva's declaration which succinctly states: (1) he was a security officer employed by the defendant from April 2005 to May 2006; (2) while employed he was required to attend mandatory pre-shift security briefings fifteen minutes before the start of his shift; (3) he was [*3] not paid for the time spent in pre-shift briefings; and (4) on information and belief other security officers at the defendant property were also required to attend pre-shift briefings and were not paid for that time. Defendant opposes the motion, asserting Silva's bare-bones declaration does not meet the standard

Page 2

2006 U.S. Dist. LEXIS 71847, *; 12 Wage & Hour Cas. 2d (BNA) 90

for conditional certification at the notice stage of this litigation. Defendant argues conditional certification is premature and that the parties should conduct some preliminary discovery concerning whether plaintiff has any "acceptable evidence" there are other similarly situated putative class members, and if so, whether he is an appropriate representative. Defendant argues the plaintiff has not shown by admissible evidence that there are other employees who are similarly situated who were not compensated for mandatory pre-shift briefings, or that there are putative class members who wish to opt in to this action. Defendant also contends plaintiff has not shown that it had a policy or plan that violates the FLSA, a necessary showing for conditional certification. If the court allows conditional certification and notice, defendant requests that the court be involved in [*4] the preparation and approval of the notice in accordance with what the Supreme Court dictates in *Hoffmann-LaRouche, Inc. v. Sperling, 493 U.S. 165, 172, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).*

Plaintiff replies that his burden is negligible to establish the criteria for conditional certification. Under the approach adopted by at least two district judges in this district at the initial "notice stage," the court usually relies on pleadings and any affidavits submitted applying a fairly lenient standard to determine whether there are putative class members who are similarly situated. The second stage occurs after the conclusion of discovery when the party opposing a conditional class may file a motion for decertification. Silva argues that his complaint allegations, coupled with his affidavit, meet the minimal burden required at the notice stage of this proceeding. Silva disputes the defendant's contention that he must identify other individuals who wish to join this action to obtain conditional certification. Finally, Silva agrees it would be appropriate for the parties to develop consensus on the form of the notice, and seek prior court approval.

## DISCUSSION

Under the Fair Labor Standards [*5] Act, an employee may initiate a class action on behalf of himself and others similarly situated. *29 U.S.C. § 216(b).* The requirements for class action certification under *Fed. R. Civ. P. 23(a)* do not apply to claims arising under the Act. *Kinney Shoe Corp. v. Vorhes, 564 F.2d 859, 862 (9th Cir. 1977).* The FLSA permits an action to recover minimum wages, overtime compensation, liquidated damages, or injunctive relief. While a plaintiff may bring an action on behalf of himself and others similarly situated, "no employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought." *29 U.S.C. § 216(b).* This is

commonly referred to as the "opt-in" provision. The Supreme Court has held that district courts have the discretion, in appropriate cases, to implement *§ 216(b)* by facilitating notice to potential plaintiffs. *Hoffmann-LaRouche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).* The Act does not define the term "collective action." However, the Ninth Circuit has [*6] held that a collective action is "an action brought by an employee or employees for and in behalf of himself or themselves and other employees similarly situated." *Gray v. Swanney-McDonald, Inc., 436 F.2d 652, 655 (quoting H. R. Rep. No. 326, 80th Cong., 1st Sess. at 14)*(internal quotations omitted).

In *Bonilla v. Las Vegas Cigar Company, 61 F. Supp. 2d 1129 (D. Nev. 1999),* the district judge found that *§ 216(b)* does not require any unnamed plaintiff to opt into a lawsuit in order for the action to be a collective action. Thus, "named plaintiffs can commence a collective action by filing the complaint and their written consents." The *Bonilla* decision discussed the approach taken by courts outside the Ninth Circuit in determining what constitutes a collective action under *§ 216(b)* which have "certified" or "authorized" an action to proceed as a collective action in much the same way as *Fed. R. Civ. P. 23* class actions are required to be certified. The district judge concluded that the Ninth Circuit would not adopt the approach taken by the courts which apply *Rule 23* principles to determine whether an [*7] action may proceed as collective action under *§ 216(b)* holding "that certification does not serve the same purposes in a *§ 216(b)* action as it does in a Rule 23 action." *Id. at 1137.* The court found that certification in a *§ 216(b)* action is an effective case management tool. Citing the Supreme Court's decision in *Sperling, supra,* which held that a district court could, in its discretion, effect notice to unnamed plaintiffs for purposes of case management, the district judge found that certification for purposes of *§ 216(b)* "allows the court to control the notice procedure, the definition of the class, a cutoff date for opting in, and an orderly joinder of parties." *Id.* (citations omitted). The court concluded "that an action is a collective action under *§ 216(b)* where plaintiffs, on the face of their complaint, purport to sue on behalf of themselves and 'others similarly situated,' as stated in *§ 216(b)* and *Gray." Id. at 1139.*

A number of courts have adopted a "two-step" approach for determining whether potential plaintiffs are "similarly situated" for purposes of class certification under *§ 216(b).* This approach involves notification [*8] to potential class members of the representative action followed by a final "similarly situated" determination after discovery is completed. At the first, or "notice stage" the court usually relies on the pleadings and any affidavits submitted, and applies a lenient standard which

Case 1:08-cv-04530-BSJ-MHD    Document 26-8    Filed 08/11/2008    Page 24 of 25

Page 3

2006 U.S. Dist. LEXIS 71847, *; 12 Wage & Hour Cas. 2d (BNA) 90

typically results in "conditional certification" of a representative class. *Mooney v. Aramco Services, Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995); Kane v. Gage, 138 F. Supp. 2d 212, 214 (D. Mass. 2001).* At the initial notice stage, plaintiff needs only to make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law. *Mooney, Id. at 1214 n. 8.*

Although courts have applied a lenient standard and required only minimal evidence for conditional certification for purposes of providing notice to potential class members, the court finds the plaintiff here has not met even that lenient, minimal standard. The plaintiff's complaint alleges "on information and belief he was required to be present to work at a minimum of fifteen minutes prior to a shift; he was not paid for the additional fifteen minutes at pre-shift [*9] briefings (*Id.,* P 13); and that plaintiff and others similarly situated worked in excess of forty hours in a work week (*Id.,* P 14). Similarly, his declaration states "on information and belief that other security officers at the defendant property were also required to attend pre-shift briefings and were not paid for that time. The court lacks sufficient information, even applying the lenient standard recognized by the courts, to determine whether the defendant had a policy or plan that violated the FLSA or that a similarly situated group of potential plaintiffs exists. Accordingly, the court will deny the motion without prejudice to allow the parties sixty (60) days in which to conduct some preliminary discovery to determine whether conditional certification and notice to potential class members should be ordered.

## II. *Motion for Protective Order (# 18)*

Plaintiff filed an Emergency Motion for Protective Order on September 6, 2006 (# 18) while the undersigned was out of the district. The motion requested a protective order precluding the plaintiff's deposition from going forward as noticed on September 19, 2006. Counsel for plaintiff asserted that the deposition [*10] was unilaterally noticed, and that she had a trial scheduled to begin September 18, 2006 and was, therefore, unable to attend. Counsel also represents that she has a scheduled firm retreat following the September 18, 2006 trial and is not available until mid-October to attend her client's deposition. She has provided a series of available dates in October, but counsel for defendant declined her request to reschedule, insisting that a motion for protective order be filed. Defendant opposes the plaintiff's motion for protective order, arguing the plaintiff's deposition should be taken before the court considers the plaintiff's request for conditional certification. Additionally, counsel for defendant doubts whether plaintiff's asserted scheduling conflicts are genuine reasons for the deposition not going forward

earlier than mid-October. Defendant contends that it will be prejudiced if the court allows conditional certification without allowing it an opportunity to depose the plaintiff and conduct other preliminary discovery. Counsel requests that the court stay its decision on conditional certification and order that no class discovery should be conducted until after the plaintiff is [*11] deposed.

The court has denied the plaintiff's initial request for conditional certification, indicating the parties would be allowed sixty (60) days in which to conduct limited preliminary discovery on whether conditional certification should be allowed. Thus, the court will grant the plaintiff's motion for protective order with respect to the scheduling of the deposition on September 19, 2006, and require counsel for the parties to meet and confer in a good faith effort to reschedule the deposition at a mutually convenient date to counsel and the deponent no later than thirty (30) days from entry of this order.

Having reviewed and considered the matters,

**IT IS ORDERED:**

1. Plaintiff's Motion to Conditionally Certify (# 11) is DENIED without prejudice.

2. The parties shall have sixty (60) days from entry of this order in which to conduct limited preliminary discovery to determine whether the plaintiff can establish, applying the lenient standard recognized by the courts, that there are putative class members subjected to a single decision, policy, or plan of the defendant employer asserted to violate the FLSA.

3. Plaintiff's Motion for Protective Order (# [*12] 18) is GRANTED in part and DENIED in part consistent with the provisions of this order.

4. Counsel for the parties shall meet and confer in a good faith effort to schedule the plaintiff's deposition on a mutually convenient date to counsel and the deponent no later than thirty (30) days from entry of this order.

5. Plaintiff shall have until **December 6, 2006** in which to file a motion to conditionally certify the class, following the completion of limited discovery.

Dated this 25th day of September, 2006.

2006 U.S. Dist. LEXIS 71847, *; 12 Wage & Hour Cas. 2d (BNA) 90

PEGGY A. LEEN                                    UNITED STATES MAGISTRATE JUDGE

**20**

LEXSEE 2007 U.S. DIST. LEXIS 80030



Analysis
As of: Aug 07, 2008

**David Silverman v. SmithKline Beecham Corporation, et al. related case: Mary Stehle v. SmithKline Beecham Corp., d/b/a GlaxoSmithKline, PLC et al.**

**Case No. CV 06-7272 DSF (CTx) related case: CV 07-2601-DSF(CTx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2007 U.S. Dist. LEXIS 80030*

**October 15, 2007, Decided**
**October 15, 2007, Filed; October 16, 2007, Docketed**

**SUBSEQUENT HISTORY:** Motion denied by *Silverman v. Smithkline Beecham Corp., 2007 U.S. Dist. LEXIS 80035 (C.D. Cal., Oct. 15, 2007)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former pharmaceutical sales representative sued defendant company for allegedly misclassifying its pharmaceutical sales representatives as non-exempt employees in violation of the Fair Labor Standards Act of 1938 (FLSA), *29 U.S.C.S. § 201 et seq.*, and related state law labor statutes. The sales representative moved the court to conditionally certify a collective action under the FLSA and issue notice to the putative class.

**OVERVIEW:** The sales representative sought class certification for a class of all covered employees of the company employed on or after the date that was three years before the filing of the complaint. The court found that the FLSA did not define the words "similarly situated" for purposes of determining whether a collective action could be maintained. The court determined that the best method was to apply an ad hoc standard rather than a *Fed. R. Civ. P. 23* standard. While all but one of the declarations submitted by the sales representative noted the geographic location of the declarant's employment, none of the declarations identified the business unit or units in which the declarant worked. The sales representative had not demonstrated that the members of the broad class

proposed were similarly situated. If the sales representative wished to have the broad proposed class certified, even on a conditional basis, he had to provide at least some evidence that the alleged similarities in employment practices were common across the entire organization of the company.

**OUTCOME:** The court denied the sales representative's motion for a conditional collective action certification and notice without prejudice.

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Opt-Out Provisions*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN1] The Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.*, permits an action against any employer in any federal or state court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. *29 U.S.C.S. § 216(b).* Collective actions under the FLSA are "opt-in", rather than "opt-out", no employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Case 1:08-cv-04530-BSJ-MHD     Document 26-9     Filed 08/11/2008     Page 3 of 17

Page 2
2007 U.S. Dist. LEXIS 80030, *

*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions > General Overview*
[HN2] The Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.*, does not define the words "similarly situated" for purposes of determining whether a collective action can be maintained and the United States Court of Appeals for the Ninth Circuit has not yet established a standard. Some courts have applied a *Fed. R. Civ. P. 23* standard. Others have suggested that the pre-1966 *Rule 23* standard, which allowed for "spurious" class actions could be applied. Others have applied a method by which a court determines, on an ad hoc case-by-case basis, whether plaintiffs are "similarly situated." The better method is to apply an ad hoc standard rather than a *Fed. R. Civ. P. 23* standard. To interpret this "similarly situated" standard by simply incorporating the requirements of *Rule 23* (either the current version or the pre 1966 version) would effectively ignore Congress' directive.

*Civil Procedure > Class Actions > Certification*
[HN3] For preliminary class certification a court must decide, based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action. This determination is usually made under a fairly lenient standard and typically results in conditional class certification.

*Civil Procedure > Class Actions > Decertification*
[HN4] Once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class. Review at this stage is much more stringent.

*Civil Procedure > Class Actions > Certification*
[HN5] With regard to class certification, a standard requiring no more than mere allegations would render conditional certification not only lenient but virtually automatic. Instead, the United States District Court for the Central District of California adopts the standard suggested by the United States Court of Appeals for the Eleventh Circuit and will require actual evidence showing that there are a number of employees who are "similarly situated" and who may desire to "opt-in." The evidence does not have to be overwhelming, but it should demonstrate some likelihood that the proposed class members are similarly situated and that more than a minimal number of prospective class members are interested in joining the suit.

COUNSEL: [*1] For David Silverman, on behalf of himself and others similarly situated, Plaintiff: Catherine Burke Schmidt, Matthew S McNicholas, LEAD ATTORNEY, McNicholas and McNicholas, Los Angeles, CA; Charles Joseph, LEAD ATTORNEY, Joseph and Herzfeld, New York, NY; Elana R Levine, Eric B Kingsley, George R Kingsley, LEAD ATTORNEYS, Kingsley and Kingsley, Enico, CA.

For Susan J Klein, Plaintiff: Catherine Burke Schmidt, LEAD ATTORNEY, McNicholas and McNicholas, Los Angeles, CA; Elana R Levine, Eric B Kingsley, George R Kingsley, LEAD ATTORNEYS, Kingsley and Kingsley, Enico, CA.

