UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
TODD BAZZINI, GREGORY LEONARCZYK,        Case No. 08-Civ.-4530
NOAH ALLEN and JOHN MARKIEWICZ,
Individually and on Behalf of All Other Persons
Similarly Situated,

                        Plaintiffs,

    -against-

CLUB FIT MANAGEMENT, INC., JEFFERSON
VALLEY RACQUET CLUB, INC., DAVID
SWOPE, BETH BECK and BILL BECK.

                        Defendants.
-------------------------------------------------------------X


# PLAINTIFFS' REPLY MEMORANDUM OF LAW TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AS A COLLECTIVE ACTION AND DISSEMINATION OF NOTICE TO SIMILARLY SITUATED EMPLOYEES


Dated: September 5, 2008          **FARUQI & FARUQI, LLP**
      New York, New York       Adam Gonnelli (AG-4782)
                             Beth A. Keller (BK-9421)
                             Christopher Marlborough (CM-6107)
                             369 Lexington Avenue, 10th Floor
                             New York, New York 10017
                             Telephone: (212) 983-9330
                             Facsimile: (212) 983-9331

                           *Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.   INTRODUCTION ....................................................................................................... 1

II.  THERE IS NO INCONSISTENCY IN THE DEFINITION OF THE GROUP OF
     POTENTIAL OPT-INS ............................................................................................. 1

III. DEFENDANTS' ARGUMENT THAT PLAINTIFFS AND PROPOSED OPT-INS ARE
     NOT SIMILARLY SITUATED ARE WITHOUT MERIT ....................................... 3

     A.  Defendants Mangle the Legal Standard for Conditional Certification and Try to Create a
         New One ............................................................................................................. 3

     B.  The Fact That Plaintiffs have Different Jobs Does Not Mean That They are Not Similarly
         Situated .............................................................................................................. 4

     C.  The Presence of Plaintiffs' "Off-The-Clock" Allegations Does Not Preclude a Finding
         That They are "Similarly Situated" ..................................................................... 6

     D.  Plaintiffs' Declarations Show That They are Similarly Situated. ........................ 7

     E.  Club Fit's Handbook, By Its Own Terms,  Evidences a Uniform Scheme to Violate the
         FLSA ................................................................................................................. 11

     F.  Differences In Damage Calculations Do Not Defeat Collective Certification ................. 12

IV.  CLUB FIT'S OTHER ARGUMENTS ARE IRRELEVANT ON THIS MOTION AND
     WITHOUT MERIT IN ANY CASE ...................................................................... 13

V.   THERE IS SUFFICIENT INTEREST IN THE ACTION TO SEND OUT NOTICE .......... 15

VI.  THE FORM OF NOTICE SUBMITTED BY PLAINTIFFS IS APPROPRIATE FOR
     DISTRIBUTION................................................................................................... 17

VII. CONCLUSION ...................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                              <u>Page(s)</u>

*Abrams v. Gen. Elec. Co.*,
   No. 95-1734, 1996 U.S. Dist. LEXIS 16869 (N.D.N.Y. Nov. 4, 1996) .................................... 5

*Aguirre v. SBC Communs., Inc.*,
   No. 05-3198, 2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006) ................................. 10

*Anglada v. Linens 'n Things, Inc.*,
   No. 06-12901, 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. Apr. 26, 2007) ............................... 17

*Ayers v. SGS Control Servs.*,
   2004 U.S. Dist. LEXIS 25646 (S.D.N.Y. Dec. 16, 2004) ....................................................... 2

Barfield v. N.Y. City Health & Hosps. Corp.,
   No. 05-6319, 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 18, 2005)................................. 10

*Basco v. Wal-Mart Stores, Inc.*,
   No. 00-3184, 2004 U.S. Dist. LEXIS 12441 (E.D. La. July 1, 2004) ....................................... 9

*Briggs v.* United States,
   54 Fed. Cl. 205 (Fed. Cl. 2002) .......................................................................................... 10

*Cuzco v. Orion Builders, Inc.*,
   477 F. Supp. 2d 628 (S.D.N.Y. 2007)........................................................................ 15, 17, 18

*Damassia v. Duane Reade, Inc.*,
   No. 04-8819, 2008 U.S. Dist. LEXIS 41650 (S.D.N.Y. May 27, 2008) ............................ 4, 17

*Diaz v. Elecs. Boutique of Am., Inc.*,
   No. 04-840, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005) ................................. 10

*Dumitrescu v. Mr. Chow Enters.*,
   No. 07-3601, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008) ..................... 2, 4, 5, 13

*Evancho v. Sanofi-Aventis U.S. Inc.*,
   No. 07-2266, 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 19, 2007)..................................... 10

*Fasanelli v. Heartland Brewery, Inc.*,
   516 F. Supp. 2d 317 (S.D.N.Y. 2007)................................................................................. 2, 6

*Flores v. Osaka Health Spa, Inc.*,
   No. 05-962, 2006 U.S. Dist. LEXIS 13153 (S.D.N.Y. Mar. 24, 2006)................................... 10

*Table of Authorities - Continued*

Page(s)

*Foster v. Food Emporium,*
No. 99-3860, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000) ........................... 2, 6, 16

*Francis v. A&E Stores, Inc.,*
No. 06-1638, 2008 U.S. Dist. LEXIS 49971 (S.D.N.Y. June 26, 2008) ........................... 4, 17

*Guzman v. VLM, Inc.,*
No. 07-1126, 2007 U.S. Dist. LEXIS 75817 (E.D.N.Y. Oct. 11, 2007) .................................. 16