For Elizabeth Hyatt, Plaintiff: Charles Joseph, LEAD ATTORNEY, Joseph and Herzfeld, New York, NY; Elana R Levine, Eric B Kingsley, George R Kingsley, LEAD ATTORNEYS, Kingsley and Kingsley, Enico, CA; Matthew S McNicholas, LEAD ATTORNEY, McNicholas and McNicholas, Los Angeles, CA.

For GlaxoSmithKline PLC, Defendant: Barbara L Johnson, LEAD ATTORNEY, Paul Hastings Janofsky and Walker, Washington, DC; Donna D Melby, LEAD ATTORNEY, Paul Hstings Janofsky and Walker, Los Angeles, CA.

JUDGES: The Honorable DALE S. FISCHER, United States District Judge.

OPINION BY: DALE S. FISCHER

OPINION

**Proceedings:** (In Chambers) Order DENYING Without Prejudice Plaintiff's Motion [*2] for Conditional Collective Action Certification and Notice

Before the Court is Plaintiff's Motion for Conditional Collective Action Certification and Notice. Having considered the papers submitted by the parties and oral argument the Court DENIES the Motion without prejudice.

**I. INTRODUCTION**

Plaintiff David Silverman, a former pharmaceutical sales representative for Defendant GlaxoSmithKlein ("GSK"), has sued GSK for allegedly misclassifying its pharmaceutical sales representatives as non-exempt employees in violation of the Federal Labor Standards Act of 1938 ("FLSA"), *29 U.S.C. § 201 et seq.*, and related state law labor statues. In this motion, Plaintiff requests that the court conditionally certify a collective action under the FLSA and issue notice to the putative

2007 U.S. Dist. LEXIS 80030, *

class of "all Covered Employees employed by Defendants on or after the date that is three years before the filing of the Complaint in this case." [1] (First Am. Compl. at P 20.)

    1   "Covered Employees" are defined to be individuals employed by GSK in three sales representative job titles and those performing substantially similar work (First Am Compl at P 2.)

## II. LEGAL STANDARD

[HN1] The FLSA permits an action "against any employer . [*3] . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *29 U.S.C. § 216(b)*. Collective actions under the FLSA are "opt-in," rather than "opt-out," "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id.

[HN2] The FLSA does not define the words "similarly situated" for purposes of determining whether a collective action can be maintained and the Ninth Circuit has not yet established a standard. Some courts have applied a *Fed. R. Civ. P. 23* standard. See. e.g., *Shushan v. Univ. of Colo. at Boulder, 132 F.R.D. 263, 268 (D. Colo. 1990)*. [2] Others have suggested that the pre-1966 *Rule 23* standard, which allowed for "spurious" class actions could be applied. See *Bayles v. Am. Med. Response of Colo., 950 F. Supp. 1053, 1064-66 (D. Colo. 1996)*. Others have applied a method by which "a court determines, on an *ad hoc* case-by-case basis, whether plaintiffs are 'similarly situated.'" *Thiessen v. GE Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001)* [*4] (citation omitted; interpreting ADEA); *Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 467 (N.D. Cal. 2004)*.

    2   Shushan involved a collective action under the Age Discrimination in Employment Act ("ADEA"), which incorporates the *§ 216(b)* collective action provision.

The better method is to apply an ad hoc standard rather than a *Fed. R. Civ. P. 23* standard. "Congress clearly chose not to have the *Rule 23* standards apply to class actions under the ADEA, and instead adopted the "similarly situated" standard. To now interpret this "similarly situated" standard by simply incorporating the requirements of *Rule 23* (either the current version or the pre 1966 version) would effectively ignore Congress' directive." *Thiessen, 267 F.3d at 1105* (noting that there is little difference among the three proposed standards).

Plaintiff asks for conditional class certification in order to send class notice. For this type of [HN3] preliminary certification "the court must . . . decide, based primarily on the pleadings and any affidavits submitted by the parties, whether the potential class should be given notice of the action." *Leuthold, 224 F.R.D. at 467* (citation omitted). This determination "is usually made [*5] under a fairly lenient standard and typically results in conditional class certification." *Id. at 467*. [3]

    3   [HN4] "Once discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class." *Leuthold, 224 F.R.D. at 467*. Review at this stage is much more stringent. See *Davis v. Charoen Pokphand (USA), Inc., 303 F. Supp. 2d 1272, 1276 (M.D. Ala. 2004)* (citation omitted) (noting that representative classes rarely, if ever, survive the second stage).

[HN5] A standard requiring no more than mere allegations would render conditional certification not only lenient but virtually automatic. Instead, the Court adopts the standard suggested by the Eleventh Circuit in *Dybach v. Florida Department of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)*, and will require actual "evidence . . . showing that there are a number of employees . . . who are 'similarly situated' and who may desire to 'opt-in.'" The evidence does not have to be overwhelming, but it should demonstrate some likelihood that the proposed class members are similarly situated and that more than a minimal number of prospective class members are interested in joining the suit.

## III. DISCUSSION

Plaintiff [*6] has provided nine declarations from one current and eight former GSK sales representatives in support of his claim that the members of the putative class are similarly situated. [4] These declarations are nearly identical and each states that, among other things, the declarant was required to memorize scripts to read at meetings with potential customers and was not allowed to deviate from the scripts (see, e.g., Klein Decl. at P 7), the declarant was required to adhere to specific written materials prepared by GSK (see. e.g., id.), the declarant was not allowed to choose which potential customers he or she called on (see, e.g., id.), the declarant was required to check e-mail and voice mail messages regularly (see. e.g., id.), and the declarant was periodically accompanied by a supervisor when making calls to potential customers (see, e.g., id. at P 8). [5] While all but one of the declarations note the geographic location of the declarant's employment, [6] none of the declarations

identifies the business unit or units in which the declarant worked.

4    The Court sustains Defendant's hearsay objections to testimony regarding conversations a declarant had with other sales representatives, and [*7] disregards testimony for which there is no foundation. Otherwise, Defendant's evidentiary objections are overruled.

5    The Court strongly disapproves of the use of boilerplate attorney-drafted declarations. In this case, some portions of the declaration do not even apply to some declarants, e.g., the use of "regardless of specific job title" in paragraph five where the declarant had only one job title. The Court questions, but need not decide, whether such boilerplate "testimony" would be sufficient to meet Plaintiff's evidentiary burden.

6    Only Plaintiff Silverman's declaration omits his place of employment. In the complaint he alleges he was employed in California. (First Am. Compl. at P 8).

Defendant asserts that GSK does not have a single sales organization, but rather has eight separate business units that operate in differing ways. (Def.'s Opp. at 4; Sons Decl. at PP 6, 7. [7]) As such, Defendant argues that the limited sample of declarations that Plaintiff has provided does not demonstrate that the members of the broad class proposed are similarly situated.

7    Plaintiff objects to Sons's testimony regarding the structure of GSK's business and the differences in which the various business [*8]

units conduct sales. The Court finds that Sons's former position with "overall responsibility for HR operations supporting all of the Sales Divisions within GSK" makes him competent to offer this testimony (See Sons Decl. at P 1)

The Court agrees with Defendant. Plaintiff has provided a narrow, potentially unrepresentative, sample in support of a broad conclusion. If Plaintiff wishes to have the broad proposed class certified, even on a conditional basis, he will have to provide at least some evidence that the alleged similarities in employment practices were common across the entire organization of GSK.

As the Plaintiff has not met this burden, there is no need to decide now whether Plaintiff has established that a number of prospective class members want to opt in to the class.

IV. CONCLUSION

The Court DENIES Plaintiff's Motion for Conditional Collective Action Certification and Notice without prejudice.

Because the Court declines to certify the proposed class, the Court need not consider the adequacy of the proposed notice. However, the Court agrees with Defendant that the parties should meet and confer regarding the language of the notice. The Court orders that, in the event Plaintiff [*9] chooses to file a renewed motion for conditional class certification, the parties attempt to reach consensus on the language of the notice.

**21**



Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
**2003 WL 22701017 (E.D.Pa.)**

**C**Smith v. Sovereign Bancorp, Inc.
E.D.Pa.,2003.
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
Michelle SMITH, et al., Plaintiffs,
v.
SOVEREIGN BANCORP, INC., et al., Defendants.
**No. Civ.A. 03-2420.**

Nov. 13, 2003.

Joseph Edward Mccain, The Law Offices of J.
Edward McCain, III, Munira Mack, Philadelphia, PA,
for Plaintiff.
Larry J. Rappoport, Stevens & Lee , King of Prussia,
PA, for Defendant.

*MEMORANDUM AND ORDER*

SCHILLER, J.
**\*1** Plaintiffs Michelle Smith and Michelle Lyons
bring suit against their employer, Sovereign Bank
("Sovereign"), alleging violations of, inter alia, the
Fair Labor Standards Act, 29 U.S.C. §§ 201-219
("FLSA"). Specifically, Plaintiffs allege that
Sovereign failed to pay its employees time-and-a-half
for hours worked in excess of forty hours per week
and on Saturdays. Presently before the Court is
Plaintiff's motion requesting that the Court grant
preliminary class certification to their FLSA claim
and approve an "opt-in" claim notice to be sent to all
of Sovereign's hourly, non-FLSA-exempt employees.
For the reasons set out below, the Court will deny
this motion without prejudice.

**I. FACTUAL BACKGROUND**

Plaintiffs have been employed at Sovereign as hourly
employees since September of 1998. (Compl.¶¶ 6-7.)
Plaintiffs allege that for an unspecified period of time
during their employment, they and other hourly
employees were instructed by their supervisors to
record a maximum of eight hours of work per day on
their time cards even if they worked in excess of
eight hours. In addition, Plaintiffs allege that they and
other hourly employees were required to work on
certain Saturdays without appropriate compensation.

Sovereign argues that it did not violate FLSA, and
that even if such violations occurred, they ceased by
December of 2001.

Plaintiffs, apparently recognizing some merit in
Sovereign's latter argument, [FN1] now raise the
possibility that a two-year statute of limitations for
their FLSA claim will expire in the near
future.[FN2] Accordingly, Plaintiffs, who have not yet
conducted class-related discovery, request that the
Court preliminarily certify a class of plaintiffs that
includes all of Sovereign's non-FLSA-exempt hourly
employees and approve a form notice to be sent to
these employees so that they may opt-in to this suit
before they are time-barred from doing so.

> FN1. Plaintiffs have repeatedly stated that
> Sovereign continues to deny its employees
> overtime pay in violation of FLSA. (Pl.'s
> Mot. for Notice to Potential Class Members
> ¶ 2; Compl. ¶¶ 18-20.) In light of this, it is
> unclear to the Court why "the claims of
> many, if not most [potential class members]
> will likely expire by the date that class
> certification issue [sic] is addressed by the
> Court."(Pl.'s Mem. of Law in Support of
> Mot. for Notice to Potential Class Members,
> Part II.A.)

> FN2. As the parties note, the statute of
> limitations under FLSA is either two or
> three years, with the longer period applying
> to "willful" violations. 29 U.S.C. § 255. At
> this time, the Court neither addresses this
> issue nor decides which time period is
> applicable to the instant case.

**II. DISCUSSION**

There are two requirements for FLSA group
plaintiffs: (1) All plaintiffs must be "similarly
situated"; and (2) All plaintiffs must consent in
writing to taking part in the suit. 29 U.S.C. § 216(b).
FLSA does not define the term "similarly situated,"
*see id.;Briggs v. United States,* 54 Fed. Cl. 205, 206
(2002) ("The term 'similarly situated' is defined
neither in the FLSA nor in its implementing

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
**2003 WL 22701017 (E.D.Pa.)**

regulations."), nor does it provide specific procedures by which claimants may opt-in, but the Supreme Court has held that "district courts have discretion ... to implement [§ 216(b) ]... by facilitating notice to potential plaintiffs."*Hoffman La-Roche Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

The determination of whether FLSA claimants are "similarly situated" for the purposes of § 216(b) is a two-step procedure. *Felix de Asencio v. Tyson Foods, Inc.,* 130 F.Supp.2d 660, 663 (E.D.Pa.2001); *Briggs,* 54 Fed. Cl. at 206. The first step, generally conducted early in the litigation process, is a preliminary inquiry into whether the plaintiffs' proposed class is constituted of similarly-situated employees. *Felix de Asencio,* 130 F.Supp.2d at 663;*Briggs,* 54 Fed. Cl. at 206. The second step, usually conducted after the completion of class-related discovery, is a specific factual analysis of each employee's claim to ensure that each actual claimant is appropriately made party to the suit. *Felix de Asencio,* 130 F.Supp.2d at 663;*Briggs,* 54 Fed. Cl. at 206. Only the first step of this process is implicated by the present motion.

**\*2** The Third Circuit has not yet determined what standard to apply in considering whether potential class members are "similarly situated" such that FLSA plaintiffs may be entitled to send them notice of the suit. In the absence of appellate guidance, the Court looks to other districts and circuits, which have applied varying standards. Some courts, including two within this District, have held that motions for preliminary certification and notice may be granted as long as the plaintiff merely alleges that the putative class members were injured as a result of a single policy of the defendant employer. *See Goldman v. RadioShack Corp.,* No. 03-CV-0032, 2003 WL 21250571, *8, 2003 U.S. Dist. LEXIS 7611, *27 (E.D.Pa. Apr.16, 2003) ("During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members allegedly suffered from the same scheme."); *Felix de Asencio,* 130 F.Supp.2d 660 at 663 ("[C]ourts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."(internal quotations omitted)); *Sperling v. Hoffman-La Roche,* 118 F.R.D. 392, 407 (D.N.J.1988)) (same), *aff'd on other grounds*862 F.2d 439 (3d Cir.1988), *aff'd*493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

Other courts generally apply a more stringent-although nonetheless lenient-test that requires the plaintiff to make a "modest factual showing" that the similarly situated requirement is satisfied. *See Dybach v. Fla. Dep't of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir.1991) ("Before determining to exercise [its] power [to approve notice to potential plaintiffs], the district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated'...."); *Mueller v. CBS, Inc.,* 201 F.R.D. 425, 428 (W.D.Pa.2001) (requiring plaintiff to provide "a sufficient factual basis on which a reasonable inference could be made" that potential plaintiffs are similarly situated (internal quotations omitted)); *Harper v. Lovett's Buffet, Inc.,* 185 F.R.D. 358, 362 (M.D.Ala.1999) ("Plaintiffs have the burden of demonstrating that a reasonable basis for crediting their assertions that aggrieved individuals exist in the broad class that they propose."); *Jackson v. New York,* 163 F.R.D. 429, 431 (S.D.N.Y.1995) ("[P]laintiffs need merely provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist."(internal quotations omitted)); *Briggs,* 54 Fed. Cl. at 207 (requiring "modest factual showing that [plaintiffs] are ... similarly-situated with other, un-named potential plaintiffs").