*Hallissey v. Am. Online, Inc.,*
No. 99-3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) .................................. 17

*Harrington v. Educ. Mgmt. Corp.,*
No. 02-0787, 2002 U.S. Dist. LEXIS 8823 (S.D.N.Y. May 16, 2002) ................................... 16

*Hoffman-La Roche, Inc. v. Sperling,*
493 U.S. 165 (1989) .................................................................................................... 13

*Lee v. ABC Carpet & Home,*
236 F.R.D. 193 (S.D.N.Y. 2006) ........................................................................................ 6

*Legrand v. Educ. Mgmt. Corp.,*
No. 03-9798, 2004 U.S. Dist. LEXIS 17696 (S.D.N.Y. Sept. 1, 2004) .................................. 16

*Levison v. Primedia, Inc.,*
No. 02-2222, 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003) .................................. 10

*Lynch v. United Servs. Auto. Ass'n,*
491 F. Supp. 2d 357 (S.D.N.Y. 2007) ............................................................................. 4, 13

*Masson v. Ecolab, Inc.,*
No. 04-4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ........................... 16, 17

*Mazur v. Olek Lejbzon & Co.,*
No. 05-2194, 2005 U.S. Dist. LEXIS 30321 (S.D.N.Y. Nov. 25, 2005) .................................. 5

*Mendoza v. Casa De Cambio Delgado, Inc.,*
2008 U.S. Dist. LEXIS 61557 (S.D.N.Y. Aug. 12, 2008) ........................................... 4, 12, 13

*Morales v. Plantworks,*
No. 05-2349, 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 1, 2006) .................................... 10

*Prizmic v. Armour, Inc.,*
No. 05-2503, 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006) ................................ 10

*Table of Authorities - Continued*

Page(s)

*Realite v. Ark Rests. Corp.*,
    7 F. Supp. 2d 303 (S.D.N.Y. 1998)..................................................................... 2, 3, 6

*Sipas v. Sammy's Fishbox, Inc.*,
    No. 05-10319, 2006 U.S. Dist. LEXIS 24318 (S.D.N.Y. Apr. 24, 2006) ............................... 16

*Thiebes v. Wal-Mart Stores, Inc.*,
    No. 98-802, 1999 U.S. Dist. LEXIS 18649 (D. Or. Dec. 1, 1999)........................................ 10

*Wilks v. the Pep Boys*,
    No. 02-0837, 2006 U.S. Dist. LEXIS 69537 (M.D. Tenn. Sept. 26, 2006)............................. 14

## Statutes, Rules & Regulations

29 C.F.R.
    § 778.115............................................................................................................ 15
    § 516 (2)(a)(7-9) .................................................................................................. 11
    § 779.416............................................................................................................ 14
    § 785.11 .......................................................................................................... 11, 14

29 U.S.C.
    § 203(g) ............................................................................................................. 11

Fair Labor Standards Act .......................................................................................... passim

Fed. R. Civ. P. Rule 23 .......................................................................................... 6, 13

New York Labor Law ................................................................................................. 7

## Secondary Authorities

Dep't of Labor Op. Ltr.,
    2005 DOL LEXIS 63 (Nov. 14, 2005) ......................................................................... 14

# I.  INTRODUCTION

Defendants' Opposition  to Plaintiffs' Motion for Preliminary Certification ("Def. Mem.") is fatally flawed for three reasons:

First, Defendants' argument that Plaintiffs have not adequately identified the members of the proposed opt-in group is false.  This group consists of all present and former employees who were hourly employees at any time during the last six years.

Second, the fact that Plaintiffs have worked different jobs and have had different job responsibilities does not defeat certification.  Plaintiffs have adequately alleged a company-wide practice of making employees work without pay and not paying them appropriate overtime.  This is not a misclassification case, and specific job descriptions are not relevant here.

Third, as of the filing of this brief, in addition to the four original Plaintiffs, two past employees and, courageously, five current employees, have opted into the litigation. Accordingly, there is plenty of interest in this case among potential opt-ins.

Fourth, the employee handbook, which Defendants attempt to use in their defense, contains provisions which violate the Fair Labor Standards Act (the "FLSA") in a uniform manner.

## II.  THERE IS NO INCONSISTENCY IN THE DEFINITION OF THE GROUP OF POTENTIAL OPT-INS

Defendants selectively cut and paste from Plaintiffs' papers to make it appear that there is an inconsistency in the definition of potential opt-ins to whom notice should be sent.  Def. Mem. at 14.  There is no such inconsistency.  Potential opt-ins are all Club Fit employees who were paid by the hour at anytime during the last six years.  Plaintiffs' Complaint (the "Complaint") ¶ 18.  This notice group, limited to employees who were paid hourly, is similar to groups that have been certified in other cases in this district.  *See Fasanelli v. Heartland Brewery, Inc.*, 516 F.

Supp. 2d 317, 324 (S.D.N.Y. 2007) (granting conditional certification for all hourly employees of defendants' six restaurants); *Foster v. Food Emporium*, No. 99-3860, 2000 U.S. Dist. LEXIS 6053, at *6 (S.D.N.Y. Apr. 26, 2000) (certifying collective class that consists of current and former hourly supermarket employees); *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998) (certifying class of current and former hourly employees at 15 different restaurant locations).