Thus, in order to determine whether preliminary class certification should be granted, this Court must first determine the appropriate standard to apply: The "mere allegation" approach of *Goldman* and *Felix de Asencio,* or the "modest factual showing" test of *Briggs,* et al. In effect, *Goldman* and *Felix de Acensio* render preliminary class certification automatic, as long as the Complaint contains the magic words: "Other employees similarly situated." Under this rationale, any plaintiff who is denied overtime pay may file suit under FLSA and, as long as her complaint is well-pled, receive preliminary class certification and send court-approved notice forms to every one of her employer's hourly employees. This is, at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery.[FN3]More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to "ascertain the contours of the [§ 216] action at the outset."*Hoffman*

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 3
Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)
**2003 WL 22701017 (E.D.Pa.)**

*La-Roche,* 495 U.S. at 487 (discussing district court management of cases under § 216(b)), and such certification does not comport with the congressional intent behind FLSA's opt-in requirement, which was designed to limit the potentially enormous size of FLSA representative actions. *See id.* at 488.As the Supreme Court has stated, the opt-in requirement was intended to reduce "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome."*Id.* If district courts do not take basic steps to ensure that opt-in notices are sent only to potential plaintiffs who "have a personal interest" in the employer's challenged policy, the congressionally-mandated line between representative actions under FLSA and class actions under Rule 23 will be substantially blurred.

> FN3. The Court also notes that the cases in which the plaintiffs' allegations were deemed sufficient for preliminary certification purposes are factually distinguishable from the instant case. In *Goldman,* the plaintiff sought to provide notice only to employees who held the same title as himself, as opposed to the instant Plaintiffs, who wish to contact *all* of defendant's estimated 7,500 hourly employees. Similarly, in *Felix de Asencio,* the plaintiffs sought to provide notice to the workers at one particular plant, rather than to the entire corporate payroll. In both cases, therefore, there was a significantly greater likelihood than exists in the instant case that the employees receiving the opt-in form would be similarly situated to the plaintiffs.

**\*3** Accordingly, rather than following the automatic preliminary certification route, this Court will adopt the reasoning of those courts that have required plaintiffs to make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs. *See, e.g., Dybach,* 942 F.2d at 1567-68;*Mueller,* 201 F.R.D. at 428;*Harper,* 185 F.R.D. at 362;*Jackson,* 163 F.R.D. at 431;*Briggs,* 54 Fed. Cl. at 207. This approach provides a more efficient and effective means of managing FLSA litigation and comports with the Supreme Court's case-management recommendation and the Congressional intent behind FLSA. Specifically, the factual showing requirement enables a court to narrow the potential class from all of a

defendant's employees to just those employees who can possibly claim to have been denied overtime under the same policy as allegedly affected Plaintiffs.

It should be stressed that this is an extremely lenient standard. Plaintiffs need only provide some "modest" evidence, beyond pure speculation, that Defendant's alleged policy affected other employees. Nonetheless, in light of this standard, the Court must deny Plaintiffs' motion because Plaintiffs fail to provide any factual or evidentiary basis for the inclusion of all of Defendant's hourly employees in the putative class. However, because Plaintiffs have not yet conducted discovery on the class certification issue, the Court will permit Plaintiffs to re-file their motion for preliminary class certification and notice when and if the discovery process has yielded facts that render such certification appropriate .[FN4]

> FN4. Plaintiffs may wish to consider narrowing the putative class-by geography, job title, or otherwise-to reflect the evidence that arises during discovery.

For the reasons stated above, the Court denies Plaintiffs' motion for preliminary class certification. An appropriate Order follows.

*ORDER*

AND NOW, this 13th day of November, 2003, upon consideration of Plaintiff's Motion for Notice to Potential Class Members and for Approval of Form of Preliminary Class Notice and Defendant's response thereto, it is hereby ORDERED that:

Plaintiff's Motion (Document No. 7) is DENIED without prejudice.

E.D.Pa.,2003.
Smith v. Sovereign Bancorp, Inc.
Not Reported in F.Supp.2d, 2003 WL 22701017 (E.D.Pa.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

**22**

LEXSEE 2005 U.S. DIST. LEXIS 31682


Caution
As of: Aug 07, 2008

**BRENDA TYLER, Plaintiff, v. PAYLESS SHOE SOURCE, INC., Defendant.**

**CASE NO. 2:05-cv-33-F (WO)**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
ALABAMA, NORTHERN DIVISION**

*2005 U.S. Dist. LEXIS 31682*

**November 22, 2005, Decided
November 23, 2005, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted by, Judgment entered by *Tyler v. Payless Shoesource, Inc., 2006 U.S. Dist. LEXIS 34176 (M.D. Ala., May 23, 2006)*

**PRIOR HISTORY:** [*1] Case 2:05-cv-00033-MEF-CSC.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, seeking overtime compensation and benefits. She requested the court to certify the case as a collective action under *29 U.S.C.S. § 216(b)*, and allow nationwide and international notice to the employer's current and former store managers and manager trainees. The employer moved to strike portions of the employee's supporting materials.

**OVERVIEW:** Because some store managers expressed a desire to join the employee's suit when they learned about it, the employee sufficiently demonstrated that other employees desired to opt in. However, she did not meet her burden of showing that store manager trainees were similarly situated to the employee--a store manager who was exempt from overtime under *29 U.S.C.S. § 213(a)(1)*. Manager trainees did not have the same duties or responsibilities as store managers, and they were all nonexempt and eligible for overtime. Therefore, it was inappropriate to order notice to the manager trainees or allow them to proceed as a part of a collective action

with the employee since they were not similarly situated to her. As for store managers, the parties submitted conflicting evidence on the issue of whether store managers were similarly situated. Thus, a determination of whether or not potential store manager plaintiffs were similarly situated required a fact-specific, case-by-case inquiry. Since the employee failed to show that store managers were similarly situated to her, she failed to meet the standard requirements necessary to certify a collective action.

**OUTCOME:** The court denied the employee's motion to facilitate class notice and denied as moot the employer's motions to strike.

**LexisNexis(R) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN1] See *29 U.S.C.S. § 216(b)*.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN2] District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to *29 U.S.C.S. § 216(b)* of the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.* The power to authorize notice must, however, be exercised with discretion and only in appropriate cases.

Case 1:08-cv-04530-BSJ-MHD    Document 26-9    Filed 08/11/2008    Page 12 of 17

Page 2
2005 U.S. Dist. LEXIS 31682, *

***Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions***

[HN3] Collective action treatment under *29 U.S.C.S. § 216(b)* reflects a policy in favor of judicial economy by which the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity. Accordingly, the U.S. Court of Appeals for the Eleventh Circuit has held that a district court should make certain determinations before allowing an individual plaintiff to give notice to other potential members of a collective action under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.* Specifically, the district court should satisfy itself that there are other employees of the defendant-employer who desire to "opt-in" and are similarly situated with respect to their job requirements and with regard to their pay provisions.

***Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions***

[HN4] The U.S. District Court for the Middle District of Alabama has denied collective action status under *29 U.S.C.S. § 216(b)* when the court found insufficient proof that there were similarly situated persons who desired to join the lawsuit.

***Evidence > Procedural Considerations > Burdens of Proof***
***Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions***

[HN5] A plaintiff bears the burden of establishing that she and the group she wishes to represent are similarly situated. While the meaning of "similarly situated" is not defined in the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, the U.S. Court of Appeals for the Eleventh Circuit has held that the "similarly situated" requirement is more elastic and less stringent than the requirements found in *Fed. R. Civ. P. 20* (joinder) and *Fed. R. Civ. P. 42* (severance), and that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal "similarly situated" requirement of *29 U.S.C.S. § 216(b)*. Additionally, U.S. District Court for the Middle District of Alabama has previously determined that a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions. Without such a requirement, it is doubtful that *§ 216(b)* would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Executives & Professional Employees***

[HN6] The Code of Federal Regulations states that an employee may be exempt as an executive if he or she spends more than 50 percent of his or her time performing executive tasks, or if less than 50 percent of the time is spent on executive tasks, but these tasks nevertheless predominate or define the job. 29 C.F.R. § 541.7. The regulations provide a "short test" to classify employees for purposes of the executive exemption. This test provides that an employee could be classified as an executive if: (1) the employee was paid a salary of more than $ 455 per week, (2) the employee's primary duty was the management of the enterprise or a subdivision, (3) the employee regularly directed the work of two or more employees, and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions. *29 C.F.R. § 541.1(a).* To determine whether the primary duty involves management under either standard, in addition to the time spent on managerial tasks, a court can consider (1) the relative importance of managerial tasks and collateral assignments, (2) the frequency with which the employee exercises discretion, (3) the freedom from supervision, and (4) the difference in wages paid to hourly associates versus executives. 29 C.F.R. § 541.7.

***Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions***

[HN7] In a case where a job description alone is not a sufficient indicator of whether other employees are similarly situated, a determination of which employees are entitled to overtime compensation under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria.

***Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions***

[HN8] When the parties have conducted extensive discovery, it is appropriate to carefully consider the submissions of the parties with respect to *29 U.S.C.S. § 216(b)* collective action allegations.

***Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions***

[HN9] The U.S. District Court for the Middle District of Alabama recognizes that the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, has a broad remedial purpose,

but courts, as well as practicing attorneys, have a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation.

**COUNSEL:** For Brenda Tyler, Plaintiff: Jere L. Beasley, Roman Ashley Shaul, Wilson Daniel Miles, III, Beasley Allen Crow Methvin Portis & Miles PC, Montgomery, AL.

For Payless Shoe Source, Inc., Defendant: Charles Andrew Stewart, III, Bradley Arant Rose & White, LLP, Montgomery, AL.; Thomas Matthew Miller, Laura Domm Taaffe, Bradley Arant Rose & White LLP, Birmingham, AL.

**JUDGES:** Mark E. Fuller, CHIEF UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Mark E. Fuller

**OPINION**

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This cause is before the court on the plaintiffs' Motion to Facilitate Class Notice Pursuant to *29 U.S.C. § 216(b)* (Doc. # 17) filed on June 15, 2005. Plaintiff Brenda Tyler ("Tyler") filed a complaint in this Court asserting violations of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201 et seq.,* and seeking overtime compensation and benefits. Tyler asks the Court to certify this case as a collective action under the FLSA, and allow nationwide and international notice to all current and former Store Managers and Manager Trainees at Payless ShoeSource, Incorporated ("Payless"). Since the filing [*2] of the Complaint, five potential plaintiffs have filed Consents to Become Party Plaintiffs.

For reasons to be discussed, the Court determines that plaintiff's Motion to Facilitate Class Notice is due to be DENIED.

**II. STANDARD FOR CERTIFICATION OF A COLLECTIVE ACTION**

*Section 216(b) of the FLSA* provides that:

[HN1] Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional

equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*29 U.S.C. § 216(b).*

[HN2] District courts have discretionary power to authorize the sending of notice to potential class members in a collective action [*3] brought pursuant to *§ 216(b) of the FLSA. See Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001)* ("The decision to create an opt-in class under *§ 216(b),* like the decision to certify a class under *Rule 23,* remains soundly within the discretion of the district court"). The power to authorize notice must, however, be exercised with discretion and only in appropriate cases. *See Haynes v. Singer Co., 696 F.2d 884, 886 (11th Cir.1983).*

**III. FACTUAL BACKGROUND**

Tyler, the potential consent plaintiffs, and the potential collective action members in this case are or have been employed with defendant Payless. Payless operates 4,800 stores in the United States, Guam, Saipan, the United States Virgin Islands, Canada, Central America, the Caribbean, and Japan. According to Payless's Human Resources Director, Tom Tanner, Payless divides its stores into two zones, fifteen regions, and 180 districts. (Def.'s Br. in Opp'n to Pl.'s Mot. to Facilitate Class Notice at 8.)

Tyler was a Payless Store Manager in Montgomery, Alabama, from July 1989 to July 2004. [*4] (Decl. of Brenda Tyler at P 3; Complaint at P 3.) Her complaint alleges that she served as an Assistant Manager, a Store Manager Trainee and a Store Manager. All of the people who have filed Consents to Become Party Plaintiffs are or were employed by Payless as Store Managers or possibly Store Manager Trainees ("SMT's")/Managers in Holding. Most of the potential plaintiffs worked in Central Alabama, though Linda Wellman worked at Payless in Southern Alabama and Florida. (Decl. of Linda Wellman at P 3.)

Tyler alleges that Payless violated *sections 206* and *207* of the FLSA by classifying Store Managers and

2005 U.S. Dist. LEXIS 31682, *

Store Manager Trainees as salaried employees exempt from overtime requirements when these employees did not actually perform the type of bona fide executive, administrative or professional positions that would allow Payless to exempt them from overtime. *See 29 U.S.C. § 213(a)(1).* In other words, Tyler alleges that the Store Managers and Store Manager Trainees should have been non-exempt employees entitled to overtime compensation. (Mot. to Facilitate Class Notice at PP 3-4.)