The issue, then, is how best to reach this group with the proposed notice. Defendants complain about Plaintiffs' request that the notice be sent to all employees who did not have an ownership interest in Club Fit.[1] Defendants are, in fact, correct, when they point out that if notice is sent to this group, some notices will be received by people who are exempt managers and could not join the case. However, courts have noted that it is preferable to send notice to an overbroad group, especially early in the litigation, than to skip people who may not hear of the suit any other way. *See, e.g.*, *Dumitrescu v. Mr. Chow Enters.*, No. 07-3601, 2008 U.S. Dist. LEXIS 49881, at *10-11 (S.D.N.Y. June 30, 2008) (citing cases authorizing broad notice and recognizing that notice may be received by those who do not turn out to be "similarly situated"); *Ayers v. SGS Control Servs.*, No. 03-9078, 2004 U.S. Dist. LEXIS 25646, at *22 (S.D.N.Y. Dec. 16, 2004) (authorizing broad notice and noting that "at this early stage of the litigation process,

---

[1] The other perceived differences about which Defendants complain stem from the fact that the proposed notice is meant to be read by the non-lawyer and be easily understood. Accordingly, one of the first things potential opt-ins will see is the date range, with a suggestion that if they worked at Club Fit during that range, they should read further. However, in the interest of putting this issue to rest, Plaintiffs have changed the proposed notice to reflect up front that it applies to hourly employees. *See infra* Section VI. Defendants also claim that the sentence "A lawsuit has been brought against Club Fit claiming that its workers, including tennis, fitness, aquatics, wellness and café staff were not paid all wages required by law, including overtime wages" actually "identifies a fourth potential class." Def. Mem. at 14. This is absurd. The sentence clearly gives examples as to who is covered in the complaint. Taking these phrases out of context does not defeat preliminary certification.

however, principles of efficiency and judicial economy, as well as the liberal remedial purpose of the FLSA, support broad notice of joinder"); *Realite*, 7 F. Supp. 2d at 309 (broad notice favored at early stage of case).

Given Defendants' practices of failing to record time, erasing time, and job splitting, broad notice is warranted to ensure that all possible opt-ins receive notice of the lawsuit.

### III.  DEFENDANTS' ARGUMENT THAT PLAINTIFFS AND PROPOSED OPT-INS ARE NOT SIMILARLY SITUATED ARE WITHOUT MERIT

**A.    Defendants Mangle the Legal Standard for Conditional Certification and Try to Create a New One**

Defendants assert that in order for Plaintiffs to obtain conditional certification they must make a:

> *"substantial" showing* that the unnamed potential plaintiffs in their proposed notice – every past and present Club Fit employee, regardless of position, title, duties, or payroll status – are victims of a common policy or plan that violated the law.

Def. Mem. at 17 (emphasis added).  This is not the correct standard.  For this proposition, Defendants rely on *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  In *Scholtisek*, the court conditionally certified a class of all employees classified as exempt noting that:

> courts appear to require nothing more than "*substantial allegations*" of and a "*modest factual showing* that Plaintiffs were part of a common policy or plan that violated the law") (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997) (emphasis added).

Here, Defendants' use of the word "showing" suggests that "substantial" evidence must be proffered.  But all that is required are "substantial allegations."  Selectively cutting words out of *Scholtisek* does not raise the appropriate standard.

In addition to *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997), the leading case in the Southern District of New York is *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d

3

357, 368 (S.D.N.Y. 2007), which states that at the preliminary stage, the plaintiffs need only make a "modest factual showing that the plaintiff and the potential collective action members were victims of a common policy or plan that violated the law." This was reaffirmed in a spate of very recent cases. *See Dumitrescu*, 2008 U.S. Dist. LEXIS 49881, at *8 (citing *Lynch* and noting that "[t]he burden for demonstrating that the potential plaintiffs are similarly situated is 'very low at the notice stage.'"); *Diaz v. Scores Holding Co.*, No. 07-8718, 2008 U.S. Dist. LEXIS 38248, at *7 (S.D.N.Y. May 9, 2008) (same); *Mendoza v. Casa De Cambio Delgado, Inc.*, No. 07-2579, 2008 U.S. Dist. LEXIS 61557, at *7-8 (S.D.N.Y. Aug. 12, 2008) (same).

Plaintiffs have easily met this burden.

**B.     The Fact That Plaintiffs have Different Jobs Does Not Mean That They are Not Similarly Situated**

Most of Defendants' blunderbuss opposition argues that Plaintiffs and Club Fit's employees are not similarly situated because they have different job responsibilities. *See, e.g.*, Def. Mem. at 7-12; 16-23. But the fact that employees had different jobs or different responsibilities is of no moment here.

As Defendants acknowledge, this is not a "misclassification" case. *See* Def. Mem. at 24 ("Plaintiffs complaint does not allege that Club Fit misclassified exempt employees as non-exempt."). In a misclassification case, a plaintiff alleges that a group of similarly situated workers, typically managers or assistant managers, have the same job responsibilities and are wrongfully classified as exempt employees. *See, e.g., Francis v. A&E Stores, Inc.*, No. 06-1638, 2008 U.S. Dist. LEXIS 49971, at *11 (S.D.N.Y. June 26, 2008) (conditionally certifying a class of salaried assistant managers who defendants claimed were exempt employees); *Damassia v. Duane Reade, Inc.*, No. 04-8819, 2008 U.S. Dist. LEXIS 41650, at *1-2 (S.D.N.Y. May 27, 2008) (plaintiffs claimed salaried assistant managers were not exempt based on their duties).