Tyler alleges that the Payless managers' primary duty was not a management duty, [*5] that they did not customarily and regularly direct the work of two or more other employees, and that they spent most of their time performing non-managerial tasks. (*See* Mot. to Facilitate Class Notice at PP 3-6.) Tyler alleges in particular that Store Manager Trainees could not have been exempt because Department of Labor Regulations provide that the overtime exemption does not apply to "employees training to become executives and not actually performing the duties of an executive." (Mot. to Facilitate Class Notice at P 10.) Payless agrees with this last point and indicates that the Store Manager Trainees are all classified as non-exempt employees eligible for overtime compensation. (Def.'s Br. in Opp'n at 10.)

Tyler claims that for at least three years prior to filing the complaint in this case, Payless has had a uniform policy and practice of consistently requiring its managerial employees to work more than forty hours per week for a salaried amount without sales incentives, overtime compensation, commission, or other benefits offered to non-exempt employees. She contends that Store Managers and Store Manager Trainees perform the same tasks as hourly employees, often working [*6] alone in the stores, and are unable to make decisions regarding how their stores are run.

## IV. DISCUSSION

Tyler requests that this court "1) authorize this case to proceed as a nation-wide collective action, and 2) order the requested identification of the potential opt-ins, and 3) authorize the issuance of a court approved notice to be mailed to all present and former employees of Payless informing them of their rights to participate as opt-in plaintiffs in this action." (Mem. in Supp. of Mot. to Facilitate at 2.) She requests this for all present and former Store Managers and Store Manager Trainees that worked for Payless from a date three years prior to the filing of the complaint to the present.

[HN3] Collective action treatment under *§ 216(b)* reflects a policy in favor of judicial economy by which "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising

from the same alleged discriminatory activity." *See Hoffman-La Roche, Inc., 493 U.S. at 170.* Accordingly, the Eleventh Circuit has held that a district court should make certain determinations before allowing an individual plaintiff to give notice to other [*7] potential members of a collective action under the FLSA. Specifically, "the district court should satisfy itself that there are other employees of the Defendant-employer who desire to 'opt-in' and are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. Florida Dep't of Corr., 942 F.2d 1562, 1567-68 (11th Cir. 1991).* The court will address these two issues separately.

### A. Presence of Employees Who Desire to Opt In

Payless contends that Tyler failed to sufficiently demonstrate that there are other persons who desire to opt-in to this case. Payless offers affidavits from several individuals who would be included in the group identified by Tyler, but do not report that their job duties are inconsistent with FLSA requirements. [HN4] This Court has denied collective action status when the court found insufficient proof that there were similarly situated persons who desired to join the lawsuit. *See Horne v. United Servs Auto. Ass'n, 279 F. Supp. 2d 1231 (M.D. Ala. 2003).*

Here, while it is unknown what percentage of potential plaintiffs might wish to participate, Tyler points out that five other [*8] Payless employees have filed consents to sue pending before this Court, and this is evidence that at least some potential plaintiffs are interested in joining the suit. *See Barron v. Henry County Sch. Sys., 242 F. Supp. 2d 1096, 1105 n.6 (M.D. Ala. 2003).* Though two of these potential plaintiffs were not employed during the relevant period, three other potential plaintiffs remain prepared to join this suit. Given that the Court has evidence that some persons who are Store Managers at Payless expressed a desire to join this suit when they learned about it, the Court concludes that Tyler has sufficiently demonstrated at this stage of the proceedings that other persons desire to join in the suit. The real issue before the Court, therefore, is whether the persons who desire to opt in are similarly situated.

### B. Similarly Situated Store Managers and Store Manager Trainees

[HN5] A plaintiff bears the burden of establishing that she and the group she wishes to represent are similarly situated. *See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996).* While the meaning of "similarly situated" is not defined in the FLSA, the Eleventh Circuit has held [*9] that the "similarly situated" requirement is "more elastic and less stringent

than the requirements found in *Rule 20* (joinder) and *Rule 42* (severance) ... [and] that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of *§ 216(b)*." *Grayson, 79 F.3d at 1095; see also Hipp, 252 F.3d at 1219; Stone v. First Union Corp., 203 F.R.D. 532, 542 (S.D. Fla. 2001).* Additionally, this Court has previously determined that "a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1270 (M.D. Ala. 2004)* (citing *Marsh v. Butler Co. Sch. Sys., 242 F. Supp. 2d 1086, 1093 (M.D. Ala. 2003); White v. Osmose, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)).* "Without such a requirement, it is doubtful that *§ 216(b)* would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.*

[*10]  In this case, Tyler attempts to meet the similarly situated requirement through affidavits of current and former Payless Store Managers that allege they were required to perform similar duties to Tyler, in a manner that violated the FLSA; additionally, Tyler indicates that none of the Store Manager Trainees should be classified as exempt as a matter of law.

### 1. *Manager Trainees*

Tyler requests permission to provide notice of this lawsuit to Store Managers and Store Manager Trainees. Tyler was a salaried Payless Store Manager and also a Store Manager Trainee. She does not speak about her time as a Store Manager Trainee specifically, though it is the plaintiff's burden to establish that the Trainees are similarly situated to her.

While the potential plaintiffs are not formal parties to the suit, the court has reviewed their affidavits and preliminarily finds that none of these individuals clearly states that he or she was a salaried Store Manager Trainee.

Moreover, Payless asserts that all of its Store Manager Trainees, as well as its Managers in Holding who are awaiting a store, are classified as non-exempt, and paid overtime if they work more than forty hours per week. In [*11] fact, Payless asserts that when potential plaintiff Catrina Witcher was a Store Manager in Holding after her first store closed, she was re-classified as a non-exempt employee and was paid hourly and paid overtime when she worked more than forty hours until she became a full Store Manager again. (Def.'s Br. in Opp'n at 21.)

Since Store Manager Trainees and Store Managers in Holding do not have the same duties or responsibilities

as Store Managers, and they are all non-exempt and eligible for overtime, they are not similarly situated to exempt Store Managers such as Tyler. Tyler has not carried her burden to show that Store Manager Trainees are similarly situated to Tyler. Therefore, it is not appropriate for this Court to order notice to Store Manager Trainees, or allow them to proceed as a part of a collective action with Tyler since they are not similarly situated to Tyler.

### 2. *Store Managers*

Tyler also seeks to notify all current and former Payless Store Managers who worked anytime after the period three years prior to the filing of this complaint in January 2005. She seeks to establish that all store managers are similarly situated by proffering affidavits from three current [*12] Store Managers in her district -- Catrina Witcher, Evangeline Deramus, and Cynthia W. Harris -- as well as two former store managers, Linda Wellman, who worked in Payless stores in Southern Alabama and Florida over fifteen years ago, and Harvey Lee Taylor, who worked at Payless in Alabama from 1991 to 2000.

This collective action motion presents two questions: first, whether the mere classification as a Store Manager is sufficient to establish that the putative collective action members are similarly situated, or whether individuals' job duties must be scrutinized; and second, the degree to which evidence regarding the job duties of Tyler and the other potential plaintiffs and witnesses can be applied to Payless's Store Managers generally.

First, the Court asks whether all Payless Store Managers are similarly situated with respect to job description, pay plan, and daily job duties. Tyler has presented evidence of the daily job duties of several managers and argued that the case should be certified as a collective action because they have all been improperly classified as exempt. In seeking certification as a collective action, Tyler is not pointing to a Payless job description which [*13] says that Store Managers are required to work in stores alone or perform non-managerial duties for more than 50% of their working hours. Instead, Tyler is arguing that as a matter of fact, rather than of formal job description, Payless Store Managers are performing non-managerial duties for the majority of their working hours.

Payless presents evidence that Payless Store Managers experience differences in all three of these categories. First of all, stores differ greatly in size and format, and necessarily offer different job duties; some Store Managers run just one store while others run multiple stores. As a result, it is reasonable to imagine

that they have very different job duties. More importantly, not all managers are paid in the same way. Some Store Managers employed by Payless are classified as exempt employees, others are non-exempt, and still others fluctuate quarterly depending on their specific duties for purposes of the FLSA. (See Def.'s Br. in Opp'n at 21.)

[HN6] The Code of Federal Regulations states that an employee may be exempt as an executive if he or she spends more than 50% of his or her time performing executive tasks, or if less than 50% of the time is spent on [*14] executive tasks, but these tasks nevertheless predominate or define the job. 29 C.F.R. § 541.7. The regulations provide a "short test" to classify employees for purposes of the executive exemption. This test provides that an employee could be classified as an executive if: (1) the employee was paid a salary of more than $ 455 per week, (2) the employee's primary duty was the management of the enterprise or a subdivision, (3) the employee regularly directed the work of two or more employees, and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions. *29 C.F.R. § 541.1(a)*. To determine whether the primary duty involves management under either standard, in addition to the time spent on managerial tasks, a court can consider (1) the relative importance of managerial tasks and collateral assignments, (2) the frequency with which the employee exercises discretion, (3) the freedom from supervision, and (4) the difference in wages paid to hourly associates versus executives. 29 C.F.R. § 541.7.

The written job description for Store Managers contains many managerial tasks. An examination of Tyler's testimony [*15]  and that of the other potential plaintiffs, however, reveals allegations that they performed many other, non-managerial tasks and calls into question their classification as exempt. Therefore, the inquiry into whether each of these employees was properly classified requires an examination of the day-to-day tasks they performed.

[HN7] In a case where a job description alone is not a sufficient indicator of whether other employees are similarly situated, a determination of "which employees are entitled to overtime compensation under the FLSA depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria." *Holt, 333 F. Supp. 2d at 1271* (internal quotation omitted). In the present case, the "similarly situated" inquiry must be analyzed in terms of the nature of the job duties performed by each putative plaintiff, because the ultimate issue to be determined is whether each employee was properly classified as exempt.

In this case, the Court has been presented with evidence in the form of affidavits submitted by both plaintiff and defendant on the issue of whether putative class members are similarly situated. [*16]    Tyler contends that her evidence reveals that all Store Managers perform the same daily tasks to the same degree. Tyler relies primarily on her own declarations and those of the potential plaintiffs as evidence that Store Managers are similarly situated. This testimony is inconsistent with evidence presented by the defendant.

[HN8] When the parties have conducted extensive discovery, "it is appropriate to carefully consider the submissions of the parties with respect to the collective action allegations." *Holt, 333 F. Supp. 2d at 1274* (citing *White, 204 F. Supp. 2d at 1313*). See also *Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 498 (D.N.J. 2000)* (applying a stricter standard where discovery had been conducted); *Brooks v. BellSouth Telecomms., Inc., 164 F.R.D. 561, 566 (N.D. Ala. 1995)*. [1]

1    The court recognizes that the defendant has filed several Motions to Strike certain portions of plaintiff's evidentiary materials offered in support of her Motion to Facilitate Class Notice (Docs. # 21, 22, 23, 24). Because the Court does not rely on this evidence in reaching its ultimate conclusion as to the plaintiff's motion, the Court finds it is not necessary to reach the merits of these Motions to Strike; therefore, they are due to be DENIED as MOOT.

[*17]    The rationale for considering evidence at this stage in the proceedings was explained by the Court in *Holt:*

The court emphasizes that it is not weighing evidence, or accepting the substance of the Declarations submitted by the Defendant over the substance of any testimony submitted by the Plaintiffs. Because the issues in this case revolve around whether the day-to-day tasks of Store Managers and Assistant Managers are consistent with their designation as exempt, this court must necessarily examine evidence of the job duties actually performed by all of the Store Managers and Assistant Managers. The court concludes in this case, therefore, that rather than rely merely on the evidence presented by the Plaintiffs, it is appropriate to examine all of the relevant evidence.

*Holt, 333 F. Supp. 2d at 1274.*

Payless presents declarations from Payless Store Managers and employees who have worked for Tyler and some of the other potential plaintiffs. Their affidavits are consistent with other declarations presented by the defendant, and inconsistent with the evidence submitted by the Tyler.

Significantly, the affidavits show that not all Store Managers [*18] are exempt. Some are non-exempt and are paid overtime for hours worked exceeding 40 per week. Even among the exempt Store Managers, they are paid differently based upon the location of the stores, the size of the stores, market conditions, state laws, and their specific duties. Managers in Holding or Flux Managers, who supervise, on average, less than two employees in a given quarter, are paid as non-exempt employees. There are also several other types of Store Managers who have special duties, including managing multiple stores, serving as market leader managers who work with district-wide initiatives, or supervisory managers. (*See generally* Affs. of Brenda Knox, Clarence Alexander, Bridget Strother, Patrice Davis, Doug Moore, and Dana Nelson.)

While Tyler and the other potential plaintiffs have declared that at least 80% of their time is spent doing the same type of work performed by hourly employees, Payless offers evidence that other managers in the district where Tyler worked believed that over 80% of their time was spent engaged in managerial duties. Tyler alleges that she had little or no discretion as to how her store was run, but other Payless managers contend that they [*19] had the ability to hire and fire employees, set pay rates, and were responsible for all aspects of supervising store employees. For instance, Brenda Knox, Store Manager of Payless stores in Birmingham and Hoover, Alabama, estimates that 90-95% of her time is spent performing management duties, and that her most important duty as manager is training other employees. (Aff. of Brenda Knox at P 9.) When Store Managers did not supervise two or more employees, Payless reclassified their job duties on a quarterly basis as required by the FLSA. (Def.'s Br. in Opp'n at 11.) Payless employees have acknowledged this classification system in their affidavits. (*See, e.g.,* Aff. of Brenda Knox at P 13.)

The parties in this case have presented sufficient evidence at this stage to demonstrate that a determination as to whether or not other potential plaintiffs are similarly situated would require a fact-specific, case-by-case inquiry by the Court. In order to make this determination, at the very least, the Court would have to inquire as to each employee's average daily job duties, the number of other employees supervised, and the classification of each employee as exempt or non-exempt for the [*20] time period in question. This is the minimum level of inquiry; for some employees, the inquiry might need to go further, looking at that employee's ability to hire and fire subordinates, the employee's ability to set pay rates, and the amount of time that employee spends training and supervising other employees.