In such cases, in order to proceed as a collective action, the specific duties of the plaintiffs are often important to determine if the jobs are similar enough that they can be adjudicated collectively. But that is not so in this case; the gravamen of plaintiffs' claims is that they worked hours without any pay at all and worked overtime hours without overtime pay. In cases like this one, where plaintiffs have been subjected to a common policy of being deprived of overtime and forced to work off the clock, courts grant preliminary certification even in the presence of a wide variety of jobs and locations. *See, e.g., Mazur v. Olek Lejbzon & Co.*, No. 05-2194, 2005 U.S. Dist. LEXIS 30321, at *21 (S.D.N.Y. Nov. 25, 2005) (certifying collective action involving seven different job descriptions including carpenters and varnishers against four corporate entities in different locations); *Fasanelli*, 516 F. Supp. 2d at 322 (certifying class of "all non-exempt persons employed by Defendants in any hourly position"); *Diaz*, 2008 U.S. Dist. LEXIS 38248, at *11-12 (certifying a class of dancers, bartenders, cocktail servers and waitresses); *Dumitrescu,* at *19 (certifying class of captains, waiters, bartenders, and busboys including some employees who defendants claimed were exempt management employees). *See also Abrams v. Gen. Elec. Co.*, No. 95-1734, 1996 U.S. Dist. LEXIS 16869, at *6 (N.D.N.Y. Nov. 4, 1996) ("[A] finding of "similarly situated" does not require the plaintiffs to perform the same job in the same location as long as there is a discriminatory policy common to all").

In rejecting the exact argument that Defendants make here, a Court in the Western District of New York found that while job descriptions may be relevant in misclassification cases, they are not in cases where there was a common policy to underpay employees:

> In [misclassification] cases, the purported class members' job duties, and any dissimilarities among them, will often be relevant to whether the employees are similarly situated for purposes of the FLSA, insofar as their job duties relate to whether they were correctly classified as exempt from the FLSA's overtime requirements.

*   *   *

5

> That these employees may have had different duties and performed different types of work is not particularly relevant to whether they are similarly situated with respect to plaintiffs' claims. What *is* important is that these employees were allegedly subject to a common practice or scheme on [the employer's] part of docking salaried employees pay in violation of the FLSA.

*Scholtisek*, 229 F.R.D. at 389 (emphasis in original).

Accordingly, what is important in this case is that plaintiffs have alleged a company-wide policy of not paying overtime and failing to pay for all work performed, not whether they have identical jobs.

**C.    The Presence of Plaintiffs' "Off-The-Clock" Allegations
Does Not Preclude a Finding That They are "Similarly Situated"**

In a similar vein, Defendants claim that the presence of "off-the-clock" allegations create so many individual issues that conditional certification should be denied. If this were the case, courts would not preliminarily certify such cases, but, in fact, they do so on a regular basis. For example, in *Fasanelli*, 516 F. Supp. 2d at 321, the Court granted conditional certification of an action concerning off-the-clock and overtime claims. As in this case, the court noted that several plaintiffs' declarations contained allegations of time shaving (including as here, direct observation of time shaving in different departments), refusing to let employees punch in for certain tasks, and not paying employees for certain job duties. The *Fasanelli* Court concluded that "[c]onditional class certification is appropriate here where all putative class members are employees of the same . . . enterprise and allege the same types of FLSA violations." *See also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203 (S.D.N.Y. 2006) (off-the-clock claims met both the conditional certification and more stringent Rule 23 class action standard); *Foster*, 2000 U.S. Dist. LEXIS 6053, at *4 (certification granted where four plaintiffs alleged, *inter alia*, common policy of being forced to work off the clock); *Realite*, 7 F. Supp. 2d at 304 (certification granted in case involving, *inter alia*, off the clock claims).

**D.**     **Plaintiffs' Declarations Show That They are Similarly Situated.**

Defendants claim that Plaintiffs who filed declarations are not similarly situated. Of course they are; each of Plaintiffs were subjected to Defendants' common scheme to deprive them of appropriate pay under the FLSA and New York Labor Law. None of the Plaintiffs received overtime for all hours worked over forty hours per week;[2] none of the Plaintiffs were paid for all hours worked;[3] and none of the Plaintiffs received spread of hours pay for working more than ten hours in a single workday.[4] Other similarities between the declarations include: Plaintiffs' observation that their supervisors shave time from employee records;[5] and the fact that many were subject to threats of retaliation for raising wage and hour grievances with management.[6] Moreover, several declarations described Defendants' bizarre practice of "job splitting" − depriving employees of overtime by having them work multiple jobs where no individual job exceeds forty hours.

Defendants also try to defeat a finding that Plaintiffs were similarly situated by describing their failure to pay overtime and to pay for all hours worked as mere clerical error (Def. Mem. at 2) limited to a few instances. This cannot be taken seriously, especially at this stage of the litigation. In January 2007 alone, Plaintiffs' pay stubs reflect that:

---

[2] Allen Decl. ¶ 6; Cosma Decl. ¶¶ 7, 10; Leonarczyk Decl. ¶ 5; Markiewicz Decl. ¶¶ 5, 12; Bazzini Decl. ¶¶ 5, 6, 11; O'Neal Decl. ¶ 8; Declaration of Michael Wisniewski in Support of Plaintiffs' Motion for Conditional Collective Action Certification ("Wiskniewski Decl.") ¶ 8, attached to the Declaration of Adam R. Gonnelli in Support of Plaintiffs' Motion for Conditional Collective Action Certification and Court Authorized Notice ("Gonnelli Decl.") as Exhibit A.