Without making credibility determinations, but merely considering all of the evidence presented at this stage, the Court cannot conclude that all Store Managers employed by Payless, even within the region that includes Alabama, are similarly situated. The plaintiff has thus failed to meet the standard requirements necessary for this Court to certify a collective action in this case.

## V. CONCLUSION

Because the evidence shows that certifying a collective action in this case would undermine, rather than promote, the purpose of judicial efficiency, the Court will decline to facilitate the class notice necessary for a collective action to proceed under the FLSA. [HN9] "The court recognizes that the FLSA has a broad remedial purpose, but, as the *Brooks* court noted, 'courts, as well as practicing attorneys, have a responsibility to avoid the "stirring up" of litigation through [*21] unwarranted solicitation.'" *Holt, 333 F. Supp. 2d at 1275* (citations omitted). Accordingly, it is hereby ORDERED that:

(1) The Plaintiff's Motion to Facilitate Class Notice (Doc. # 17) is DENIED.

(2) The Defendant's Motions to Strike (Docs. # 21, 22, 23, 24) are DENIED as MOOT.

DONE this the 22nd day of November, 2005.

/s/ Mark E. Fuller

CHIEF UNITED STATES DISTRICT JUDGE

**23**

LEXSEE 2006 U.S. DIST. LEXIS 96963



Positive
As of: Aug 07, 2008

**Jonah West, individually, and on behalf of all others similarly situated, Plaintiffs, vs. Border Foods, Inc., d/b/a Pizza Hut, Inc., and Sky Ventures, LLC, Defendants.**

**Civ. No. 05-2525 (DWF/RLE)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

*2006 U.S. Dist. LEXIS 96963*

**June 12, 2006, Decided**

**SUBSEQUENT HISTORY:** Adopted by, Motion denied by, Motion denied by, As moot *West v. Border Foods, Inc., 2006 U.S. Dist. LEXIS 46506 (D. Minn., July 10, 2006)*

**COUNSEL:** [*1] For Jonah West, individually and on behalf of others similarly situated, Plaintiff: Donald H Nichols, LEAD ATTORNEY, Nichols Kaster & Anderson, Minneapolis, MN; Jill M Novak, LEAD ATTORNEY, Fair Isaac Corporation, St Paul, MN; Michele R Fisher, LEAD ATTORNEY, Nichols Kaster & Anderson, PLLP, Minneapolis, MN; Paul J Lukas, LEAD ATTORNEY, Nichols Kaster & Anderson, Mpls, MN; Rachhana T Srey, LEAD ATTORNEY, Nichols Kaster & Anderson, PLLP, Mpls, MN; Sarah M Fleegel, LEAD ATTORNEY, Nichols Kaster & Anderson, PLLP, Minneapolis, MN.

For Border Foods, Inc., doing business as Pizza Hut, Inc., Defendant: Brent A Lorentz, LEAD ATTORNEY, Winthrop & Weinstine, PA, Mpls, MN; David P Pearson, LEAD ATTORNEY, Winthrop & Weinstine, PA, Mpls, MN; Laura A Pfeiffer, LEAD ATTORNEY, Winthrop & Weinstine, PA, Mpls, MN; William A McNab, Winthrop & Weinstine, PA, Mpls, MN.

For Sky Ventures, LLC, Defendant: Brent A Lorentz, LEAD ATTORNEY, Winthrop & Weinstine, PA, Mpls, MN; David P Pearson, LEAD ATTORNEY, Winthrop & Weinstine, PA, Mpls, MN; William A McNab, LEAD ATTORNEY, Winthrop & Weinstine, PA, Mpls, MN.

**JUDGES:** Raymond L. Erickson, CHIEF U.S. MAGISTRATE JUDGE.

**OPINION BY:** RAYMOND L. ERICKSON

**OPINION**

REPORT AND RECOMMENDATION

I. Introduction

This [*2] matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with provisions of Title *28 U.S.C. §636(b)(1)(B)*, upon the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, and the Defendant's Informal Motion to Stay Consideration of the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel. A Hearing on the Motions was conducted on April 18, 2006, at which time, the Plaintiffs appeared by Donald H. Nichols, and Michelle R. Fisher, Esqs., and the Defendants appeared by David P. Pearson, Julie M. Engbloom, and William A. McNab, Esqs.

For reasons which follow, we recommend that the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel be denied, and that the Defendants' informal Motion to Stay consideration of the Motion be denied, as moot. We also recommend that the Defendants' Motion to Strike be denied, as moot. [1]

1    While the Plaintiffs' Motion was under advisement, the Defendants filed a Motion to Strike certain averments that were made in the Plaintiffs' Interrogatory Answers which were submitted in support of the Plaintiffs' Motion for

2006 U.S. Dist. LEXIS 96963, *

Conditional [*3] Certification, Judicial Notice, and to Compel. The Plaintiffs have not, as of yet, responded to the Defendants' Motion to Strike, and no Hearing was conducted on that Motion. Nevertheless, our recommended disposition of the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, would appear to render the Defendants' Motion moot, and accordingly, we recommend that the Motion be denied.

## II. Factual Background

The Plaintiff Jonah West ("West") commenced this action on behalf of himself, and others similarly situated, alleging that the Defendants violated the Fair Labor Standard Act ("FLSA"), Title 29 U.S.C. §§ 201-219, when they failed to pay him for his overtime hours. Specifically, West, who is a former shift manager at the Pizza Hut restaurants in Maplewood, and in Woodbury, Minnesota, alleges that he and other similarly situated employees worked as shift managers at the Pizza Hut restaurants that were owned and operated by the Defendants, and that he, and other similarly situated employees, worked in excess of forty (40) hours per week, without receiving full overtime compensation. Amended Complaint, at PP6 and 7.

At the time that the Plaintiffs' Motion was [*4] filed, ten (10) persons, in addition to West, had "opted-in" to the suit. Affidavit of Michele Fisher ("Fisher Aff."), at P3. Of those persons, six (6) were determined by the Plaintiffs not be similarly situated, and either have withdrawn from the case, or have been asked to do so by the Plaintiffs. Id. The remaining five (5) Plaintiffs include: West; Erin Allram ("Allram"), who worked as a shift manager at the Defendants' Pizza Hut restaurant in Cottage Grove, Minnesota; Marshaire Cross ("Cross"), who worked at the Defendants' Pizza Hut restaurants in Apple Valley, Minnesota, and in St. Paul, Minnesota; Joseph Starks ("Starks"), who worked as a shift manager in the Defendants' Pizza Hut restaurant in New Brighton, Minnesota; and Stacy Dondelinger ("Dondelinger"), who worked as a shift manager in the Defendants' Pizza Hut restaurant in Columbia Heights, Minnesota. [2]

2   Since the Plaintiffs' Motion was filed, two (2) other persons -- Nakia Johnson, and Mike Sittler -- have filed Notices of Consent, in which they expressed their willingness to join as Plaintiffs to the action. See, Docket No. 37. However, no information has been provided with respect to those persons, such as which restaurants [*5] they worked at, or the precise nature of their claims against the Defendants.

By their Motion, the Plaintiffs now seek conditional certification to proceed collectively, pursuant to Title 29 U.S.C. §216(b). The Plaintiffs also seek to provide judicial notice of the action to all of the shift managers who have not joined in the action, and who are employed by the Defendants at their Pizza Hut, and "combo" restaurants. [3] In order to effectuate the notice, the Plaintiffs have also requested that the Defendants be compelled to answer Request No. 1, of their First Set of Requests for the Production of Documents, which requests the following information:

A list, in electronic and importable format, of all persons employed by Defendants as shift managers at any of Defendants' Pizza Hut locations from September of 2002 to present, including their name, address, telephone number, dates of employment as a shift manager, location of employment, employee number, and social security number.

Given this factual backdrop, we proceed to the parties' Motions.

3   The Plaintiffs' request to include, within the putative class, shift managers at "combo" restaurants is apparently a reference to restaurants which [*6] contain a Pizza Hut facility, in addition to another facility, such as a Taco Bell restaurant. Notably, the deposition testimony of Fred Burmer, who is the Vice President of Operations for the Defendant Sky Ventures, LLC ("Sky Ventures"), reflects that Sky Ventures owns and operates one facility that contains both a Taco Bell, and a Pizza Hut restaurant, and that the employees of Taco Bell, at that location, are -- like each of the Plaintiffs -- paid by Sky Ventures. Fisher Aff., Exh. 15, at pp. 30-31.

## III. Discussion

"The FLSA allows employees to bring a collective action 'for and in behalf of * * * themselves and other employees similarly situated.'" *Frank v. Gold'n Plump Poultry Inc.*, 2005 U.S. Dist. LEXIS 20441, 2005 WL 2240336 at *2 (D. Minn., September 14, 2005), quoting Title 29 U.S.C. §216(b). However, "[u]nlike class actions under Rule 23, '[n]o employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.'" *Smith v. Heartland Automotive Services, Inc.*, 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005), quoting Title 29 U.S.C. § 216(b). The process by which putative plaintiffs, in a

FLSA collective [*7] action, are joined, is commonly referred to as the "opt-in" process, and Courts may facilitate that process by authorizing the named Plaintiffs in a FLSA action to transmit a notice to potential class members. *Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)*. However, "[t]hat power is to be exercised * * * only in 'appropriate cases,' and remains within the discretion of the district court." *Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991)* ("Severtson I").

"The fundamental inquiry in determining whether a collective action under *[Section] 216(b)* is appropriate is whether or not the plaintiffs are 'similarly situated.'" *Smith v. Heartland Automotive Services, Inc., 404 F. Supp. 2d 1144, 1149-50 (D. Minn. 2005)*. "Unfortunately, *[Section] 216(b)* does not define the term 'similarly situated,' and there is little circuit law on the subject." *Thiessen v. GE Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001)*. In this District, like many other jurisdictions, the determination of whether plaintiffs are "similarly situated," is made by using a two-step process, which has recently been described as follows:

> At the initial stage, the court determines [*8] whether the class should be conditionally certified for notification and discovery purposes. [*Kalish v. High Tech Institute, Inc., 2005 U.S. Dist. LEXIS 8238, 2005 WL 1073645 at *1 (D. Minn., April 22, 2005)*]. At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan. See, *2005 U.S. Dist. LEXIS 8238, [WL] at *2*; *Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991)* (Severtson I). That is, the plaintiffs must show that there is some factual basis beyond the mere averments in their complaint for the class allegations. *Severtson I, 137 F.R.D. at 267*; *Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278-79 (D. Minn. 1992* (Severtson II). At the second stage -- which comes after discovery is completed -- the court uses a stricter standard for determining whether the putative class members are similarly situated and reconsiders whether the trial should proceed collectively or if it should be severed. *Kalish, 2005 U.S. Dist. LEXIS 8238, 2005 WL 1073645 at * 1*. At the second stage, the court conducts a fact

intensive inquiry of several factors, including: (1) the extent and consequence [*9] of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. See, *Thiessen, 267 F.3d at 1102-03*.

*Frank v. Gold'n Plump Poultry, Inc., supra, 2005 U.S. Dist. LEXIS 20441, [WL] at *2*; see, *Smith v. Heartland Automotive Services, Inc., supra at 1149-50*; *Kalish v. High Tech Institute, Inc., 2005 U.S. Dist. LEXIS 8238, 2005 WL 1073645 at *2-3 (D. Minn., April 22, 2005)*; see also *Thiessen v. General Electric Capital Corp., supra at 1102-03*; *Koren v. SUPERVALU, Inc., 2003 U.S. Dist. LEXIS 4104, 2003 WL 1572002 at * 15-16 (D. Minn., May 14, 2003)*.

Here, the parties have engaged in some discovery, such as the exchange of Interrogatories and Document Requests, and have taken the depositions of Barry Zelickson, Frank Burmer, and Julie Pung ("Pung"), who are each officers of the Defendant Sky Ventures, LLC ("Sky Ventures"), pursuant to *Rule 30(b)(6), Federal Rules of Civil Procedure*. However, the discovery process has not been completed and, as such, we analyze the Plaintiff's Motion under the initial stage of review.

At this stage, the Plaintiffs need only show that there is a "colorable basis" for their collective action, see, [*10] *Smith v. Heartland Automotive Services, Inc., supra at 1149*, and that factual similarities or differences among the putative Plaintiffs are such that the case may be properly managed as a collective action. See, *Ray v. Motel 6 Operating Limited Partnership, 1996 U.S. Dist. LEXIS 22564, 1996 WL 938231 at *4 (D. Minn., March 18, 1996)*; see also, *Severtson v. Phillips Beverage Co., supra at 266* ("As a matter of sound case management, a court should, before [authorizing a notice], make a preliminary inquiry as to whether a manageable class exists."); see, e.g., *Diaz v. Electronics Boutique of America, 2005 U.S. Dist. LEXIS 30382, 2005 WL 2654270 at *5 (W.D. N.Y., October 17, 2005)*; *England v. New Century Financial Corp., 370 F. Supp. 2d 504, 509 (M.D. La. 2005)*.

"A colorable basis means that plaintiff must come forward with something more than the mere averments in its complaint in support of its claim." *Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278-79 (D. Minn. 1992)* ("Severtson II"). This analysis "does not require th[e] court to make any findings of fact with respect to contradictory evidence presented by the parties nor does th[e] court need to make any credibility determinations

with respect to the evidence presented." Id. However, [*11] "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County School System, 242 F. Supp.2d 1096, 1103 (M.D. Ala. 2003)*, citing *Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002)*.

The Plaintiffs urge that conditional certification is proper because West, and each of the other "opt-in" Plaintiffs, are or were shift managers at Pizza Hut restaurants that were owned and operated by the Defendants; that each was classified as a "non-exempt employee" for the purposes of overtime eligibility; that each used the same computer system to track their time; that each was subject to the same corporate hierarchy; and that, pursuant to the practice of the Defendants, each was deprived of overtime pay.