[3] Allen Decl. ¶¶ 7, 8; Cosma Decl. ¶ 11; Leonarczyk Decl. ¶ 18; Markiewicz Decl. ¶ 12; Bazzini Decl. ¶ 12; O'Neal Decl. ¶¶ 13, 17; Wisniewski Decl. ¶ 9.

[4] Allen Decl. ¶ 28; Cosma Decl. ¶ 24; Leonarczyk Decl. ¶ 39; Markiewicz Decl. ¶ 14; Bazzini Decl. ¶ 13; O'Neal Decl. ¶ 32; Wisniewski Decl. ¶ 17.

[5] Leonarczyk Decl. ¶ 31; O'Neal Decl. ¶ 22; Wisniewski Decl. ¶ 13.

[6] Allen Decl. ¶¶ 23-25; O'Neal Decl. ¶¶ 27, 30; Wisniewski Decl. ¶ 15.

7

- Jared Pope, an hourly tennis pro, worked no fewer than 244 hours without any overtime (no fewer than fifty four hours per week);[7]

- Erin Crandall, an hourly employee in the Tennis and Administration Departments, worked no fewer than 240.50 hours without any overtime;[8]

- Michael Wisniewski, an hourly employee in the Aquatics Department, worked no fewer than 182 hours between January 3rd and January 30th without any overtime.[9]

In addition, a review of available records from other months shows a consistent pattern of working over forty hours per week without receiving any overtime pay.  Gonnelli Decl. Exhs. B-D.  These numbers do not even include any off the clock hours that Plaintiffs were required to work, which were obviously not recorded.  The evidence, even at this early stage, clearly shows a consistent policy on the part of Defendants to violate the FLSA, far more than is required at this stage of the litigation.

Accordingly, Plaintiffs have more than adequately alleged that Defendants' policy of depriving employees of overtime compensation and pay for all hours worked was company-wide.  At Club Fit, a handful of management employees, many of whom are named in the Plaintiffs' Declarations, proceeded to carry out Defendants' unlawful policy which was so concisely summed up by Bill Beck's directive that "No one at Club Fit gets overtime."[10]  For instance, Aquatics Director Scott Karsen shaved time from employee time records,[11] and two declarants observed tennis director Steve Gervickas doing the same thing in the tennis

---

[7] *See* Gonnelli Decl. Exh. B, p. 22 (a single pay stub for that month).

[8] *See* Gonnelli Decl. Exh. C, pp. 3-5 (three pay stubs for that month).

[9] *See* Gonnelli Decl. Exh. D, pp. 1-2 (two pay stubs for that month).

[10]  *See* O'Neal Decl. ¶ 28.

[11]  *See* Wisniewski Decl. ¶ 13

department.[12]    Fitness director Donna Blerta told Plaintiff John Markiewicz that management did not want to pay him overtime,[13] while Scott Karson prohibited Plaintiff Mike Wisniewski from recording hours for lifeguarding shifts that he was nonetheless required to work.[14]

In addition, Club Fit's centralized administration and payroll departments participated in this unlawful scheme by permitting employees to log excessive hours as evidenced by the numerous pay stubs submitted by Plaintiffs that show they were routinely worked more than 40 hours in a work week without overtime pay.[15]

In arguing that Plaintiffs have not adequately alleged a common scheme, Defendants suggest that the facts here are similar to those in *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 U.S. Dist. LEXIS 12441 (E.D. La. July 1, 2004).   Def. Mem. at 28-29.   In *Basco*, the plaintiffs sought to represent a class of 100,000 Wal-Mart employees in stores all across the state of Louisiana.   Applying a higher standard than Plaintiffs' very low burden here, the court denied conditional certification where the plaintiffs were unable to show more than isolated instances of individual managers' conduct *after considerable discovery*.   *Id*. at fn. 9 ("Because there has been substantial discovery in this case, this Court's analysis is based on a stricter standard.").

However, no discovery has taken place here.   And, unlike Wal-Mart, the world's largest retailer, Club Fit is a small operation with perhaps a little over one hundred employees.   While policymakers at Wal-Mart have little contact with their more than 1.5 million frontline employees, Bill Beck and the other Individual Defendants interact with their employees on a

---

[12] *See* O'Neal Decl. ¶ 22; Leonarczyk Decl. ¶ 31.

[13] *See* Markiewicz Decl. ¶ 8.

[14] *See* Wisniewski Decl. ¶ 10.

[15] *See* Marlborough Decl., Exhs. H and I (Including pay stubs for Plaintiffs Leaf O'Neal and Gregory Leonarczyk pay stubs), and Gonnelli Decl., Exhs. B-D (Including pay stubs for opt in Plaintiffs Erin Crandall, Michael Wisniewski and Jared Pope).

daily basis.  This is not a case where rogue managers are depriving employees of overtime; rather, Club Fit management is carrying out a systematic policy forcing employees to work without pay and without appropriate overtime.