As factual support for their Motion, the Plaintiffs have presented the Interrogatory Answers of West, Starks, Dondelinger, Allram, and Cross. See, Fisher Aff., at Exh. 17. As is pertinent to the present Motion, each of those persons was asked to "[d]escribe in detail all facts supporting, refuting or concerning your complaint that Defendants failed to pay you overtime compensation for all hours worked in [*12] excess of forty (40) hours per week," and to describe his or her responsibilities for recording work hours in the Defendants' Automated Timekeeping system. Id.

In response to the Interrogatory concerning the factual basis for his claim, West avers, as follows:

> Defendant maintained a practice of requiring its hourly employees to work hours "off the clock." For example, Plaintiff's district managers, Jerry Wickery and Doug Pricket, told Plaintiff's manager Glenn Rowley that hours worked over forty hours per week were to be "off the clock." Mr. Rowley then conveyed that information to Plaintiff. Sometimes Mr. Rowley allowed a few hours of overtime pay to be recorded and paid. Plaintiff is also aware that this practice was occurring at other locations, including but not limited to the Maplewood, Cottage Grove, Stillwater, and Woodbury restaurants.

Id.

West further elaborates that he was responsible for clocking in and out daily; that he was instructed by Glenn Rowley, who was his manager, to delete hours for certain employees, who had worked in excess of forty (40) hours per week; and that he had worked approximately three (3) hours of overtime per week. In response to a Second Set of Interrogatories, [*13] West explained that his awareness of similar conduct at other stores was predicated on his knowledge that Jerry Wickery ("Wickery") was a district manager for several of the Defendants' restaurants, and West's experiences working at restaurants that had been managed by Wickery. Additionally, West reports that a shift manager at the Defendants' restaurant in Stillwater, Minnesota, who he identified as Corinna, had informed him that she had been required to work off the clock without overtime compensation.

Id.

Similarly, Starks describes the factual basis for his claim, as follows:

> Plaintiff worked on average 50 hours per week. Plaintiff was not fully compensated for his overtime hours worked because his restaurant managers, Ronda Gordmaker and Tony Martin, required him to work off the clock in order to keep labor costs as low as possible. At weekly performance meetings, his managers regularly stressed that they need to keep labor costs down. This resulted in shift managers being forced to work longer hours. Plaintiffs managers at times, told him to clock out before his shift was over and then paid him cash for staying the extra hours. In addition, Plaintiff's managers modified his hours [*14] worked in the timekeeping system. Finally, sometimes Plaintiff's managers clocked him into the timekeeping system but did not do so immediately upon him beginning his shift.

Id.

Starks further avers that he was required to enter his time into the Automated Timekeeping System, and that, on occasion, he modified his time in the system. Id.

Dondelinger's Interrogatory Answers contain the following description of the factual basis for her claim:

> Plaintiff worked on average 42 hours per week. Plaintiff was not paid accurately for her overtime hours worked because the restaurant manager, Jennifer Bauer, recorded her hours inaccurately in

the computer system. In addition, there were instances where Plaintiff's manager asked her to work off the clock and told her she would pay her cash out of the cash register if she worked a few extra overtime hours. She worked this overtime once or twice a month. Plaintiff believes that it was either the regional or district manager directing her boss to make her work overtime hours.

Id.

Additionally, Dondelinger avers that she was required to enter her time into the Automated Timekeeping System; that she modified her time on several occasions with her manager's [*15] approval; and that she was allowed to modify her time when she forgot to punch in or out at the beginning or end of a shift. Id.

According to Allram's Interrogatory Answers, the factual basis for her claim can be described, as follows:

Plaintiff worked on average 47 hours per week. Plaintiff was required by her manager to work off the clock a few times per month. It was Plaintiff's understanding that Pizza Hut only allowed her manager to pay the hourly employees for a specified number of hours per month. If Plaintiff or the other hourly employees' overtime hours exceeded the hours allocated to the manager, he would inform them that he would not pay them for those hours and required that they work off the clock. Plaintiff is not aware if anyone altered her records to further deny her pay for hours worked.

Id.

Allram further attests that she was required to enter her time in the Automated Timekeeping System, and that she did not make any modifications to the work hours that were entered into the system. Id.

Cross answered the Defendants' Interrogatory concerning the factual basis for her FLSA claim, as follows:

Plaintiff worked on average 52 hours per week. As a matter of corporate policy, [*16] Plaintiff's managers were required to meet a quota every month. Therefore,

they were required to reduce the number of overtime hours because her managers, Bruce and Neil, modified her time records in the timekeeping system. She is not sure how often this occurred, but once the Plaintiff realized it was occurring (her co-workers, Jamie and Sabrina Baucou, were complaining about it happening to them also), she noticed that for approximately a three month period her hours listed on her pay statements were less than the total hours worked.

Id.

Cross further attested that she was allowed to modify her time records in the Automated Timekeeping System if she forgot to punch in or out at the beginning or end of a shift. Id.

In addition to those Interrogatory Answers, the Plaintiffs submitted an anonymous letter, which was addressed to Pung, who is the Senior Human Resources Generalist for the Defendants, in which the author describes instances in which a number of the Defendants' employees at the Defendants' Hillcrest Pizza Hut restaurant in Maplewood, Minnesota, including West, were either required to work off-the-clock, or were denied overtime pay. Id. at Exh. 18. The Plaintiffs have also [*17] directed our attention to the deposition testimony of Pung, which reflects that an employee of the Defendants, at a Pizza Hut restaurant in either Brainerd or Baxter, Minnesota, had complained that a manager had adjusted his end times for when he finished his shifts. See, Id. Exh. 16, at p. 34.

The Defendants have challenged the admissibility of several of averments that have been presented by the Plaintiffs in support of their Motion. There is presently a split in the pertinent authority as to whether the Court may properly consider inadmissible hearsay in the context of a Motion for Conditional Certification. Compare, *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 865-66 (S.D. Ohio 2005) ("[O]nly admissible evidence maybe considered in connection with a *[Section]* 216(b) motion."), citing *Richards v. Computer Sciences Corp.*, 2004 U.S. Dist. LEXIS 19637, 2004 WL 2211691 at * 1 (D.Conn., September 28, 2004), and *McElmurry v. US Bank National Association*, 2004 U.S. Dist. LEXIS 15233, 2004 WL 1675925 at * 10 (D. Or., July 27, 2004); *Clark v. Dollar General Corp.*, 2001 U.S. Dist. LEXIS 25976, 2001 WL 878887 at *2 (M.D. Tenn., May 23, 2001), with *White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363, 2006 WL 752554 at *4-5 (W.D. Tenn., 2006) (finding that hearsay [*18] evidence may properly be considered in the context of a Motion for

Conditional Certification). The parties do not address this split in authority, and our independent research does not disclose any case law from this District, or from any Circuit Court of Appeals, which has addressed the propriety of considering hearsay evidence in the context of a Motion for Conditional Certification.

The resolution of this split in authority is not material to our Recommendation and, as such, we will assume, without deciding, that hearsay evidence may be considered in the context of a Motion for Conditional Certification. That being said, even under the more permissive line of authority, the averments made in support of a Motion for Conditional Certification must be based on personal knowledge, see, *White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363, *supra* at *5, and "unsupported assertions of widespread violations are not sufficient to meet the Plaintiff's burden." See, *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003), citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983); *H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999).

Eliminating those averments which [*19] are not based on personal knowledge, as well as those which are merely conclusory, the Plaintiffs' submissions establish that six (6) shift managers, who were employed by the same corporate entity, and who operated under the same timekeeping system, were required to work off-the-clock by their individual store managers. [4] Sky Ventures purportedly owns approximately eighty (80) Pizza Hut restaurants, and it employs approximately three (3) shift managers, and one (1) restaurant general manager, at each location. *Affidavit of Julie* Pung ("Pung Aff."), at P2-3. As such, the Plaintiffs' showing demonstrates that six (6) of the potential class of approximately 240 shift managers, who are employed at Pizza Hut restaurants owned by the Defendants -- 2.5 per cent of the potential class -- were allegedly required by their store managers to work off-the-clock. Such a limited sampling of employees does not support the Plaintiffs' assertion of widespread violations resulting from a common policy or plan. See, e.g., *Harrison v. McDonald's Corp.*, *supra* at 870-71 (averments from two (2) employees who claimed FLSA violations, out of a potential class of 300, were insufficient to allow for conditional [*20] certification); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N. D. Ill. 2003) (evidence that demonstrated an employer's payment practices with respect to two (2) employees out of fifty (50) did not amount to "even a 'modest factual showing' of a common policy or plan.").

---

4    Of course, if we were to accede to the view that "only admissible evidence may be considered in connection with a *[Section] 216(b)* motion," see, *Harrison v. McDonald's Corp.*, 411 F. Supp.

2d 862, 865-66 (S.D. Ohio 2005), we would necessarily disregard West's averments that a shift manager at the Defendants' restaurant in Stillwater, Minnesota, who he identified as Corrina, told him that she had been required to work off-the-clock, as such an averment is plainly hearsay.

The Defendants have also presented evidence which refutes the Plaintiffs' assertion that a centralized policy required shift managers to work off the clock. Specifically, the Defendants have submitted training materials which require employees to clock themselves in before they start work, and to clock themselves out when their shift is over. Pung Aff., Exh. B, at SV000349. The Defendants have also submitted their Basic Management Training [*21] Program for Pizza Hut restaurants, which contains a memorandum entitled "Policy Bulletin 501." Id. at Exh. A. According to that policy, managers employed at the Defendants' Pizza Hut restaurants are prohibited from punishing an employee by cutting hours that were actually worked, or by asking, letting, or making employees work after they clock out. Similarly, the manager on duty is also prohibited from improving shift labor by directing anyone not to clock in for a scheduled shift; by refusing to pay overtime that an employee earned; by moving overtime from one week to the next; by asking or requiring anyone to work off the clock; or by reducing actual hours worked in the company records. Id. Exh. B., at SV000349-50. The Defendants further note that their Management Operations Manual requires that hourly employees be paid time and a half for overtime. Id. at Exh. C.

Since this case is at the initial stage of the certification inquiry, we need not make any factual determinations. However, neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if we were to overlook facts which generally suggest that a collective action is improper. See, *Basco v. Wal-Mart Stores, Inc.*, 2004 U.S. Dist. LEXIS 12441, 2004 WL 1497709 at *5 (E.D. La., July 2, 2004) [*22] ("To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved."); see, e.g., *Ray v. Motel 6 Operating Limited Partnership*, *supra*, 2004 U.S. Dist. LEXIS 12441, [WL] at *4. The plaintiffs, in Ray, who were assistant managers at the defendant's motels, sought to proceed collectively in their claim that the defendant had denied them overtime payments in violation of the FLSA. Specifically, the plaintiffs alleged that the defendants told assistant managers that the job would require overtime, but that they could not record more than forty (40) hours per week. In support of their

requested certification, the plaintiffs submitted a number of affidavits concerning the defendant's alleged "plan" to deny them overtime payments.

In addressing the propriety of the conditional certification and notice, the Court recognized that the "[d]etermination of class status at the notice stage is often liberally authorized since the court has minimal evidence for analyzing the class." Id. However, the Court determined that, given the extensive facts [*23] before it, there was no need for discovery in order to determine whether certification was proper, and it ultimately found that the plaintiffs had failed to satisfy their burden that they were similarly situated for the purposes of the FLSA. In so finding, the Court recognized that each of the plaintiffs who had "opted in" to the action was employed in the same position, pursuant to a similar management plan, as members of a management team which consisted of a manager and an assistant manager; that each of the plaintiffs were employed by the same corporate entity; and that the plaintiffs each alleged a common illegal plan to deprive them of overtime pay.

However, the Court also noted the individualized nature of the plaintiffs' claims, as the plaintiffs worked at a minimum of thirty-nine (39) different properties, located in twenty (20) different States; the properties where the plaintiffs worked varied widely as to the number of rooms and budgets; and the amount of overtime hours varied among plaintiffs. The Court also observed as follows:

> Moreover, the illegal overtime plan alleged by the Plaintiffs in the present action is not necessarily carried out through central management. [*24] First official written policy dictates that overtime will be paid in compliance with the FLSA. Second, if an illegal scheme exists at all, it is implemented on a decentralized level. Specifically, the approval of overtime is controlled by area supervisors. Further, in that Plaintiffs also allege that budget plans demonstrate a need for improper overtime, it is notable that the budgetary plans differ according to region and property. The evidence does not indicate that all the Plaintiffs sustained injury from one unlawful policy.

1996 U.S. Dist. LEXIS 22564, [WL] at *4.

Under similar circumstances, Courts from other jurisdictions have determined that where an "off-the-clock" claim requires significant individual

considerations, it may be inappropriate for conditional certification. See, Diaz v. Electronics Boutique of America, supra, 2005 U.S. Dist. LEXIS 30382, [WL] at *5 (denying Motion for Conditional Certification upon the finding that the plaintiff's "allegations -- viz., that he worked "off-the-clock" without compensation and that his timesheets were altered to delete overtime hours worked -- are too individualized to warrant collective action treatment."), citing Lawrence v. City of Philadelphia, 2004 U.S. Dist. LEXIS 8445, 2004 WL 945139 at *2 (E.D. Pa., April 29, 2004) [*25] (denying Motion for class certification where "off-the-clock" claim did not involve regularly scheduled hours that were worked by all members of the class, because "[t]he circumstances of those individual claims potentially vary too widely to conclude that * * * * the Plaintiffs are similarly situated."); England v. New Century Financial Corp., supra at 509 (finding conditional certification improper in a case where an "off-the-clock" claim involved a multitude of different managers at different locations, and where liability at one store location would not necessarily require a finding of liability at another location); Basco v. Wal-Mart Stores, Inc., supra, 2004 U.S. Dist. LEXIS 12441, [WL] at *7.