Indeed, conditional certification has even been granted to employees of the behemoth Wal-Mart, where plaintiffs have alleged a centralized policy of requiring them to work off the clock.  *Thiebes v. Wal-Mart Stores, Inc.*, No. 98-802, 1999 U.S. Dist. LEXIS 18649, at *11 (D. Or. Dec. 1, 1999) ("Plaintiffs have articulated a unifying theory of why hourly workers throughout Oregon may have not been paid all of the overtime pay that they were due (and that such a theory is sufficient to find that hourly employees are similarly situated for purposes of the FLSA.)").[16]

---

[16] Defendants' cases in support of their argument that plaintiffs have not made the requisite showing for this motion are inapposite.  *See* Def. Mem. at 18-22.  In *Barfield v. N.Y. City Health & Hosps. Corp.*, No. 05-6319, 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 18, 2005) ), there was a single plaintiff with only limited "anecdotal hearsay"; in *Briggs v. United States*, 54 Fed. Cl. 205 (Fed. Cl. 2002) ), the lead counsel submitted an affidavit saying there were workers in five other states who did not receive overtime in support of a national class; in *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-2266, 2007 U.S. Dist. LEXIS 93215 (D.N.J. Dec. 19, 2007), the plaintiffs were unable to allege that sales employees were subject to a common practice; and in *Aguirre v. SBC Commns., Inc.*, No. 05-3198, 2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006), the plaintiffs submitted only a brief and conclusory statements in the complaint.  Further, in *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-840, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005), the plaintiffs were unable to show that the alleged wrongful conduct went beyond a single store.  That issue is not present here.  In *Flores v. Osaka Health Spa, Inc.*, No. 05-962, 2006 U.S. Dist. LEXIS 13153 (S.D.N.Y. Mar. 24, 2006), the plaintiff failed to state a basis for her allegations that her co-workers were similarly situated.  Plaintiffs here have adequately done so.  In *Morales v. Plantworks*, No. 05-2349, 2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 1, 2006), *Levison v. Primedia, Inc.*, No. 02-2222, 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003), and *Prizmic v. Armour, Inc.*, No. 05-2503, 2006 U.S. Dist. LEXIS 42627 (E.D.N.Y. June 12, 2006), plaintiffs' affidavits contained no references to any workers other than plaintiffs.  That is not the case here.

**E.    Club Fit's Handbook, By Its Own Terms,**
**Evidences a Uniform Scheme to Violate the FLSA**

Defendants rely on the employee handbook to refute Plaintiffs' factual allegations, which is not only inappropriate at this stage of the litigation, but actually undercuts their opposition to this motion.[17]

As Defendants note, the handbook governs all non-exempt employees and made it the responsibility of those employees to keep track of their own hours.  Def. Mem. at 4, 20.  This is unlawful; under the FLSA, it is the responsibility of the employer to keep track of the employees' hours.  *See* 29 C.F.R. § 516 (2)(a)(7-9) (employees must keep records of hours worked each workday and total hours worked each week, earning for regular time, and overtime earnings).  By itself, this shows a common management policy that violates the FLSA.

In addition, again as Defendants point out, the handbook cautions Plaintiffs that they will be paid for "the time that is correctly recorded and approved by your manager."  Def. Mem. at 4.  Again, this is unlawful.  *See* 29 U.S.C. § 203(g).  Workers, under the law, are to be paid for all hours worked, regardless if they are recorded and regardless of whether they are somehow formally approved by management, so long as they are "suffered or permitted" to work.  *Id.*  Accordingly, a policy that restricts pay to that which is correctly recorded and approved violates the FLSA.  *See also* 29 C.F.R. § 785.11 ("Work not requested but suffered or permitted is work time.  For example, an employee may voluntary continue to work at the end of the shift.  He may be a pieceworker, he may desire to finish an assigned task or he may wish to correct errors, paste

---

[17] Defendants argue that Club Fit workers could not possibly be working overtime without appropriate pay because it was against the policy in the handbook.  *See* Def. Mem. at 1, 4, 20-2, 28.  The mere existence of the handbook, however, obviously does not disprove Plaintiffs' detailed factual allegations.

work tickets, prepare time reports or other records. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time.").

Accordingly, the handbook itself evidences a common and company-wide policy to violate the FLSA.

**F.**    **Differences In Damage Calculations Do Not Defeat Collective Certification**

Defendants next argue that the fact that Club Fit's employees worked off the clock while performing different jobs at different times mean that a collective action cannot be preliminarily certified. Def. Mem. at 27. This is, in fact, the same argument as Defendants made about differences in jobs precluding preliminary certification of misclassification cases, and fares no better in this guise. Rather, the differences among employees amount to little more than differences in damage calculations.

As a Southern District Court noted just last month, "[N]otwithstanding the individual damages, questions regarding the legality of Defendants' compensation and workplace policies are common to all members of the class." *Mendoza*, 2008 U.S. Dist. LEXIS 61557, at *17. Accordingly, if one employee worked 60 hours in a week and one worked 70, but both were deprived of overtime pursuant to a common policy, they are similarly situated.

For employees who are paid by the hour, it is a simple matter to deduct 40 from the number of hours worked in a given week to determine the amount of overtime hours worked, and then calculate the amount of overtime due the employee based on their hourly rate. That is the extent of individual inquires needed in this litigation, and such ministerial calculations do not defeat preliminary certification. Indeed, they do not defeat even the much higher standard for

class certification under Fed. R. Civ. P. 23.  *Mendoza*, at *16. ("Nor does a difference in damages arising from a disparity in injuries among the plaintiff class preclude typicality.")[18]

### IV.  CLUB FIT'S OTHER ARGUMENTS ARE IRRELEVANT ON THIS MOTION AND WITHOUT MERIT IN ANY CASE

Defendants proceed to challenge the veracity of Plaintiffs' allegations with a dubious "counterstatement of facts."  Def. Mem. at 3-12.  As the Supreme Court held, however, such factual challenges have "no bearing on the consideration of a motion for conditional certification."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ([T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action"). *See also Lynch*, 491 F. Supp.2d at 368-69 ("The court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determination");  *Dumitrescu*, 2008 U.S. Dist. LEXIS 49881, at *9 ("Arguments which attack the potency of plaintiffs' factual allegations under the FLSA, have no bearing on whether the potential opt-in plaintiffs are similarly situated to the current plaintiffs.").