In Basco v. Wal-Mart Stores, Inc., supra, 2004 U.S. Dist. LEXIS 12441, [WL] at *7, the plaintiffs alleged "wide- spread occurrence of off-the-clock-work and unpaid overtime" at the defendant's stores in Louisiana. In support for their allegations, the plaintiffs presented testimony from a former store manager that six (6) persons worked off-the-clock at his store, and that he had previously been instructed to delete overtime hours from employees' time records. The plaintiffs also presented testimony from five (5) of the defendant's employees who claimed that [*26] they had worked more than forty (40) hours without receiving overtime compensation. 2004 U.S. Dist. LEXIS 12441, [WL] at *6.

In response to the plaintiffs' submissions, the defendants presented evidence that the plaintiffs were, individually, responsible for punching themselves in and out, and that the defendant's official policy required payment for all working time. 2004 U.S. Dist. LEXIS 12441, [WL] at *7. As such, the defendants urged that "any deviations for [sic] that policy occurs on a manager-by-manager basis and associate-by-associate basis involving particular circumstances and anecdotal testimony." Id.

When presented with this information, the Court determined that certification was improper, reasoning as follows:

> Simply put, plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the

creation of a class of all Wal-Mart employees that have not been properly paid overtime in the last three years. It is obvious from the discovery presented that this "policy" and its effects are neither homogeneous nor lend themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the "policy" was not even [*27] uniformly or systematically implemented at any given store. While it is true that this "lesser" standard should not preclude certification, and "similarly situated" does not mean identically situated, plaintiffs have failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. For this reason the Court would deny the Motion to Certify Collective Action.

*2004 U.S. Dist. LEXIS 12441, [WL] at *7.* [5]

The circumstances here are analogous to those which were present in *Ray* and *Basco*, in that the Plaintiffs were employed at different store locations, where different individual restaurant managers allegedly used varying means to deprive the Plaintiffs of proper compensation for his or her overtime hours. Furthermore, the nature of the asserted violation differ among the Plaintiffs; the number of uncompensated overtime hours that are being claimed range from two (2) to twelve hours (12) hours weekly, Fisher Aff. at Exh. 17; and, like both Ray and Basco, the alleged violations are contrary to the Defendants' official written policy, which precludes store managers from requiring employees to work off-the-clock, and requires [*28] payment of time and one-half for all overtime hours worked.

    5   While the Court, in Basco, analyzed the plaintiffs' Motion for Class Certification under both the first and second stage of the two-step analysis, we have limited our discussion of that case to its analysis under the initial, less stringent standard.

The burden on the Plaintiffs to establish that their case is "appropriate" for conditional certification and judicial notice "is not a difficult one." *Severtson II, supra at 279.* However, before subjecting an employer to the burdens of a collective action, the plaintiffs must establish a colorable basis for their claim that a manageable class of "similarly situated" plaintiffs exist.

*Severtson I, supra at 267.* Considering the individualized nature of the alleged violations, along with the absence of evidence to support the Plaintiffs' conclusory assertion of widespread violations, we find that the Plaintiffs have failed to demonstrate even a colorable basis that they were the victim of some common policy or plan, or that a manageable class exists, which would render a collective action appropriate. Therefore, we recommend that the Plaintiffs' Motion for Conditional Certification, [*29] Judicial Notice, and to Compel be denied at this time. [6]

    6   As noted, the Plaintiffs' Motion to Compel seeks to require the Defendants to provide them with a list of all persons that were employed by the Defendants as shift managers at their Pizza Hut restaurants from September of 2002, until the present, and contact information for those individuals. The purpose of the requested information is to facilitate notice to potential putative plaintiffs. Since, we find that the Plaintiffs' claims are inappropriate for collective action, and notice, it necessarily follows that the information being sought is no longer pertinent to the Plaintiffs' claims. Furthermore, given our recommended disposition of the Plaintiffs' Motion to for Conditional Certification, Judicial Notice, and to Compel, we recommend that the Defendants' informal Motion to Stay consideration of that Motion be denied, as moot.

During the time that the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, was under advisement, the Defendants filed a Motion to Strike certain portions of the Plaintiffs' Interrogatories Answers that were submitted in support of the Plaintiffs' Motion for Conditional [*30] Certification, Judicial Notice, and to Compel. The Defendants' Motion was predicated on depositions of the Plaintiffs, which commenced after the Hearing on the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel, and which the Defendants contend contain testimony that is contradictory to the information that was conveyed in the Plaintiffs' Interrogatory Answers. Since we have concluded that the Plaintiffs' Interrogatory Answers, as they were presented, fail to provide a basis for conditional certification, we further recommend that the Defendants' Motion to Strike be denied, as moot.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel [Docket No. 29] be denied.

2006 U.S. Dist. LEXIS 96963, *

2. That the Defendants' informal Motion to Stay Consideration of the Plaintiffs' Motion for Conditional Certification, Judicial Notice, and to Compel [Docket No. 34] be denied, as moot.

3. That the Defendants' Motion to Strike Interrogatory Answers [Docket No. 57] be denied, as moot.

Dated: June 12, 2006

/s/ Raymond L. Erickson

Raymond L. Erickson

CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to *Rule 6(a), Federal Rules of Civil Procedure*, [*31] D. Minn. LR1.1(f), and D. Minn.

LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than June 29, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than June 29, 2006,** unless all interested parties stipulate that the District Court is not required by Title *28 U.S.C. §636* to review the transcript in order to resolve all of the objections made.

**24**

LEXSEE 2005 U.S. DIST. LEXIS 34733



Caution
As of: Aug 07, 2008

## CHAD WOMBLES, et al., Plaintiff, v. TITLE MAX OF ALABAMA, INC., et al., Defendants.

### CIVIL ACTION NO. 3:03cv1158-C (WO)

### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

### 2005 U.S. Dist. LEXIS 34733

### December 7, 2005, Decided
### December 7, 2005, Filed

**SUBSEQUENT HISTORY:** Related proceeding at *Saxton v. Title Max of Ala., Inc., 2006 U.S. Dist. LEXIS 31922 (N.D. Ala., May 4, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff store managers and assistant store managers, on behalf of themselves and others similarly situated, sued defendant employers to recover unpaid overtime compensation under the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201 et seq.* Plaintiffs filed a motion to facilitate class notice pursuant to *29 U.S.C.S. § 216(b)*, or in the alternative, to issue partial notice.

**OVERVIEW:** Plaintiffs alleged they were required to work 70-75 hour weeks without overtime pay. They sought to pursue the case as a collective action under *§ 216(b)* and to allow notice to all current and former managers, assistant managers, and "over staff managers" of the employers for the last three years. The court noted that they identified no other employees who would want to join in a collective action. Their unsubstantiated belief about other employees' willingness to join the action and their inability to identify more than two other employees willing to join showed that plaintiffs did not meet their burden under *§ 216(b)* to provide evidence that any persons who desired to opt in were similarly situated. The uncontroverted evidence showed that assistant store managers had different duties than store managers. were classified as non-exempt, and were eligible for overtime.

Further, store managers' duties differed between states. Thus, plaintiffs failed to meet their burden of showing they were similarly situated to other employees to certify the action as a collective action under *§ 216(b)*.

**OUTCOME:** Plaintiffs' motion was denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Backpay*
[HN1] See *29 U.S.C.S. § 216(b)*.

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > General Overview*
[HN2] In the context of claims under the Fair Labor Standards Act, *29 U.S.C.S. § 201 et seq.*, a court has the discretion, in appropriate cases, to implement *29 U.S.C.S. § 216(b)* by facilitating notice to potential class members. The court must carefully exercise its discretion when permitting notice and must authorize notice in only appropriate cases. The plaintiffs bear the burden of demonstrating a reasonable basis for their claim that this matter warrants collective action status. The plaintiffs may meet this burden, which is not heavy, by making substantial allegations -- that is, detailed allegations

Case 1:08-cv-04530-BSJ-MHD    Document 26-10    Filed 08/11/2008    Page 13 of 18

Page 2
2005 U.S. Dist. LEXIS 34733, *

supported by affidavits which successfully engage defendants' affidavits to the contrary.

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > General Overview*
[HN3] Collective action treatment under *29 U.S.C.S. § 216(b)* reflects a policy in favor of judicial economy by which the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity. Accordingly, the Eleventh Circuit has held that a district court should make certain determinations before allowing an individual plaintiff to give notice to other potential members of a collective action under the Fair Labor Standards Act. Specifically, the district court should satisfy itself that there are other employees of the defendant-employer who desire to "opt-in" and are similarly situated with respect to their job requirements and with regard to their pay provisions. The United States district court for the Middle District of Alabama, Eastern Division, has denied collective action status when it has found insufficient proof that there are similarly situated persons who desired to join the lawsuit.

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > General Overview*
[HN4] Plaintiffs pursuing collective action treatment under *29 U.S.C.S. § 216(b)* bear the burden of establishing that they and the group they wish to represent are similarly situated. While the meaning of "similarly situated" is not defined in the Fair Labor Standards Act, the Eleventh Circuit has held that the "similarly situated" requirement is more elastic and less stringent than the requirements found in *Fed. R. Civ. P. 20* (joinder) and *Fed. R. Civ. P. 42* (severance) and that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal "similarly situated" requirement of *29 U.S.C.S. § 216(b)*. For an opt-in class to be created under *§ 216(b)*, an employee need only show that he is suing his employer for himself and on behalf of others employees "similarly situated." The plaintiffs must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions.

*Civil Procedure > Class Actions > General Overview*
*Labor & Employment Law > Wage & Hour Laws > General Overview*

[HN5] Where the parties conducted extensive discovery on the issue of collective action certification under *29 U.S.C.S. § 216(b)*, it is appropriate for the court to carefully consider the submissions of the parties with respect to the collective action allegations.

*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > General Overview*
[HN6] See *29 C.F.R. § 541.2.*

*Labor & Employment Law > Wage & Hour Laws > Defenses & Exemptions > Executives & Professional Employees*
[HN7] The Code of Federal Regulations provide a short test to classify employees for purposes of the executive exemption. This test provides that an employee can be classified as an exempt executive if: (1) the employee is paid a salary of not less than $ 455 per week, (2) the employee's primary duty is the management of the enterprise or a subdivision, (3) the employee customarily and regularly directs the work of two or more employees, and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions. *29 C.F.R. § 541.1 (a)*. The regulations also provide a short test to classify employees under the administrative exemption. This test provides that an employee can be classified as an exempt administrative employee if: (1) the employee is paid a salary of not less than $ 455 per week, (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business of the employer, and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *29 C.F.R. § 541.2.*

COUNSEL: [*1] For Chad Wombles individually and on behalf of all others similarly situated, Danny Wombles individually and on behalf of all others similarly situated, Jeff Penton individually and on behalf of all others similarly situated, Ronnie Welborn individually and on behalf of all others similarly situated, Mark Carnes individually and on behalf of all others similarly situated, Plaintiffs: William Richard Davis, Davis Rayborn Herrington & Prescott LLC, Montgomery, AL.

For TitleMax of Alabama, Inc., Title Max, Inc., TitleMax of Georgia, Inc., Title Max Title Lending of Columbus, Inc., TitleMax No. 2 of Columbus, Georgia, Inc., Defendants: Craig A. Cowart, Lewis Fisher Henderson Claxton & Mulroy, LLP, Memphis, TN; James R. Mulroy, II, Lewis Fisher Henderson Claxton, Memphis, TN.

For TitleMax No. 3 of Columbus, Georgia, Inc., Title Max of LaGrange, Inc., U.S. Title No.2 of Columbus, Inc., U.S. Title No.3 of Columbus, Inc., U.S. Title of Opelika, Inc., Defendants: Craig A. Cowart, Kelley Shannon Gooch, Lewis Fisher Henderson Claxton & Mulroy, LLP, Memphis, TN; James R. Mulroy, II, Lewis Fisher Henderson Claxton, Memphis, TN.

**JUDGES:** CHARLES S. COODY, CHIEF UNITED STATES MAGISTRATE JUDGE.  [*2]

**OPINION BY:** CHARLES S. COODY

**OPINION**

**MEMORANDUM OPINION AND ORDER**

This cause is now before the court on the plaintiffs' February 10, 2004, motion to facilitate class notice pursuant to *29 U.S.C. § 216(b)*, or in the alternative, issue partial notice. (Doc. # 23). The plaintiffs brought this action to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.* The five plaintiffs seek to pursue this matter as a collective action under the FLSA, and allow notice to "all current and former "Managers," "Assistant Managers," and "Over Staff Managers" of Defendants for the last three (3) years." (Mot. to Facilitate Reg'l Class Not. at 1). Since the filing of the complaint, the original five plaintiffs and two other potential plaintiffs have filed Consents to Become Party Plaintiffs. Pursuant to *28 U.S.C. § 636(c)(1)* and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

On July 21, 2004, the court held an evidentiary hearing specifically to address whether [*3] this court should certify a collective action and issue notice to potential opt-in class members. *See 29 U.S.C. § 216(b)*. The court permitted limited discovery solely on the issue of regional class notice and collective action status in this matter. After careful consideration of the motion to facilitate regional class notice, the briefs and evidentiary materials filed in support of and against the motion, and evidence presented at the evidentiary hearing, the court concludes that the plaintiffs' motion to facilitate regional class notice is due to be denied.

**II.  STANDARD FOR CERTIFICATION OF COLLECTIVE ACTION**

*29 U.S.C. § 216(b)* provides in pertinent part as follows.

[HN1] Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation ... and in an additional equal amount as liquidated damages. ... An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction [*4] by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. ...

[HN2] The court has the "discretion, in appropriate cases, to implement *29 U.S.C. § 216(b)* ... by facilitating notice to potential class members." *Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). See also Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001)* ("The decision to create an opt-in class under *§ 216(b)*, like the decision to certify a class under *Rule 23*, remains soundly within the discretion of the district court.") The court must carefully exercise its discretion when permitting notice and must authorize notice in only appropriate cases. *See Haynes v. Singer Co., 696 F.2d 884, 886 (11th Cir. 1983)*. The plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim that this matter warrants collective action status. *Grayson v. K-Mart Corp., 79 F.3d 1086, 1097 (11th Cir. 1996); Haynes, 696 F.2d at 887.*

The plaintiffs may meet this burden, which is not heavy, by making substantial allegations ..  [*5]  . that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary.