Nonetheless, Defendants, in their zeal to defeat this motion, actually concede the merits of Plaintiffs' case on many respects.

In the description of the duties of the tennis instructors (Def. Mem. at 5), Defendants acknowledge that Plaintiffs did a great deal more than just provide tennis instruction. Defendants repeatedly claim that all these ancillary tasks were just part of the tennis instructors' jobs, and all parties knew that.  *Id.*  The problem was, however, that ***Plaintiffs were only paid for the time the spent providing tennis instruction.***  As hourly employees, they should have been

---

[18] Indeed, workers need not even have been harmed by the policy in order to be a member of the action.  *Scholtisek* at 390 ("Also, inasmuch as the policy is concerned, all employees subject to it would be similarly situated regardless of whether their pay was actually docked during the limitations period.").

paid for all hours worked, but they were not.  29 C.F.R. § 785.11.  This factor is yet another common element of Club Fit's treatment of its employees.

Although it is premature to do so, Defendants casually mention that tennis instructors were paid "hourly commissions," implying that they were not hourly employees entitled to overtime, but commissioned employees who were not so entitled.  Def. Mem. at 6.  This is a specious argument.  The U.S. Department of Labor has expressed its opinion on whether instructional employees at health and athletic clubs like Club Fit are commissioned employees. "[I]nstructional employees are paid a flat fee per lesson or session taught appear likely to earn the same amount each week, contrary to the requirements of 29 C.F.R. § 779.416.  *See* Dep't of Labor Op. Ltr., 2005 DOL LEXIS 63 (Nov. 14, 2005) ("flat fees paid without regard to the value of the service performed do not represent commissions on goods or services for the purposes of [the exception for commissioned workers].").  Courts who have examined similar arrangements have agreed that "In order to be considered a commission [. . .], An employee's compensation must somehow be linked to the cost passed on to the consumer." *Wilks v. the Pep Boys*, No. 02-0837, 2006 U.S. Dist. LEXIS 69537 (M.D. Tenn. Sept. 26, 2006), *aff'd*, 2008 U.S. App. LEXIS 10722 (6th Cir. May 15, 2008).  Instructional employees at Club Fit are paid by the hour, whether they are teaching a private lesson, a semi-private lesson or a group lesson.  Club Fit earns significantly more money for semiprivate and group lessons, than for individual lessons, by charging separately each client participating in the lesson.  Accordingly, they are not commissioned employees.

Second, Defendants essentially admit that they tried to avoid paying overtime to non-exempt employees by splitting their jobs up.  Def. Mem. at 9-10.  However, the fact that an employee works more than forty hours per week doing different things does not mean that he or

she loses entitlement to overtime.  If this were the case, employers all over the country could avoid paying overtime to non-exempt employees by simply categorizing their tasks under different job titles.  This would be an absurd result, and contrary to the letter and spirit of the FLSA.

Third, in a variation on a theme, Defendants submit a list of Club Fit's 21 "departments" to show that employees worked at different jobs.  Def. Mem. at 10-11.  This is irrelevant in this case.  *See supra* Section III. B.  However, most of Club Fit's "departments" apparently exist only for purposes of this litigation.  Most, *e.g.*, Community Events, Marketing/Advertising, and Creative Services, and Nursery and Child Care, are staffed by the same people.  Others are apparently people in the Fitness group that have some knowledge of other areas and use that in the context of their work, *e.g.*, Perinatal Fitness and Physical Therapy.  Details on these departments, to the extent they are relevant, must await discovery.

Lastly, most bizarre is Defendants' contention that Mr. Markiewicz was overpaid and may owe Club Fit money.  Def. Mem. at 12, 23-24.  When an employee receives two different hourly wages, overtime is calculated using a blended rate.  29 C.F.R. § 778.115.

## V.  THERE IS SUFFICIENT INTEREST IN THE ACTION TO SEND OUT NOTICE

Defendants next maintain that some undisclosed magic number of plaintiffs must opt-in to the litigation ***before notice of the action is sent to them***, in order for conditional certification to be granted and suggest that Plaintiffs have not met this secret threshold.  Def. Mem. at 15.  Defendants are wrong on the facts and the law.

First, there is no specific number or percentage of opt-ins required to trigger sending notice.  Indeed, conditional certification has been granted where there is only a single plaintiff.  *See, e.g., Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 633 (S.D.N.Y. 2007) ("The single named Plaintiff here has met his burden by successfully demonstrating that there are other

15

workers who are similarly situated to him, and that is enough for this matter to move forward as a representative action"); and *Harrington v. Educ. Mgmt. Corp.*, No. 02-0787, 2002 U.S. Dist. LEXIS 8823, at *4 (S.D.N.Y. May 16, 2002) (single plaintiff's affidavit sufficient). *See also Sipas v. Sammy's Fishbox, Inc.*, No. 05-10319, 2006 U.S. Dist. LEXIS 24318, at *8 (S.D.N.Y. Apr. 24, 2006) (conditionally certifying class on basis of three affidavits and allegations in the complaints); *Masson v. Ecolab, Inc.*, No. 04-4488, 2005 U.S. Dist. LEXIS 18022, at *14 (S.D.N.Y. Aug. 17, 2005) (conditionally certifying based on three "opt-in" plaintiffs); *Legrand v. Educ. Mgmt. Corp.*, No. 03-9798, 2004 U.S. Dist. LEXIS 17696, at *4-5 (S.D.N.Y. Sept. 1, 2004) (three declarations); *Foster*, 2000 U.S. Dist. LEXIS 6053, at *6 (four plaintiffs); *Guzman v. VLM, Inc.*, No. 07-1126, 2007 U.S. Dist. LEXIS 75817, at * 10 (E.D.N.Y. Oct. 11, 2007) (four affidavits). Plaintiffs have submitted more evidence than in any of these cases.