*Hipp, 252 F.3d at 1219. See also Grayson, 79 F.3d at 1097.*

**III. FACTS**

The plaintiffs, the potential consent plaintiffs, and the potential collective action members in this case are or have been employed at different Title Max Lending stores in the Columbus, Georgia, La Grange, Georgia and Opelika, Alabama areas as assistant managers and managers. [1] The plaintiffs allege that they "were routinely required to work in excess of forty (40) hours

per week despite the fact overtime compensation was never paid for the hours exceeding forty (40)." (Declaration of Chad Wombles, Pl's Ex. A, at p. 1, P 16.) The plaintiffs allege that they were required to attend mandatory meetings after store hours; were required to call or chase accounts after normal business hours; and worked between 70-75 hours per week, all without overtime compensation. According to the plaintiffs, because Store Managers perform non-managerial duties, do not supervise two or more employees and cannot hire, fire or discipline employees, they are improperly [*6] classified as exempt.

     1   Although the plaintiffs also allege that they were "Over Staff" managers, they have presented no evidence to support including "Over Staff" managers in any collective action.

The defendants asseverate that managers are exempt from overtime compensation and that assistant managers were specifically directed not to work in excess of 40 hours a week. According to the defendants, if any assistant manager worked more than 40 hours a week, the employee was either given compensatory time off or overtime pay. They also contend that Store managers are exempt under the administrative or executive exemptions of the FLSA.

## IV. DISCUSSION

The plaintiffs request that this court "(1) authorize the instant action to proceed as a region-wide collective action, (2) order the identification of the potential opt-ins, and (3) authorize the issuance of Plaintiffs' proposed notice ... to all present and former "Managers," "Assistant Managers," and "Over Staff Managers" of the Defendants informing them [*7] of their rights to participate as opt-in Plaintiffs in this action." (Pls' Mem. in Supp. of Mot. to Facilitate at p. 2.) They request this for all present managers, assistant managers and over staff managers from three years prior to and beginning on the date of filing the complaint in this action. (*Id.*)

[HN3] Collective action treatment under § 216(b) reflects a policy in favor of judicial economy by which "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *See Hoffmann-La Roche, Inc., 493 U.S. at 170*. Accordingly, the Eleventh Circuit has held that a district court should make certain determinations before allowing an individual plaintiff to give notice to other potential members of a collective action under the FLSA. Specifically, "the district court should satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in' and are 'similarly situated' with respect to their job requirements and with regard to their

pay provisions." *Dybach v. Florida Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991)*. This courth as denied [*8] collective action status when the court has found insufficient proof that there were similarly situated persons who desired to join the lawsuit. *See Horne v. United Auto. Ass'n, 279 F. Supp. 2d 1231 (M.D.Ala.2003)*.

The five plaintiffs allege, in nearly identical affidavits that they "believe ... that given the opportunity the other "Managers," "Assistant Managers," and "Over Staff Managers" would join in this lawsuit." (Declaration of Chad Wombles, Pl's Ex. A, at p. 2, P 16; Declaration of Danny Wombles, Pl's Ex. B, at p. 2, P 16; Declaration of Jeff Pention, Pl's Ex. C, at p. 2, P16; Declaration of Ronnie Welborn, Pl's Ex. D, at p. 2, P 16; Declaration of Mark Games, Pl's Ex. E, at p. 2, P 16.). While Steve Knight and Wendy dark filed notices of consent to become a party plaintiff, the plaintiffs have identified no other employees who they contend would want to join in a collective action. During the evidentiary hearing held on the issue of collective action status, none of the plaintiffs identified any other employee who expressed an interest in joining this litigation. On the other hand, the defendants have submitted affidavits of 46 employees in opposition to [*9] the motion for collective action status. The plaintiffs' unsubstantiated belief about other employees' willingness to join this action and their inability to identify more than two other employees willing to join shows that the plaintiffs have not met their burden. Consequently, the court concludes that the plaintiffs have failed to demonstrate that there are other employees who desire to opt in to this action.

In addition, [HN4] the plaintiffs bear the burden of establishing that they and the group they wish to represent are similarly situated. *See Grayson, 79 F.3d at 1096*. While the meaning of "similarly situated" is not defined in the FLSA, the Eleventh Circuit has held that the "similarly situated" requirement is "more elastic and less stringent than the requirements found in *Rule 20* (joinder) and *Rule 42* (severance) ... [and] that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Id., at 1095. See also, Hipp, 252 F.3d at 1219*. "For an opt-in class to be created under *Section 216(b)*, an employee need only show that he is suing his employer [*10] for himself and on behalf of others employees "similarly situated." *Grayson, 79 F.3d at 1096*. The plaintiffs "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Holt v. Rite Aid Corp., 333 F. Supp.2d 1265, 1270 (M.D. Ala. 2004)* (citing *Marsh v. Butler Co. Sch. Sys., 242 F. Supp. 2d. 1086, 1093 (M.D. Ala. 2003)*;

*White v. Osmose, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002).* "Without such a requirement, it is doubtful that *§ 216(b)* would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.*

In this case, the plaintiffs have failed to provide evidence that any persons who desire to opt in are similarly situated. First, the uncontroverted evidence demonstrates that Assistant Store Managers do not have the same duties or responsibilities as Store Managers and Assistant Store Managers are all classified as non-exempt and eligible for overtime; they are not similarly situated to Store Managers. Furthermore, during the [*11] evidentiary hearing, plaintiff Welborn admitted that he knew assistant managers were not to work more than 40 hours per week and testified that he did not work his assistant manager more than 40 hours a week. (Evid. Hr'g Tr. at 29-30). The plaintiffs also admitted that they have no personal knowledge of how other Title Max stores were operated or whether any other managers allowed assistant managers to work more than 40 hours a week. (*Id.* at 31). Finally, at least one plaintiff filed a contradictory affidavit in another case in which he stated that he "never allowed an assistant manager to work more than 40 hours during a week... never saw, knew of, or heard about any assistant managers at other branches working more than 40 hours per week." (Aff. Ronnie Welborn, Ex. 1A, at p. 4, § 16.) Consequently, the court concludes that the plaintiffs have not carried their burden of showing that Assistant Managers are similarly situated to Store Managers or the plaintiffs in this case. Therefore, it is not appropriate for this Court to order notice to Assistant Store Managers, or allow them to proceed as part of a collective action with these plaintiffs as they are not similarly situated.

[*12] Before certifying this matter as a collective action with respect to Store Managers, the court must essentially answer two questions: first, whether the mere classification as a Store Manger is sufficient to establish that the putative collective action members are similarly situated, or whether individuals' job duties must be scrutinized; and, second, the degree to which evidence regarding the job duties of these particular plaintiffs can be applied to other Title Max Store Managers generally.

In this case, the 'similarly situated' inquiry begins with an analysis of the nature of the job duties of the putative plaintiffs. The plaintiffs rely on their testimony that they did not supervise more than two employees and did not have the authority to hire, fire or discipline subordinates to argue that they were improperly classified as exempt. [2] They contend, in nearly identical affidavits, that all Store Managers perform essentially the same daily tasks and to the same degree. This contention

is simply inconsistent with the evidence presented at the evidentiary hearing. [3]

> 2   The plaintiffs present no evidence regarding the amount of time they or other store managers spend on managerial and non-managerial tasks. Nor do they present any evidence from which the court could ascertain the importance of managerial tasks and collateral assignments or the difference in wages paid to hourly associates versus executives.

[*13]

> 3   [HN5] Because the parties conducted extensive discovery on the issue of collective action certification, "it is appropriate [for the court] to carefully consider the submissions of the parties with respect to the collective action allegations." *Holt, 333 F. Supp. 2d at 1274* (citing *White, 204 F. Supp. 2d at 1313*). *See also Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 498 (D.N.J. 2000)* (applying a stricter standard where discovery has been conducted.)

Significantly, the evidence presented at the evidentiary hearing demonstrates that the plaintiffs are not similarly situated either among themselves or with other Store Managers. Plaintiff Jeffrey Penton testified that when he was Store Manager at U.S. Title on Buena Vista Road, he supervised no employees. Plaintiff Ronnie Welborn testified that he had only supervised one employee, and Rocky Butts testified that he usually supervised two or more employees. (*Compare* Evid. Hr'g Tr. at 145, 29 and 67, 87, 89). In addition, Welborn testified that he had no discretion to hire or fire [*14] employees, although he conceded that he did recommend the termination of an employee. In contrast, Butts testified that he had recommended three assistant managers for employment and he was authorized to fire people but had not had occasion to do so yet. (*Compare* Evid. Hr'g Tr. at 21-22 and 56.) Butts also testified that

Store Managers had discretion about when to repossess vehicles. Prospective consent plaintiff Steve Knight, who was employed as an assistant manager, testified that all the stores in which he worked had different ways of doing business. He also conceded that he did not know how other stores were operated.

District Manager Wendy Tate testified that store practices differ between states including between Georgia and Alabama. (Evid. Hr'g Tr. at 69-71). She also testified that staffing differs between stores (*Id.* at 127-28). Tate further testified that managers have the authority to reprimand their employees and authority to recommend hiring and firing employees. (*Id.* at 100, 119). Tate testified that Store Managers have discretion

to repossess vehicles and make all loans up to a dollar certain amount. Store Managers are responsible for tracking employees [*15] hours to ensure that non-exempt employees do not work overtime. Finally, Tate testified that Store Managers have authority and responsibility for all daily store operations.

The plaintiffs also seek to establish that Store Managers are similarly situated by pointing to documentation from the Department of Labor to support their contention that the defendants have improperly failed to pay overtime pay. (Pls' Reply to Defs' Opp. to Mot. to Facilitate Reg'l Class Notice at 2-3). Specifically, the plaintiffs assert that "the DOL's findings that back wages are due the seventy-nine (79) employees interviewed is both evidence of "similarly situated" individuals and individuals that would be potential opt-ins." (*Id.* at 3). The problem with the plaintiffs' position is however, all of the documents from the Department of Labor relate to stores in the Atlanta and Savannah areas - areas other than Columbus, LaGrange, and Opelika where the plaintiffs were employed. (Evid. Hr'g Tr. at 5). It is undisputed that none of the employees referenced in the Department of Labor documents were employed in a store in the Columbus, LaGrange or Opelika area. Consequently, the documentation from the Department [*16] of Labor is simply insufficient to establish that those employees are in any way "similarly situated" to the plaintiffs in this case.

The parties in this case have presented sufficient evidence at this stage to demonstrate that a determination as to whether or not other potential plaintiffs are similarly situated would require a fact-specific, case-by-case intensive inquiry of each plaintiff by the court. In order to make this determination, the court would have to inquire into each employee's daily job duties. This is the minimum level of inquiry; for some employees, including the named plaintiffs in this case, the inquiry would need to go further - looking into the number of employees supervised, the employee's ability to recommend hiring, firing and reprimanding employees, the employee's level of discretion and freedom from supervision, and the amount of time the employee spends performing non-managerial tasks. Indeed, this is the very type of analysis demanded by the regulations implementing the FLSA, under which job titles are insufficient to establish exempt status. *29 C.F.R. § 541.2.* [HN6] "The exempt or nonexempt status of any particular employee must be [*17] determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." *Id.* [4] Once the court evaluated each plaintiff's daily job duties, the court would then be in a position to determine whether that particular employee was properly classified as an exempt employee.

4     [HN7] The Code of Federal Regulations provide a "short test" to classify employees for purposes of the executive exemption. This test provides that an employee can be classified as an exempt executive if: (1) the employee is paid a salary of not less than $ 455 per week, (2) the employee's primary duty is the management of the enterprise or a subdivision, (3) the employee customarily and regularly directs the work of two or more employees, and (4) the employee has the authority to hire or Fire other employees, or the authority to recommend such actions. *29 C.F.R. § 541.1 (a).* The regulations also provide a short test to classify employees under the administrative exemption. This test provides that an employee can be classified as an exempt administrative employee if: (1) the employee is paid a salary of not less than $ 455 per week, (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business of the employer, and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. *29 C.F.R. § 541.2*

[*18]     Without making any credibility determinations, but merely considering all of the evidence presented, the court cannot conclude at this juncture that all Store Managers employed by Title Max, even within the district that includes the Columbus, LaGrange and Opelika stores, are similarly situated. Consequently, any determination about whether an employee was properly classified as an exempt employee must be an individualistic, fact-specific determination. Accordingly, the court concludes that the plaintiffs have failed to meet their burden of demonstrating that they are similarly as situated to other employees to certify this action as a collective action under the FLSA.

The court is cognizant of the FLSA's broad remedial purpose. However, "courts, as well as practicing attorneys, have a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation." *Brooks v. Bellsouth Telecommunications, Inc., 164 F.R.D. 561, 567 (N.D. Ala. 1995).* Given the state of the evidence, certifying a collective action in this case would undermine, rather than promote, judicial efficiency. Accordingly, the court concludes that collective action status is not appropriate [*19] in this matter.

## CONCLUSION

Accordingly, it is

ORDERED as follows:

2005 U.S. Dist. LEXIS 34733, *

1. That the plaintiffs' motion to facilitate regional class notice pursuant to *29 U.S.C. § 216(b)* or in the alternative, issue partial notice (doc. 23) be and is hereby DENIED;

2. That the plaintiffs motion to amend or correct the complaint (doc. # 76) be and is hereby DENIED; and

3. That the defendants' motion to strike Consent of Party Plaintiff Wendy Clark (doc. # 84) be and is hereby GRANTED.

Done this 7th day of December, 2005.

/s/Charles S. Coody

CHARLES S. COODY

CHIEF UNITED STATES MAGISTRATE JUDGE