Second, there is no lack of interest among Club Fit employees. Eleven people have come forward to say that they have been deprived of overtime compensation, pay for all hours worked, and spread of hours pay. Indeed, since Defendants filed their opposition, four more Club Fit employees have opted in to the case, including from the aquatics and maintenance departments. Considering the size of Club Fit, with possibly 100 full time employees, it is clear that these eleven employees represent a significant portion of Club Fit's workforce.

Third, the fact that five current employees have bravely stepped forward in the teeth of management's penchant for retaliation speaks volume about the interest in this case.[19] Indeed, Mike Wisniewski has testified in his declaration that there is strong interest in joining the litigation among employees at Club Fit, but that a fear of management's retaliation prevents others from joining the suit. Wisniewski Decl. ¶¶ 15-16.

---

[19] *See* Allen Decl. at ¶ 24-25; O'Neal Decl. at ¶ 30; Leonarczyk Decl. at ¶ 38.

## VI.  THE FORM OF NOTICE SUBMITTED BY PLAINTIFFS
## IS APPROPRIATE FOR DISTRIBUTION

Plaintiffs have amended the proposed notice to address the concerns raised by Defendants (Def. Mem. at 29-30) in their opposition.  *See* Amended Proposed Notice and Redline of Amended Proposed Notice, Exhs. E and F.  First, Defendants' concern about the opt-ins being notified that they must be hourly employees is addressed in the initial paragraph.  Second, Defendants' concern about an accurate portrayal of Defendants' position is addressed by informing people that they can obtain a copy of Defendants' answer from Plaintiffs' counsel.  *See* paragraph 4.  Third, although the notice clearly states that people can retain their own lawyers and bring their own cases if they so desire, Plaintiffs have amended the language to further clarify that people do not need to work with Plaintiffs' counsel if they do not wish to.  *See* paragraph 14.

Defendants' concern about sixty days being too long to allow people to opt into the litigation is without merit.  Sixty days is not an unreasonable time to allow potential opt-ins to join the case.  Defendants are obviously interested in minimizing the number of people who join the case, but sixty days does not prejudice the defendants, and given the vicissitudes of any notice process, including incorrect addresses, confusion, and breakdowns in communications, it is certainly reasonable.  *See Damassia* (one hundred and twenty days); *Fasanelli* (ninety days); *Cuzco* (nine months); *Masson* (nine months beause workers tend to be transient).  *See also Francis* (sixty days); *Diaz* (sixty days); *Hallissey v. Am. Online, Inc.*, No. 99-3785, 2008 U.S. Dist. LEXIS 18387, at *11-12 (S.D.N.Y. Feb. 19, 2008) (sixty days); *Anglada v. Linens 'n Things, Inc.*, No. 06-12901, 2007 U.S. Dist. LEXIS 39105, at *37 (S.D.N.Y. Apr. 26, 2007) (sixty days).

Should the Court authorize notice and approve the form of amended notice, notice should be distributed without further delay. The Amended Proposed Notice is based on the Federal Judicial Center's Model Employment Discrimination Class Action Certification Notice, and has now incorporated the comments of the Defendants. The only review yet to be performed is by the Court.

Notably, Defendants did not submit an alternative proposed notice. In such circumstances, it is inappropriate to give them a second bite at the apple if the Court authorizes the distribution of notice. *Cuzco* at 636 (declining to postpone issuance of notice where defendants failed to submit an alternative).

In addition, given the importance of sending notice out promptly because of the authority holding that the statute of limitations may continue to run on the claims of potential opt-ins, *see* Pl. Mem. at 18-19, affording Defendants a further opportunity to criticize the notice would not be equitable.

## VII.  <u>CONCLUSION</u>

For the reasons above and for the reasons stated in Plaintiffs' opening brief, Plaintiffs respectfully request that this motion be granted in its entirety.

Dated: September 5, 2008          Respectfully submitted,
      New York, New York

      **FARUQI & FARUQI, LLP**

      By:         s/Adam Gonnelli
                Adam Gonnelli (AG-4782)
      Beth A. Keller (BK-9421)
      Christopher Marlborough (CM-6107)
      369 Lexington Avenue, 10th Floor
      New York, New York 10017
      Telephone: (212) 983-9330
      Facsimile: (212) 983-9331

      ***Attorneys for Plaintiffs***

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/Adam Gonnelli
Adam Gonnelli (AG-4782)

# Mailing Information for a Case 1:08-cv-04530-BSJ-MHD

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Adam Richard Gonnelli**
  agonnelli@faruqilaw.com,abarinov@faruqilaw.com

- **Beth Ann Keller**
  bkeller@faruqilaw.com

- **Christopher Marlborough**
  cmarlborough@faruqilaw.com

- **Mark Andrew Saloman**
  msaloman@proskauer.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)